Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

Attorney for Plaintiff and Putative Class

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>OCMBC, INC. D/B/A LOANSTREAM, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS<br><br>*Defendants.* | Case No. 8:24-cv-67-FWS-JDE<br><br>**PROPOSED FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Kimberly Hudson-Bryant (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. This case involves a campaign by OCMBC, Inc. d/b/a LoanStream ("LoanStream") to market its loan services through telemarketing calls by contacting numbers on the National Do Not Call Registry using a vendor it hired, Premier Financial Marketing LLC d/b/a Resmo Lending ("Resmo") and its owner Sean Roberts, in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2. The recipients of LoanStream's illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA, and because the technology used by LoanStream makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

3. Plaintiff Kimberly Hudson-Bryant is an individual located in Texas.

4. Defendant LoanStream, LLC is a California limited liability company located in California that hired Defendant Resmo to make telemarketing calls from this District.

5. Defendant Premier Financial Marketing LLC, which does business under the fictitious name Resmo Lending, is a Wyoming limited liability company with its headquarters and principal place of business in California that makes telemarketing calls.

6. Defendant Sean Roberts is a resident of California who was barred by the California Department of Business Oversight of the State of California from acting in any position of employment, management, or control of any finance lender and/or broker. Despite this, however, Defendant LoanStream hired him and his company to make the telemarketing calls at issue.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has general jurisdiction over all defendants because they either reside or have their principal places of business in this District.

9. Venue is proper pursuant to 28 U.S.C. § 1391 because the telephone calls at issue were sent from this District.

## TCPA BACKGROUND

The National Do Not Call Registry

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2).

FIRST AMENDED CLASS ACTION COMPLAINT
-3-

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

## FACTUAL ALLEGATIONS

13. Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

14. Plaintiff's telephone number, 323-XXX-XXXX, is used for residential purposes and is used for personal purposes.

15. That number is not associated with a business.

16. The number has been registered on the National Do Not Call Registry continuously since September 1, 2003.

17. Despite this, the Plaintiff received two telemarketing calls placed on behalf of LoanStream as part of its solicitation campaign with Resmo and Roberts on October 12, 2021, at 1:07 PM and 2:18 PM.

18. The calls were sent from the Caller ID 213-521-2618.

19. The first call, at 1:07 PM, was unanswered and went to voicemail.

20. The second call, at 2:18 PM, was answered by Plaintiff. When Plaintiff answered, an individual named "Karisha" with "LoanStream Mortgage" was looking for an individual named "Ms. Woods."

21. The caller went into a sales pitch and stated that the Plaintiff was pre-qualified to refinance her mortgage for a lower interest rate if it was above 3%.

22. For the aforementioned reasons, the message the Plaintiff received was sent using automated means. This is especially so because it bears indicia that it was created from a generic, scripted message, including the fact that Plaintiff is not Ms. Woods.

23. On January 3, 2023, the Plaintiff sent an email to Defendant LoanStream attempting to ascertain why she received the aforementioned unwanted and unsolicited calls, to request that her number be placed on Defendant LoanStream's Do Not Call List, and to receive a copy of Defendant LoanStream's Do Not Call Policy.

24. Defendant LoanStream did not respond to this correspondence.

25. This use of automated means to make calls is indicative of *en masse* calling.

26. The calls were not necessitated by an emergency.

27. Defendant LoanStream ratified Resmo and Roberts's conduct by accepting the lead and referral generated as a result of Resmo and Roberts's illegal telemarketing conduct.

28. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears

FIRST AMENDED CLASS ACTION COMPLAINT
-5-

ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

29. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

30. The FCC has instructed that sellers such as LoanStream may not avoid liability by outsourcing telemarketing to third parties, such as Resmo and Roberts:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

31. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

32. LoanStream is liable for telemarketing calls placed by Resmo and Roberts and transferred to and using LoanStream's name to generate customers for LoanStream, including the Plaintiff.

33. LoanStream was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and work up mortgage deals by taking advantage of an outsourced mortgage processing, marketing, and calling arrangement with three tele-sales agents and one manager working full-time shifts through Resmo and Roberts for LoanStream.

34. To do so, it hired Resmo and Roberts to orchestrate an *en masse* telemarketing campaign that incentivized them to work up residential mortgage deals that met LoanStream's criteria.

35. To that end, LoanStream, and its president, Serene Vernon, were in constant communication with Roberts and Resmo. For example, LoanStream shared profit and loss reports with Resmo and Roberts in order to pay them based on their performance.

36. Further compounding its wrongdoing, to further incentivize their relationship with Resmo and Roberts and the agents hired to market and work up deals through them, LoanStream would pay a processing fee and basis points (percentage of the loan amount) to Resmo and Roberts.

FIRST AMENDED CLASS ACTION COMPLAINT
-7-

37. LoanStream did this despite knowing, or reasonably should have knowing, that California regulators banned Roberts from any position of employment, management, or control in the mortgage business in 2009, that ban remaining in effect and refusing to reinstate Roberts on multiple occasions.

38. LoanStream controlled the day-to-day activities of Resmo and Roberts by allowing them to work up mortgage deals on its behalf and then sent them a cut of the money.

39. LoanStream authorized Resmo and Roberts to use the LoanStream name, authorized Resmo and Roberts representatives to state that they were calling "from LoanStream" and work up mortgage deals on its behalf.

40. LoanStream also could have prohibited Resmo and Roberts from using generating leads based on calls placed to numbers on the Do Not Call Registry.

41. It did not.

42. Finally, LoanStream could have terminated Resmo and Roberts once it learned of Resmo and Roberts's illegal marketing conduct, including by using LoanStream as a front to circumvent Roberts's lifetime ban from the mortgage industry in California.

43. It did not.

44. A reasonable seller would investigate why the telemarketers it has hired to generate leads are themselves barred from the mortgage industry and have failed in multiple efforts and attempts to get reinstated.

45. Moreover, a reasonable seller would also investigate into the reasons why their marketer would be calling numbers using highly illegal calls to numbers on the Do Not Call Registry.

46. It did not.

47. LoanStream hired Resmo and Roberts without a proper investigation, or with full knowledge that it was barred from doing business with them, and did not terminate them when they were informed of Resmo and Roberts's illegal calling conduct.

48. As such, they knowingly ratified Resmo and Roberts's conduct.

49. LoanStream accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her.

50. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

51. Defendant Roberts personally then went off and arranged to hire the outsourced agents as authorized by LoanStream to make the calls complained of herein and to work up mortgage deals for LoanStream.

52. Defendant Roberts may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

53. Roberts personally directed the TCPA-violative conduct at issue because he personally went off and hired the offshore, outsourced agents and managers contemplated by his agreement with LoanStream. These agents, whom he hired, in turn then attempted to sell and work up deals for LoanStream as a way of bypassing his own ban from employment in the mortgage business.

54. Roberts was also the individual responsible for drafting, setting, implementing, and controlling this illegal marketing strategy, including the use of illegal automated calls to numbers on the Do Not Call Registry, the hiring of the

talent to work up those leads, and the other works involved in placing such calls, as well as its strategy of obsfucating corporate identity by hiring companies providing offshore talent to work up deals for LoanStream which necessitated the issuance of multiple subpoenas.

55. The foregoing facts demonstrate that Roberts had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

56. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power, network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

## CLASS ACTION ALLEGATIONS

57. Plaintiff bring this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of

Defendants (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

58. Defendants and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

59. Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendants.

## Numerosity

60. Members of the Class are so numerous that their individual joinder is impracticable.

61. On information and belief, based on the technology used to call Plaintiff, which is used to make calls *en masse*, Members of the Class number in the thousands.

62. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

63. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

64. A preliminary examination of the calling records produced in discovery has revealed approximately 56,257 telephone numbers of the approximately 117,257 number dataset of calls were on the Do Not Call Registry.

### Commonality

65.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

66.  Common legal and factual questions include, but are not limited to, whether Defendants have violated the Telephone Consumer Protection Act and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

### Typicality

67.  The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendants without giving them her consent to receive such calls.

### Adequacy of Representation

68.  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.

69.  The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

## Superiority

70. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

71. Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendants' liability.

72. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

73. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

74. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

75. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

76. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 75 as if fully set forth herein.

77. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

78. The Defendants' violations were negligent, willful, or knowing.

79. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

80. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to numbers on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff request a jury trial as to all claims of the complaint so triable.

Dated: August 14, 2024

PLAINTIFF, individually and on behalf of all others similarly situated,

By: */s/ Anthony Paronich*
Anthony I. Paronich (admitted *pro hac vice*)
(MA 678437)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorney for Plaintiff and the Proposed Class*