# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KIMBERLY HUDSON-BRYANT,,** individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>**OCMBC, INC. D/B/A LOANSTREAM, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING and SEAN ROBERTS,**<br>    Defendants. | Case No. 8:24-cv-00067-FWS-JDE<br><br>Presiding: Hon. Fred W. Slaughter<br>Referral: Hon. John D. Early |

## EXPERT DECLARATION OF AARON WOOLFSON

I, Aaron Woolfson, state and declare as follows:

1.     I have been retained by Plaintiff's counsel to provide structure to, and then analyze, the electronic Call Detail Records ("CDR" or "CDRs"), customer lists, and other associated information that has been, or will be, provided in this lawsuit reflecting the calling done by OCMBC, Inc. d/b/a LoanStream, Premier Financial Marketing LLC d/b/a Resmo Lending and Sean Roberts ("OCMBC, Inc. d/b/a "LoanStream", "LoanStream" or "Defendants").

2.     More specifically, I have been asked to opine whether there is a reliable method to identify which calls in CDR reports maintained by Defendant's dialing platform vendor were made to telephone numbers that were on the national Do-Not-Call ("DNC") list for more than thirty (30) days, and where there were two (2) or more calls to that number within 365 days.

3.     As described in this declaration, it is my conclusion that using call records produced in this matter there is a reliable method to identify the following: calls to numbers that were on the national DNC list for more than thirty (30) days, and there were two (2) or more calls to that number within 365 days.

1

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-01215-AMO

4.	This report reflects the results of my study of the underlying facts, independent analysis of the data and documents provided by Motive to counsel for Plaintiff, and third parties. My rate is $440.00 per hour for expert engagements, and $675.00 per hour for depositions, trial, and arbitration appearances. I am personally familiar with the matters that are contained within this declaration, and if called to testify, I can accurately and competently testify as to them.

**Qualifications and Expert Engagements.**

5.	I have over 25 years of experience in developing and analyzing databases and telephone systems and establishing the interfaces between telephone systems and the networks that convey calls. I have implemented call recording and call data collection and retention systems for commercial, government, aerospace, telecommunications, and payroll industries. My professional experience includes serving as an expert witness in cases where I evaluated the technical aspects of telephone systems, including whether they had a random or sequential number generator.

6.	My qualifications and curriculum vitae are attached to this expert report as Exhibit 1. A list of the other cases in which I have testified as an expert at trial or by deposition during the previous four years is attached as Exhibit 2. I have been qualified by both Federal and State courts.[1] My testimony has been relied upon by courts in both individual and class actions,[2] by plaintiffs and defendants. My opinions have also been relied upon in arbitrations, including those involving TCPA claims.

7.	I was the developer of the automated Verification of Deposit ("VOD") and Verification of Mortgage ("VOM") system that was used by Chase, Wells Fargo, Bank of

---

[1] *ABM Industries Overtime Cases* (Case No. JCCP 4502, San Francisco Superior Court) (2017) 19 Cal. App. 5th 277, footnote 5, at page 8, ("[T]here was evidence in the record that Woolfson had previously qualified as an expert in both state and federal court ...") (*ABM Industries Overtime Cases*, A132387, A133077, A133695, 19 Cal. App. 5th 277 (Dec. 11, 2017; pub. ord. Jan. 10, 2018)). (Exhibit 3).

[2] "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, Case No. 3:13-cv-01556-JLS-DHB (S.D. Cal.), Sep. 21, 2015, ECF 132, at 3.

Declaration of Aaron Woolfson	Case No. 3:24-cv-01215-AMO

America, as well as some regional banks and mortgage lenders, to facilitate the review of mortgage applications by call center staff.  These systems required a great deal of integration between the telephone systems and the financial institution's computer systems, and relied heavily on my deep understanding of database and timekeeping integration technologies.  It also required me to build interfaces to the ACH[3] exchanges, and with Global Payments and other large automated electronic inter-exchanges of financial information.  Other processes necessitated integrating fax and OCR[4] capabilities as well as enhanced call routing – inbound and outbound – including predictive elements of enhanced call processing, and the precise timings of these events.

8.      I am the inventor of "Canvas", a programming language that I developed for interfacing between telephone systems and telephone networks, capable of processing hundreds of thousands of calls a day.  To date, hundreds of millions of calls have been handled by Canvas on behalf of call centers, financial institutions, conference calling companies, and organizations offering Interactive Voice Response ("IVR") services.[5]

9.      I have developed highly available, upwardly scalable databases for use in the telecommunications industry.  The databases and telephone systems that I have personally developed and/or coded are used by telephone companies and call centers throughout the United States and Canada to catalogue and index various customer-calling activities.  Some of the companies that have used my databases and/or telephone equipment (which I personally created and manufactured) have included Japan Telecom, Experian, Bank of America, Wells Fargo Bank, JP Morgan, Bank of the West, Cogent Communications, Zone Telecom (ANPI), Aion Networks,

---

[3] Automated Clearing House ("ACH").

[4] The OCR ("Optical Character Recognition") process as integrated into the automatic monitoring of telephone calls in real time to determine whether the call was a voice or fax call, and if a fax call, decoding the contents of each fax-page into machine readable text *while* a fax was being transmitted to the bank's computers for integration with a database.

[5] IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones inputted via a telephone keypad. DTMF ("Dual Tone Multi Frequency") is the signal you generate when you press a telephone's touch keys.

3

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-01215-AMO

Smartcall Conferencing, and First National Collection Bureau, Inc., and the United States government, including the Department of Justice.

10.    Through my hands-on work experience in developing databases and telephone systems, I have become very familiar with the technology related to telephone systems and their interfaces with the networks through which calls are processed, received, and transmitted.  I am also familiar with how dialing systems work, and how telephone systems handle inbound and outbound calls.

11.    I have been responsible for the design and development of specialized hardware and software systems that are highly dependent upon the capabilities of the computers upon which they run, and are in use at mission-critical applications, including Patriot Missile (SAIC, Patriot RTOS), Air Traffic Control Systems (Kongsberg Geospatial Corporation), and Point Lepreau Nuclear Generating Station, New Brunswick, Canada (Energié NB).

12.    I held a Certificate of Public Convenience and Necessity[6] ("CPCN") – a special license and compliance certification granted to companies that provide essential public services, such as telephone corporations.  The California Public Utilities Commission granted my most recent CPCN on July 18, 2017. This was a re-issue of my initial CPCN granted to TelSwitch, Inc. on June 10, 1994, which I held for approximately eighteen (18) years before taking a hiatus from providing public telephone services.  The license originally granted to me in 1994 allowed me to interconnect the equipment that I designed, built and programmed, with the phone network for the purpose of providing wholesale and retail telecommunications services.

13.    I have also been qualified as an expert in matters involving the TCPA and have previously been engaged on behalf of defendants and plaintiffs to analyze records of calls and, among other things, compare call records for their inclusion on the national DNC list.

---

[6] Certificate of Convenience and Necessity U-5410-C granted to TelSwitch, Inc. on 06-10-1994 (Decision 94-06-022).  Reissued as U-7327-C on 07-18-2017 (Decision 17-07-009).

4

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-01215-AMO

14.     For example, in *Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK (M.D. Fla.), I was engaged on behalf of defendant eXp to analyze call records and, among other things, compare them against records of leads from various sources, and to identify which numbers were authoritatively associated with telephone companies on the dates that the calls were made.

**Expertise Specifically Related to Database Work.**

15.     I was relied upon as an expert witness in the case of *Hines v. KFC*, filed in the United States District Court, Southern District of California (Case No. 09cv2422 JM (POR)). In *Hines*, the court granted plaintiff's motion for class certification and certified plaintiff's meal period and rest break claims based on my analysis after finding that I am an "expert in the compilation and analysis of databases …."

16.     I was expert for the plaintiffs in *Albert H. Cicairos, Frank A. Daniel, Richard Wheeler and George Thompson v Summit Logistics, Inc.* and *Kenneth Bluford v Safeway Stores, Inc.* (Case No. CV014837 [Consolidated with Case No. CV028541] Superior Court of California, County of San Joaquin).

17.     In addition, I served as an expert in the *ABM Industries Overtime Cases* (Case No. JCCP 4502, San Francisco Superior Court).  Relying upon my expert finding, the Appellate Court reversed the trial court's ruling and certified the plaintiffs' proposed wage and hour classes.  The court noted that there was sufficient evidence contained within my expert report to support certification of the classes and subclasses, and that my experience was sufficient to allow my expert report to be admitted as evidence for that purpose. (Exhibit 3).

18.     I was also expert in *Beatriz Aldapa And Elmer Avalos v. Fowler Packing Company, Inc., Ag Force, LLC, Fowler Marketing International LLC,* (Case No. 1:15-CV-00420-DAD-SAB ED, Ca.), where the employer used Datatech to maintain an accounting of piece-work and non-piece-work hours worked by agricultural workers. The court order in *Fowler Packing* is attached as Exhibit 4.

19.     I have applied similar methods to structure large amounts of unstructured data on behalf of defendants Verizon Wireless and Collecto in *Lofton v. Verizon* (Case No. 3:13-cv-

Declaration of Aaron Woolfson                    Case No. 3:24-cv-01215-AMO

05665) and *Lofton v. Collecto* (Case No. 4:13-cv-03293-YGR). In *Lofton v. Collecto*, I was ordered by the District Court of the Northern District of California to reconstruct a database from information that was in Verizon's possession that the plaintiff stated was "un-structurable" and useless for purposes of analysis and determination of the results of calls that took place.  I was able to complete the re-structuring of Verizon's data so that the parties could reach a successful settlement.  The portion of the Court's Order from *Lofton v. Verizon* instructing me to create a database from Verizon's unstructured data is attached as Exhibit 5.

**Expertise Specifically Related to Outbound Dialing Systems in Call Centers.**

20.     I have over twenty-five years of hands-on experience in telecommunications, in the design and programming of the equipment that handles calls.  In specific, I was responsible for the development of specialized hardware and software systems, called Rapid Announce and Rapid Record that have been used in both telephone company central offices and in call centers, for the pacing, dialing, and measurement of phone calls, and has cumulatively handled hundreds of millions of calls.  At its peak use, Rapid Announce processed 240,000 inbound and 280,000 outbound calls per day for companies such as First National Collection Bureau.

21.     Rapid Announce was primarily used to match the pacing of outbound calls with the availability of agents to accept the calls once they were answered.  Rapid Announce also evaluated the connected calls to determine whether the phone was answered by an answering machine or a live person.  Based upon the availability of the agents and the type of call that was being placed, the system would then transfer the call to the correct type of agent, or skill-set group, to handle the particular circumstances for which the call was received, or dialed.

22.     Rapid Record was responsible for handling the recording and media storage of inbound calls, as well as the implementation of a technology that I developed called AggravationSense.  AggravationSense was designed to measure the cadence and speed at which an individual spoke.  By measuring the cadence and speed of the speech against a baseline of background noise, AggravationSense would proactively patch in a customer service supervisor in advance of any party asking to speak with one.

6

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-01215-AMO

**Materials and Documents Reviewed and Relied Upon.**

23. In conducting my analysis and preparing my conclusions and opinions, I relied upon the following materials and information:

`

I. **Materials that I relied upon in connection with my Declaration:**

(a) First Amended Complaint (ECF No. 37); and,
(b) Calling records:
  *"Liz Dev_0001 – Confidential"*    (59,801 records)
  *"Liz Dev_0002 – Confidential"*    (34,956 records)
  *"Liz Dev_0003 - Confidential"*      (5,000 records)
  *"Liz Dev_0004 - Confidential"*    (12,741 records)
  *"Liz Dev_0005 - Confidential"*      (4,645 records)
  *"Liz Dev_0006 - Confidential"*    (10,882 records)
  *"Liz Dev_0007 - Confidential"*    (19,939 records)
  *"Liz Dev_0008 - Confidential"*      (7,003 records)
  *"Liz Dev_0009 - Confidential"*      (9,807 records)
  *"Liz Dev_0010 - Confidential"*    (26,944 records)
  *"Liz Dev_0011 - Confidential"*    (13,868 records)
  *"Liz Dev_0012 - Confidential"*      (6,075 records)

II. **Electronic database resources that are available to me:**

(a) The National Exchange Carrier Association ("NECA") North American Numbering Plan 1000-block assignments database.
(b) External, publicly available databases, including iConectiv's WDNC[7,8] for use in identifying the type of line (and the carrier) and the Federal TCPA-eligible area code (and DNC) list that is

---

[7] FCC order FCC-15-35A1 (03/27/2015) explicitly mandated *continued* availability of iConectiv's data for purposes of compliance with the TCPA. (¶.142). The historical information *does not* contain subscriber information, only carrier of record and line type. Before number portability, this would have been a simple task of looking at the Local Exchange Routing Guide ("LERG"), or absent access to the LERG, finding the area codes and prefixes from an online collection of national phone books. TelSwitch, Inc. is a reseller and authorized user of iConectiv data.

[8] In *Perrong v Call Identified as Connor* (Case No. 1:22-cv-04479-CPO-EAP, DC, New Jersey, Camden Vicinage), "plaintiff has queried the database of iConectiv, the company charged by the Federal Communications Commission to administer the Number Portability Administration Center, which is the master database which lists which telephone provider services a particular number, among other information required to route telephone calls to the proper provider" (ECF 3)

Declaration of Aaron Woolfson                              Case No. 3:24-cv-01215-AMO

published daily by the FTC[9].

**Methods and Tools Used to analyze Records.**

24.    I create and analyze databases using Structured Query Language (SQL).   A database is a computerized compilation of data organized into tables, each table having columns (attributes), with column headings, and rows of information.   Tables that share at least one attribute in common are "related."   Tables without a common attribute may still be related via other tables with which they do share a common attribute.   The pathways relating those separate tables are called "joins."   Once tables have been related by a join, a user may view the combined information in the joined tables to derive new and/or useful information.   To access such information, a user sends queries to the database, which executes the queries and retrieves the requested information from the tables in the database. A database, however, only recognizes queries written in complex "query languages."   The most common query language is SQL.   A proper query in this language consists of one or more "clauses."   Common types of clauses are SELECT, WHERE, FROM, HAVING, ORDER BY, and GROUP BY clauses.   Thus, to compose a proper inquiry, a user must understand the structure and content of the relational database as well as the syntax of the specific query language.

25.    By using a set of standardized SQL queries, I am able to tag each call record according to (a) the date of a telephone call; and (b) the disposition of the call, if one is present; and (c) the length of the call; and (d) any other data field contained in the call records.  I am also able to add (e) whether the number was on the Federal DNC list, and if so, when it was added; and (f) whether the number appears in any other file that was produced, such as on lead lists or summary sheets.   Using SQL, I am able to also associate other information that is extrinsic to the worksheets provided that may provide additional guidance to the trier of fact, such as the name of

[9] TelSwitch, Inc's FTC Organization ID is 10159990-70991, Subscription Account Number (SAN) 10376173-476173-21.

8

Declaration of Aaron Woolfson                                        Case No. 3:24-cv-01215-AMO

the telephone company to which the number was serviced by on the date that the number was called.

**Steps I take when Organizing and Analyzing Call Records.**

26.    I start by opening each of the files that contain call records data (collectively referred to as "Call Detail Records" or "CDRs").  I do this to (a) determine the format that the call records were stored in, and then (b) to determine what pre-processing I would need to conduct in order to achieve an import of the calls.[10]

27.    I then import the CDRs file into SQL database tables using Microsoft SQL™ Service Management Studio to apply a set of filters to include only calls to valid telephone numbers that were made that:

    a.   Were made to a number that contained precisely ten digits; and,

    b.   Were made to a number that started with a 2 through 9; and,

    c.   Were contained within structurable data[11]; and,

    d.   Had an associated date; and,

    e.   Were placed to area codes that were subject to the TCPA, according to the FTC (Exhibit 6); and,

    f.   Indicated that the number was on the national DNC list for more than thirty (30) days; and the number to which the call was placed received two (2) or more calls within a 365 day period.

28.    I also prepared the framework for a set of data files that can be used to exchange with the telephone companies that can be used to identify the subscriber to the telephone number,

---

[10] I typically do not need to apply any pre-process to the CDRs, as most CDRs originate from electronic call data capture systems that are already Electronic Data Interface ("EDI") capable.

[11] I conducted this to confirm that the calls were structurable and conformed to a normalized database layout specification in which data is aligned to the designated columns.  (e.g. all data was contained in the columns allocated for that proper data type).

9

Declaration of Aaron Woolfson                                        Case No. 3:24-cv-01215-AMO

based upon a well-defined format called an Electronic Data Interchange ("EDI") format, to query the telephone company databases in order to obtain the subscribership information.

**Telephone Companies databases maintain subscriber information in electronic format as part of their standard record keeping.**

29.     Wireless and wireline carriers maintain historical records that can be used to identify the contact information (Exhibit 7, properly redacted). As part of record-keeping requirements imposed upon them by the FCC, telephone companies must maintain items that are responsive to subpoenas. They also use this information to for their own customer service purposes,

30.     The line type and customer information attributes are also maintained to support local-number-portability ("LNP") requests.  In other words, when someone wishes to move their number from one carrier to another, they are required to provide certain requisite information, such a name and contact information, which must match then match the other carrier's records from where the number was being ported.  These exchanges of port-in/port-out requests are handled electronically, and exchanged between and amongst the phone carriers[12] using a process called Electronic Data Interchange ("EDI") protocol.  The EDI process encompasses a well-defined, regimented set of informational exchanges, and provides an efficient manner to handle, and route, port-in and port-out requests using a common set of data attributes.

31.     I have become familiar with the manner in which telephone companies maintain these records to handle their own customer service and reporting requirements, as well as to

---

[12] LNP includes both non-mobile and mobile carriers.  Companies, regardless of the carrier type are required to support Local Number Portability ("LNP").  The National Portability Administration Center ("NPAC") is responsible for maintaining the database of the national numbering inventory, and as part of the FCC's order granting authority to iConnectiv to maintain this, they agreed to continue to make data available for TCPA compliance purposes. (FCC 15-35, ¶ 142).

Declaration of Aaron Woolfson                                                    Case No. 3:24-cv-01215-AMO

provide support for the EDI protocol.  Both in my role in providing billing and customer service software to phone companies, and in my role as a consulting expert for phone companies who are involved in litigation, I am familiar with the type of information that phone companies maintain on behalf of their customers.

32.    As an example, I was the expert for Verizon Wireless in *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR (N.D. Cal.). In the course of my work on that case, I came to understand that Verizon Wireless maintained records of which belonged to which subscribers.  In addition, I learned which types of information, which included line subscribership details that were maintained on a historical basis. Similarly, I am aware that other companies, such as AT&T Wireless and T-Mobile, maintain similar information for both compliance and customer support purposes. This information is also maintained so that calls (and texts) for invoicing purposes can be rated and billed properly, and so that subpoenas can be properly responded to.

33.    I also formerly ran a consumer telephone company, called Tel-One Network Services, which was similarly expected to maintain contact information. Part of my responsibility at Tel-One Network Services was to interface with other telephone companies such as Pacific Bell (now AT&T) during the process of onboarding new subscribers, and maintaining accurate customer information, because Tel-One was expected to to work with the proper department, depending upon the type of the product being offered.

**Identification of subscribers and Line-Classification by Telephone Number.**

34.    As described previously, I utilize a database provided by iConectiv, called the WDNC database, to attribute the line classification type to telephone numbers, along with other pieces of information.

35.    The line classification type processing engine allows a file containing phone calls (or texts) to be tagged with labels indicating whether the number called, or texted, was wireless (colloquially known as "isWireless") and the host Operating Company Number ("OCN") on the date indicated in the call record. It also indicates the date that a number was ported, and from

Declaration of Aaron Woolfson                                      Case No. 3:24-cv-01215-AMO

whom.

36.    Using the information from the Defendant's own files, I am able to apply the return-results from the national telephone number assignment database, which is required to be made available to entities for all purposes related to the TCPA, which is comprised of *isWireless*, *isPorted*, *isPortedDate, and Operating Company Number.*[13]

37.    By using the information provided, I was am able to determine the Carrier (Company) of Record and Operating Company Number of each of the telephone calls (or texts) that were validly formatted and contained and were part of the FTC's DNC-eligible area codes. I am also able to determine which calls (or texts) are to numbers that were assigned to a phone carrier on the date that the number was called or texted, and whether the numbers were part of the United States portion of the North American Numbering Plan ("NANP") or the expanded area[14] on the date when contacted.

38.    By using the *Carrier Of Record* and *Operating Company Number* from the data, I am able to build an Electronic Data Interchange ("EDI") record exchange database from the CDR records and organize it by carrier for the purpose of structuring the data into the correct EDI format that is in the expected layout that they are familiar with. The csv. files, organized by carrier, can, if necessary, be utilized in subpoenas to telephone carriers to determine contact information, and/or any other information desired from the carrier, by structuring the data into a format that the carriers already use for exchanging data between and amongst themselves will facilitate as much of a response as is possible.

---

[13] The carrier-of-record and operating company number, in combination with the Telephone Number, colloquially called "MDN" or "ANI", provide the necessary fields for the creation of export files that are used by the various telephone companies in the Common-Language presentation-format expected by the Local Exchange Carriers or Wireless Exchange Carriers that host the telephone numbers, to provide subscriber information for each number.

[14] Canada and some Caribbean islands that use the North American Numbering Plan but are not part of the United States Dialing Area.

12

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-01215-AMO

**Waterfall Analysis - Steps that I applied to the Defendant's Data to conduct an analysis of the Call Detail Records to determine the quantity of calls, and the total number of unique numbers to which those calls were placed, where the number was on the national DNC list for more than thirty (30) days, and the called-count - quantity within the Defendants' data indicated that the number had been called two (2) or more times within 365 days.**

39.    I started by importing the 663,537 calls that were contained within the twelve file that were made to 211,596 unique telephone numbers.

40.    From the 663,537 calls, I removed 303 calls to numbers that were either not precisely ten (10) digits, or to numbers that were not contained on the FTC's list of United States area codes that are subject to the TCPA.[15]   I also removed 110 calls that were duplicative of other calls within the production.[16] This left 663,124 calls.

41.    From the 663,124 remaining calls, I removed 364,784 calls to numbers that were not on the national DNC list as of the date when called, or *were* on the national DNC list but less than thirty (30) days. This left 298,340 calls.

42.    From the 298,340 remaining calls, I removed 26,248 calls to numbers where the number was not called two (2) or more times within a 365 day period.  This left 272,092 calls that were made to 53,726 unique numbers where the number to which the call was placed was on the national DNC list for more than thirty (30) days, and there were two (2) or more calls to the number within 365 days.

---

[15] This process removes any numbers made to Canada or other area codes that are dialable from the United States as part of the North American Numbering Plan, but are not part of the United States dial plan.

[16] This often occurs when the call records are stored in multiple archive locations, where overlap occurs between them.  The various pieces of equipment involved will often store the call details in multiple archive locations.

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-01215-AMO

43.    A list of the steps that I undertook to reach my conclusions is attached:

| | | |
|---|---|---|
| Liz Dev_0003 - Confidential.txt(8441 calls) | | |
| Liz Dev_0004 - Confidential.txt(27872 calls) | | |
| Liz Dev_0005 - Confidential.txt(3495 calls) | | |
| Liz Dev_0006 - Confidential.txt(4983 calls) | | |
| Liz Dev_0007 - Confidential.txt(12707 calls) | | |
| Liz Dev_0008 - Confidential.txt(16386 calls) | | |
| Liz Dev_0009 - Confidential.txt(22383 calls) | | |
| Liz Dev_0010 - Confidential.txt(7663 calls) | | |
| Liz Dev_0011 - Confidential.txt(157888 calls) | | |
| Liz Dev_0012 - Confidential.txt(78295 calls) | | 663,537 |
| Removal of any number that was not part of the NANP, or to a number that was not precisely ten digits. (also removes records where there is *no* phone number) | (303) | 663,234 |
| Removal of any records that were duplicative of other records in production | (110) | 663,124 |
| Removal of any records that indicated a call to a number that was either (a) not on the national DNC list, or (b) was on the national DNC list, but was not on the National DNC list for more than thirty (30) days *from the most recent call date field* | (364,784) | 298,340 |
| removal of any records where the number indicated a *called_count* of less than two calls as indicated in the *called_count* field, or where more than 365 days had elapsed between the *entry_date* and the *last_local_call_time* field. | (26,248) | 272,092 |
| Quantity of unique telephone numbers numbers to which were were 272,092 calls in the source files, were placed, where the number was on the DNC list for more than thirty days, and the number had been called two (2) or more times within 365 days: | | 53,726 |

44.    This resulted in a sum of 272,092 calls that were made to 53,726 unique telephone numbers where the number was on the national DNC list for more than thirty (30) days, and the number received two (2) or more calls. Attached as Exhibit 8 are the SQL queries that I ran to conduct my analysis.

45.    Out of the 272,092 calls that were made to 53,726 unique telephone numbers that were on the national DNC list for more than thirty (30) days, and the number received two (2) or more calls, there were 260,148 calls that were made to 48,848 unique telephone numbers where the contact information contained a name and a full address.

Declaration of Aaron Woolfson                                        Case No. 3:24-cv-01215-AMO

**Conclusion:**

46.     There were 272,092 calls that were made to 53,726 unique telephone numbers that were on the national DNC list for more than thirty (30) days, and the number received two (2) or more calls. Of those calls, there were 260,148 calls that were placed to 48,848 unique telephone numbers where the contact information contained a name and a full address.

47.     A list of those telephone numbers and the quantity of calls to those numbers is attached as Exhibit 9 which includes three (3) calls to the Named Plaintiff's number ending in -1729.

| filename | row # | phone | first_name | last_name | address1 | called_coun | last_local_call_time |
|---|---|---|---|---|---|---|---|
| Liz Dev_0002 - | 22693 | -1729 | Eleanora | Woods | REDACTED | 3 | 10/19/21 2:17 PM |

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed this 25th day of February, 2025 in Pleasant Hill, California.

_____

Aaron Woolfson

15

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-01215-AMO