Dana Oliver
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021
Attorney for Plaintiff and Putative Class

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> *v.* <br><br> OCMBC, INC. D/B/A LOANSTREAM, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS <br><br> *Defendants* | Case No. 8:24-cv-67-FWS-JDE <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** <br><br> Judge: Hon. Fred W. Slaughter <br><br> Magistrate: Hon. John D. Early <br><br> Hearing (In Person): <br> June 18, 2026, 10:00 A.M. <br> Courtroom 10D |

## <u>NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION</u>

PLEASE TAKE NOTICE that on June 18, 2026 at 10:00 a.m., Plaintiff Kimberly Hudson-Bryant individually, and on behalf of a class of similarly situated persons, will and hereby does move for class certification before the Honorable Fred W. Slaughter, United States District Court for the Central District

of California, 411 W. 4th Street, Santa Ana, California 92701-4516, Courtroom 10D, 10th Floor. Plaintiff requests that the Court:

(1) certify the Class under Rule 23(a) and 23(b)(3);

(2) appoint Plaintiff as representative of the Class;

(3) appoint Anthony Paronich, Andrew Perrong, and Dana Oliver and their respective law firms as Class Counsel; and

(4) provide all other and further relief the Court deems equitable and just.

Plaintiff makes this motion on the grounds that the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) are met. Plaintiff also makes this motion on the ground that questions of law and fact common to the Class predominate over any questions affecting individual members, and a class action is the superior method for adjudicating the dispute.

Plaintiff bases the motion on the following documents: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings, record, and other filings in the case; the Declarations of Anthony Paronich and Andrew Perrong and their accompanying exhibits, the Declaration and Expert Report of Aaron Woolfson, filed concurrently herewith; and such other oral and written points, authorities, and evidence as the parties may present at the time of the hearing on the motion.

Dated: April 13, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
(*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

## **TABLE OF CONTENTS**

**INTRODUCTION** ....................................................................................................1

**FACTS** ...................................................................................................................4

   A. LoanStream and the C. Roberts Branch ......................................................4

   B. LoanStream's Calling Campaign ................................................................6

   C. The Classwide Disputed Facts that a Jury Will Evaluate ...........................7

   D. LoanStream's Knowledge, Acquiescence, and Failure to Act ....................10

   E. Plaintiff's Expert Analysis .........................................................................13

**LEGAL STANDARD** .............................................................................................13

**THE CLASS DEFINITION** ...................................................................................15

**ARGUMENT** .........................................................................................................15

   **A.   The Central Question of Vicarious Liability is Susceptible To Common, Classwide Proof and Thus Satisfies Commonality and Predominance** ........15

      I.   Actual Authority is susceptible to common, classwide proof....................16

      II.   Apparent Authority is susceptible to common, classwide proof.............18

      III.   Ratification is susceptible to common, classwide proof. ......................20

      IV.   No individualized issues predominate, let alone as to the vicarious liability analysis. ..........................................................................................21

   **B.   The Requirements of Rule 23(a) Are Met** ................................................22

      I.   Numerosity cannot seriously be disputed. .................................................23

      II.   Commonality is satisfied, as outlined in greater detail above. ..............23

      III.   Typicality is satisfied. .........................................................................25

      IV.   Adequacy is satisfied. ..........................................................................26

   **C. The Requirements of Rule 23(b)(3) Are Met** ...........................................27

    I. Predominance is satisfied, as outlined in greater detail above. ...................27

    II. Superiority is satisfied. ...............................................................................30

**CONCLUSION** ......................................................................................................31

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Allison v. Dolich*, No. 3:14-CV-01005-AC, 2019 WL 921436 (D. Or. Feb. 25, 2019) ..............................................................................................23

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) ...............................................................................................14, 29

*Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614 (S.D. Cal. 2015)....3, 30

*Bloom v. City of San Diego*, No. 317CV02324AJBMSB, 2021 WL 8053533 (S.D. Cal. June 8, 2021) ...............................................................................23

*Bridging Communities Inc. v. Top Flite Financial Inc.*, 843 F.3d 1119 (6th Cir. 2016) ...............................................................................................28

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...........................22

*Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021).............................13

*Bumpus v. Realogy Brokerage Group LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256 (N.D. Cal. Mar. 23, 2022) ........................................................14, 21

*Chinitz v. Intero Real Estate Services*, No. 18-CV-05623-BLF, 2020 WL 5653153 (N.D. Cal. Sept. 23, 2020) .............................................................18

*Chinitz v. Intero Real Estate Services*, No. 18-CV-05623-BLF, 2020 WL 7391299 (N.D. Cal. July 22, 2020)...............................................................15

*Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017)...............................25

*Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017) .................................................................................17

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................25, 26

*Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046 (M.D.N.C. July 22, 2020) ..............................................................17

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019) ..1, 14, 20

*Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723 (N.D. Ill. Mar. 6, 2026) ................................................................................................14, 19

*Kearns v. LoanDepot.com, LLC*, No. 8:22-CV-01217-JWH-JDE, 2025 WL 3010182 (C.D. Cal. Oct. 20, 2025)...........................................1, 24, 29, 30, 31

*Knapper v. Cox Communications, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) ...............28

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019).....................22, 30

*Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ........25

*McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (S.D. Cal. 2019) ...............25

*Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624 (N.D. Cal. Aug. 22, 2016) ................................................................................25

*Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076 (N.D. Ill. Sept. 26, 2025) .........................................................................13

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ..........................................................................30

*Pace v. PetSmart Inc.*, No. SACV 13-00500 DOC, 2014 WL 2511297 (C.D. Cal. June 3, 2014)..........................................................................27

*Shutler v. Citizens Disability LLC*, 347 F.R.D. 663 (S.D. Fla. 2024) ....................25

*Toney v. Quality Resources, Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018) ........................29

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016)............................27

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ........................................28

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................13, 23

*Whittaker v. Freeway Insurance Services America, LLC*, No. 3:22-cv-08042, 2023 WL 167040 ..............................................................................29

*Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022) ...................3, 25, 28

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010)24

*Zinser v. Accufix Research Institute*, 253 F.3d 1180 (9th Cir. 2001) ......................27

## Statutes

47 U.S.C. § 227(c)(5)..................................................................................................1

47 C.F.R. § 64.1200(c)(2) ..........................................................................................1

47 C.F.R. § 64.1200(e)................................................................................................1

47 C.F.R. § 64.1200(f)(14) .........................................................................................1

## Rules

Fed. R. Civ. P. 23 .................................................................................................22, 30

Fed. R. Civ. P. 23(a)(3) ................................................................25

Fed. R. Civ. P. 23(a)(4) ................................................................26

Fed. R. Civ. P. 23(b)(3) ..............................................13, 22, 24, 27, 30

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................26

**Other Authorities**

Restatement (Third) of Agency § 2.01 ..................................................16

Restatement (Third) of Agency § 3.03 ..................................................19

Restatement (Third) of Agency § 4.01 ..................................................20

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>
### INTRODUCTION

The TCPA, 47 U.S.C. § 227(c)(5), provides a private right of action to consumers who receive two or more "telephone solicitations" encouraging the purchase of services, like loans here, within a twelve-month period to residential numbers registered on the Do Not Call list ("DNC") more than 30 days before the calls. 47 C.F.R. §§ 64.1200(c)(2), (e), (f)(14). Vicarious liability is well settled under the TCPA for all calls "by *or on behalf of* the same entity in violation of the regulations." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073, 1076 (9th Cir. 2019) (emphasis added); 47 U.S.C. § 227(c)(5). As Judge Holcomb of this Court remarked several months ago in certifying a TCPA class action, "common questions with respect to whether [defendant's calls] violated the TCPA and, if so, whether [defendant] acted knowingly and willfully, predominate." *Kearns v. LoanDepot.com, LLC*, No. 8:22-CV-01217-JWH-JDE, 2025 WL 3010182, at *7 (C.D. Cal. Oct. 20, 2025).

The same is true here. LoanStream's vicarious liability is the single common question that drives this case, and the record answers it.

Start with this email. In February 2022, Serene Vernon, President of LoanStream, learned that a LoanStream branch office was incurring ███████ █████████████████████████████ Her response to Sean Roberts, the husband of LoanStream employee Cynthia Roberts who was requesting payment, was: ███

- 1 -
MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

██████████████████████████████████████████

████████████(Exhibit A, Email Thread). LoanStream made no inquiry into the nature of the expenses, did not point out that it violated a telemarketing ban LoanStream claims existed but has produced no evidence of, and made no investigation into whether calls were being placed. It instead agreed ████████████

████████████

LoanStream's own books tell the same story. LoanStream's internal accounting ledger records a ████████████████████████████████ ██████████████████████████(Exhibit B, Accounting Ledger) Premier Financial was "a marketing company" that was an "independent contractor for LoanStream." (S. Roberts Dep. 17:2-16). This is the ████████ ████████ that LoanStream's president, Serene Vernon, characterized at deposition as a charitable ████████████████████ claiming that Cynthia Roberts ████████████████████████████ (Vernon Dep. 30:16-25). But LoanStream's own regulated books and records classify it as what it was: █ ████████████████████Premier Financial Marketing, the entity owned by Sean Roberts, through which the calling campaign was funded and operated through subvendors, LizDev, who operated a call center, Global Experts, Limited.

And this is precisely the type of common evidence that the jury will see at trial to resolve the most important question in this case: Is LoanStream vicariously

- 2 -

liable for a uniform telemarketing campaign in which callers identified themselves as calling from "LoanStream Mortgage" and solicited business on LoanStream's behalf, all using non-consensual leads purchased from a provider who warned LoanStream, in writing, that its leads ████████████████████████████ ████████████████████████████████████ (Exhibit C, LizDev Invoice).

Those facts make this case especially well-suited for class treatment because the decisive issues concern LoanStream's own structure, knowledge, and conduct as it pertains to liability, all of which are provable in one stroke for the class on common evidence. *Williams v. PillPack LLC*, 343 F.R.D. 201, 207 (W.D. Wash. 2022) (certifying TCPA case and holding common questions of vicarious liability predominated). This case is about a lender that designed a centralized structure, ████████████████████████████████████received the benefits of those marketing expenses. It is a claim about a lender who did nothing to stop the campaign and, on the contrary, paid for it. This is a quintessential TCPA class action as "[i]n the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two Classes under the TCPA).

The pitfalls that typically doom TCPA class actions are entirely absent from this case. There is no consent defense to litigate on an individualized basis, as the ███████████████████████████████████████████████████ ████████████ There is no dispute over who was called or how many times, as Plaintiff's expert has analyzed LizDev's complete call records and cross-referenced them against the National Do Not Call Registry. There is no dispute that every call came from the same campaign or call center. There is one campaign, one set of scripts, one lead provider, one call center, and one question of vicarious liability that will be answered once for the entire class using common proof.

## FACTS

### A. LoanStream and the C. Roberts Branch

LoanStream is a mortgage lender ████████████████████████ ███████████████████████(Vernon Dep. 10:10-11:23). Vernon served as president of LoanStream████████████████████████████████ ██████ (*Id.* at 11:4-12:12). In 2021, LoanStream operated a retail branch network██ ████████████████████████████████████ originated mortgage loans directly to consumers. (*Id.* at 14:1-15:19). One of those branches was the "C. Roberts Branch," which was operated by LoanStream employee Cynthia Roberts. (C. Roberts Dep. 9:24-25).

- 4 -
MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

Cynthia Roberts eventually became a "non-producing branch manager" for LoanStream (C. Roberts Dep. 44:20-45:18). Under her employment agreement, Roberts was ███████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████ Exhibit E, Roberts Employment Agreement). Cynthia Roberts described the relationship as one in which the branches provided borrowers and LoanStream provided the "structure to provide the loans." (C. Roberts Dep. 32:5-7).

LoanStream's operational control over the C. Roberts Branch was pervasive. LoanStream provided software, an email address, permitted use of its license information, paid W2 wages for branch employees (including Cynthia Roberts), and provided at ████████████████████████████████ (C. Roberts Dep. 8:7-8, 13:17-14:7, 24:6-25:5, 19:20-21:3); (Vernon Dep. 29:16-18, 87:12-88:1). All loans originated by the branch were LoanStream loans, processed through LoanStream's system, and ███████████████████████████ (C. Roberts Dep. 9:16-20); (Vernon Dep. 47:22-48:8). ██████████████████ ██████████████████████████████ (Vernon Dep. 46:22-47:3, 97:16-18); (Ex. B). By every objective measure, the C. Roberts Branch *was* LoanStream.

- 5 -
MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

**B. LoanStream's Calling Campaign**

Sean Roberts, Cynthia Roberts' husband, had previously lost his DFPI license and could not be directly employed by a DFPI-licensed entity like LoanStream. (S. Roberts Dep. 30:17-22). Despite these prohibitions, Sean Roberts operated Premier Financial Marketing, LLC, d/b/a Resmo Lending, which provided marketing services to LoanStream. (Exhibit F, Stone Declaration, ¶ 4) Resmo, in turn, hired LizDev, Inc. to supply leads which were to be used for the C. Roberts Branch. Resmo then hired Global Experts, LLC to serve as the call center for the LoanStream lead campaign based on the LizDev leads, which was functionally one and the same, since Elizabeth Stone owned LizDev, Inc. and as an investor, owned LizDev, Inc. and Global Experts, LLC. (*Id.*)

The callers used scripts that opened with "This is [Name] with LS mortgage," (Exhibit G, Call Center Scripts), a script which mirrors the call the Plaintiff received, from an individual named "Karisha" with "LoanStream Mortgage." (Compl. ¶ 20). Cynthia Roberts, the LoanStream employee, confirmed that she would tell Resmo, that is, the company her husband Sean Roberts ran, how many calls she needed the phone to ring, and they would coordinate with LizDev/Global Experts. (C. Roberts Dep. 12:5-9). LizDev's invoices went to LoanStream's accounting department. (*Id.* at 12:14-16); (Vernon Dep. 43:19-23).

MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

LizDev's contract and invoice with the ████ listed the client's company name as ██████████ with the contact name listed as █████████" the address as ██████████████████████████████████ as ██████ and the email as █████████████████ (Exhibit C) Critically, that very invoice, which Ms. Vernon claimed was ███████████████ ██████ Vernon Dep. 48:13-22, █████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████(Exhibit C). ███████████████████████ ████████████████████████████████ █████████████████resulting in individuals like Plaintiff to receive calls.

## C. The Classwide Disputed Facts that a Jury Will Evaluate

The record contains irreconcilable inconsistencies between the testimony of LoanStream's 30(b)(6) designee, Serene Vernon, and its own branch manager and employee, Cynthia Roberts. These inconsistencies go to the heart of the class vicarious liability inquiry. A jury will determine who is telling the truth on a question of classwide importance: whether LoanStream is directly or vicariously liable for the calls at issue that were placed to the putative class members. And it will need to weigh the credibility of the witnesses' respective testimony outlined

MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*



here. As it relates to credibility, it also bears noting that Ms. Vernon testified, ███ ██████████ Vernon Dep. 25:25-26:1).

**The ██████████ Payment.** In December of 2021, LoanStream's own books and records reflect that it made a ████████ payment ████████ ██████████ Exhibit B) Despite LoanStream's books and records showing otherwise, Vernon characterized the █████ payment ██████ ████████████████████ ████████████████████ ██████████ (Vernon Dep. 30:4-25).

But LoanStream's own internal profit and loss statement for the C. Roberts Branch, tells a fundamentally different story. That document, records the █████ payment as a ████████████████ ████████████████ It is the █████ ████████████████ The payment was not classified as a ████████████████ item. It was classified as a ████████████████ ████████████

Cynthia Roberts corroborated the P&L, not Vernon's testimony. She testified that LoanStream "helped us have funding by paying marketing." (C. Roberts Dep. 10:13-14). And, when asked directly if LoanStream provided any

- 8 -

MOTION FOR CLASS CERTIFICATION

*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

"funding or cash advances for the purpose of marketing, or did it just pay invoices," Cynthia replied that LoanStream "paid invoices." (*Id.* 29:11-14). Cynthia Roberts' testimony and LoanStream's own books are consistent with each other, reflecting a ██████████████████████████ Vernon's testimony is consistent with neither. This is for the jury to determine.

**Who Knew What About Marketing.** Vernon testified that LoanStream ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████ (Vernon Dep. 20:3-5, 35:15-36:20, 48:9-12, 63:22-23). But Cynthia Roberts testified that invoices from LizDev went "[t]o LoanStream's accounting" to be paid. (C. Roberts Dep. 12:14-16). For that matter, Vernon testified that an ████████████ ███████████████████ whatever that means. (Vernon Dep. 48:23). For that matter, Sean Roberts also testified that he communicated with Vernon regarding lead generation and payments. (S. Roberts Dep. 51:15-52:7). When asked to distill the relationship, Sean Roberts stated, "Resmo Lending hired LizDev for leads in which we sent those leads and hired Global Experts[1] to call those individuals." (*Id.* 52:15-19). Sean Roberts stated that "LoanStream was provided LizDev's invoices so that they could provide the funding or justify the

---

[1] Recall that LizDev and Global Experts is owned by the same person.

- 9 -

MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

funding necessary [for the C. Roberts Branch]" (*Id.* 52:22-53:8). ███

███████████████████████████████████████████████████████████

█████████████████████████████

**The Bistango Meeting(s).** Sean Roberts testified that he was present at a meeting with Serene Vernon at the Bistango Restaurant in Irvine, California and "gave her a description of the scripts and how we contact the clients." (S. Roberts Dep. 54:7-24). Mr. Roberts testified that this meeting would have occurred in "May or June of 2022." (*Id.* 55:11-13). For that matter, Cynthia Roberts also seems to have remembered a meeting at that particular restaurant, but was not sure. (C. Roberts Dep. 31:9-11). And Vernon████████████████████████████ ███████████████████████ (Vernon Dep. 67:6-12; 92:23-24). Vernon acknowledged ████████████████████████████████████ ███████████████████████████ (*Id.* at 67:15-24). Whether LoanStream's president met directly with Sean Roberts, Cynthia Roberts, or both, and what was discussed at those meetings in terms of lead generation procedures, bears directly on the nature of the agency relationship for the jury to resolve.

**D. LoanStream's Knowledge, Acquiescence, and Failure to Act**

Multiple categories of evidence demonstrate that LoanStream knew, or at minimum should have known, about the calling campaign and took no action, which are further facts pointing to why there are uniform classwide issues.

First, LoanStream's president received a direct email from Sean Roberts on February 7, 2022, referencing "█████████████████████████████████████ Vernon responded █████████████████████████████████████ ████████████████████████████ (Vernon Dep. 61:11-24). ██████████████ ████████████████████████████████████████████████████ ████████████████████ (*Id.* at 42:24-25).

Second, LoanStream's accounting department ██████████████████ ███████████████████████████████ Vernon admitted this: █████████ ████████████████████████████████████ (Vernon Dep. 43:19-24). ████████████████████████████████. (*Id.* at 46:5-8, 48:18-24). No one at LoanStream told the branch to stop. No one investigated. No one enforced any purported "ban" on telemarketing. And LoanStream hasn't been able to produce a *single document* substantiating this purported "ban," either.

Third, LoanStream ████████████████████████████████ which may be evidence of willful ignorance. (Vernon Dep. 51:21-25). LoanStream ████████████████████████████████████████████ (*Id.* at 50:12-14). It ████████████████████████████████████████████████ (*Id.* at 41:7-9, 49:1-2). Sean Roberts testified that LoanStream "wanted [] a verbal agreement that, you know, we weren't going to just start dialing white pages…you know, they basically asked me how I received my data. I told them how I received my data."

(S. Roberts Dep. 45:8-21). Sean Roberts also testified that this was "part of the original conversation [over the phone] my wife had and I was in the room because they wanted to [have a conversation about] how you market." (*Id.* 46:10-47:2).

Fourth, despite the employment agreement's reference to a ███████ █████████████████████████████████████████████████" and ███████ ██████████ LoanStream could █████████████████████ (Vernon Dep. 40:14-16). LoanStream's ██████████████████████ is probative of its compliance and document-retention failures. This is not to mention the obvious question of why LoanStream had a ████████" regarding telemarketing and phone/fax solicitation laws if it simply categorically prohibited making those calls.

Fifth, LoanStream accepted the benefit of the calling campaign. ████████ ████████████████████████████████ (Vernon Dep. 49:6-9). ████████ ███████████████████████████████████████████ █████████████████████████████████ *Id.* at 49:3-5). And Vernon ███████████████████████████████████████████ ████████████. After listening to the audio recording of ██████████████ ██████████████████████████████ Vernon was asked whether █████████████████████████████████████████ ██████████ Vernon responded: ████████████████████ (*Id.* 84:9-13). And, when



MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

asked if ███████████████████████████ would ███████████████████

███████████████ Vernon testified, ██████████████ (*Id.* 83:12-16).

## E. Plaintiff's Expert Analysis

Plaintiff's expert, Aaron Woolfson, analyzed the call records produced by LizDev and identified 272,092 calls made to 53,726 unique telephone numbers that were on the National Do Not Call Registry for more than thirty days and were called two or more times within a 365-day period. (Exhibit H, Woolfson Report). Of those, 260,148 calls were placed to 48,848 unique telephone numbers where the contact information contained a name and full address.[2] (*Id*). Mr. Woolfson's expert analysis has been relied on by courts in certifying TCPA cases. *See, e.g.*, *Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076, at *4-*5 (N.D. Ill. Sept. 26, 2025). LoanStream has not yet retained an expert to rebut this analysis.

## LEGAL STANDARD

In determining whether to deny or certify a class, a court must conduct a "rigorous analysis" that "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). But that rigorous analysis of the elements enumerated in Rules 23(a) and (b)(3) "grants

[2] Ascertaining the addresses associated with the records lacking the same may be accomplished through reverse-lookup databases, a methodology endorsed by this Court. *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 601 (C.D. Cal. 2021).

MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

In context here, the prospect of vicarious liability for mortgage lenders arising from their employees' conduct is clear under the TCPA. Under the TCPA, a principal, like LoanStream, may be vicariously liable for the actions of agents and subagents, like Resmo, LizDev, and Global Experts. *Henderson*, 918 F.3d at 1072. LoanStream may be vicariously liable on any one of the three generally accepted common law principles of agency: actual authority, apparent authority, and ratification. *Id.* at 1073. It may also be vicariously liable on the basis that the company's goods or services were promoted on their behalf on the call, even if the telemarketer was not under the seller's control. *Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723, at *7 (N.D. Ill. Mar. 6, 2026). Any one of these theories is susceptible to common, classwide proof.

Plaintiff's common evidence is sufficient to demonstrate at least one of these vicarious liability theories. *E.g.*, *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022) (holding that vicarious liability of real estate agents was determinable based on classwide

evidence); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299, at \*14 (N.D. Cal. July 22, 2020) ("Here, whether the Intero sales associates had apparent authority depends on whether a reasonable person would believe that the Intero sales associate who made the call, or the Intero sales associate who caused the calls to be placed, had authority to act on behalf of Intero. Because the inquiry is limited to how a reasonable person would perceive the calls at issue, there is no need to determine how individual class members perceived the calls. Agency, therefore, can be resolved on a class-wide basis.").

## THE CLASS DEFINITION

Plaintiff seeks to certify the following class:

> All persons in the United States who, from August 2021 through June 2022, (1) were on the National Do Not Call Registry for at least thirty days, (2) and who received more than one telephone call from the LoanStream calling campaign, as evidenced in the calling data produced by LizDev in this lawsuit, (3) within any 12-month period (4) as identified in the Expert Report of Aaron Woolfson.

## ARGUMENT

**A. <u>The Central Question of Vicarious Liability is Susceptible To Common, Classwide Proof and Thus Satisfies Commonality and Predominance</u>**

The single, predominating question in this case is whether LoanStream is vicariously liable for the uniform calling campaign conducted on its behalf. This question is susceptible to resolution through common evidence because it focuses exclusively on LoanStream's uniform course of conduct applicable to all class

members, specifically, how it conducted its relationship with the C. Roberts branch, what it knew ████████████████████████████ ████████████████████ and its failure to do anything about this conduct. All this evidence does not turn on anything individual class members did or did not do, but are rather common questions where common answers will drive resolution of the class. The most important issue in this case will thus be resolved commonly based on common evidence. This single issue can be resolved on a classwide basis, and its resolution will determine the outcome of every class member's claim. Nothing about LoanStream's liability for the calls depends on individualized proof.

The disputes in the evidence here only reinforce that LoanStream's liability is a question for the jury, not a reason to deny class treatment. The factual disputes, although they admittedly may ultimately not be decided by a jury in the class's favor, are nevertheless capable of classwide treatment because they are capable of a uniform answer that will dispose of the class claims in a common stroke. They do not vary from class member to class member.

**I.      Actual Authority is susceptible to common, classwide proof.**

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01. Actual

authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business ….").

Here, the evidence of actual authority is susceptible to common, classwide proof and will be appropriately evaluated by a jury. LoanStream placed Cynthia Roberts in a position to solicit business on its behalf. It ████████ ██ ████████ gave her a LoanStream email and NMLS number, ████████ ████████ and accepted its loans. LoanStream knew that ████████ ████████ (Vernon Dep. 59:8-18, 60:1-12). LoanStream authorized its branches to go out and ████████ on their own. (*Id.* at 88:25-89:9). Both Mr. and Mrs. Roberts testified that LoanStream knew about Resmo's involvement and that LizDev sent an invoice or two to



LoanStream. LoanStream's accounting records reflect ██████████████████ ████████ (Exhibit B). And when Sean Roberts emailed Vernon █████ ██████████████████████████████ Vernon's response was █████ ████████████████████████████████████ ████████████████████ (Ex A).

Meanwhile, LoanStream took no meaningful steps to prevent the calls. It could not ██████████████████████████ (Vernon Dep. 40:14-16). It never ██████████████████████████████ *Id.* at 51:21-25). It never ████████████████████ (*Id.* at 89:11-13). It never ██████████████████ (*Id.* at 41:7-9). It ██████████████ ████████████████████ (*Id.* at 46:5-8). All of this evidence concerns LoanStream's own conduct and institutional arrangements, which means it will be the same no matter which class member's claim is being adjudicated.

## II.     Apparent Authority is susceptible to common, classwide proof.

Similarly, "whether the Defendant's sales associates had apparent authority 'depends on whether a reasonable person would believe that the … sales associate who made the call … had authority to act on behalf of [Defendant]. Because the inquiry is limited to how a reasonable person would perceive the calls at issue, there is no need to determine how individual class members perceived the calls.'" *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 5653153, at

*4 (N.D. Cal. Sept. 23, 2020). A mortgage lender like LoanStream can manifest apparent authority class-wide by placing its employees in charge of marketing activities on its behalf, so that targeted borrowers will naturally assume the agents are acting with LoanStream's authorization. RESTATEMENT § 3.03, cmt b. Apparent authority, therefore, can be resolved on a class-wide basis.

The evidence of apparent authority here is overwhelming, applies equally to the entire class, and is entirely objective. The callers identified themselves as calling from ▮▮▮▮▮▮▮▮▮▮ (Vernon Dep. 79:12-15). Vernon herself conceded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮(Vernon Dep. 83:14-16). And she further acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on the calls. (*Id.* at 84:9-13). That admission alone may be sufficient for a finding of vicarious liability, even without the finding of any agency relationship. *See Katz*, 2026 WL 636723, at *7. Because the apparent authority inquiry turns on how a *reasonable person* would perceive the calls, not how any individual class member perceived them, it is inherently a class question requiring no individualized mini-trials into each consumer's subjective state of mind. And, for that matter, the common evidence here provides a common answer to that question.

- 19 -

MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

**III.    Ratification is susceptible to common, classwide proof.**

Ratification occurs when a principal, with knowledge of the agent's conduct, accepts the benefits of that conduct without repudiating it. And ratification can be established if a lender like LoanStream had "knowledge" of their agents' calling practices and accepted the benefit of those practices. RESTATEMENT § 4.01. "The focal point of ratification is an observable indication that a principal has exercised an explicit or implicit choice to consent to the purported agent's acts." *Henderson*, 918 F.3d at 1075. A lender's "[f]ailure to object" to TCPA violative practices qualifies as a manifestation when its agents "are likely to draw such an inference from silence." RESTATEMENT § 4.01, cmt. f. Ratification can also be demonstrated through willful ignorance, having "'knowledge of facts that would have led a reasonable person to investigate further.'" *Henderson*, 918 F.3d at 1075.

The ratification evidence here is textbook and capable of common, classwide proof. The ███████████████████████ is its centerpiece. LoanStream's own ██████ ████████████████████████████████████████████████(Ex. B). At trial, a jury will determine whether the books and records of a federally- and state-regulated lending institution that classifies █████████████████████████ ██████████████████████ is sufficient to rise to the level of ratification under this standard. It will also entail weighing this evidence over the after-the-fact litigation testimony of its president.

The common evidence only accumulates from there. LoanStream ███████ ███████ (Vernon Dep. 43:19-24, 46:5-8, 48:18-24). It received an email ███████████████████████ ███████████████ (Ex. A). LoanStream never ████████████████████████████████████████████ ███████████ (Vernon Dep. 41:7-9, 49:1-2, 51:21-25). And it ███████████████████████████ (*Id.* at 49:6-9). Every piece of this evidence, and whether it shows ratification, is common to all class members and will be adjudicated in one stroke. *See Bumpus*, 2022 WL 867256 (certifying class based on common ratification evidence).

## IV. No individualized issues predominate, let alone as to the vicarious liability analysis.

The issues that typically plague TCPA class actions are entirely absent here. There is no consent defense, since no evidence has been adduced that any class member consented to receive these calls. Likewise, there are no identification or calling record issues. Plaintiff's expert has analyzed the complete call records and identified every class member by telephone number. (Exhibit H ¶ 39-46). The calls all came from the same campaign, using the same scripts, sourced from the same lead provider. (Exhibit F ¶ 4). Unlike cases where individualized consent inquiries defeat predominance, this case presents a uniform absence of consent. Indeed, the

Plaintiff's expert has already ascertained the putative class, even though this is not required. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

Whether LoanStream is vicariously liable for a call to each class member is the same because it is based on the same evidence: the same scripts through which the caller stated that they were calling from LoanStream (Exhibit G), the same nature of the relationship between the parties, the same marketing conduct where the calls were made for the C. Roberts LoanStream Branch (Exhibit F), the same ███████ the same LizDev contract, the same testimony, the same ██████████ the same emails, and the same audio recording.

A jury need determine LoanStream's vicarious liability only once. This has been done in TCPA vicarious liability cases before. An eventual $60 million verdict was returned for a similar class after a five-day trial relating to Dish Network's alleged vicarious liability for the conduct of the third parties it hired to generate business, which was affirmed by the Fourth Circuit and upheld by the Supreme Court. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019).

**B. <u>The Requirements of Rule 23(a) Are Met</u>**

A class should be certified if it satisfies Rule 23(a)'s four requirements and at least one subsection of Rule 23(b). FED. R. CIV. P. 23. Because Plaintiff seeks to certify a damages class, the class must meet Rule 23(b)(3)'s requirements. Plaintiff's proposed class meets all of Rule 23(a) and (b)(3)'s requirements.

## I.   Numerosity cannot seriously be disputed.

Plaintiff's expert has identified 53,726 unique telephone numbers, and 48,848 unique numbers with associated names and addresses, that satisfy the proposed class definition. (Exhibit H ¶ 44-46). Numerosity is satisfied by orders of magnitude. "Generally, classes composed of 40 members or more are considered sufficiently numerous to meet the requirement, while classes of 15 or fewer are not." *Allison v. Dolich*, No. 3:14-CV-01005-AC, 2019 WL 921436, at *14 (D. Or. Feb. 25, 2019), *aff'd*, 815 F. App'x 135 (9th Cir. 2020).

## II.   Commonality is satisfied, as outlined in greater detail above.

Commonality requires that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The claims must depend on a common contention that is "capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Commonality is a "minimal" burden that does not require that all the questions of law and fact raised by the dispute be common, but instead only the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Bloom v. City of San Diego*, No. 317CV02324AJBMSB, 2021 WL 8053533, at *4 (S.D. Cal. June 8, 2021). This inquiry often overlaps in significant

part with the predominance inquiry under Rule 23(b)(3). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

This Court has recognized that the commonality requirement is easily satisfied where a single common issue is capable of classwide resolution. As Judge Holcomb explained in *Kearns*, "even a single common question of law or fact that resolves a central issue satisfies the commonality requirement." *Kearns*, 2025 WL 3010182, at *5. This standard is intentionally permissive and focuses on whether the litigation can generate common answers, not whether every issue is identical across the class. In *Kearns*, the "centralized decisions and intent behind" the defendant's "marketing scheme" was a common question. *Id.*

The common questions capable of classwide resolution are similar here:

- Is LoanStream vicariously liable for the calling conduct?

- Were the calls advertising LoanStream's goods and services?

- Were the calls made to numbers on the DNC Registry?

- Should class members recover statutory damages for such calls?

- Does there exist any evidence of consent?

Each one of these questions turns on common proof, such as LoanStream's corporate structure, its employment agreement, and the operations of the C. Roberts branch, including as it pertains to its relationship with Resmo, LizDev, and Global Experts. None of these questions varies from class member to class

member, and so commonality is satisfied. *See, e.g.*, *Williams*, 343 F.R.D. at 207 (vicarious liability inquiry satisfies commonality); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (same); *Shutler v. Citizens Disability LLC*, 347 F.R.D. 663, 672 (S.D. Fla. 2024) (telemarketing inquiry satisfies commonality); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 169 (S.D. Cal. 2019) (consent inquiry satisfies commonality); *Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017) (DNC registration status satisfies commonality); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624, at *7 (N.D. Cal. Aug. 22, 2016) (damages inquiry satisfies commonality).

**III.    Typicality is satisfied.**

Typicality requires that the representative's claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when the class representative and class are injured by the same course of conduct. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Here, Plaintiff's claims arise from the identical course of conduct as the claims of every class member: the LoanStream calling campaign ████████████ The calls were all placed by the same call center, using the same scripts, and using the same leads as part of the same relationship. They arise from the same legal theory. Plaintiff is a member of the class and LoanStream does not have any unique defenses to Plaintiff's claims,

since its liability turns on facts general to its relationship with the C. Roberts branch, Resmo, LizDev, and Global Experts, including its knowledge of and complicity in the TCPA violative calls.

## IV.   Adequacy is satisfied.

Adequacy is satisfied when the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, the Court "must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985. In considering the adequacy of counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff has no conflicting interest with the proposed class. She has demonstrated her commitment to the class by actively participating in the case, communicating regularly with counsel, reviewing the complaints and case filings, and sitting for a full-day deposition. (Hudson-Bryant Dep. 164:1-166:19). She understands her role as class representative. (*Id.* at 166:12-15). She has

- 26 -
MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

demonstrated a willingness to forego personal financial gain in favor of the class recovery. (*Id.* at 177:1-178:4).

Plaintiff has experienced and capable counsel who have been appointed to represent classes in numerous class actions. Perrong Declaration; Paronich Declaration; *Pace v. PetSmart Inc.*, No. SACV 13-00500 DOC, 2014 WL 2511297, at *8 (C.D. Cal. June 3, 2014). Counsel have devoted a significant amount of time and money to the case, including pursuing third-party discovery, reviewing documents, taking depositions, and engaging an expert to provide testimony regarding the critical issues in this case, and will continue to vigorously prosecute the class claims. Adequacy is therefore satisfied.

## C. The Requirements of Rule 23(b)(3) Are Met

### I. Predominance is satisfied, as outlined in greater detail above.

Predominance tests whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (cleaned up). Predominance is satisfied when "the main issues in a case" present common, as opposed to individualized, issues. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001). An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or]

the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, as outlined above, common questions overwhelmingly predominate. The threshold question, and the question that will drive the resolution of this litigation, is whether LoanStream is vicariously liable for the calling campaign. As demonstrated in Section A, *supra*, that question will be resolved entirely through common evidence. No class member will present different evidence on this issue because the evidence goes to LoanStream's conduct and the relationship between the parties, not to any individual class member's experience.

Every subsidiary element of the class members' claims is likewise susceptible to common proof. Whether the calls were made to DNC numbers in violation of the TCPA is established by Mr. Woolfson's expert analysis of the calling records. *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 244 (D. Ariz. 2019) (holding expert analysis of calling records satisfied predominance); *Williams*, 343 F.R.D. at 211 (citing *Knapper*). Whether the calls were consensual is established by LoanStream's failure to adduce evidence of TCPA consent. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding speculation on consent defense did not defeat predominance where, as here, defendant adduced no evidence of consent). Whether the calls constituted telemarketing is established by the call center scripts. *Toney v. Quality Res., Inc.*,

323 F.R.D. 567, 591 (N.D. Ill. 2018); *see Whittaker v. Freeway Ins. Servs. Am., LLC*, No. 3:22-cv-08042, 2023 WL 167040, at *2. And damages can be calculated formulaically. *Kearns*, 2025 WL 3010182, at *7 (rejecting the notion that differences in damages amount for each class member defeated predominance).

Importantly, Plaintiff is *not* required to prove that "each element of the claim is subject to classwide proof, ***so long as one or more common questions predominate***." *Id.* That standard is easily met here. Indeed, Judge Holcomb found predominance on much the same basis as commonality, holding that "common questions with respect to whether [defendant's calls] violated the TCPA, and if so, whether [defendant] acted knowingly and willfully, predominate." *Id.* Those same questions and more, including the nature of the parties' relationship, drive resolution of this case.

The factual disputes in this litigation only reinforce predominance. A showing of predominance simply requires a showing that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). *Kearns* is instructive. There, Judge Holcomb certified the class despite disputed evidence about whether the calls were actually delivered and whether they constituted "telemarketing," holding that these disputes went to the merits, not to the propriety of class treatment. *Kearns*, 2025 WL 3010182, at *4.

- 29 -
MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

The same principle applies here. A jury will consider the disputed evidence, including who knew what and at what time, ███████████████████████ ██████████████████████████████████ and what LoanStream did with ███████████████ and, in so doing, determine a merits question: is LoanStream vicariously liable? The answer will be identical for every class member because it will be based on the same evidence. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022).

The TCPA "offers many advantages for class-wide adjudication" because "the liability determinations involve no questions of individual reliance . . . [and] the damages calculations do not turn on individual evidence." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019). This case exemplifies those advantages on the record here. Predominance is satisfied.

## II. Superiority is satisfied.

Superiority requires finding that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, because of the number of claims, the small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in doing so, a class action is superior. *Bee, Denning*, 310 F.R.D. at 630. Many class members would otherwise forfeit their claims, since the $405 filing fee would negate most of the potential

statutory damages. *See id.* Unsurprisingly, courts routinely find class actions to be superior for adjudicating TCPA claims. *Kearns*, 2025 WL 3010182, at \*9. This class is legally proper, easy to try, and easy to administer on the basis of the expert analysis here.

## CONCLUSION

This case presents one calling campaign, one set of leads, one branch and one call center using one set of scripts. It also presents only a single disputed question capable of classwide jury determination: is LoanStream vicariously liable for that conduct? Every element of that question can be answered with common evidence. Nothing is individualized. The class is ready to be tried.

Plaintiff respectfully requests that this Court certify the class, appoint Plaintiff as class representative, and appoint the undersigned as class counsel.

Dated: April 13, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
(*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## LOCAL RULE 11-6.2 COMPLIANCE STATEMENT

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,992 words, which complies with the word limit of L.R. 11-6.1.

April 13, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

## LOCAL RULE 7-3 COMPLIANCE STATEMENT

In accordance with Local Rule 7-3, the parties discussed Plaintiff's motion for class certification and defendant's anticipated opposition in the context of deadlines and case scheduling for the same, including in terms of anticipated testimony to be used in the same, on at least April 18, 2025, in a telephone call between Anthony Paronich and Thomas Landers.

April 13, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

## ARTIFICIAL INTELLIGENCE COMPLIANCE STATEMENT

Generative artificial intelligence was used to generate portions of this motion and the Table of Contents and Table of Authorities. The filer has reviewed the source material and verified that the artificially generated content is accurate

- 32 -
MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

and complies with the filer's Rule 11 obligations.

April 13, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

April 13, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*