THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
ADAM R. SCOTT [SBN 333706]
ascott@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303
(f) 619.231.4755

Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>OCMBC, INC. D/B/A LOANSTREAM MORTGAGE, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS,<br><br>   Defendants. | Case No. 8:24-cv-67-FWS-JDE<br><br>**DEFENDANT OCMBC, INC. D/B/A LOANSTREAM MORTGAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:   June 18, 2026<br>Time:   10:00 a.m.<br>Crtrm.:   10D<br><br>Judge:   Hon. Fred W. Slaughter<br>Magistrate: Hon. John D. Early<br><br>Action Filed: January 11, 2024<br>Trial Date:  October 27. 2026 |

P:4897-9397-7762.23:66075-002

-1-

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.   PLAINTIFF'S PROPOSED CLASS ACTION IS INCURABLY FLAWED. 7

II.  SUMMARY OF OPPOSITION ................................................................... 8

III. THE TCPA ............................................................................................... 9

IV.  RELEVANT FACTS ............................................................................... 10

   A.   Summary of Allegations. ................................................................ 10

   B.   Plaintiff Kimberly Hudson-Bryant. ............................................... 13

   C.   The Attenuated Connection Between the Parties. .......................... 14

   D.   Madelyn Moran Expert Report. Ex. 4............................................ 14

   A.   Unauthenticated Data Set Does Not Identify Potential Class Members. .... 16

      1.   *Plaintiff Offers No Reliable Method of Identifying Who Registered Their Numbers on the NDNCR.* ................................................. 17

      2.   *Plaintiff Offers No Method for Identifying if a Number was a Business, Residential, or Dual-Purpose Line at the Time of the Calls.* ....................... 18

V.   STANDARD FOR CLASS CERTIFICATION............................................ 18

VI.  THIS CASE IS NOT APPROPRIATE FOR CLASS CERTIFICATION. .... 19

   A.   Plaintiff is Not a Member of the Class. .......................................... 19

   B.   Plaintiff's Unique Defenses Render Her Inadequate And She Lacks Standing Because She is Seeking to Enforce Her Mother's Rights. .................... 20

   C.   Plaintiff is Not Typical Because There is Evidence of Consent.................. 22

   D.   Potential Conflicts and Typicality Issues Make Plaintiff Inadequate.......... 23

VII. THE PROPOSED CLASS LACKS COMMONALITY AND PREDOMINANCE. ...................................................................................... 23

   A.   No Common Proofs Establish Agency Between LoanStream And Third-Parties Allegedly Involved in the "LoanStream Campaign."...................... 24

   B.   There is No Evidence the Data Set Only Includes Class Members Called As Part of the Alleged "LoanStream Campaign." ........................................ 26

VIII. INDIVIDUALIZED ISSUES PERMEATE PLAINTIFF'S PROPOSED CLASS DEFINITION..................................................................................... 27

   A.   Whether Plaintiff and Class Members Suffered Actionable Article III Harm is an Individualized Issue.......................................................................... 27

   B.   Class Definition Raises a Litany of Individualized Issues. ........................ 27

IX.    PLAINTIFF FAILS TO SATISFY NUMEROSITY BECAUSE PLAINTIFF CANNOT IDENTIFY THE CLASS ................................................................ 28

LOCAL RULE 11-6.2 COMPLIANCE STATEMENT .......................................... 31

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...............................................................................................24

*Brown v. DirecTV, LLC*,
330 F.R.D. 260 (C.D. Cal. 2019)...........................................................................20

*Brown v. Fed. Express Corp.*,
249 F.R.D. 580 (C.D.Cal. 2008)............................................................................29

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3rd Cir. 2015)..................................................................................17

*Collins v. ITT Educ. Servs., Inc.*,
2013 U.S.Dist. LEXIS 183410 (S.D.Cal. July 30, 2013).....................................24

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) .............................................................................28

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ...........................................................................19, 20

*Gannon v. Network Tel. Servs. Inc.*,
2013 U.S.Dist. LEXIS 81250 (C.D.Cal. June 5, 2013).........................................30

*Gustafson v. Goodman Mfg. Co. LP*,
2016 U.S.Dist. LEXIS (D.Ariz. Mar. 14, 2016)....................................................20

*Hall v. Smosh Dot Com, Inc.*,
72 F.4th 983 (9th Cir. 2023)............................................................................22, 23

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992).........................................................................21, 23

*Herrera v. LCS Fin. Servs. Corp.*,
274 F.R.D. 666 (N.D.Cal. 2011) ...........................................................................29

*Howard v. CVS Caremark Corp.*,
2014 U.S.Dist. LEXIS 172406 (C.D.Cal. Dec. 19, 2014)....................................25

*Huber v. Simon's Agency, Inc.*,
 84 F.4th 132 (3d Cir. 2023) ......................................................................................28

*IMS Health, Inc. v. Mills*,
 616 F.3d 7 (1st Cir. 2010) (vacated on other grounds) ......................................10

*Kristensen v. Credit Payment Servs.*,
 12 F. Supp. 3d 1291 (D.Nev. Mar. 26, 2024).........................................................25

*In re Lamictal Direct Purchaser Antitrust Litig.*,
 957 F.3d 184 (3d Cir. 2020) .....................................................................................25

*Leyse v. Bank of Am. Nat'l Ass'n*,
 804 F.3d 316 (3d Cir. 2015) .....................................................................................22

*Leyva v. Medline Indus. Inc.*,
 716 F.3d 510 (9th Cir. 2013) ....................................................................................20

*Lytle v. Nutramax Labs., Inc.*,
 114 F.4th 1011 (9th Cir. 2024)..................................................................................20

*N.L. v. Credit One Bank, N.A.*,
 960 F.3d 1164 (9th Cir. 2020) .............................................................................21, 22

*Nat'l Fed'n of Blind v. Target Corp.*,
 2007 U.S.Dist. LEXIS 30513 (N.D. Cal. Apr. 25, 2007)....................................18

*O'Connor v. Boeing North Am., Inc.*,
 184 F.R.D. 311 (C.D. Cal. July 13, 1998)...............................................................18

*Osada v. Experian Info. Sols., Inc.*,
 2012 U.S.Dist. LEXIS 42330 (N.D.Ill. Mar. 28, 2012) ......................................23

*Park v. Webloyalty.com, Inc*,
 2019 U.S.Dist. LEXIS 42887 (S.D.Cal. Mar. 15, 2019)......................................23

*Prolacta Bioscience, Inc. v. Ni-Q, LLC*,
 2017 U.S.Dist. LEXIS 217030 (C.D.Cal. Aug. 7, 2017) ....................................20

*Randall v. Rolls-Royce Corp.*,
 637 F.3d 818 (7th Cir. 2011) ....................................................................................23

*Sali v. Corona Reg'l Med. Ctr.*,
 909 F.3d 996 (9th Cir. 2018).....................................................................................20

*Schaefer v. Overland Exp. Fam. of Funds*,
169 F.R.D. 124 (S.D.Cal. 1996) ................................................................................ 21

*Shamblin v. Obama for Am.*,
2015 U.S.Dist. LEXIS 54849 (M.D.Fla. Apr. 27, 2015) ..................................... 30

*Sherman v. Yahoo! Inc.*,
2015 U.S.Dist. LEXIS 127809 (S.D.Cal. Sept. 23, 2015) ................................. 24

*Smith v. Microsoft Corp.*,
297 F.R.D. 464 (S.D. Cal. 2014) ............................................................................ 30

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................... 21, 22, 28

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ................................................................................................ 25

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227, 1233 (9th Cir. 1996) ..................................................................... 17

*Williams v. Oberon Media, Inc.*,
468 F. App'x 768 (9th Cir. 2012) ......................................................................... 17

*Williams v. PillPack, LLC*,
2021 U.S.Dist. LEXIS 212730 (W.D.Wash. Nov. 3, 2021) ........................ 20, 21

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. Mar. 25, 2011) ......................................................... 18

**Statutes**

47 U.S.C. § 227(c) ....................................................................................................... 29

47 U.S.C. § 227(c)(5) .................................................................................................. 10

47 C.F.R. § 64.1200(c) .......................................................................................... 10, 18

47 C.F.R. § 64.1200(c)(2) ........................................................................................... 19

47 C.F.R. §§ 64.1200(c)(2)(ii) .................................................................................... 23

# I. PLAINTIFF'S PROPOSED CLASS ACTION IS INCURABLY FLAWED.

Plaintiff Kimberly Hudson-Bryant ("Plaintiff") contends OCMBC, Inc. d/b/a LoanStream Mortgage ("LoanStream") is vicariously liable for a telemarketing campaign allegedly conducted by non-party Global Experts, Limited ("Global Experts")—a defunct Jamaican company. Plaintiff acknowledges LoanStream did not make the alleged calls. Instead, Plaintiff claims Premier Marketing Financial, LLC dba Resmo Lending ("Resmo") hired Global Experts to make calls on "behalf of LoanStream."

Plaintiff's Motion focuses on LoanStream's potential vicarious liability, not the Rule 23 criteria. For class certification, Plaintiff relies almost exclusively on an unauthenticated, inadmissible data set that Plaintiff *did not file*, which Plaintiff claims is a log of calls by Global Experts in what Plaintiff has labelled the "LoanStream Campaign." But Plaintiff's Motion omits key details fatal to her position. For example, Resmo's principal, defendant Sean Roberts, testified Global Experts made telemarketing calls "on behalf of" *three* separate entities: (1) Lending 3 ("L3"), (2) American Financial Network, Inc. ("AFN"), and (3) LoanStream. This is corroborated by LizDev, Inc., ("LizDev") another third-party who, in a subpoena response, produced the data set, as well as call "scripts" used by Global Experts. These scripts show Global Experts made calls "on behalf of" multiple entities. Plaintiff's data set has a glaring, fundamental flaw: it offers no way for the Court to determine which of the supposed calls were made "on behalf of" a particular entity – especially not LoanStream.

Plaintiff admits LoanStream should only be held vicariously liable for the subset of calls that were made on its behalf. Yet, it is impossible to identify those calls. There is no way to identify potential class members or quantify their damages. Plaintiff's expert, Aaron Woolfson – who has a checkered past (according to LoanStream's expert) – either was unaware the alleged Global Experts call campaign

was made on behalf of three separate entities (L3, AFN, and LoanStream) or he suppressed that fact. Either way, Woolfson's report is incapable of identifying any call that was allegedly made "on behalf of LoanStream" and therefore incapable of identifying any class member. LoanStream's expert identified many additional defects in Woolfson's work, such that Plaintiff has failed to offer the Court an objective means for ascertaining the class or managing a class action.

It is objectively impossible to identify any class member or to quantify their damages from the LizDev data set Plaintiff herself contends is the **sole source** of class identification and proof.

## II.    SUMMARY OF OPPOSITION

The Court should deny Plaintiff's Motion because Plaintiff, a serial TCPA-litigant, is not an adequate class representative, lacks of Article III standing to assert the claims being raised, is atypical and/or not a member of the class she seeks to represent, and is subject to unique defenses to her claim that prejudice her ability to represent the proposed class. Apart from those defects: (1) Plaintiff cannot identify any class members (i.e., they are not ascertainable); and (2) individual issues predominate. The Court must decide these threshold issues before engaging in any merits-inquiry, including LoanStream's alleged vicarious liability.

Plaintiff seeks to certify a class based on calls allegedly made by Global Experts. But Plaintiff does not have any way to identify the individuals who were supposedly called. Class treatment would require mini-trials to determine a litany of individual issues, including: (1) how contact information was collected (and by whom); (2) if the telephone numbers were registered on the National-Do-Not-Call-Registry ("NDNCR"), when and by whom; (3) if the numbers are residential; (4) when calls were placed and on whose behalf (i.e., L3, AFN, or LoanStream); (5) whether, how, and when consent was obtained; and (6) what records of consent exist.

/ / /

P:4897-9397-7762.23:66075-002                                              -8-
OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Simply put, this case is inappropriate for class resolution because the LizDev data set (which contains over 200,000 lines of data) involves far too many variables and unknowns.

Finally, as detailed in the accompanying declaration of Thomas F. Landers, Plaintiff's counsel failed to conduct the meeting of counsel required by LR 7-3. Landers Decl. ¶¶ 10-16. Worse, rather than acknowledging this error and asking counsel or the Court for relief, counsel wrote a "compliance statement" that falsely claims the meeting took place more than a year prior. This misleading "compliance statement" violates LR 7-3 because it is not a declaration under penalty of perjury and lacks (nonexistent) specifics.

## III.    THE TCPA

The TCPA provides a claim for an individual who "registered *his* or *her* telephone number on the [NDNCR]." 47 C.F.R. § 64.1200(c) (italics added). An opt-in "mechanism like the 'do not call' list is narrowly tailored by nature: 'they restrict only calls that are targeted at unwilling recipients.'" *IMS Health, Inc. v. Mills*, 616 F.3d 7, 22 (1st Cir. 2010) (vacated on other grounds). The TCPA's DNC protections are only intended to protect *the individual* who registers on the NDNCR. Moreover, only individuals who have received two or more solicitations by the same entity within a 12-month period have a private right of action. 47 U.S.C. § 227(c)(5).

Plaintiff's seeks to certify:

> All persons in the United States who, from August 2021 through June 2022, (1) were in the National Do Not Call Registry for at least thirty days, (2) and who received more than one telephone call from the LoanStream calling campaign, *as evidenced in the calling data produced by LizDev in this lawsuit*, (3) within any 12-month period (4) *as identified in the Expert Report of Aaron Woolfson*. [emphasis added]

Thus, to determine whether a potential class member has a valid claim requires *eight* separate, individualized determinations, which must all be "yes":

1. Did the recipient "register[] his or her telephone number on the [NDNCR]"?

2. Was the recipient's phone number registered on the NDNCR for more than 30 days at the time of the calls?

3. Was the recipient's phone number tied to a residential number?

4. Was the recipient's phone number used for personal, not business purposes?

5. Did the recipient receive more than one violative call in a 12-month period?

6. Did the recipient receive more than one phone call "from the LoanStream calling campaign, as evidenced by the calling data produced by LizDev in this lawsuit"?

7. Did the recipient receive more than one phone call "on behalf of" LoanStream, as opposed to L3 or AFN?

8. Is the recipient identified in the Woolfson report?

Moreover, even with a viable NDNCR claim, the Court must determine whether: (1) claimant consented (or "opted-in"); (2) claimant suffered an injury-in-fact (to confer standing); *and* (3) there is vicarious liability for the call.

## IV.   RELEVANT FACTS

### A.   Summary of Allegations.

Plaintiff's First Amended Complaint ("FAC") alleges: (1) 323-XXX-XXXX is "*Plaintiff's* telephone number" (¶ 14); (2) *Plaintiff* received two telemarketing calls from LoanStream as part of its solicitation campaign with Resmo and Roberts on October 12, 2021 at 1:07 PM and 2:18 PM (¶ 17); (3) "the calls were sent from the Caller ID 213-521-2618" (¶ 18); and (4) Plaintiff answered the second call and the caller "was looking for an individual named 'Ms. Woods.'" Dkt. 37. ¶ 20 (bold added).

**Plaintiff's Testimony.** Ex. 1.

- ██████████████████████████████████████████████
  ████████████████████████. 55:22-57:7; 98:9-19
- ██████████████████████████████████████████████.
  55:22-57:7; 98:9-19; 107:21-108:7, 109:5-21.

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

- ██████████████████████████████████████████. 111:14-112:13; Ex. 2.
- ██████████████████████████████████████████. 181:15-17.
- Plaintiff does not know who registered ██████-1729 on the NDNCR. 184:25-185:15.
- ███████████████████████████████████████████████████████████████████████████████████. 170:8-10; 173:6-13; 186:19-187:3.
- █████████████████████████████████████████████████████████████. 108:15-17; 191:16-25; 195:2-5.
- ██████████████████████████████████████████████████████████████████████████. 49:4-5; 50:5-7; 51:15-20; 54:21-55:3.
- █████████████████████████████████████████████████████████████████. 52:16-54:9.

**<u>Plaintiff's Call Recording of the Global Experts Call.</u>** Ex. 6.

- Plaintiff recorded the second telephone call. 195:2-5.
- When asked "Is this Ms. Woods," Plaintiff responded "yes".
- Plaintiff admits she answered the call and falsely stated she was Ms. Woods, who was not present with her.

**<u>Data Set Produced by LizDev ("Unauthenticated Data Set").</u>**[1]

- Was produced by LizDev in response to a subpoena. LizDev CEO Elizabeth Stone submitted a declaration claiming that the data set is a "log" of calls purportedly made by Global Experts, but Ms. Stone (a) does not state who prepared the data set, how it was prepared, when, or how it was maintained, (b)

---

[1] While the Motion relies almost exclusively on this data set, it was not submitted to the Court with Plaintiff's Motion.

does not establish her own personal knowledge that Global Experts made any phone calls, let alone a call campaign, (c) cannot even declare where she got the data set from (she offers two possibilities, either from Sean Roberts (who declares he has no knowledge of the data set) or from defunct Global Experts. The LizDev data set is therefore unauthenticated and the subject of LoanStream's accompanying evidentiary objection.

- Associates "Eleanora Woods" with telephone number ███-1729 (not "Kimberly Hudson-Bryant")

- States that Eleanora Woods was called three times, but does not reference when those calls occurred.

- Only lists the final call attempt made (i.e., "last_local_call_time" is "10/19/2021 14:17")

- ████████████████████████████ ████████████████████████████ ████████████████████. Ex. 1, 50:19-51:8; 54:21-55:3; 61:21-63:13.

**Sean Roberts/Resmo Testimony**. Ex. 5.

- Resmo independently organized and coordinated a call campaign with Global Experts to place calls for three different entities: (1) LoanStream, (2) L3, and (3) AFN. Ex. 5, 31:11-32:13; 52:8-21; Roberts Decl. ¶¶ 8-11.

- There are no records showing who or what numbers Global Experts called on behalf of LoanStream *Id.* ¶ 11.

**AT&T Records**. Ex. 2.

- Records for number ███ 1729, the number at issue.

- Show **two** phone calls placed by "2135212618" to "███ 1729":

- 1) October 12, 2021 at 20:08:10; and 2) **October 19, 2021** at 21:18:11 – in UTC time zone (i.e., not the same as the Unauthenticated Data Set).

- Billing statement for October 2021 was addressed to **Eleanora Woods** at her

-12-

home in Los Angeles, CA.

- Starting in May 2022, that same AT&T billing statement changed from being addressed to Eleanora to Plaintiff.

**Letter to LoanStream dated 1/3/23 ("Letter")** Ex. 3

- Plaintiff testified that she drafted and personally wrote the Letter and able to authenticate it. 207:3-9; 208:2-10.

- ███████████████████████████████████████████████████████████████████████. 211:2-9; 212:9-18.

- ███████████████████████████████████████████████. 212:19-213:5.

- ███████████████████████████████████████████. 213:6:17.

### B.     **Plaintiff Kimberly Hudson-Bryant.**

Plaintiff is a serial TCPA-litigant who, since 2021, has filed approximately 12 TCPA lawsuits (Ex. 1, 23:5-24:1; 24:17-23) and has made at least 30 TCPA-related claims/demands against companies. *Id*. 25:19-27:10. She has never been appointed a class representative. *Id.* 25:8-10.

███████████████████████████████████████████. *Id.* 31:11-32:23.

Plaintiff brings this case on her own behalf and "on behalf of all others similarly situated." Dkt. 37. She does not assert claims on behalf of her mother, Eleanora, as Eleanora's power of attorney. *Id.*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

C.    **The Attenuated Connection Between the Parties.**

The following illustrates the purported connection between the parties and known third-parties.



D.    **Madelyn Moran Expert Report.** Ex. 4.

Plaintiff relies on the Woolfson report, who then relies on the Unauthenticated Data Set, to define the class.  Inherent flaws in the Unauthenticated Data Set render Woolfson's report unreliable and the proposed class not ascertainable as readily

identified by LoanStream's rebuttal expert, Madelyn Moran. Specifically, the Unauthenticated Data Set:

- does not identify *which calls were made "on behalf of" or referencing which entity* (i.e., L3, AFN, or LoanStream). Moran Report ¶¶ 19, 21, 69;
- does not contain *each date* when calls were made. *Id.* ¶ 34(d), 36-37, 73(b), 80;
- because dates of each call are not listed, the Unauthenticated Data Set does not indicate whether two or more calls were made within a 12-month period to a specific telephone number *id.*;
- does not contain the *duration* of any call *Id.* ¶ 34(e), 38, 73(f);
- does not contain the outcome of any call via a *disposition* code *Id.* ¶ 34(b), 36-38, 73(c), 80; and
- does not constitute a historical call detail record ("CDR") *Id.* ¶¶ 24-28, 39, 72-78.

Furthermore:

- the Unauthenticated Data Set is not a historical CDR and it cannot be used to identify calls or potential class members. *Id.*;
- the Unauthenticated Data Set "does not contain the critical data elements required to constitute a CDR that would indicate that a call was placed and successfully connected." *Id. ¶* 56.
- there is no method or indication as to whether the telephone number was a business, residential, or dual-purpose number. *Id. ¶¶* 82-99; and
- there is no reliable method for identifying if a call recipient is the same person that registered the telephone number on the NDNCR. *Id. ¶¶* 100-105.
- Woolfson's methodology has been rejected by other courts. *Id. ¶¶* 115-118.
- Woolfson may be using restricted data without permission or authority. *Id. ¶¶* 106-114.

Moran succinctly states: "[T]here is no field contained within the [LizDev] data that indicates whether any lead, call or any record… is associated with LoanStream.

Within a historical CDR, it is standard to record a call campaign or purpose for which any outbound call was placed. A campaign or reason for any outbound communications is not present for any record contained within the LizDev Data and as such, it is indeterminable whether any call was placed on behalf of LoanStream or any of the other loan providers." *Id. ¶* 39.

## IV.   ASCERTAINABILITY IS A PREREQUISITE TO CERTIFICATION

A class cannot be certified if a plaintiff has not "establish[ed] an objective way to determine" who is a member . *Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012). Plaintiff has failed here.

### A.   Unauthenticated Data Set Does Not Identify Potential Class Members.

"[A]s an essential prerequisite to class certification, [a] plaintiff must show by a preponderance of the evidence that the class is ascertainable." *Hayes*, 725 F.3d at 354; *Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3rd Cir. 2015) (explaining that the ascertainability "inquiry . . . is independent from the other requirements of Rule 23"). "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 163.

Plaintiff relies exclusively on the Unauthenticated Data Set to identify class members. But it is not a CDR, and does not evidence an ascertainable class. The Unauthenticated Data Set lacks information about: (1) *who* the call was placed "on behalf of" (whether it be  L3, AFN, or LoanStream);  (2) whether Global Experts referenced LoanStream during the alleged calls and, if so, which call(s); (3) the date, time, or duration, each of the alleged calls; (4) who at Global Experts who placed the calls; and (5) the outcomes of calls. At best, assuming the data set is authenticated *and* admissible (it is neither), it only purports to show the calls Global Experts placed "on behalf of" three entities (L3, AFN, or LoanStream) with no identification of which

call related to which entity.  The unreliability of the data set is obvious because it does not even identify Plaintiff, match the number of calls shown on the AT&T records, or otherwise verify Plaintiff's allegations.

Additionally, Plaintiff's class definition is overbroad; it necessarily includes members who *never* received any calls related referencing LoanStream. Motion 15:15-18. A class definition that encompasses a substantial number of members who have no cause of action is not sufficiently "precise, objective and presently ascertainable" to be certified. *O'Connor v. Boeing North Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. July 13, 1998); *Nat'l Fed'n of Blind v. Target Corp.*, 2007 U.S.Dist. LEXIS 30513, *11 (N.D. Cal. Apr. 25, 2007) (holding that, because "inclusion of individuals [who are] not entitled to relief would defeat class certification and present obvious standing challenges," a court "cannot avoid addressing the issue of overbreadth at [the class certification] stage"). Courts consistently decline to certify class definitions that encompass members who are not entitled to bring suit under the applicable substantive law. *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. Mar. 25, 2011).

### 1. *Plaintiff Offers No Reliable Method of Identifying Who Registered Their Numbers on the NDNCR.*

Plaintiff attempts to oversimply the process for identifying  calls that  were made  to  individuals  on  the  NDNCR,  while  ignoring  the  challenges  with determining  not  only  NDNCR  registration  dates  but  also  ensuring  that *the call recipient was the person who registered a number on the NDNCR*. 47 C.F.R. § 64.1200(c); Ex. 1, 193:2-194:8.

Determining the individual who registered a phone number on the NDNCR is challenging  because the NDNCR  is  littered  with  registrations  by someone other than the current subscriber, particularly in the case of wireless numbers where there have  been  no  removals  or  updates  to  reassigned  numbers  since  the  NDNCR inception. Moran Report ¶¶ 43-48. The FCC states *millions* of numbers are reassigned

every single year. *Id.* ¶ 103. Third-party DNC vendors only provide the date a telephone number was first registered on the NDNCR, not the individual who registered the number. *Id.* ¶ 102. Plaintiff's expert does not even attempt to address how he would determine whether the recipient of an alleged call was the same person who registered the number on the NDNCR. And, we know Plaintiff was not that person as it was her mother's phone.

The reality is there are tens of millions of reassigned numbers on the NDNCR. Confirming *who* registered a certain number would require testimony from the users of each phone number on an individual basis. This simple question would require 53,726 individual inquiries. Woolfson Decl. ¶ 46.

> **2.** **Plaintiff Offers No Method for Identifying if a Number was a Business, Residential, or Dual-Purpose Line at the Time of the Calls.**

The TCPA excludes individuals receiving calls on a business line. 47 C.F.R. § 64.1200(c)(2) (protecting only "residential telephone subscriber[s]"). Neither Plaintiff's proposed class definition, nor expert, limits the numbers between a residential and business telephone line. Ex. 4, ¶¶ 82-99. Because the only way to properly verify the use of a phone number is through an individualized investigation, the proposed class is not ascertainable for this reason either.

## V. STANDARD FOR CLASS CERTIFICATION

Certification is not automatic, and the Ninth Circuit requires a trial court conduct a "rigorous analysis" to determine whether the moving party has met the prerequisites of Rule 23. *Zinser*, 253 F.3d at 1186 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)). The burden under Rule 23 exclusively lies with the party seeking it. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). "[P]laintiffs must affirmatively demonstrate by a preponderance of actual evidence that they satisfy all of the Rule 23 prerequisites." *Id.*

A party seeking class certification must satisfy each of the requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy, and at least one of

the requirements of Rule 23(b). *Ellis*, 657 F.3d at 979-80. These prerequisites ensure the named plaintiff is an appropriate representative. *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 265 (C.D. Cal. 2019). Rule 23(b) defines different types of classes a court may certify once the party seeking certification satisfies Rule 23(a). *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Here, Plaintiff relies on Rule 23(b)(3), which requires her to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Motion 27:15-31:5; Rule 23(b)(3).

Local Rule 7-7 requires that all declarations used in support of a motion conform to Rule 56(c)(4); they must (i) be based on personal knowledge and (ii) set out facts that would be admissible in evidence. *Prolacta Bioscience, Inc. v. Ni-Q, LLC,* 2017 U.S.Dist. LEXIS 217030, at *14–15 (C.D.Cal. Aug. 7, 2017). At a minimum, "an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Sali v. Corona Reg'l Med. Ctr.,* 909 F.3d 996, 1006 (9th Cir. 2018). If it is unlikely that a particular piece of common proof will be available or admissible at trial, that possibility weighs against a finding that common questions (and common answers) will predominate. *Lytle v. Nutramax Labs., Inc.,* 114 F.4th 1011, 1025 (9th Cir. 2024).

## VI.   THIS CASE IS NOT APPROPRIATE FOR CLASS CERTIFICATION.

### A.   Plaintiff is Not a Member of the Class.

Plaintiff must prove she is a member of the class to represent it. *Gustafson v. Goodman Mfg. Co. LP*, 2016 U.S.Dist. LEXIS, *18 (D.Ariz. Mar. 14, 2016). When a class is defined using a data set, a plaintiff's record must exist within it. *Williams v. PillPack, LLC*, 2021 U.S.Dist. LEXIS 212730, *10 (W.D.Wash. Nov. 3, 2021).

According to Plaintiff, class member numbers must be on a list produced (but not authenticated by) non-party LizDev. Yet Elizabeth Stone (CEO of LizDev) *did not create* the Unauthenticated Data Set; she merely had *access to it*. Dkt. 58:5 ¶ 7.

Ms. Stone doesn't even know where she got the data set; maybe it was from Sean Roberts or from defunct Global Experts. *Id.*

Moreover, Plaintiff does not submit any evidence that ***Plaintiff's*** name or phone number appears on the Unauthenticated Data Set. Dkt. 58:5; 58:7. ███████

████████████████████████████████████

███████████████████████. Ex. 1, 107:21-108:14; 109:5-21; 181:15-17; Ex. 3.

Finally, Plaintiff only knows that ***one*** of the two calls was "on behalf of" LoanStream, but since the first call was unanswered with no voicemail, Plaintiff merely speculates which of L3, AFN or LoanStream might have been referenced. Ex. 1, 186:19-187:3.

**B.    Plaintiff's Unique Defenses Render Her Inadequate And She Lacks Standing Because She is Seeking to Enforce Her Mother's Rights.**

Typicality requires Plaintiff to show her claims are typical of the proposed class's claims and ensures the interests of the named representative align with those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To test typicality, courts consider whether (1) other members have the same or similar injury, (2) the action is based on conduct unique to the named plaintiff, and (3) other class members have been injured by the same course of conduct. *Id.* Defenses unique to the named representative that "threaten to become the focus of the litigation" can defeat typicality. *Id*. This is because unique defenses can "shape the focus of litigation in a way that may harm class members and ultimately risk the class's chance of recovery." *Schaefer v. Overland Exp. Fam. of Funds*, 169 F.R.D. 124, 129 (S.D.Cal. 1996).

Plaintiff's unique circumstances – asserting her mother's claims – deprive her of Article III standing. "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 414 (2021). However, SCOTUS has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

right and purports to authorize that person to sue to vindicate that right." *Id*. This is particularly true when a plaintiff fails to "***assert her own legal rights***, and to count herself among the injured"—which Plaintiff cannot satisfy here. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (emphasis added). In October 2021, Global Experts called *Eleanora's* phone number seeking Eleanora. Plaintiff admits she impersonated Eleanora on that call, and AT&T phone records establish the phone number belonged to Eleanora at the time of the call.

The TCPA does not shield every individual with access to a phone registered on the NDNCR. *See id.*; *N.L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1170 (9th Cir. 2020) (citing *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015) (noting that TCPA protections are limited to a "zone of interest")). Thus, even though receipt of an unsolicited telemarketing call may constitute a concrete injury for Article III, not every individual "within earshot of an unwanted robocall" is entitled to bring that claim in court. *Leyse*, 804 F.3d at 326. Such is the case here.

Plaintiff brought this action ***on her own behalf***, even though the call at issue was made to the phone of Eleanora Woods, ***Plaintiff's mother***. *See* Dkt. 37 ¶ 17. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████. Ex. 1, 56:10-14; 129:12-13; 188:22-189:3; 191:7-192:11 ████ ████████████████████████████. According to AT&T records, the telephone number was a landline and Plaintiff was not the owner, Ex. 2. AT&T confirms that Eleanora was the owner of the phone until *six months after the call*. *Id*.

But Plaintiff still answered her mother's phone on October 19, 2021, and when the caller asked to speak with Ms. Woods, Plaintiff  lied by stating that ***she was Ms. Woods***. Ex. 1, 193:2-194:8; Ex. 6.

Plaintiff lacks standing to assert her claims because the phone number did ***not*** belong to her, she was ***not*** a customary user, and she was ***not*** in Ms. Woods' "zone of interest" at the time of call. Because Plaintiff did not suffer a concrete injury, she

cannot count herself among the injured and therefore has no legal rights to assert. *Hall*, 72 F.4th at 986.

Plaintiff is not a typical or adequate class representative because she is not the real-party-in-interest and did not file suit pursuant to her power of attorney. The Court must "ensure that class members with stronger claims are not prejudiced by a representative with a weak one." *Osada v. Experian Info. Sols., Inc*., 2012 U.S.Dist. LEXIS 42330, *18 (N.D.Ill. Mar. 28, 2012); *Randall v. Rolls-Royce Corp*., 637 F.3d 818, 824 (7th Cir. 2011) (affirming denial of class certification because named plaintiffs' claims were weaker than the claims of other class members). Presumably other class members – if they could be identified, which they cannot – would assert their own legal rights and would have Article III standing, where Plaintiff does neither.

### C. Plaintiff is Not Typical Because There is Evidence of Consent.

To be typical, Plaintiff must have been injured in the same manner as the rest of the class. *Hanon*, 976 F.2d at 508. Implementing regulations explicitly state a caller is not liable if they received the callee's "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2)(ii). ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████. Ex. 1, 49:4-5; 52:16-54:9; 50:19-21; 61:15-20; 54:21-55:3; 62:8-62:13. Moreover, Sean Roberts testified that he purchased "opt-in" call leads, meaning Global Experts only called individuals who previously (and expressly) consented to the call(s). Ex. 5, 20:12-21:9; 44:1-46:3; 47:23-48:4; Roberts Decl. ¶ 9.

Thus, LoanStream has enough evidence to support the consent defense – specifically, that Eleanora opted-in to calls – and litigation over these issues will cause significant distractions to the detriment of the putative class. *Park v. Webloyalty.com, Inc*, 2019 U.S.Dist. LEXIS 42887, *37–39 (S.D.Cal. Mar. 15, 2019) (holding that

regardless of whether plaintiff prevails on his defense, defendant's focus on facts specific to plaintiff's defense shows it will be litigated, possibly to the detriment of class members to whom such facts are inapplicable).

### D.    Potential Conflicts and Typicality Issues Make Plaintiff Inadequate.

Plaintiff must show that she will fairly and adequately protect the interests of the class. Rule 23(a)(4). The typicality and adequacy inquiries overlap because both look for potential conflicts within the proposed class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997). The myriad issues specific to Plaintiff's individual case – she answered someone else's phone number from thousands of miles away, she impersonated the person to whom the call was directed, she is asserting a legal right belonging to her mother, but doing so in her individual rather than representative capacity (power of attorney), and there is strong evidence that Eleanora opted in to the leads Sean Roberts provided Global Experts – create multiple defenses against Plaintiff's claims that presumably do not exit for a typical class member (if any could be identified). *Sherman v. Yahoo! Inc.*, 2015 U.S.Dist. LEXIS 127809 (S.D.Cal. Sept. 23, 2015) (holding facts specific to plaintiff regarding his consent to receive messages will preoccupy him with defenses atypical of the class and incentivize him to settle the case based on considerations not representative of the class). The same concerns regarding typicality also caution against finding Plaintiff adequate.

## VII.   THE PROPOSED CLASS LACKS COMMONALITY AND PREDOMINANCE.[2]

Rule 23(a)(2) requires a plaintiff demonstrate "there are questions of law or fact common to the class." The common question must be of "such a nature that it

---

[2] The Court may address commonality under Rule 23(a) together with predominance under Rule 23(b)(3). *Collins v. ITT Educ. Servs., Inc.*, 2013 U.S.Dist. LEXIS 183410, *7 (S.D.Cal. July 30, 2013).

is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *Howard v. CVS Caremark Corp.*, 2014 U.S.Dist. LEXIS 172406, \*44 (C.D.Cal. Dec. 19, 2014) (**refusing to find commonality because the data relied upon did not provide the information necessary to analyze every proposed class members' claim**).

"Predominance requires at least one common question… but **also requires that the common question, or questions, outweigh the noncommon questions**." *Kristensen v. Credit Payment Servs.,* 12 F. Supp. 3d 1291, 1304 (D.Nev. Mar. 26, 2024) (bold added). An individual question, which can derail class certification, is one where class members must present evidence that varies from member to member. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Plaintiff must establish, by a preponderance of the evidence, "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues (*Tyson Foods*, 577 U.S. at 453), and that her "claims are capable of common proof at trial." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* at 190.

### A.    No Common Proofs Establish Agency Between LoanStream And Third-Parties Allegedly Involved in the "LoanStream Campaign."

Plaintiff relies almost exclusively on the Unauthenticated Data Set to support class certification. Because it contains no information to establish which calls were made "on behalf of" LoanStream, as opposed to the L3 or AFN, there is no common proof to (a) identify class members, (b) determine if they received a call referencing LoanStream, and (c) how many such calls they received. Plaintiff's reliance on the Unauthenticated Data Set requires the Court to receive individual testimony from all names listed to determine whether they are even a member of the class.

P:4897-9397-7762.23:66075-002

-24-

Despite this, Plaintiff argues there are a handful of "common questions capable of classwide resolution." Motion 24:16-22; 24:27-25:1. But each is littered with individual inquiries.

First, regarding vicarious liability, as the chart illustrates, the relationship between the parties is tenuous. To attach liability to LoanStream, Plaintiff needs to establish that every third-party – Sean Roberts/Resmo, LizDev/Elizabeth Stone, and Global Experts – acted under actual authority, apparent authority, and ratification principles of agency for each alleged call. But Sean Roberts' testimony demonstrates there is no agency: there was no contractual or financial relationship between him/Resmo and LoanStream. Roberts Decl. ¶ 5. He also testified that LoanStream never paid him or Resmo for calls Global Experts made. *Id.* ¶ 18.

Second, the supposed common question of whether "the calls [were] advertising LoanStream's good and services" is really whether every call advertised LoanStream's services since Global Experts was calling on behalf of three separate entities. Every class member will have to establish that Global Experts referenced LoanStream, as opposed to L3 or AFN. But the Unauthenticated Data Set does not provide any indication of which call was made for which entity. This requires a person-by-person inquiry. And, because the Global Experts call campaign occurred more than five years ago, there will be further individual inquiries regarding personal knowledge and credibility.

Third, not only is NDNCR unreliable, Plaintiff frames the question incorrectly. The issue is whether the call recipient registered the telephone number, when, and if consent was otherwise provided; again, tens of thousands of questions with potentially tens of thousands answers.

Fourth, whether class members should recover statutory damages hinges on the multitude of individualized issues discussed herein.

Finally, consent is likewise not subject to common proof.

/ / /

P:4897-9397-7762.23:66075-002

-25-

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

That Plaintiff may be able to identify certain common questions does not change the fact that individualized issues permeate this dispute and the claims cannot be successfully prosecuted on a class basis.

**B.** **There is No Evidence the Data Set Only Includes Class Members Called As Part of the Alleged "LoanStream Campaign."**

Plaintiff contends "there are no [class] identification or calling record issues." Motion 21:19-21. Not true. Relying solely on Stone's March 10 declaration, Plaintiff assumes the Unauthenticated Data Set is a reliable CDR reflecting (1) calls exclusively made "on behalf of" LoanStream and (2) data evidencing that each call and recipient fall within the scope of the proposed class definition. These assumptions are negated by evidence.

First, Stone's testimony regarding the LizDev data states that she "*produced"* the documents because she had "*access to [them]."* She did not create nor prepare them consistent with the business records exception. Dkt. 58:5 (italics added). As expert Moran states, "it is unclear from which system this data was derived or how it was obtained. I have not observed in the data any record indicating from what system(s) this data originated, who was using the system(s) during the period at issue and for what purpose, or who generated the files." Moran Report ¶ 31.

Second, Sean Roberts unequivocally testified that calls were placed for three different entities: (1) LoanStream, (2) L3, and (3) AFN. Ex. 5, 31:11-32:13; 52:8-21; Roberts Decl. ¶¶ 8-11. And the entirety of Stone's declaration is based on her "understand[ing]" of what Sean Roberts/Resmo allegedly told her; thus, Sean Roberts has personal knowledge (compared to Stone's hearsay).

Third, Sean Roberts' clarified: "[t]he purpose of the Call Campaign [as defined] was to identify potential leads for three different companies: (i) [AFN]; (ii) Lending 3…; and (iii) LoanStream [];" and [he] "is not aware of any records showing which Leads [as defined] or numbers Global Experts called on behalf of a specific Company, whether it be AFN, Lending 3/L3, or LoanStream." *Id.* ¶¶ 10-11

Fourth, the contents of the "call scripts" expressly relates to an entity other than LoanStream – namely L3 – and fails to mention LoanStream. Dkt. 58:6; Roberts Decl. ¶ 16. At most, it says "LS". Other mortgage companies exist with "LS" (e.g., LendSure Mortgage Corp). www.lendsure.com (last visited 4/30/26).

## VIII. <u>INDIVIDUALIZED ISSUES PERMEATE PLAINTIFF'S PROPOSED CLASS DEFINITION.</u>

### A. <u>Whether Plaintiff and Class Members Suffered Actionable Article III Harm is an Individualized Issue.</u>

Only individuals who suffer actual Article III harm may recover damages at trial. *Ramirez*, 594 U.S. at 437. As a result, class certification is properly denied where class members have not all suffered Article III harm as the result of alleged misconduct. *See Huber v. Simon's Agency, Inc*., 84 F.4th 132, 152 (3d Cir. 2023) (vacating class certification where there was no evidence that any class member suffered harm); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (vacating class certification order where unnamed class members would have to submit individualized evidence of their standing.). Because the Unauthenticated Data Set does not differentiate between alleged calls made "on behalf of" LoanStream versus L3 versus AFN, and that data set is the sole source Plaintiff offers to identify class members, there is no common proof to establish the class's Article III standing or damages.

### B. <u>Class Definition Raises a Litany of Individualized Issues.</u>

Plaintiff's proposed class definition raises numerous individualized issues and renders class certification inappropriate and untenable, including: (1) whether a call recipient received two or more "on behalf of" from LoanStream (or L3 or AFN); (2) when those calls were made; (3) whether each call recipient consented or opted-in to receive calls; (4) whether call recipients are the true owner of the telephone numbers used; (5) whether the telephone numbers called are residential; (6) *whether* and *when* call recipient registered their telephone numbers on the NDNCR; (7) whether the

Unauthenticated Data Set accurately reflects the amount of calls placed; and (8) whether Global Experts placed every call referenced in the Unauthenticated Data Set.

## IX. PLAINTIFF FAILS TO SATISFY NUMEROSITY BECAUSE PLAINTIFF CANNOT IDENTIFY THE CLASS.

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). There is no evidence that the Unauthenticated Data Set reflects a numerosity-satisfying volume of calls made by Global Experts "*on behalf of*" LoanStream. Indeed, the TCPA itself states that persons who can bring an action must have "**received more than one telephone call** within any 12-month period **by or on behalf of the same entity** in violation of the regulations." 47 U.S.C. § 227(c) (emphasis added). ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████. Ex. 1, 186:19-187:3. To the contrary, Sean Roberts' testimony, coupled with the alleged call scripts, reflect that the supposed call campaign referenced three companies: (1) L3; (2) AFN; and (3) LoanStream. Ex. 5, 31:11-32:13; 52:8-21; Dkt. 58:6; Roberts Decl. ¶ 16. Beyond this, Plaintiff presents no proof that the numbers represent what Plaintiff suggests. Additionally, as the Moran Report establishes (¶¶ 51-119), there are several factors which could affect the accuracy of the totals which are unaccounted for. Absent this information, Plaintiff has failed to satisfy her burden of numerosity.

## X. PLAINTIFF FAILS TO SATISFY SUPERIORITY.

The final step of the certification analysis is to assess whether classwide treatment is "superior" to individual resolution. *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587 (C.D.Cal. 2008). In assessing superiority, courts assess manageability issues as well as incentives for class members to pursue their own claims. *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D.Cal. 2011).

A class trial in this case will be unmanageable. Every class member is a potential witness who will need to prove: (1) the called party registered telephone number on the NDNCR; (2) they "received more than one telephone call"; (3) "from August 2021 through June 2022"; (4) the party's phone number registered on the NDNCR for at least 30 days prior to receipt of the first call;[3] (5) the party's phone number called more than once within a 12-month period; (6) they received more than one telephone call "from the LoanStream calling campaign, as evidenced by the calling data produced by LizDev in this lawsuit"; (7) the called party is identified in the "Expert Report of Aaron Woolfson"; (8) they did not consent; and 9) the number called is used for personal purposes.

LoanStream has a constitutional right to challenge such evidence at trial. *Shamblin v. Obama for Am.*, 2015 U.S.Dist. LEXIS 54849, *27 (M.D.Fla. Apr. 27, 2015) (finding individualized issues would predominate and a class action would not be superior where "short of calling each class member to testify on the issue of consent, there is no way to determine whether the TCPA was in fact violated with each call.").

Because individualized inquiries would predominate, a class action would not be superior to other methods to fairly and efficiently adjudicate the controversy. *Gannon v. Network Tel. Servs. Inc.*, 2013 U.S.Dist. LEXIS 81250, *9 (C.D.Cal. June 5, 2013). With a reward of $500.00 per call, putative class members can pursue a swift and certain remedy on their own. *Smith v. Microsoft Corp.*, 297

---

[3] As Moran observed, "[n]ot only is it indeterminable whether these calls connected and were received by any individual, but even if they had connected, it is impossible to determine whether they were violative of the NDNCR because the dates of these calls are not recorded in the LizDev data. For a completed call to be violative of the NDNCR provisions of the TCPA a date calculation must be performed to determine whether that call took place more than 30 days after that number had been registered to the NDNCR and *that calculation cannot be performed because half of the equation is missing.*" Moran Report ¶ 80.

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

F.R.D. 464, 469 (S.D. Cal. 2014). Certification would be improper under Rule 23(b)(3).

## XI.    OTHER UNIQUE CONSIDERATIONS ALSO WARRANT DENIAL.

Because Plaintiff's counsel failed to comply with LR 7-3 and then compounded their mistake with a misleading, non-compliant "compliance statement" the Court should either deny the Motion in its entirety, or refuse to approve Plaintiff's counsel a class counsel.

DATED:  May 11, 2026

SOLOMON WARD SEIDENWURM & SMITH, LLP

By:  _____ */s/ Thomas F. Landers* _____

THOMAS F. LANDERS
ADAM R. SCOTT
Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

P:4897-9397-7762.23:66075-002

-30-

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## LOCAL RULE 11-6.2 COMPLIANCE STATEMENT

The undersigned counsel of record for Defendant certifies that this brief contains 6,977 words, which complies with the word limit of L.R. 11-6.1.

DATED:  May 11, 2026

SOLOMON WARD SEIDENWURM & SMITH, LLP

By:  _/s/ Thomas F. Landers_

THOMAS F. LANDERS
ADAM R. SCOTT
Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE