# EXHIBIT 1

Videotaped Deposition of

# Kimberly Hudson-Bryant

March 26, 2026

Kimberly Hudson-Bryant

vs.

OCMBC, Inc. dba Loanstream



www.aptusCR.com | 866.999.8310

Case 8:24-cv-00067-FWS-JDE    Document 70-4    Filed 05/11/26    Page 3 of 53   Page ID #:1106

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

**Kimberly Hudson-Bryant**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

KIMBERLY HUDSON-BRYANT,

individually and on behalf

of all others similarly

situated,

     Plaintiffs,

  vs.                No. 8:24-cv-00067-FWS-JDE

OCMBC, INC. dba LOANSTREAM,

     Defendant.

_____

VIDEO DEPOSITION OF KIMBERLY HUDSON-BRYANT

Reported Remotely through Videoconference

March 26, 2026

Reported by:
Margaret A. Smith
RPR, CRR, CSR No. 9733

Job No.:  10186005

**Kimberly Hudson-Bryant**

**Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

KIMBERLY HUDSON-BRYANT,

individually and on behalf

of all others similarly

situated,

      Plaintiffs,

  vs.                  No. 8:24-cv-00067-FWS-JDE

OCMBC, INC. dba LOANSTREAM,

      Defendant.

_____

   Deposition of KIMBERLY HUDSON-BRYANT taken on behalf of Defendant, reported remotely through videoconference, beginning at 9:30 a.m. PDT, and ending at 5:39 p.m. PDT, on Thursday, March 26, 2026, before Margaret A. Smith, RPR, CRR, Certified Shorthand Reporter No. 9733.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

Q    Okay.  And my client is a party to this lawsuit because it is one of the defendants.

Okay.  So --

A    Thank you.

Q    -- with that understanding, have you ever been a party to a lawsuit before?

A    Yes.

Q    How many times?

A    I'm not sure.  I can give a best guess estimate of a dozen, 12 maybe.  That's -- that's an estimate, good faith.

Q    So -- so in that estimated 12 lawsuits, were you the plaintiff in every single one of them?

A    Yes.

Q    And does that estimated 12 lawsuits include the one lawsuit where you gave your deposition where it was a personal injury matter?

A    No.

Q    Okay.  So you've been a party to 13 lawsuits, then?

A    Thirteen, yes, sir.

Q    Okay.  So let's set aside the -- the personal injury lawsuit from 20 or more years ago.

Of the 12 lawsuits that you've been a plaintiff to, have each of those been TCPA lawsuits?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A    Yes.

Q    Do you know what courts those lawsuits are pending in?

MR. OLIVER:  Objection to the form of the question.

Go ahead and answer if you know.

THE WITNESS:  I can't tell you without looking at the actual documents the specific locations.

BY MR. LANDERS:

Q    Okay.  Of the 12 TCPA lawsuits that you're a plaintiff in, how many of them are currently active?

A    Again, I'm not sure.  I can give you a good faith estimate.  The number that are currently active, five.

Q    Your best estimate is five?

A    My best estimate, yes, is five.

Q    Okay.  Do you recall what year was the first TCPA you filed as a plaintiff?

A    I do not recall the exact year.

Q    Can you give me your best estimate?

A    My best estimate would be 2021.

Q    The year 2021?

A    Yes.

Q    That's your best estimate.  So then to the best of your knowledge in the five years between 2021 and

2026, you have filed 12 TCPA lawsuits.  Is that correct?

A     Based on those numbers, yes.

Q     Okay.  Of those 12 TCPA lawsuits in which you were a plaintiff, how many of them are pled as a class action?

A     I can't recall without looking at the actual documents.

Q     Have you ever been certified by the court as a class representative?

A     No.

Q     Okay.  As distinct, separate from the 12 TCPA lawsuits that you filed, have you ever made TCPA claims against companies or people?

MR. OLIVER:  Objection to the form.

But you can answer.

THE WITNESS:  I'm going to ask you to rephrase the question.

BY MR. LANDERS:

Q     Okay.  So I'm setting aside the 12 formal lawsuits that you have filed as a TCPA plaintiff.

Setting those aside, have you ever made a claim, a TCPA claim against any company or individuals?

A     Do you mean, like, in a small claims setting?

Q     I'm thinking more of like an informal claim, like have you sent demand letters to companies or people

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

alleging TCPA violations?

A     Thank you for clarifying.

Yes.

Q     Okay.  With the understanding that making a TCPA claim is sending a demand letter to a company or individual, how many TCPA claims have you made?

A     I do not recall.

MR. OLIVER:  One second.  I'm sorry.

I'm going to object -- object to the form of the question.

But go ahead.

BY MR. LANDERS:

Q     What's your best estimate?

A     I'm not sure of my best estimate.  I don't know.  I don't recall.

Q     Would it be more than -- would it be more than five?

A     It would be more than five.

Q     Would it be more than 20?

A     It would be more than 20.

Q     Would it be more than 50?

A     I can't tell you without reviewing and looking at the documents.

Q     So you know it's at least more than 20.

Do you know if it's more than 25?

**Kimberly Hudson-Bryant**

**Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream**



A    It would be more than 25.

Q    Would it be more than 30?

A    It would be more than 30.

Q    Would it be more than 35?

A    I'm -- again, I -- I can't tell you without looking at my documents.  So --

Q    Okay.  So your memory becomes fuzzy somewhere between 30 and 35 TCPA claims.  Is that right?  Is that accurate, I should say?

A    That would be accurate.

Q    Okay.  Of the 12 TCPA lawsuits that you filed as a plaintiff, how many of them have settled?

A    Oh, I'm -- I'm not sure.  I can give you a good faith estimate of 12 minus five outstanding is seven.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

against you in the motion on the other case?

MR. OLIVER:  Same objection.

THE WITNESS:  No.

BY MR. LANDERS:

Q    How much money have you made from your participation in TCPA lawsuits?

A    I cannot tell you without reviewing my --

Q    Your best estimate.

A    -- records.

I'm sorry.  I didn't hear you.

Q    What's your best estimate of how much money you've made from your participation in TCPA lawsuits?

A    I'd say over -- over the six years, 200,000.

Q    And that's from the period of 2021 to 2026?

A    No.

Q    What period of time is that?

A    Twenty -- 2018 to today, to the current time.

Q    Okay.  I want to make sure that -- that you understood the question that I asked.

Remember we talked earlier about a distinction between a TCPA lawsuit and a TCPA claim?

A    Yes.

Q    Okay.  Right now, I'm asking you only about how much money you've made from your participation in TCPA lawsuits.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A     My apologies for -- for not understanding.

Q     So how -- how much money have you made from your participation in TCPA lawsuits?

A     Again, I -- I would not be able to tell you

**Kimberly Hudson-Bryant**



has been ongoing for almost 50 years.

Q    Is Romney Woods estranged from your mother, Eleanora Woods?





**Kimberly Hudson-Bryant**

**Kimberly Hudson-Bryant vs. OCMBC, Inc. dba Loanstream**



**Kimberly Hudson-Bryant**



**Kimberly Hudson-Bryant**

**Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream**



**Kimberly Hudson-Bryant**



**www.aptusCR.com**

**Kimberly Hudson-Bryant**







**Kimberly Hudson-Bryant**



**Kimberly Hudson-Bryant**



Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

BY MR. LANDERS:

Q    Okay.  Good afternoon, Ms. Hudson-Bryant.
You understand you're still testifying under oath.  Correct?

A    Correct.

Q    And you're still alone in the room that you're in?

A    Yes.



Kimberly Hudson-Bryant

**Kimberly Hudson-Bryant vs. OCMBC, Inc. dba Loanstream**



**www.aptusCR.com**

**Kimberly Hudson-Bryant**

**Kimberly Hudson-Bryant vs. OCMBC, Inc. dba Loanstream**

A   From the -- the prior carrier.

Q   **Okay.**

A   Her prior carrier was her -- her prior carrier -- and I want to make sure that -- that I don't misspeak here.  It was a landline.  AT&T was the carrier.  It got converted from AT&T over to -- I -- I am not really sure of -- of -- because there was a lot

Kimberly Hudson-Bryant

of -- there was a lot of transferring happening.  I would have to check my records to give you the precise dates of when that transitioned over.  I'm just not recalling the exact date right now.



**Kimberly Hudson-Bryant**





**Kimberly Hudson-Bryant**



**Page 129**

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

BY MR. LANDERS:

Q   You allege --

A   And --

Q   -- you received two telephone calls.  Is that correct?

A   I heard two telephone calls.  I didn't hear what came before that.

Q   You allege that you received two telephone calls on telephone 323-294-1729.  Is that right?

A   Yes.

Q   What are the damages that are available under the TCPA?

A   Per violation, $500 per call, up to $1,500 if willful.

Q   Okay.  So how much in damages can you recover through litigation for those two telephone calls if they are found to be unlawful?

MR. OLIVER:  Objection.

THE WITNESS:  If they're found --

MR. OLIVER:  Hold on.  Objection to the form of the question.

You can answer if you understand that.

THE WITNESS:  My understanding of the law is $500 per call, which would equal $1,000 -- excuse me.  If found to be willful, they're -- they're tripled to

Kimberly Hudson-Bryant

Q    Okay.  Do you have any information to suggest to you that that telemarketing call campaign lasted any longer than the year 2021?

A    Outside of what is outlined in the complaint, I don't -- I don't know.

Q    Telephone number 323-294-1729 did not receive any telephone calls from anyone using the name LoanStream, other than the two that you've alleged in your complaint.  Correct?

A    Oh.  Correct.  I apologize.

Q    Yeah.  And both of those happened in 2021.  Right?

A    Yes.

Q    So what I'm hearing you say is that you want to enforce the law to stop unlawful telemarketing campaigns.  Yet, you're also acknowledging that there's -- you have no information at all that the telemarketing campaign that LoanStream's name was a part of has continued at any time within the last five years.

So what law are you enforcing?

MR. OLIVER:  Objection to the form of the question.

You can answer if you know.

THE WITNESS:  Okay.  I'm not -- I'm not sure that I understand the question.  So if you can rephrase

**Kimberly Hudson-Bryant**



A    There are documents in my home office that would help me answer this question.

Q    What documents are those?

A    Physical files.

Q    Containing what?

A    AT&T correspondence.

Q    Now, you worked with your lawyers to provide discovery responses in this case, didn't you?

A    I'm sorry.  Can you repeat that first part?

Q    You worked with your lawyers to provide discovery responses in this case, didn't you?

A    Yes.  Excuse me.

Q    In fact, working with your lawyers to provide discovery responses is part of the role of a class representative.

Don't you agree?

A    Yes.

Q    Do you have any recollection of providing your lawyers with the records that you were just referring to that would refresh your recollection as to when phone number 323-294-1729 transferred from Eleanora Woods to you?

A    I don't recall.  I have 'provided quite a bit of information.  I don't recall.

Q    Okay.  Paragraph 16 alleges the number has been

Case 8:24-cv-00067-FWS-JDE     Document 70-4     Filed 05/11/26     Page 35 of 53   Page ID #:1138

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

registered on a national do not call registry continuously since September 1st, 2023.

Do you see that?

A     Yes.

Q     How do you know that?

A     I believe it's donotcall.gov.  You type in the phone number, and it will tell you when the number was registered and the date.

Q     Who registered phone number 323-294-1729 on the national do not call registry?

A     I don't know.

Q     Did you do it?

A     I don't recall.

Q     Did Eleanora Woods do it?

A     I don't know the answer to that either.

Q     On September 1, 2023, was 323-294-1729 even Eleanora Woods' telephone number?

A     I know that she's had this number for a very long time.  I can't answer that without checking some of her old paperwork.

Q     Okay.  Let's talk a look at paragraph 17. Paragraph 17 alleges that you received two telephone calls on October 12, 2021.  One at 1:07 p.m. and another at 2:18 p.m.

Do you see that?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A    Yes.

Q    Now, you verified that that allegation was accurate before the first amended complaint was filed. Right?

MR. OLIVER:  Objection to the form of the question.

You can answer.

THE WITNESS:  I'm sorry.  Please repeat the question.

(The following was read by the reporter:

Q.  Now, you verified that that allegation was

accurate before the first amended complaint was

filed.  Right?)

THE WITNESS:  I believe so.

BY MR. LANDERS:

Q    As you sit here today, do you believe that that allegation was correct?

A    I do.

Q    Okay.  If we look at paragraph 19, it alleges that the first call at 1:07 p.m. was unanswered and went to voicemail.

Was a voicemail left?

A    I'd have to review my records to -- to verify.

Q    To the best of your knowledge, was a voicemail left?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream



Kimberly Hudson-Bryant

A    I believe it's just a standard one.  There is no personalized.  It's -- no.  It's standard and not personal.

Q    Now, paragraph 20 alleges that the second call at 208 -- excuse me -- at 2:18 p.m. was answered by the plaintiff.  Is that you?

A    Yes.

Q    So you personally, Kimberly Hudson-Bryant, answered the second call that was placed on October 12th, 2021 at 218PT -- 2:18 p.m.  Is that correct?

A    Yes.

Q    Okay.

A    Excuse me.

Q    Where were you -- where were you when you answered that phone call?

A    As best I recall, Texas.

Q    Were you at work?

A    I can't recall if I was working that day.

Q    But you were physically present in Texas?

A    As I recall, yes.

Q    Okay.  Where was Eleanora C. Woods on October 12th, 2021?

A    I don't recall that.

Q    Was she physically present with you?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A     Not with me.

Q     Okay.

A     No.

Q     Why did you not answer the first call?

A     I don't recall.  I don't know.

Q     Did -- did your phone ring before it went to voicemail?

A     My phone typically rings before it goes to voicemail unless there was a ringless voicemail.

Q     Do you think that there was a ringless voicemail in this instance?

A     I don't know.

Q     How do you know that the call went to voicemail?

A     On the -- well, I guess it -- it depends.  I believe it depends on the -- on the system that you use. Like, you know, I get ringless voicemails, and the phone will not ring but a call log is displayed on your phone and immediately thereafter there's a voicemail.  I don't recall what happened in this particular instance.

Q     So the allegation is the first call at 1:07 p.m. was unanswered and went to voicemail.  That sounds to me like it rang and was not answered and then went to voicemail.  But I'm asking you what you recall about what actually happened on October 12, 2021 at

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

Q    Yeah.  Is that correct?

A    Yes.

Q    And -- and -- and is that allegation factually correct, that the caller was asking for Ms. Woods?

A    Yes.

Q    Okay.  On October -- excuse me.

In October of 2021, you weren't Ms. Woods, were you?

A    No.

Q    But you know who Ms. Woods was, don't you?

A    Yes.

Q    You know it's Eleanora Woods.  Right?

A    Yes.

Q    Your mother?

A    Yes.

Q    Now, at the time that you answered this second phone call, was Eleanora Woods physically present with you?

A    As I mentioned before, I was in Texas.

Q    And you have a distinct memory of having the phone conversation with the caller who mentioned LoanStream and your mother not being physically present with you?  You know that for a fact?

A    Recall that I was in Texas, and by default, she would not have been present.

Q    Is that because Eleanora Woods never visited you in Texas?

A    No, that's not because of that.

Q    So what do you mean by default?

A    By default, she wouldn't have been there at the time of this call.  She wasn't -- she -- by default, she wouldn't have been there at the time of this call.

Q    Okay.  So you're certain that Eleanora Woods was not physically present with you when you received this second phone call that you answered?

A    Yes.

Q    Okay.  And you understood at the time of the call that the caller was asking for your mother, Eleanora C. Woods, didn't you?

A    Yes.

Q    But you did not tell the caller that you weren't Eleanora Woods, did you?

A    Not on this call, as I've mentioned previously.

Q    Instead, you told the caller that you were Ms. Woods, didn't you?

        MR. OLIVER:  Objection to the form of the question.

        If you know the answer, answer.

        THE WITNESS:  I answered yes.

BY MR. LANDERS:

Q    You told -- you told the caller that were Ms. Woods, didn't you?

MR. OLIVER:  Objection.  Same objection.

THE WITNESS:  The caller said, Ms. Woods?  I said yes.

BY MR. LANDERS:

Q    And that was a false statement, wasn't it?

MR. OLIVER:  Objection.

THE WITNESS:  As I mentioned previously, earlier in the deposition, that I oftentimes would indicate that I am her Power of Attorney.  And sometimes I would not.  And that was just merely the -- the barrage of phone calls that were coming.  So --

BY MR. LANDERS:

Q    The Power of Attorney does not make you Eleanora C. Woods.

A    I understand.

Q    So when you told this caller that you were Eleanora C. Woods, you made a false statement to the caller.  Isn't that correct?

A    I told them --

MR. OLIVER:  Objection to the form -- hold on.

Objection to the form of the question.

You can answer.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

THE WITNESS:  The caller asked, Ms. Woods?  And I said yes.

BY MR. LANDERS:

Q     And that was false?

MR. OLIVER:  Objection to the form of the question.

You can answer if you know.

THE WITNESS:  That was incorrect.

MR. LANDERS:  Okay, Adam, are you still here?

MR. SCOTT:  Yes.

MR. LANDERS:  Let's pull up No. 19.  We're going to mark as Exhibit 12.

Is that correct, Madam Court Reporter?

THE REPORTER:  Thirteen.

MR. OLIVER:  Thirteen.

MR. LANDERS:  Sorry about that.  Okay. Exhibit 13 will be an audio recording that Adam will play.  And I'll represent to you before he plays it that this audio recording was produced to us in this lawsuit by your lawyers.

(Exhibit 13 was marked for identification.)

MR. SCOTT:  Okay.  I'm going to -- if you do not hear this, please let me know.

(Audio played)

Kimberly Hudson-Bryant

BY MR. LANDERS:

Q    Okay.  Is -- is Exhibit 13 the call recording that you made of the second telephone call that you received?

A    Yes.

Q    Tell me how you made that call recording.

A    If I recall, it was just a regular recording device.

Q    Was it something that you held up to your phone?

A    It -- my recollection is it -- it could have been something that was held up to my phone, yes.

Q    Well, okay.  Was it a function on your phone?

A    No.  I -- I don't -- I don't believe so.  I believe it was a --

Q    What kind -- sorry.  Go ahead.  I interrupted you.

A    My recollection is that it was an external recording device.

Q    Did you record the entire phone call between you and that caller?

A    Yes.

Q    What type of phone were you using when you answered the second call?

A    I have an Android.  I don't remember the

that right?

A    Yes.

Q    Now, did you draft the email as a text and an email, say, from Microsoft Outlook, or did you draft it as a letter, say, in Microsoft Word, and then attach that letter to an email?

A    I drafted it -- my recollection is that I drafted it in Microsoft Word and copy and pasted it into the body of an email and also attached a PDF.

Q    What was in the PDF?

A    A copy of the body of the email with any images.  My recollection -- if my recollection serves me correctly, as best I can recall, there were no images in the body of the email.

Q    Okay.  Adam, can we have No. 20 up.  And is this Exhibit 14?

THE REPORTER:  Correct.

BY MR. LANDERS:

Q    Okay.  I will represent to you that this is a document that was produced to us in discovery in this case.  It has a date of January 3rd, 2023, and it appears to be a letter addressed to OCMBC, Inc., dba LoanStream Wholesale.

(Exhibit 14 was marked for identification.)

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

BY MR. LANDERS:

Q    Does -- does this Exhibit 14 appear to be a true and correct copy of the email that you sent to LoanStream as alleged in your first amended complaint?

A    Yes, it appears to be.

Q    Okay.  And you recall drafting this email.  Is that right?

A    Yes.

Q    Did you personally write this email?

A    I personally wrote it.

Q    Where did you get the language from?  Did you personally draft it, or did you get the language from some source?

A    I got the language from some source.

Q    What source?

A    The Robocalls.cash.

Q    Okay.  Before you sent the letter, did you review it for accuracy?

A    Yes, to the best of my ability.

Q    Okay.  So can you please read out loud the first sentence that begins with I'm contacting you.

A    "I'm contacting you today regarding communications to my phone that are in violation of the TCPA."

Q    Okay.

**Kimberly Hudson-Bryant**



**Kimberly Hudson-Bryant**

**Kimberly Hudson-Bryant vs. OCMBC, Inc. dba Loanstream**



**Kimberly Hudson-Bryant**



**Kimberly Hudson-Bryant**

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand, which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript (X) was ( ) was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed by name.

Dated:  04/08/2026

_____

Margaret A. Smith

RPR, CRR, CSR No. 9733

**Kimberly Hudson-Bryant**

**Kimberly Hudson-Bryant vs. OCMBC, Inc. dba Loanstream**

DECLARATION UNDER PENALTY OF PERJURY

Case Name: Kimberly Hudson-Bryant
        vs. OCMBC, Inc. dba Loanstream
Date of Deposition: 03/26/2026

Job No.: 10186005

        I, KIMBERLY HUDSON-BRYANT, hereby certify under penalty of perjury under the laws of the State of _____ that the foregoing is true and correct.

        Executed this _____ day of _____, 2026, at _____.

_____

KIMBERLY HUDSON-BRYANT

NOTARIZATION (If Required)

State of _____

County of _____

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20__,

by_____,    proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____ (Seal)

**Kimberly Hudson-Bryant**

```
DEPOSITION ERRATA SHEET
Case Name: Kimberly Hudson-Bryant
       vs. OCMBC, Inc. dba Loanstream
Name of Witness: Kimberly Hudson-Bryant
Date of Deposition: 03/26/2026
Job No.: 10186005
Reason Codes:  1. To clarify the record.
               2. To conform to the facts.
               3. To correct transcription errors.
```

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

DEPOSITION ERRATA SHEET

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

_____ Subject to the above changes, I certify that the transcript is true and correct

_____ No changes have been made. I certify that the transcript  is true and correct.


_____
                KIMBERLY HUDSON-BRYANT