Dana Oliver
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021
Attorney for Plaintiff and Putative Class

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>OCMBC, INC. D/B/A LOANSTREAM, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS<br><br>*Defendants* | Case No. 8:24-cv-67-FWS-JDE<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Fred W. Slaughter<br><br>Magistrate: Hon. John D. Early<br><br>Hearing (In Person):<br>June 18, 2026, 10:00 A.M.<br>Courtroom 10D |

**<u>REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**ARGUMENT**....................................................................................................3

A.  LoanStream Argues the Merits, Not Rule 23, and the Decision it Ignores, *Katz*, Confirms These Disputes Are Common and Belong to the Jury.................3

B.  Consent Is Not an "Individualized Issue." It Is LoanStream's Affirmative Burden, and Its Only "Evidence" Is a Self-Serving Declaration That, at Most, Creates a Common Jury Question. ..........................................................................6

C. The "Three Companies" Argument Is a Jury Credibility Question That LoanStream Manufactured With a Declaration That Contradicts Both Its Own Declarant and Roberts's Sworn Testimony.............................................................9

D.  The Expert Dispute Is a Classic Battle of the Experts That Goes to Weight and Credibility, Not a Bar to Certification. ........................................................13

E.  LoanStream's Remaining Attacks Are Meritless. .......................................17

I.   An Experienced TCPA Litigant Is Not Inadequate, and Her Supposed "Unique Defenses" Are the Class's Common Defenses. ..................................17

II.   Plaintiff Has Standing Because A TCPA Violation Is a *Per Se* Concrete Injury, and the Statute Protects the Phone's Regular User. .............................21

III.   LoanStream Argues the Law of the Wrong Circuit on Ascertainability. 24

IV.   Numerosity and Superiority Are Easily Satisfied. ................................26

V.  The Local Rule 7-3 Objection Does Not Warrant Denial.........................27

**CONCLUSION**................................................................................................29

## TABLE OF AUTHORITIES

**CASES**

*Allison v. Dolich*, No. 3:14-CV-01005-AC, 2019 WL 921436 (D. Or. Feb. 25, 2019), *aff'd*, 815 F. App'x 135 (9th Cir. 2020)...........................................26

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) .....................2, 3

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) .................................................4

*Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) ...7

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ......................24, 25

*Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021)...........................14

*Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015)................................................24

*CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078
    (C.D. Cal. 2015)..................................................................................................27

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022)..................................6

*Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 5653153
    (N.D. Cal. Sept. 23, 2020) ......................................................................10, 11

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ............................17

*Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023) .........................6, 22, 24

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013)...............................24

*Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852 (N.D. Ill. 2024) .........................8

*Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2018 WL 1558263 (S.D.
    Ohio Mar. 5, 2018) .................................................................................18

*Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723 (N.D. Ill. Mar. 6,
    2026) ...........................................................................................passim

*Kearns v. LoanDepot.com, LLC*, 2025 WL 3010182 (C.D. Cal. Oct. 20, 2025) ...26,
    27

*Kearns v. LoanDepot.com, LLC*, No. 8:22-CV-01217-JWH-JDE, 2026 WL 713024
    (C.D. Cal. Mar. 2, 2026).........................................................................5

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019).....................26, 27

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) ........................................18, 19, 20

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011 (9th Cir. 2024), *cert. denied*, 145 S.
    Ct. 1308 (2025).....................................................................................16

*Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2025 WL 4348808 (N.D.W.
    Va. Dec. 3, 2025)...........................................................................19, 20

*Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823 (N.D. Ill.
    Dec. 7, 2022)........................................................................................23

*Morales v. Sunpath Ltd.*, No. CV 20-1376-JLH-SRF, 2025 WL 2020053 (D. Del. July 11, 2025) ................................................................................................19, 20

*Moser v. Health Ins. Innovations, Inc.*, No. 17CV1127-WQH(KSC), 2019 WL 2271804 (S.D. Cal. May 28, 2019)................................................................18

*Murch v. GPS Cap. Mkts., LLC*, 2025 U.S. Dist. LEXIS 169651 (D. Or. June 6, 2025) .............................................................................................................25

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)........................18, 20

*N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020)..............22

*Nichols v. eHealthInsurance Servs., Inc.*, No. 23-CV-06720-EKL, 2025 WL 689721 (N.D. Cal. Mar. 3, 2025)...............................................................25

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)..............................................................................................22

*Padilla Ayala v. Teledyne Def. Elecs.*, 533 F. Supp. 3d 920 (C.D. Cal. 2021) .......28

*Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031 (S.D. Cal. Nov. 8, 2013) ...............................................17, 20, 29

*Reynoso v. All Power Mfg. Co.*, No. SACV161037JVSJCGX, 2018 WL 5906645 (C.D. Cal. Apr. 30, 2018) ...........................................................................13

*Rosenberg v. CCS Com., LLC*, No. C17-476 MJP, 2018 WL 3105988 (W.D. Wash. June 25, 2018).........................................................................................10

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018).........................15, 16

*Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019).................................................................................19, 20

*Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724 (7th Cir. 2014).......................4

*Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS), 2021 WL 4438391 (S.D. Cal. Sept. 28, 2021).........................................................13

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .........................................8

*Usanovic v. eXp Realty LLC*, No. C23-0687JLR, 2026 WL 864633 (W.D. Wash. Mar. 30, 2026) ...................................................................................18, 29

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) .....5, 6, 21

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022)....................5, 21, 24, 26

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................1

**STATUTES**

47 U.S.C. § 227(c)(5)................................................................................14

**REGULATIONS**

47 C.F.R. § 64.1200(c)(2)(ii) ....................................................................7

**RULES**

Fed. R. Civ. P. 23 ............................................................................passim

Fed. R. Civ. P. 23(a)(1)..............................................................................26

Fed. R. Civ. P. 23(b)(3)...........................................................................1, 3

Fed. R. Evid. 901 ...................................................................................15

L.R. 7-3 .................................................................................................27

L.R. 11-6.1 ............................................................................................30

L.R. 11-6.2 ............................................................................................30

**INTRODUCTION**

This is a class jury trial worth having. Plaintiff's motion poses one overarching question that decides every class member's claim: is LoanStream vicariously liable for a single calling campaign conducted on its behalf? That question is hotly disputed. But a disputed question is not an individualized one. The decisive point for Rule 23 is that the jury's answer to that question, and to each subsidiary question LoanStream raises in its opposition, will be the *same* for every class member, drawn from the *same* common evidence, and that answer can be applied *identically* across the entire class. Nothing here turns on what any individual class member did. That is the essence of Rule 23(b)(3), which requires common questions whose common answers "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The disputes LoanStream raises do not change that there are common questions. Each has a single answer that resolves the issue for everyone at once regardless of any individual class member's circumstances.

LoanStream's opposition confirms certification is proper. It does not seriously deny that the liability question is common. Instead, it spends over twenty substantive pages litigating the *merits* of that question, consent, agency, which entity the calls promoted, and whether Plaintiff's expert read the data correctly. Every one of those is a disputed question for the jury whose answer applies

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

classwide. None is a reason to deny certification. Each *is* the common question that makes this case ideal for class treatment.

Throughout its brief, LoanStream conflates "there is a factual dispute" with "the issue is individualized." Those are opposites. A disputed *common* fact, such as "Is Sean Roberts telling the truth?," "Was this one 'LoanStream Campaign' or three?," and "Is the LizDev data reliable?", is the paradigm of a question fit for classwide resolution, precisely because the jury answers it once for everyone. A plaintiff need not show "that each element of [the] claim is susceptible to classwide proof," only that one or more "common questions predominate." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (cleaned up).

Tellingly, LoanStream's opposition never addresses *Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723 (N.D. Ill. Mar. 6, 2026), a decision Plaintiff's motion placed squarely before the Court. The silence is no accident. *Katz* was a *summary judgment* ruling in a materially identical case. There, a mortgage lender (Allied/Defendant) employed a branch manager (Mattson/Roberts) who hired a lead vendor (Consumer Nsight/LizDev) that engaged a call center (Iconic/Global Experts) to place telemarketing transfers to numbers on the do not call list and was sued by a TCPA plaintiff who answered the call using an alias. Applying the demanding summary judgment standard, the court held that vicarious liability under *all three* agency theories had to go to the jury,

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

and that consent was the defendant's affirmative defense burden that, at most, raised a jury question. *Id.* at \*4-\*12. The issues LoanStream now brands "individualized" are the very issues a court held were disputed and triable on similar evidence, which turned on the same kind of common proof. What survived at summary judgment there cannot defeat certification here.

## ARGUMENT

### A. <u>LoanStream Argues the Merits, Not Rule 23, and the Decision it Ignores, *Katz*, Confirms These Disputes Are Common and Belong to the Jury.</u>

Class certification asks whether "questions of law or fact common to class members predominate," not whether Plaintiff will win them. Fed. R. Civ. P. 23(b)(3). The Supreme Court could not have been clearer. Predominance requires showing that common questions predominate, "not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. Merits questions "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466. LoanStream ignores that limit, and its opposition reads like a summary judgment brief.

The error is best exposed by the decision LoanStream conspicuously declines to mention. Plaintiff's motion heavily cited to *Katz*, and for good reason, but the opposition does not engage with *Katz* at all. *Katz*, decided at summary

- 3 -
REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

judgment, refutes LoanStream's entire approach because it shows that, even if its attempts to litigate summary judgment through class certification were appropriate (they are not), they still fail on the summary judgment standard. On actual authority, for example, the *Katz* court held a "reasonable jury could find" a principal/agent relationship between the lender and the vendor, that the lender "controlled or had the right to control" the vendor's conduct, and that a subagency theory could "bridge the vicarious liability gap" to the call center hired by a third party, even though the lender had no contract with it. *Katz*, 2026 WL 636723, at *8-*9. On apparent authority and ratification, it again denied summary judgment, bluntly stating that "[a]gency is a notoriously fact-bound question." *Id.* at *7 (quoting *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014)); *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587-88 (7th Cir. 2021) (holding each agency theory "offers an independent basis" for vicarious TCPA liability). Critically, every fact the *Katz* court relied on concerned common evidence of the *lender's* own conduct, precisely as here, including the lender's agreements with its employees and the scope of employees' authority, its acceptance and payment for the calls, and its internal compliance policies. Here, none of that evidence varies based on class member, just as it did not vary in *Katz*.

The same is true here, only more so. LoanStream's liability turns entirely on common, objective evidence about the way it structured *its* business and conduct,

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

including the C. Roberts branch, which was a W-2 operation, LoanStream's accounting ledger, the LizDev contract and invoice naming LoanStream and LoanStream's contact information, the fact that LoanStream received a LizDev invoice and "discarded" it (Vernon Dep. 46:5-8), and the fact that the calls identified the caller as "LoanStream Mortgage" (Vernon Dep. 79:12-15). If, on materially weaker facts, *Katz* sent the disputed question of agency to the jury at *summary judgment*, then *a fortiori* the same question is common and predominates at *certification*, where Plaintiff need only show the question is common, not even that she will prevail at trial. And, as is readily apparent, none of this evidence is unique to any class member.

LoanStream's reliance on standing and merits decisions regarding Article III standing, including *TransUnion*, *Cordoba*, and *Huber*, only underscores the point that no individualized issues exist. Conspicuously absent from LoanStream's opposition are the consistent Ninth Circuit authorities holding that Article III standing is *not* an individualized, let alone disputed, question in a TCPA class action, because the statutory violation *is* the harm. *Kearns v. LoanDepot.com, LLC*, No. 8:22-CV-01217-JWH-JDE, 2026 WL 713024, at *2 (C.D. Cal. Mar. 2, 2026) (addressing similar challenge on reconsideration and quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2017)); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022) ("Our analysis in Van Patten

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

therefore not only survives TransUnion—it is strengthened by it."); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1221 (9th Cir. 2022) ("A plaintiff alleging a violation under the TCPA need not allege any additional harm beyond the one Congress has identified."); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023) ("Receiving even one unsolicited, automated text message from [a telemarketer] is the precise harm identified by Congress, and sufficient to state an injury in fact under Article III. Moreover, standing is not exclusive. The fact that the primary or customary user of a phone may suffer a concrete injury from an unwanted call or text message does not preclude the phone's owner and subscriber from suffering the same."). Here, the injury anchoring every claim, receipt of unwanted solicitations to numbers on the do not call list, is established for the class by the same LizDev records.

**B. Consent Is Not an "Individualized Issue." It Is LoanStream's Affirmative Burden, and Its Only "Evidence" Is a Self-Serving Declaration That, at Most, Creates a Common Jury Question.**

LoanStream argues that there is evidence of consent and that consent creates individualized issues. That argument fails three times over.

*First*, LoanStream has the burden backwards. Express consent is an affirmative defense on which the defendant bears the burden of proof, and it is "not an element of a plaintiff's *prima facie* case." *Van Patten*, 847 F.3d at 1044. Labeling a brief section "There is Evidence of Consent" does not shift to Plaintiff

- 6 -

the obligation to disprove a defense LoanStream must establish through *some* evidence. And where, as here, the defendant adduces no consent evidence purportedly binding any class member, the mere *possibility* of consent does not defeat predominance. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (holding the district court abused its discretion at class certification when it allowed the unsubstantiated possibility of individualized consent to defeat predominance).

 *Second*, LoanStream has no evidence of legally cognizable consent for *anyone*. Its sole proof is Sean Roberts's litigation declaration that the leads were "opt-in" of "consumers who previously provided their consent" (Roberts Decl. ¶ 9). But the governing regulation requires far more than a vendor's say so. TCPA consent demands "a *signed, written* agreement between the consumer and seller which states that the consumer agrees to be contacted by *this seller* and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii); *Katz*, 2026 WL 636723, at *5 (holding that consent must "identify the specific seller" and include the consumer's signature). LoanStream has not produced a single signed writing naming LoanStream as the seller for a single class member, or any writing purporting to suffice for any form of consent for any class member, including the Plaintiff.

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

Worse, Roberts has no personal knowledge of any opt in, rendering his Declaration inadmissible hearsay. *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) (holding testimony that caller obtained consent from a third party was inadmissible hearsay). At his deposition, Roberts testified that *LizDev* was "responsible for obtaining that opt-in," that "any evidence of an opt in would be in [LizDev's] possession," and that he merely told LoanStream the data was "opted-in" because that is what LizDev told him. (S. Roberts Dep. 45, 48.) A vendor's hearsay assurance, built on a subvendor's hearsay, is not consent. *Hossfeld*, 726 F. Supp. 3d at 873.

*Third*, the common record affirmatively *negates* consent on a classwide basis. The very LizDev invoice LoanStream received, and "discarded," warned in writing that the leads ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. C to MCC, LizDev Invoice). That is common documentary proof, applicable to every class member, that there was no consent. Whether Global Experts dialed a consented opt-in list or an unscrubbed, noncompliant one is a single question with a single answer for the entire class. It does not vary from member to member, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 451 (2016), since the list either has legally sufficient consent associated with it or it does not.

The decision LoanStream ignores forecloses its position. In *Katz*, the defendant submitted a declaration from a vendor citing a specific visit to a third-party website. The court noted that the Defendant "provides no direct proof from [the website itself], and plaintiff has affirmatively stated in his declaration and at deposition that he never visited that website. Consequently, this is an issue for a factfinder to resolve." 2026 WL 636723, at *5. Roberts's generalized assertion based on some purported third party representations, which are belied by that third party's own written statement that the leads ██████████████████████

████████████████████████████████

████████████████████████████████

██████████ (Ex. C to MCC, LizDev Invoice), is weaker still. If a specific written consent record raised a jury question, an unsupported hearsay assertion about consent generally cannot defeat *certification*, where the burden and the standard both cut in Plaintiff's favor. *Park*, on which LoanStream relies, is inapposite. There, the defendant had *specific* facts regarding consent. LoanStream has none.

### C. The "Three Companies" Argument Is a Jury Credibility Question That LoanStream Manufactured With a Declaration That Contradicts Both Its Own Declarant and Roberts's Sworn Testimony.

LoanStream's attacks on commonality, predominance, ascertainability (which has been rejected by the Ninth Circuit), and numerosity all reduce to one new assertion, Roberts's declaration that Global Experts called for three

- 9 -

companies: AFN, Lending 3, and LoanStream, and that there aren't "any records" that show which calls were placed for which entity. (Roberts Decl. ¶¶ 10-11.) From this, LoanStream argues the class cannot be identified and that each call requires a mini trial. The argument misunderstands both the facts and Rule 23.

To begin, this is not an individualized issue; it is a single disputed fact: was this one "LoanStream Campaign," or a three-bucket campaign in which the calls cannot be sorted? That fact yields one classwide answer. A jury decides it once, on common evidence, for all 53,726 numbers. Even if the jury must sort calls into buckets, doing so on *common* evidence (the scripts, the LizDev contract, the data fields, and the witnesses' testimony) is not the same as an individualized inquiry into each recipient. LoanStream cites no authority, because there is none, for the proposition that classifying common evidence into categories transforms a common question into tens of thousands of individual ones. In fact, the authorities cut the other way. *E.g.*, *Rosenberg v. CCS Com., LLC*, No. C17-476 MJP, 2018 WL 3105988, at *8 (W.D. Wash. June 25, 2018) (holding that different forms of collection notices and scripts did not defeat certification because the differences were not substantively material enough to defeat predominance, and noting that "there is still no necessity of *unanimity* of the common questions, simply that the common questions outweigh individual issues."); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 5653153, at *4 (N.D. Cal. Sept. 23, 2020)

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

(holding whether defendant ratified the actions of forty-nine independent contractor sales associates was a common question based on common evidence and that, on this point, "[d]efendant appears impermissibly to argue merits over class certification issues.").

More fundamentally, the predicate fact LoanStream now asserts is squarely disputed by other witnesses. The defense cannot have it both ways.

Elizabeth Stone, LizDev's CEO and the source of the data set, declared under penalty of perjury on April 10, 2026 that Resmo "obtained leads from LizDev to use in connection with a calling campaign I understand he ran *for LoanStream* ('LoanStream Campaign')," and that the produced records are "logs of outbound calls placed by Global Experts, LLC in connection with the *LoanStream Campaign*." (Stone Decl. ¶¶ 4, 7 (emphasis added).) The very source of the data did not describe "three campaigns" or call the data "indeterminable."

At his deposition, Roberts himself testified that "[w]e ran two campaigns *with LoanStream*," and that leads were "originated, first of all to go to LoanStream." This is consistent with the call Plaintiff received identifying "[LoanStream] Mortgage," precisely as the Call Center Scripts directed. (S. Roberts Dep. 22-23, Ex. G to MCC.) What's more, Roberts's declaration is also unreliable when viewed in light of the other evidence in this case. Roberts now claims the campaign ran "between September 27, 2021 and November 16, 2021

- 11 -
REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

only" (Roberts Decl. ¶ 17), but the P&L statements reflect █████████████

Those contradictions go to the weight a jury will give his testimony. They are not a basis to deny certification. Where the record contains irreconcilable inconsistencies among the defense's own witnesses, the resolution belongs to the factfinder.

Finally, the documents produced in this litigation corroborate Stone and the Roberts deposition. The LizDev contract and invoice list the client as "Loan Stream," at ███████████████████████████ ██████████████████████████ (Ex. C to MCC); and LoanStream's P&L ████████ █████████████████████████████████ (Ex. B to MCC). LoanStream doesn't explain how an invoice naming it, which it admits its accounting team received and discarded, was in reality a marketing effort making calls for three separate companies, two of which don't even appear on the invoice from the company making the calls. And if narrowing were necessary, the appropriate course is to certify the common liability issue, not deny certification.

So, whether this was the "LoanStream Campaign," or a sortable three-company effort is a classic credibility contest between Roberts's eve-of-opposition declaration on the one hand, and (i) his own prior sworn testimony, (ii) Stone's sworn declaration, and (iii) the contemporaneous documents on the other. That is precisely what juries resolve on common evidence, once, for the whole class. A defendant cannot manufacture an "individualized issue" by filing a self-serving

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

declaration that conflicts with the rest of the record. If anything, the conflict among LoanStream's own witnesses is the strongest possible proof that a *common* question exists and predominates.

**D.  The Expert Dispute Is a Classic Battle of the Experts That Goes to Weight and Credibility, Not a Bar to Certification.**

LoanStream contends Plaintiff's expert, Aaron Woolfson, is wrong because its rebuttal expert, Madelyn Moran, opines that the LizDev data is not a "historical CDR" and lacks certain fields. That is a disagreement between two qualified experts about the meaning and reliability of the same data set and Ms. Stone's own declaration, which establishes that it *is* a historical CDR. Expert disagreement is not a Rule 23 obstacle, particularly insofar as the *inadmissibility* of expert testimony is "not a proper basis to reject evidence submitted in support of class certification." *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS), 2021 WL 4438391, at *3 (S.D. Cal. Sept. 28, 2021). In fact, "expert testimony may not always be necessary for class certification." *Reynoso v. All Power Mfg. Co.*, No. SACV161037JVSJCGX, 2018 WL 5906645, at *5 (C.D. Cal. Apr. 30, 2018). The battle of the experts is the quintessential merits dispute reserved for trial.

That is true of the expert testimony here. Mr. Woolfson opines that the records are reliable and that there is a reliable, classwide method to identify class members. Specifically, he isolated 272,092 calls made to 53,726 unique numbers

that were on the National Do Not Call Registry for more than thirty days and were called two or more times within a 365 day period, of which 260,148 calls to 48,848 unique numbers already carried a name and full address, with the remainder identifiable through reverse lookup, a method this Court has endorsed. (Woolfson Decl. ¶ 3, 42-46); *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 601 (C.D. Cal. 2021). Moran disagrees. The jury will decide which expert and which methodology to credit.

Ms. Moran's central criticism, that the data lacks the dates needed to determine whether two or more calls fell within a twelve month period, is overstated, and in any event common to the class. The LizDev data is not silent on timing. For each number it records a called_count reflecting the number of call attempts and a last_local_call_time reflecting when the last call was placed, and all but a handful of anomalous records carry a last_local_call_time within a single, narrow window between September 2021 and November  2021. Two consequences follow, neither of which requires the Court to resolve a *Daubert* question or try the merits.

First, including on the basis of Mr. Roberts's declaration here, any number with a called_count of two or more was necessarily called more than once within that roughly six-week span, a period well inside "any 12-month period," 47 U.S.C. § 227(c)(5). Second, the thirty-day element is tested by comparing each number's

- 14 -

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

first NDNCR registration date, against that bounded call window, exactly as Woolfson did. The absence of a discrete timestamp for every individual dialing attempt does not prevent this analysis. The call counts and the bounded date range are enough to perform it classwide, which is all certification requires.

LoanStream's own authorities require that result. LoanStream cites *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018), but *Sali* holds that even an inquiry to evidence's "ultimate admissibility should go to the *weight* that evidence is given at the class certification stage," evaluated under a *Daubert*-like standard. *Id.* at 1006. The Ninth Circuit also expressly cautioned that "admissibility must not be dispositive." *Id.* Applying *Sali* here, it is readily apparent that the Plaintiff's expert evidence is at least admissible and should be given the weight it is due at class certification, that is, in showing that Rule 23's prerequisites have been satisfied. LoanStream's authentication objection fares no better. The data set was produced by LizDev, the very entity whose calling platform generated it, in response to a subpoena, and LizDev's CEO, Elizabeth Stone, declared the same. That is the circumstantial and custodial showing Rule 901 contemplates, and at the certification stage any residual dispute over admissibility goes to weight, not whether it may be considered at all. *Sali*, 909 F.3d at 1006.

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

LoanStream also cites *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025), which counsels that courts should inform the predominance inquiry on whether common proof will be "available or admissible at trial." Woolfson's analysis is both. LoanStream doesn't make any serious argument for why Woolfson's analysis would be inadmissible under *Daubert*. Moran's competing read makes Woolfson's testimony contested, not unavailable or inadmissible. Critically, the expert dispute is itself classwide.

Even accepting that the Court must rigorously evaluate the common proof at certification, Moran's criticisms do not create any individualized issues. At most, Moran disputes the reliability and meaning of a single common dataset. If the Court credits Woolfson, the class is identifiable. If the Court credits Moran, the issue fails on a classwide basis. Either way, no absent class member must supply individualized proofs. That is why Moran's report does not defeat predominance.

Whichever expert the jury believes, the answer applies to every class member identically. The data either is, or is not, a reliable basis to identify the class. That is the definition of a common question, and it predominates. A *Daubert*-style merits challenge to Woolfson is for another day, if at all. The appropriate remedy is to test Moran's claims at trial, not to deny class treatment to tens of thousands of consumers called from the same campaign data used by both experts and identified by Mr. Woolfson.

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

**E. LoanStream's Remaining Attacks Are Meritless.**

    **I.     An Experienced TCPA Litigant Is Not Inadequate, and Her Supposed "Unique Defenses" Are the Class's Common Defenses.**

Adequacy asks whether the representative has conflicts and will prosecute the class claims vigorously, and typicality asks whether her claims arise from "the same course of conduct" as the class's. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011). Plaintiff's claim arises from the identical campaign, and the same uniform data, as every class member's, and she possesses no unique defenses or conflicts of interest. LoanStream's contrary arguments fail.

That Plaintiff is an experienced TCPA litigant is not disqualifying. As the District Court observed in *Van Patten*, "a lot of observers take a very cynical view of class action lawsuits and the plaintiffs and lawyers behind them—but it has nothing to do with the merits of class certification. The fact is that Congress passed the TCPA and created a claim, and while many recipients of the [calls] at issue in this case would never think to avail themselves of it and bring a federal lawsuit, [Plaintiff] is perfectly entitled to." *Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031, at *9 (S.D. Cal. Nov. 8, 2013). Ms. Hudson-Bryant is entitled to bring other suits, too: "Nothing about the frequency of [a plaintiff's] litigation implies that she is less suited to represent others," and there is no rule that "someone whose rights have been violated by 50 different persons

may sue only a subset of the offenders." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

The Western District of Washington applied these principles to reject an identical attack on a TCPA representative, made by a real estate telemarketer no less, in holding that a representative's "decision to assert her rights against other firms that potentially violated the TCPA does not injure any other potential class members, make her a focus of the litigation, or materially impact the case currently before the court," and so "her litigation history and past losses in similar cases [did] not provide [the defendant] a unique defense." *Usanovic v. eXp Realty LLC*, No. C23-0687JLR, 2026 WL 864633, at *9 (W.D. Wash. Mar. 30, 2026). In short, that Ms. Hudson-Bryant has repeatedly been called by telemarketers and sued them does not create a "serious credibility problem" that would cause counsel to "devote too much attention to rebutting an individual defense" or "reduce the likelihood of prevailing on the class claim." *Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2018 WL 1558263, at *4 (S.D. Ohio Mar. 5, 2018); *see also Moser v. Health Ins. Innovations, Inc.*, No. 17CV1127-WQH(KSC), 2019 WL 2271804, at *4 (S.D. Cal. May 28, 2019) (holding discovery into plaintiff's income and prior litigation was irrelevant to whether he was a typical or adequate class representative). The Ninth Circuit has uniformly rejected Defendant's line of reasoning. *Langer v. Kiser*, 57 F.4th 1085, 1090 (9th Cir. 2023) ("[A] district court

may not reject an ADA litigant's stated intent to return to a location simply because the litigant is a serial litigant who brings numerous ADA cases").

LoanStream's attempt to brand Plaintiff a liar because she regularly answered her elderly mother's phone and answered as her elderly mother in this instance fares no better. In *Langer*, the Ninth Circuit held that a district court may not rely on previous litigation history to "question his credibility", 57 F.4th at 1097, and other courts have rejected the perverse notion that "playing along" with an illegal caller somehow bears on a Plaintiff's credibility. *See, e.g.*, *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2025 WL 4348808, at *7 (N.D.W. Va. Dec. 3, 2025) (holding frequent litigator had standing precisely because of her "commitment to prosecuting class claims and her willingness the place the interests of the class above her own." and citing certified actions with the same plaintiff); *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019) ("The fact that he "play[s] along" with telemarketing scripts to "find out who [they] really are" is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation.").

The contrast with genuine inadequacy proves the point. In *Morales v. Sunpath Ltd.*, No. CV 20-1376-JLH-SRF, 2025 WL 2020053, at *5-6 (D. Del. July

11, 2025), the kind of TCPA case LoanStream wishes it had, the court found *a single* plaintiff (Callier) was inadequate because he was "likely to be preoccupied with defenses unique to him and inapplicable to other members of the class," including issue preclusion defenses from his own prior litigation, his own consent, an undisclosed felony criminal conviction and bankruptcy, and his actual purchase of products in his ex-wife's name without her consent. Tellingly, the *same* court in the *same* opinion found other representatives *adequate*, because those defenses were peculiar to Callier alone. Ms. Hudson-Bryant carries none of that baggage, and LoanStream cannot seriously contend that her short interaction with the caller in which she confirmed she was her mother somehow delegitimizes her claim. She has no preclusion problem, no individualized prior consent, and no defense that does not apply equally to the class. The only thing "unique" about her is the experience that *Patten*, *Murray*, *Mey*, and *Shelton* hold is no obstacle at all.

Nor are LoanStream's "unique defenses" unique. The consent and "on behalf of" theories LoanStream presses against Plaintiff are the same theories it presses against the entire class, as explained above. A defense common to the class cannot also be a defense "unique" to the representative that "threaten[s] to become the focus of the litigation." The Ninth Circuit reached its conclusion in *Langer* and reversed a faulty credibility determination made after a full *bench trial*. If a litigant's history cannot support a credibility finding after trial, it surely cannot

support one on a paper record at certification. Credibility and typicality, like the rest of LoanStream's defenses, are for the jury and do not pose a barrier to certification.

## II.   Plaintiff Has Standing Because A TCPA Violation Is a *Per Se* Concrete Injury, and the Statute Protects the Phone's Regular User.

LoanStream's contention that Plaintiff lacks standing because the number was her elderly mother's misstates the law and, at most, identifies a disputed fact for trial. In the Ninth Circuit, the *receipt* of an unwanted telemarketing call is itself a concrete Article III injury: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," so "a violation of the TCPA is a concrete, de facto injury" and a plaintiff "need not allege any additional harm beyond the one Congress has identified." *Van Patten*, 847 F.3d at 1043. *TransUnion* did not undermine *Van Patten*, it strengthened it. *Wakefield*, 51 F.4th at 1118. In *Wakefield*, the Ninth Circuit rejected the argument that *TransUnion* abrogated statutory TCPA standing, holding that an intangible injury is "sufficiently concrete" where Congress created a cause of action for it and it has a close historical analog. *Id.* The injury, the calls themselves, is established for the class by the common LizDev records. In any event, the possibility the class may contain some uninjured members is insufficient

to defeat certification. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022).

LoanStream's premise that only the "owner" may sue under the TCPA is dead wrong. This matters because this legal misapprehension forms the centerpiece for why Ms. Hudson-Bryant is allegedly plagued with individualized issues because she answered her elderly mother's phone, for which Ms. Hudson-Bryant paid the bill. The Ninth Circuit has held that the owner and subscriber of a number on the Do-Not-Call Registry "suffers a concrete, *de facto* injury when [her] right to be free from such communications is violated—even if the communications are intended for or solicited by another individual, and *even if someone else is using the phone at the time the messages are transmitted*." *Hall*, 72 F.4th at 986 (emphasis added). The Ninth Circuit's holding in *Hall* thus easily dispenses with LoanStream's theory that Ms. Hudson-Bryant suffered no injury because the calls were intended for her mother and sent to her mother's telephone number.

Moreover, the TCPA's protections reach *both* the subscriber *and* the phone's regular or customary user alike. *Id.*; *N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1168-70 (9th Cir. 2020) (a case LoanStream itself cites). Here, the record places Ms. Hudson-Bryant squarely within that protection on both accounts. First, Ms. Hudson-Bryant testified that she took physical possession of her mother's phone, making her the customary and regular user of the phone, and that

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

she paid the bill, she later transferred the number into her own name, and personally answered and recorded the very call at issue. At minimum, Ms. Hudson-Bryant was plainly the customary user (if not the subscriber) of her elderly mother's phone, since she regularly handled calls directed toward her mother.

LoanStream's suggestion that Plaintiff can show only a single call fails on the record. The TCPA does not require that the recipient answer each call. *See Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely."). And the LizDev data records confirm that Plaintiff's number was called more than once. Plaintiff is squarely within the class she seeks to represent.

At minimum, to the extent the question of whether Ms. Hudson-Bryant was a subscriber or regular or customary user of the phone number at issue is a disputed question (it is not), that is better answered on summary judgment and in any event isn't a unique enough question that threatens to overwhelm the litigation with it as a unique defense. It is thus not a basis to deny certification. And to the extent LoanStream suggests absent members must each independently prove standing,

that is foreclosed by *Hall* and *Wakefield*. The calls that constitute the injury are shown by the same common records for the entire class.

### III. LoanStream Argues the Law of the Wrong Circuit on Ascertainability.

LoanStream devotes a large portion of its opposition to "ascertainability," insisting Plaintiff must show "a reliable and administratively feasible mechanism" for identifying class members and relatedly calling Mr. Woolfson's report "unreliable" and the proposed class "not ascertainable." It devotes a lead heading and almost four pages of briefing to why "ascertainability is a prerequisite to certification." There is no such requirement in this Circuit, and the fact that LoanStream builds a headline argument on it is itself revealing. The "administratively feasible mechanism" test comes entirely from the Third Circuit decisions in *Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015), and "*Hayes*"[1] .

But the Ninth Circuit *expressly considered and rejected* an implied ascertainability argument to class certification in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124, 1133 (9th Cir. 2017). There, the Ninth Circuit rejected the use of the term "ascertainability" and instead construed "ascertainability" to mean "administrative feasibility." *Id.* at 1124 n.2. It then declined "to adopt an

---

[1] Defendant provides only the short citation for *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) in its brief and omits it from its table of authorities, which makes its attacks on Plaintiff's counsel for other procedural defects particularly misplaced.

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

administrative feasibility requirement." *Id.* at 1133. LoanStream does not cite *Briseno*. It does not acknowledge that the Ninth Circuit has foreclosed the very test on which its lead argument depends. It instead transplants law that the Ninth Circuit rejected. Relatedly, other courts in the Ninth Circuit have rejected the notion that one must personally register their number on the Do Not Call list. *Nichols v. eHealthInsurance Servs., Inc.*, No. 23-CV-06720-EKL, 2025 WL 689721, at *3 (N.D. Cal. Mar. 3, 2025); *Murch v. GPS Cap. Mkts., LLC*, 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025).

Relatedly, LoanStream's residential argument is both counterfactual and legally backwards. The campaign solicited consumers to refinance their *home* mortgages, the leads were consumer mortgage leads, and it is implausible on its face that a home mortgage solicitation campaign was dialing business lines. And to the extent line type is ever in question, it is determinable classwide through the same commercial databases Woolfson describes, not through individual inquiries.

Under the standard that *does* apply, the class is defined by objective criteria drawn from the LizDev data, and Mr. Woolfson has already identified some of its members by number, name, and address and will identify the rest through reverse lookup. The "is the data reliable" dispute LoanStream relabels as a failure to meet non-existent "ascertainability" is the merits and expert dispute addressed above, common to the class, and for the jury to eventually weigh.

REPLY TO MOTION FOR CLASS CERTIFICATION

*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

## IV.   Numerosity and Superiority Are Easily Satisfied.

"To certify a class, Rule 23(a)(1) requires a plaintiff to demonstrate the proposed class is too numerous for joinder to be practicable. The rule does not impose a bright-line numerical threshold at which the numerosity requirement is met; rather, the court must evaluate the facts of each case." *Allison v. Dolich*, No. 3:14-CV-01005-AC, 2019 WL 921436, at *14 (D. Or. Feb. 25, 2019), *aff'd*, 815 F. App'x 135 (9th Cir. 2020). "Generally, classes composed of 40 members or more are considered sufficiently numerous to meet the requirement, while classes of 15 or fewer are not." *Id.*

Numerosity is satisfied by orders of magnitude. Mr. Woolfson's expert report has identified 53,726 unique numbers that were called while on the DNC list for over 30 days with more than two calls. (Woolfson Decl. ¶ 46). LoanStream's numerosity argument is merely its "three companies" theory relabeled. But even on conservative assumptions, the class dwarfs Rule 23(a)(1)'s threshold.

Superiority is plain. Given the relatively small statutory damages per violation, individual lawsuits under the TCPA would be impractical for most class members. With $500 per call at stake across tens of thousands of small claims, common proof of LoanStream's liability makes a single class trial vastly superior to a flood of individual suits. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019); *Wakefield*, 51 F.4th at 1120; *Kearns v. LoanDepot.com, LLC*, 2025

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

WL 3010182, at *8-9 (C.D. Cal. Oct. 20, 2025) (holding superiority was easily met in TCPA class action). LoanStream's refrain that "every class member is a witness" assumes the very individualized inquiry premise that Plaintiff disputes, that *Krakauer* rejected, and simply shows why adjudication of these matters in a class action is clearly superior. Moreover, it simply assumes its own merits position, that consent and call identification requires individual proof, which the common evidence refutes.

### V.   The Local Rule 7-3 Objection Does Not Warrant Denial.

LoanStream asks the Court to deny a fully briefed class certification motion, or disqualify counsel, based on Local Rule 7-3. That request fails for one dispositive reason, because LoanStream identifies no prejudice. In this District, failure to comply with the Local Rules does not automatically require the denial of a motion, particularly where the non-moving party has suffered no apparent prejudice. *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) (citing cases). That is this case here. LoanStream filed an opposition, an expert report, and exhibits. It was not deprived of anything the rule exists to protect.

The conferral history confirms the absence of prejudice. As Mr. Paronich's accompanying declaration establishes, the parties discussed the contemplated class certification motion well before it was filed, including on the very April 18, 2025

call LoanStream describes. On that call the parties addressed the case schedule and the work remaining before certification could be briefed, and specifically that the depositions of Serene Vernon, LoanStream's Rule 30(b)(6) designee, which was only taken almost a year later on March 31, 2026 owing to Ms. Vernon's pending criminal charges. LoanStream thus knew that Plaintiff intended to move for class certification and that the motion would rest on Vernon's testimony.

The sequence that followed is the opposite of gamesmanship. Owing to this delay brought about by Ms. Vernon's unavailability, Plaintiff did not even receive the certified Vernon transcript until April 10, 2026, within the seven-day window before the April 13 filing, leaving no practical opportunity for a conference keyed to the testimony the motion required, which LoanStream's counsel defended. Recognizing the compressed timeline, Plaintiff's counsel emailed LoanStream on the day of filing, April 13, 2026, offering to confer further on the motion to the extent LoanStream believed the parties' prior discussions were insufficient. LoanStream never responded. It instead held the issue back and raised it for the first time in opposition. A party that declines an express invitation to confer cannot credibly claim it was deprived of conferral. *See Padilla Ayala v. Teledyne Def. Elecs.*, 533 F. Supp. 3d 920, 924 n.2 (C.D. Cal. 2021) (declining to deny motion where movant attempted to confer and it seemed "unlikely that conferring would have avoided this motion").

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

To the extent that LoanStream attempts to make this into a class certification issue, that fails too. As one court put it, "The Court rejects outright Vertical Fitness's argument that class counsel's performance in this case—for example, filing a late motion to amend the complaint—is reason enough to deny them a class counsel appointment. . . . Even if [counsel] has been sloppy at times, the Court wouldn't elevate these to a reason to refuse to appoint them lead counsel in this case." *Patten*, 2013 WL 12069031, at *9 n.5; *see also Usanovic*, 2026 WL 864633, at *1 n.5 (certifying class despite local rule violation by plaintiff's counsel). Denying a fully briefed, meritorious class certification motion, and disqualifying experienced class counsel, over an alleged meet and confer dispute would be a grossly disproportionate response that prejudices only the absent class members, who had no part in it.

## CONCLUSION

This case presents one calling campaign, one call center, one set of scripts, one lead source, and one overarching question of vicarious liability that a jury will answer once, on common evidence, for the entire class. LoanStream does not seriously dispute the question is common. Rather, it disputes *how* the jury should answer it, on consent, on agency, on which entity the calls promoted, and on the data. Those uniform disputes are the merits, and, as the very decision LoanStream chose not to address, *Katz*, confirmed at summary judgment bar, they belong to the

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

jury. Disputed common questions are reasons to certify, not to deny, since the jury's answers will resolve the class's claims in one stroke. Plaintiff respectfully requests that the Court grant the motion, certify the class, appoint Plaintiff as class representative, and appoint the undersigned as class counsel.

Dated: May 26, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
(*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## LOCAL RULE 11-6.2 COMPLIANCE STATEMENT

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,967 words, which complies with the word limit of L.R. 11-6.1.

May 26, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

## ARTIFICIAL INTELLIGENCE COMPLIANCE STATEMENT

Generative artificial intelligence was used to generate portions of this reply and the Table of Contents and Table of Authorities. The filer has reviewed the source material and verified that the artificially generated content is accurate and

complies with the filer's Rule 11 obligations.

May 26, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

May 26, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

REPLY TO MOTION FOR CLASS CERTIFICATION
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*