THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
ADAM R. SCOTT [SBN 333706]
ascott@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303
(f) 619.231.4755

Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCMBC, INC. D/B/A LOANSTREAM MORTGAGE, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS,<br><br>Defendants. | Case No. 8:24-cv-67-FWS-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT OCMBC, INC. d/b/a LOANSTREAM MORTGAGE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:       July 16, 2026<br>Time:       10:00 a.m.<br>Crtrm.:     10D<br><br>Judge:      Hon. Fred W. Slaughter<br>Magistrate: Hon. John D. Early<br><br>Action Filed:  January 11, 2024<br>Trial Date:    October 27. 2026 |

P:4909-5830-8181.19:66075-002                                    Case No. 8:24-cv-67-FWS-JDE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF MOTION ................................................................................. 6

II.  LEGAL STANDARD FOR GRANTING SUMMARY JUDGMENT............ 7

III.  ATTENUATED, PURPORTED CONNECTION BETWEEN THE RELEVANT PARTIES................................................................................ 8

IV.  STATEMENT OF UNCONTROVERTED FACTS ("SUF")....................... 10

    A.  LoanStream Did Not Directly Call Plaintiff or Plaintiff's Mother, Eleanora C. Woods ("Eleanora"). .......................................................... 10

    B.  Plaintiff Only Answered One Call Referencing LoanStream.............. 10

    C.  The Number Was Registered to Eleanora at the Time of the Global Experts Call. ........................................................................... 10

    D.  There is No Evidence of Who Registered the Number on the National Do-Not-Call Registry ("NDNCR")...................................... 11

    E.  Resmo Independently Organized and Coordinated a Call Campaign with Global Experts to Place Calls for *Three* Different Entities. .............................................................................................. 11

    F.  The Unauthenticated Data Set Does Not Specify Who the Calls Were Made "On Behalf Of."............................................................. 12

    G.  The Unauthenticated Data Set Lists Eleanora Woods, Not Plaintiff.............................................................................................. 12

    H.  There is No Relationship Between LoanStream and Resmo or Sean Roberts.................................................................................... 13

    I.  There is No Relationship Between LoanStream and Global Experts .............................................................................................. 14

V.  TCPA LIABILITY ....................................................................................... 14

VI.  PLAINTIFF DOES NOT HAVE EVIDENCE OF ESSENTIAL ELEMENTS OF HER CLAIM. ..................................................................... 15

    A.  There is No Evidence More Than One Solicitation Call Was Placed to the Number "On Behalf of" LoanStream............................ 15

    B.  There is No Evidence Regarding *Who* Registered the Number on the NDNCR................................................................................. 16

VII.  LOANSTREAM DID NOT PLACE THE CALLS; THUS, IT IS NOT DIRECTLY LIABLE FOR THE CALL CAMPAIGN. ................................ 16

VIII.  PLAINTIFF LACKS ARTICLE III STANDING. ....................................... 17

IX.   LOANSTREAM IS NOT VICARIOUSLY LIABLE FOR GLOBAL EXPERTS' OR RESMO'S CONDUCT. ..........................................................18

   A.   The TCPA and Vicarious Liable  ......................................................18

   B.   Neither Resmo/Sean Roberts Nor Global Experts Had Actual Authority to Act "on Behalf of" LoanStream. ....................................19

   C.   Neither Resmo/Sean Roberts Nor Global Experts Had Apparent Authority to Act "on Behalf of" LoanStream. ....................................22

   D.   Loan Stream Did Not Ratify Global Experts', Resmo's, or Sean Roberts' Conduct. ................................................................................23

       1.   There is No Evidence LoanStream Accepted the Benefits of the Alleged Call Campaign. ......................................................24

       2.   There is No Evidence that LoanStream Had Actual Knowledge of the Material Facts. It is Undisputed LoanStream Did Not Know About the Alleged Call Campaign Until After It Concluded and LoanStream Did Not Benefit From the Alleged Call Campaign; Thus, It Is Impossible for LoanStream to Have Had Sufficient Facts to Investigate Further. ..............................................................25

       3.   There is No Evidence LoanStream Being "Willful[ly] Ignorant." ................................................................................26

X.   THERE IS NO EVIDENCE THAT LOANSTREAM WILLFULLY OR KNOWINGLY VIOLATED THE TCPA. ...............................................27

XI.   CONCLUSION. ...................................................................................28

LOCAL RULE 11-6.2 COMPLIANCE STATEMENT ........................................29

P:4909-5830-8181.19:66075-002                -ii-                Case No. 8:24-cv-67-FWS-JDE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing v. Farmers Group, Inc.*,
  2018 U.S. Dist. LEXIS 2414 (N.D. Cal. Jan. 4, 2018) ....................................14

*Abante Rooter and Plumbing, Inc. v. Arashi Mahalo, LLC*,
  2019 U.S. Dist. LEXIS 220708 (N.D. Cal. Dec. 19, 2019) ..............................26

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................7

*In re Dish Network, LLC*,
  28 FCC Rcd. 6574 (2013) ............................................................................16, 17

*Goodell v. BH Auto., LLC*,
  2023 U.S. Dist. LEXIS 54131 (D. Ariz. Mar. 29, 2023) .................................26

*Hall v. Smosh Dot Com, Inc.*,
  72 F.4th 983 (9th Cir. 2023) ........................................................................17, 18

*Hanson v. Am. W. Airlines, Inc.*,
  544 F. Supp. 2d 1038 (C.D. Cal. Mar. 29, 2008) .............................................23

*Henderson v. United Student Aid Funds, Inc.*,
  918 F.3d 1068 (9th Cir. 2019) ..............................................................8, 18, 25

*IMS Health, Inc. v. Mills*,
  616 F.3d 7 (1st Cir. 2010) (vacated on other grounds) ....................................16

*Johansen v. HomeAdvisor, Inc.*,
  218 F.Supp.3d 577 (S.D. Ohio Oct. 31, 2016) .................................................26

*Jones v. Royal Administration Servs., Inc.*,
  887 F.3d 443 (9th Cir. 2018) ......................................................................18, 19

*Katz v. Allied First Bank*,
  2026 U.S. Dist. LEXIS 46583 (N.D. Ill. Mar. 6, 2026) .............................19, 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Kristensen v. Credit Payment Services Inc.*,
879 F.3d 1010 (9th Cir. 2018) ..........................................................8, 18, 23, 25

*Kristensen v. Credit Payment Servs. Inc.*,
2015 U.S. Dist LEXIS 96036 (D. Nev. July 20, 2015) .....................................24

*Leyse v. Bank of Am. Nat'l Ass'n*,
804 F.3d 316 (3d Cir. 2015) .............................................................................17

*Makaron v. GE Sec. Mfg., Inc.*,
2015 U.S. Dist. LEXIS 75240 (C.D. Cal. May 18, 2015)..................................23

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
873 F.3d 1045 (9th Cir. 2017) ..........................................................................18

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 U.S. Dist. LEXIS 52328 (C.D. Cal. Mar. 28, 2018) ................................18

*Meyer v. Capital All. Grp.*,
2017 U.S. Dist. LEXIS 183690 (S.D. Cal. Nov. 6, 2017)..................................26

*In re Monitronics Int'l, Inc.*,
223 F.Supp.3d 514 (W.Va. N.D. Dec. 22, 2016) ..............................................23

*N.L. v. Credit One Bank, N.A.*,
960 F.3d 1164 (9th Cir. 2020) .....................................................................10, 17

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
210 F.3d 1099 (9th Cir. 2000) ............................................................................8

*NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*,
124 F.3d 1094 (9th Cir. 1997) ..........................................................................22

*Rahimian v. Adriano*,
2022 U.S. Dist. LEXIS 46437 (D. Nev. Mar. 16, 2022)...................................22

*Rogers v. Postmates Inc.*,
2020 U.S. Dist. LEXIS 121831 (N.D. Cal. July 9, 2020) .................................23

*Sengenberger v. Credit Control Servs.*,
2010 U.S. Dist. LEXIS 43874 (N.D. Ill. May 5, 2010) ....................................27

*Soremekun v. Thrifty Payless, Inc.*,
509 F.3d 978 (9th Cir. 2007) ..............................................................................7

P:4909-5830-8181.19:66075-002                    -4-                    Case No. 8:24-cv-67-FWS-JDE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Thomas v. Taco Bell Corp.*,
    582 Fed. App'x 678 (9th Cir. 2014) .................................................................22

*Thomas v. Taco Bell Corp.*,
    879 F. Supp. 2d 1079 (C.D. Cal. 2012) ...........................................................14

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .........................................................................................17

*Trindade v. Reach Media Grp., LLC*,
    2014 U.S. Dist. LEXIS 98180 (N.D. Cal. July 18, 2014) .................................27

*Valdes v. Nationwide Real Est. Executives, Inc.*,
    2021 U.S. Dist. LEXIS 100931 (C.D. Cal. Apr. 22, 2021)................................19

*Warciak v. Subway Rests., Inc.*,
    949 F.3d 354 (7th Cir. 2020) ............................................................................22

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ..........................................................................19

*Wilson v. Skopos Fin., LLC*,
    2026 U.S. Dist. LEXIS 61802 ...........................................................................27

**Statutes**

47 U.S.C. § 227(b)(3) .........................................................................................27

47 U.S.C. § 227(c)(5) ....................................................................................14, 15

Telephone Consumer Protection Act.................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200(c) .......................................................................................16

Fed. R. Civ. P. 56(c), (e)......................................................................................8

Restatement (Third) of Agency § 1.01 cmt. c ......................................................19

Restatement (Third) of Agency § 3.03 ................................................................22

Restatement (Third) of Agency § 4.01 ...........................................................24, 26

Restatement (Third) of Agency § 4.06 ................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## I.   SUMMARY OF MOTION

Plaintiff Kimberly Hudson-Bryant ("Plaintiff") contends Defendant OCMBC, Inc. d/b/a LoanStream Mortgage ("LoanStream") is vicariously liable for a telemarketing campaign allegedly conducted by a non-party, defunct Jamaican company, Global Experts, Limited ("Global Experts") supposedly for the purpose of generating mortgage loans. Plaintiff acknowledges LoanStream itself did not make the alleged calls and did not contract with Global Experts. Instead, Plaintiff claims now-dismissed Premier Financial Marketing, LLC dba Resmo ("Resmo") hired Global Experts to make calls on LoanStream's behalf.

Plaintiff's case suffers from several flaws, each of which entitles LoanStream to summary judgment:

- Plaintiff cannot establish that she received more than one telemarketing call "on behalf of" LoanStream. Plaintiff claims to have received two such calls, but she did not answer the first call, and no voicemail was left. Accordingly, Plaintiff can only speculate what the purpose of the first call was, and if it was "on behalf of" LoanStream.

- Plaintiff is not the real party in interest and she lacks Article III standing to assert her claims because the Number (defined below) did *not* belong to her during the relevant time, she was *not* a customary user of the Number, and she was *not* in the Number's owner's (Plaintiff's mother, Eleanora Woods') "zone of interest" at the time of call.

- The undisputed evidence shows Resmo hired Global Experts to make phone calls "on behalf of" *three* entities: Lending3/L3, American Financial Network, Inc. ("AFN"), and LoanStream. But, there is no evidence that identifies *which* specific telephone calls were made by Global Experts "on behalf of" *which* of these three entities. The unauthenticated data set Plaintiff relies on simply does not specify calls made "on behalf of" Lending 3/L3 versus AFN versus LoanStream. Accordingly, Plaintiff cannot satisfy

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

her threshold burden of establishing she received more than one telemarketing call "on behalf of" LoanStream.

- For LoanStream to be vicariously liable for the conduct of Global Experts, Plaintiff must prove that Global Experts was LoanStream's agent for the purposes of making telemarketing/solicitation calls. Yet, the undisputed evidence is that Global Experts had no financial or contractual relationship with LoanStream; Resmo/Sean Roberts had no financial or contractual relationship with LoanStream; and LoanStream had no participation in Global Experts' telemarketing campaign, let alone the legally required ability to control it. LoanStream did not pay Global Experts, Resmo, Roberts, or anyone else for Global Experts' telemarketing campaign. And, LoanStream neither benefitted from Global Experts' conduct nor ratified it. There is no evidence that LoanStream funded a single mortgage loan arising from Global Experts' conduct. Indeed, there is evidence that LoanStream only learned of Resmo's and Global Experts' conduct long *after the telemarketing campaign had ended.*

Because Plaintiff cannot establish required elements of her Telephone Consumer Protection Act ("TCPA") claim, LoanStream is entitled to judgment as a matter of law.

## II.    **LEGAL STANDARD FOR GRANTING SUMMARY JUDGMENT.**

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On an issue where the opposing party will bear the burden of proof at trial, the moving party can prevail merely by demonstrating the opposing party lacks evidence to support its case. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the

motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Id.* at 249-50 (bold added). The opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce *admissible* evidence showing a genuine dispute of material fact exists. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

"Whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship." *Henderson v. United Student Aid Funds, Inc.,* 918 F.3d 1068, 1073 (9th Cir. 2019); *Kristensen v. Credit Payment Services Inc.*, 879 F.3d 1010, 1012-13 (9th Cir. 2018) (affirming grant of summary judgment based on plaintiff's failure to establish a genuine issue of material fact as to defendant's liability under the TCPA pursuant to a ratification theory of agency).

## III.    ATTENUATED, PURPORTED CONNECTION BETWEEN THE RELEVANT PARTIES

To hold LoanStream liable for the Plaintiff-labeled "LoanStream Campaign," Plaintiff needs to establish that all of these third-parties – Sean Roberts/Resmo and Global Experts – acted under actual authority, apparent authority, or ratification principles of agency liability for each and every call that was made. Dkt. 37 (FAC ¶¶ 17, 27, 30-50).

The below graphic illustrates the relevant players and their alleged role in the supposed "Call Campaign" (defined below):

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT



This Motion will focus on three flaws in Plaintiff's case: (1) Plaintiff cannot establish that she received more than one telemarketing/solicitation call "on behalf of" LoanStream; (2) Plaintiff is not a real party in interest and has no Article III standing; (3) Plaintiff cannot establish that LoanStream is viciously liability for Global Experts' and/or Resmo/Sean Roberts' conduct, which, if granted, would be case dispositive as to LoanStream.

/ / /

## IV.    STATEMENT OF UNCONTROVERTED FACTS ("SUF")

### A.    LoanStream Did Not Directly Call Plaintiff or Plaintiff's Mother, Eleanora C. Woods ("Eleanora").

Plaintiff alleges she received two telemarketing calls "on behalf of" LoanStream at the telephone number ███████1729 (the "Number"): the first call was unanswered with no voicemail; and Plaintiff recorded the second call, which Plaintiff answered claiming to be "Ms. Woods," who is Plaintiff's mother. FAC ¶ 17-20; SUF 1-9. At the time of the calls, October 2021, the Number was registered to Eleanora. SUF 9.

No LoanStream employee ever directly called or spoke to Plaintiff. SUF 13-14. No LoanStream employee ever directly called or spoke to Eleanora. SUF 15-16.

### B.    Plaintiff Only Answered <u>One</u> Call Referencing LoanStream.

Plaintiff answered and recorded the second phone call while in Texas (the "Global Experts Call"). SUF 7, 10. When the caller asked "Is this Ms. Woods," Plaintiff responded "yes". SUF 8.

Plaintiff was not physically with Eleanora during the Global Experts Call. SUF 10-12. At the time of the Global Experts call, Plaintiff lived in Texas and Eleanora lived in California. SUF 12.

### C.    The Number Was Registered to Eleanora at the Time of the Global Experts Call.

In October 2021, AT&T was the Number's service provider. SUF 17-18. The Number was initially Eleanora's landline (Plaintiff's ██ year-old mother). SUF 9, 19. AT&T managed the landline, which later converted to a cellular number. SUF 19.

The AT&T billing statement for October 2021 was addressed to **Eleanora Woods** at her home in ███████, California. SUF 20.

The Number was  transferred into *Plaintiff's* name in **May 2022**. SUF 21.

Plaintiff contends that on January 3, 2023, she contacted LoanStream on *behalf of her mother*, Eleanora, concerning an alleged violation of the TCPA (the "Letter").

SUF 22. Plaintiff wrote the Letter in her capacity as Eleanora's Power of Attorney. SUF 23. The Letter refers to the Number as "my phone". SUF 24. The Letter also informed LoanStream that Eleanora's Number received two phone calls – on October 12, 2021 and October 19, 2021. SUF 25.

**D.      There is No Evidence of Who Registered the Number on the National Do-Not-Call Registry ("NDNCR").**

Plaintiff does not know who registered the Number on the NDNCR. SUF 27. Plaintiff does not recall registering the Number herself. SUF 28. Nor does Plaintiff know if Eleanora registered the Number. SUF 29.

**E.      Resmo Independently Organized and Coordinated a Call Campaign with Global Experts to Place Calls for _Three_ Different Entities.**

Resmo independently organized and coordinated a call campaign with Global Experts to place calls and identify potential leads for three different entities: (i) AFN; (ii) Lending 3 (also known as "L3"); and (iii) LoanStream (the "Call Campaign"). SUF 30. The Unauthenticated Data Set (defined below) purports to show the number of calls made to a particular phone number and the timing of the last call made. SUF 37. But it does not show who, when, or what numbers Global Experts called on behalf of LoanStream (as opposed to L3 or AFN). SUF 38.

The alleged "call scripts", along with Sean Roberts' testimony, demonstrate that the Call Campaign related to other entities, including AFN and L3. SUF 47-48. The call scripts do not mention LoanStream by name; instead, they reference "LS mortgage" which is not LoanStream's name or a name under which it does business. SUF 49. Other mortgage companies exist with "LS" (e.g., LendSure Mortgage Corp.) www.lendsure.com (last visited 5/28/26). SUF 50.

According to Sean Roberts, the Call Campaign was conducted as follows: (i) Resmo obtained a list of opt-in leads, which consisted of consumers who previously provided their consent to be contacted because, among other things, they expressed their interest in securing and/or refinancing mortgage loans (the "Leads"); (ii) Resmo

compared the Leads against the NDNCR; (iii) Resmo provided the vetted the Leads to Global Experts; (iv) Sean Roberts understands that Global Experts then called some of the Leads that Resmo vetted through the NDNCR; and (v) for consumers who expressed interest, Global Experts transferred the call to Resmo to discuss mortgage options that were potentially available through AFN, L3, and LoanStream. SUF 31.

### F.    The Unauthenticated Data Set Does Not Specify Who the Calls Were Made "On Behalf Of."

The data set produced by third-party LizDev, Inc. ("LizDev") is not authenticated (the "Unauthenticated Data Set"). SUF 33. There is no evidence regarding who created the Unauthenticated Data Set, how it was prepared, when it was prepared, or how it was maintained. SUF 34. LizDev does not know where it got the Unauthenticated Data Set from, whether it be Sean Roberts or Global Experts. SUF 35. Neither Sean Roberts nor Resmo created or prepared the Unauthenticated Data Set. SUF 36.

The Unauthenticated Data Set does not explain who each call was made "on behalf of" or the purpose of each call. SUF 38.

### G.    The Unauthenticated Data Set Lists Eleanora Woods, Not Plaintiff.

The Unauthenticated Data Set associates the Number with "Eleanora Woods" (*not* "Kimberly Hudson-Bryant"). SUF 39. The Unauthenticated Data Set states that Eleanora's Number was called *three* times, but does not reference *when* each call occurred. SUF 40. Instead, the Unauthenticated Data Set only lists the final call attempt made to each phone number (data indicated by the "last_local_call_time" column). SUF 41. According to the Unauthenticated Data Set, the last call placed to Eleanora's Number occurred on "10/19/2021 14:17" (previously defined as the "Global Experts Call"). SUF 42.

The Unauthenticated Data Set lists Eleanora's address as "

" ("████████████") . SUF 43. ████████

("████████"), Eleanora's son and Plaintiff's brother, lived at the ████████ house at

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

the time of the Global Experts Call. SUF 45. ███████ uses the email address ███████████████████████ SUF 46.

### H. There is No Relationship Between LoanStream and Resmo or Sean Roberts.

Sean Roberts testified that "[Resmo and he] never had a relationship with LoanStream, period." SUF 52. Neither Sean Roberts nor Resmo has ever been an employee, agent, or independent contractor of LoanStream. SUF 53-54. No contractual or financial relationship has ever existed between LoanStream and Sean Roberts or Resmo. SUF 55-58.

Additionally, no contractual or financial relationship has ever existed between LoanStream and Global Experts. SUF 59-60.

At no point did LoanStream control the manner or means by which the Call Campaign was conducted in any way. SUF 65. LoanStream also did not supervise the Call Campaign, nor did it supply any resources, tools, or any other goods to assist in the Call Campaign, and it did not make any payments towards services related to the Call Campaign. SUF 66.

At no point did LoanStream authorize, request, instruct, or command Sean Roberts or Resmo -- whether directly, implicitly, or otherwise -- to engage in, or assist with, the Call Campaign on LoanStream's behalf. SUF 67-68. Consequently, at no point did Sean Roberts believe that he (or Resmo) had the express or implied authority to act on behalf of LoanStream with respect to the Call Campaign. SUF 69-70. Sean Roberts also did not receive compensation from a representative, employee, or agent of LoanStream at any point before, during, or after the Call Campaign . SUF 71.

LoanStream, including Serene Vernon, did not learn about the Call Campaign until after the filing of this lawsuit in 2024, years after the campaign concluded in 2021. SUF 74-75.

/ / /

/ / /

## I.   There is No Relationship Between LoanStream and Global Experts.

No contractual or financial relationship has ever existed between LoanStream and Global Experts. SUF 59-60.

The Global Experts Invoices produced by LizDev related to the Call Campaign as a whole, including calls allegedly placed referencing AFN, Lending 3/L3, and LoanStream. SUF 30-31, 47.The Global Experts Invoices also reflect that the Call Campaign only occurred for a limited duration, between September 27, 2021, and November 16, 2021. SUF 51.

At no point did LoanStream pay Resmo or Sean Roberts for the Global Experts Invoices. SUF 66, 72-73, 76-77. Sean Roberts is not aware of LoanStream ever paying Global Experts directly for the Global Experts Invoices. SUF 76. LoanStream has no record of ever paying Global Experts for any work it performed. SUF 77.

## V.   TCPA LIABILITY

"The plain language of the [TCPA] assigns civil liability to the party who 'makes' a call." Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012). "For a person to "make" a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." Abante Rooter & Plumbing v. Farmers Group, Inc., 2018 U.S. Dist. LEXIS 2414, at *9 (N.D. Cal. Jan. 4, 2018) (citation omitted). Here, Plaintiff's lawsuit is based on 47 U.S.C. § 227(c)(5), which states, in part: "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may… bring in an appropriate court of that State – an action…" (emphases added).

/ / /

/ / /

/ / /

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## VI.   **PLAINTIFF DOES NOT HAVE EVIDENCE OF ESSENTIAL ELEMENTS OF HER CLAIM.**

### A.   **There is No Evidence More Than One Solicitation Call Was Placed to the Number "On Behalf of" LoanStream.**

Under 47 U.S.C. § 227(c)(5) of the TCPA, only individuals who have received *at least two* solicitations[1] by (or "on behalf of") the same entity within a 12-month period have a private right of action. Here, there is only evidence that Plaintiff received one solicitation call referencing LoanStream (i.e., the Global Experts Call) on the Number. SUF 1-7. The first call that came from the same telephone number was unanswered and there is no evidence of a voicemail. SUF 5-6. With no answer and no voicemail, it is impossible to know what the purpose of the first call was.

The alleged Call Campaign was organized and executed by Resmo and Global Experts related to *three* entities. SUF 30. Resmo's principal's testimony, coupled with the call scripts, corroborate the scope of the Call Campaign. As such, the Unauthenticated Data Set consists of information related more than just LoanStream (i.e., it also includes information about other third-parties; namely, L3 and AFN). SUF 30-31, 38, 48.

Plaintiff admits LoanStream should be vicariously liable (if applicable) only for the subset of calls that were made "on behalf of" LoanStream. FAC ¶¶ 17, 38-39.

LoanStream's expert, Madelyn Moran, confirms that the Unauthenticated Data Set does not identify *which calls were made "on behalf of" or referencing which entity* (i.e., L3, AFN, or LoanStream). Moran Report ¶¶ 19, 21, 69. And because dates of each call are not listed, the Unauthenticated Data Set does not indicate whether two or more calls were made within a 12-month period to the Number. *Id.* ¶ 34(d), 36-37, 73(b), 80.

---

[1] There is no evidence that the first call was a "solicitation" as required under the TCPA. *Cf.* Dkt. 37 (FAC ¶ 17).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Accordingly, because the undisputed evidence shows that only one solicitation call was placed to the Number "on behalf of" LoanStream, Plaintiff lacks sufficient evidence, and cannot prove, an essential element of her claim; i.e., Plaintiff (or Eleanora) received "more than one" telephone call in violation of the TCPA.

**B.     There is No Evidence Regarding *Who* Registered the Number on the NDNCR.**

The TCPA provides a claim for an individual who "registered *his* or *her* telephone number on the [NDNCR]." 47 C.F.R. § 64.1200(c) (italics added). An opt-in "mechanism like the 'do not call' list is narrowly tailored by nature: 'they restrict only calls that are targeted at unwilling recipients.'" *IMS Health, Inc. v. Mills*, 616 F.3d 7, 22 (1st Cir. 2010) (vacated on other grounds). The TCPA's DNC protections are only intended to protect *the individual* who registers on the NDNCR.

Here, there is no evidence as to *who* registered the Number with the NDNCR. SUF 26-29. Plaintiff does not recall if she did it. SUF 28. Plaintiff does not know if Eleanora did it. SUF 29.

Moran's expert report confirms there is no reliable method for identifying if a call recipient is the same person that registered the telephone number on the NDNCR. Moran Report ¶¶ 100-105.

Because there is no evidence that Plaintiff was the individual who registered the Number on the NDNCR, Plaintiff cannot meet her burden of establishing an essential element of her TCPA claim; thus, judgment should be entered in LoanStream's favor for this reason, too.

**VII.    LOANSTREAM DID NOT PLACE THE CALLS; THUS, IT IS NOT DIRECTLY LIABLE FOR THE CALL CAMPAIGN.**

A defendant is not "directly liable for a violation of the TCPA unless it initiates a call." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013). "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place

a telephone call, and generally does not include persons or entities . . . that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* at 6583.

It is undisputed that LoanStream did not "directly make the call" (SUF 13-16); thus, Plaintiff's case against LoanStream rises and falls on whether it can prove LoanStream is vicariously liable for the acts of third-party (here, Global Experts).

## VIII.  <u>PLAINTIFF LACKS ARTICLE III STANDING.</u>

Plaintiff's unique circumstances – asserting her mother's claims – deprive her of Article III standing. "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 414 (2021). However, SCOTUS has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. This is particularly true when a plaintiff fails to "***assert her own legal rights***, and to count herself among the injured"—which Plaintiff cannot satisfy here. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (emphasis added). In October 2021, Global Experts called *Eleanora's* Number *once* seeking Eleanora. Plaintiff admits she impersonated Eleanora on that call, and AT&T phone records establish the phone number belonged to Eleanora at the time of the call. SUF 18-20.

The TCPA does not shield every individual with access to a phone registered on the NDNCR. *Id.*; *N.L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1170 (9th Cir. 2020) (citing *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015) (noting that TCPA protections are limited to a "zone of interest")). Thus, even though receipt of an unsolicited telemarketing call may constitute a concrete injury for Article III, not every individual "within earshot of an unwanted robocall" is entitled to bring that claim in court. *Leyse*, 804 F.3d at 326. Such is the case here.

Plaintiff brought this action ***on her own behalf***, even though the call at issue was made to the phone of Eleanora Woods, ***Plaintiff's mother***. Dkt. 37 ¶ 17.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Plaintiff was not within Eleanora's "zone of interest" because Plaintiff and Eleanora did not live together and were not physically together at the time of the alleged calls. SUF 10-11. According to AT&T records, the Number was a landline and Plaintiff was not the owner. SUF 17-21. AT&T records confirm that Eleanora was the owner of the phone until *six months after the call*. *Id*.

But Plaintiff still answered her mother's phone on October 19, 2021, and when the caller asked to speak with Ms. Woods, Plaintiff lied by stating that *she was Ms. Woods*. SUF 7-8.

Plaintiff is not the real party in interest. She lacks standing to assert her claims because the Number did *not* belong to her, she was *not* a customary user, and she was *not* in Ms. Woods' "zone of interest" at the time of call. Because Plaintiff did not suffer a concrete injury, she has no legal rights to assert. *Hall*, 72 F.4th at 986.

## IX. LOANSTREAM IS NOT VICARIOUSLY LIABLE FOR GLOBAL EXPERTS' OR RESMO'S CONDUCT.

### A. The TCPA and Vicarious Liability.

A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it. *Kristensen,* 879 F.3d at 1014. "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 cmt. c).

"Agency means more than mere passive permission; it involves request, instruction, or command." *Meeks v. Buffalo Wild Wings, Inc.*, 2018 U.S. Dist. LEXIS 52328, *16-17 (C.D. Cal. Mar. 28, 2018) (citation omitted).

Plaintiff has the burden of establishing that an agency relationship exists. *Henderson,* 918 F.3d 1073 (citations omitted).

Vicarious liability must be based upon at least one of the following theories: (1) apparent authority, (2) actual authority, or (3) ratification. *Jones v. Royal*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Administration Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). Plaintiff's TCPA case fails under all three theories.

**B.    Neither Resmo/Sean Roberts Nor Global Experts Had Actual Authority to Act "on Behalf of" LoanStream.**

A TCPA plaintiff must show that the principal gave "actual authority to place the unlawful calls." *Jones*, 887 F.3d at 449. Before there can be a finding of actual authority, there must be evidence that the principal's "right to substantially control" the agent's activities. *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1024-25 (9th Cir. 2017).

Neither Resmo/Sean Roberts nor Global Experts possessed actual authority to act "on behalf of" LoanStream. First, there is no evidence that LoanStream exerted any control over Global Experts, Resmo, or Sean Roberts such that Global Experts, Resmo, or Sean Roberts became LoanStream's agent. Second, there is no evidence to suggest Global Experts, Resmo, or Sean Roberts had the power to affect LoanStream's legal rights and duties with respect to the single call Global Experts placed referencing LoanStream to Eleanora's Number that Plaintiff answered. Restatement (Third) of Agency § 1.01 cmt. c (an agent must "act[] on behalf of [the principal] with power to affect the legal rights and duties of the [principal]"). Third, there is no evidence that LoanStream authorized or directed Global Experts, Resmo, or Sean Roberts to make calls to numbers on the NDNCR. *See e.g., Valdes v. Nationwide Real Est. Executives, Inc.,* 2021 U.S. Dist. LEXIS 100931, *9-10 (C.D. Cal. Apr. 22, 2021) ("Plaintiff fails to proffer any evidence showing [Defendant] directs its agents to make cold calls that violate the TCPA or that [Defendant] has any control over whom its agents call.").

To the contrary:

- Resmo *independently* organized and coordinated a call campaign with Global Experts to place calls and identify potential leads for *three* different entities: (i) AFN; (ii) L3; and (iii) LoanStream. SUF 30.

- Neither Sean Roberts nor Resmo has ever been an employee, agent, or independent contractor of LoanStream. SUF 53-54.

- Neither Resmo nor Sean Roberts have had a relationship with LoanStream. SUF 55-58.

- At no point did LoanStream control the manner or means by which the Call Campaign was conducted. SUF 65.

- LoanStream did not supervise the Call Campaign, did not supply any resources, tools, or any other goods to assist in the Call Campaign, and did not make any payments towards services related to the Call Campaign. SUF 66.

- At no point did LoanStream authorize, request, instruct, or command—whether directly, implicitly, or otherwise—Resmo or Sean Roberts to engage in, or assist with, the Call Campaign on LoanStream's behalf. SUF 67-68.

- At no point did Resmo nor Sean Roberts believe that they had express or implied authority to act on behalf of LoanStream related to the Call Campaign. SUF 69-70.

- At no point before, during, or after the Call Campaign did Sean Roberts or Resmo ever receive compensation from a representative, employee, or agent of LoanStream for the Call Campaign. SUF 66, 71.

- At no point was Global Experts an approved vendor of LoanStream. SUF 78.

- LoanStream never contracted with Global Experts directly or indirectly to engage in the Call Campaign for LoanStream's benefit. SUF 59-62.

- LoanStream never had a business relationship with Global Experts. SUF 63.

- LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Global Experts. SUF 64.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

- LoanStream never paid Global Experts for any work it performed. SUF 64.

- LoanStream, including Serene Vernon, did not learn about the Call Campaign until after the filing of this lawsuit in 2024, years after the campaign concluded in 2021. SUF 74-75.

Thus, the undisputed evidence shows there was no actual authority for Global Experts, Resmo, or Sean Roberts to "place the unlawful calls" "on behalf of" LoanStream.

LoanStream anticipates Plaintiff will rely heavily on *Katz v. Allied First Bank*, 2026 U.S. Dist. LEXIS 46583 (N.D. Ill. Mar. 6, 2026). But Plaintiff's reliance is misplaced. *Katz* is factually distinguishable and inapplicable here.

*Katz* involved known relationships between the loan officer (Allied), the third-party agent who sourced potential leads (Consumer Nsight), and the third-party entity who made the actual telemarketing calls (Iconic Results). Allied not only knew about Consumer Nsight and Iconic Results, it directly interacted with them; e.g., the plaintiff provided "copies of invoices, moreover, showing that Allied accepted call transfers from Consumer Nsight and paid for them" and emails showing that Allied and Consumer Nsight "integrated their systems so that loan officers could get notified of the calls coming in and to receive the post as the transfers are handed off, and that [Allied's Branch Manager] exercised control over call volume by refusing a delivery of transfers from Consumer Nsight in April, stating he was 'done with transfers.'" *Id*. at *28. Allied "accepted call transfers from Consumer Nsight and paid for them, including after the call to plaintiff. And the billing records confirm as much." *Katz*, 2026 U.S. Dist. LEXIS 46583 at *36

In short, the purported principal actively participated in the liability producing conduct. By contrast, here, LoanStream never interacted with Resmo or Global Experts during the alleged Call Campaign, it did not accept or receive any call transfers, and it did not integrate its internal systems with either entity. There are no

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

financial records showing that LoanStream paid for the telemarketing services of Resmo or Global Experts. SUF 66, 72-73, 76-77.

**C.    Neither Resmo/Sean Roberts Nor Global Experts Had Apparent Authority to Act "on Behalf of" LoanStream.**

For apparent authority, *the principal* must make some manifestation that the agent is acting on its behalf *prior* to the agent's actions with the third-party that seeks to bind the principal. Restatement (Third) of Agency § 3.03. "[C]laimed authority or purported . . . exercise" of that authority by the alleged agent does not suffice; the *third-party* must *reasonably rely* on "something said or done" *by the principal*. *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997) (emphasis added). Thus, apparent authority can only "be established by proof of something said or done by [LoanStream], on which [Kimberly Hudson-Bryant] reasonably relied." *Thomas v. Taco Bell Corp.*, 582 Fed. App'x 678, 679-80 (9th Cir. 2014) (citations omitted; bold added).

Plaintiff has not identified any conduct *by LoanStream* that would have led *her* to reasonably believe that Global Experts, Resmo, or Sean Roberts was acting as LoanStream's agent. *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) ("Statements by an agent are insufficient to create apparent authority."). Merely that the purported agent ("Karisha") identified as calling with reference to LoanStream is insufficient to establish apparent authority. *See e.g., Rahimian v. Adriano,* 2022 U.S. Dist. LEXIS 46437, *13 (D. Nev. Mar. 16, 2022) ("Plaintiff claims that Defendant Adriano identified herself as calling 'from Century 21 Americana'. . . Plaintiff fails to plead sufficient facts demonstrating reasonable reliance.").

Plaintiff must point to LoanStream's conduct – *before* the call – that caused Plaintiff reasonably to believe that "Karisha" was LoanStream's agent. Plaintiff's single call recording that a supposed Global Experts representative stated it was calling "with LoanStream Mortgage" is insufficient because this is a *representation*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*by a third-party*, not LoanStream. *See Makaron v. GE Sec. Mfg., Inc.*, 2015 U.S. Dist. LEXIS 75240, *25-26 (C.D. Cal. May 18, 2015) (rejecting apparent authority argument despite purported authority to use principal's trade name); *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1043 (C.D. Cal. Mar. 29, 2008) ("Only the acts of the principal, not of the agent, give rise to apparent authority.") (citation omitted) (bold added).

Courts have repeatedly rejected attempts to expand agency principles in the manner suggested by Plaintiff in the TCPA context. *See e.g., In re Monitronics Int'l, Inc.*, 223 F.Supp.3d 514, 527-28 (W.Va. N.D. Dec. 22, 2016) ("[T]he mere fact that a dealer uses a suppliers name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise."); *Rogers v. Postmates Inc.*, 2020 U.S. Dist. LEXIS 121831, *18 (N.D. Cal. July 9, 2020) (finding text sent by seller that referenced Postmates by name and provided a link to Postmates' webpage not sufficient to establish apparent authority).

Plaintiff does not present any evidence of any communication *from LoanStream* establishing that she could rely on Global Experts' statements. This lack of evidence is fatal to Plaintiff's agency claim based on apparent authority.

**D.    Loan Stream Did Not Ratify Global Experts', Resmo's, or Sean Roberts' Conduct.**

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen*, 879 F.3d at 1014 (citation omitted).

There are two ways to ratify a third-party's acts:

The first is by a "knowing acceptance of the benefit." To prove this form of ratification, there must be "an objectively or externally observable indication . . . that the principal has exercised choice and has consented" to the acts of the purported

/ / /

agent. Restatement § 4.01 cmt. d. That means that the principal must have "knowledge of material facts," also described as "actual knowledge." Restatement § 4.06.

The second way is  where the principal accepts the benefit of the third party's conduct in "willful ignorance" of that party's conduct.  The principal may not know the material facts, but has "ratified with awareness that such knowledge was lacking." Restatement § 4.01 cmt. b. In effect, the principal can ratify the act of a third-party – thereby making the third party the principal's agent – even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway.

"The burden to prove ratification is on the 'party attempting to establish that ratification occurred." *Kristensen v. Credit Payment Servs. Inc.,* 2015 U.S. Dist LEXIS 96036, *9 (D. Nev. July 20, 2015).

### 1.      There is No Evidence LoanStream Accepted the Benefits of the Alleged Call Campaign.

There is no evidence LoanStream reaped *any* benefits from the alleged Call Campaign. To the contrary, the only admissible evidence shows that the Call Campaign did not generate any leads that were fulfilled for LoanStream's benefit at any time. SUF 79. LoanStream received no revenue from the Call Campaign. SUF 80. And LoanStream did not generate any business from the Call Campaign. SUF 81. Without acceptance by LoanStream of some benefit arising from the Global Experts', Resmo's, or Roberts' conduct, there is no ratification, no agency, and therefore no vicarious liability.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**2.** **There is No Evidence that LoanStream Had Actual Knowledge of the Material Facts. It is Undisputed LoanStream Did Not Know About the Alleged Call Campaign Until After It Concluded and LoanStream Did Not Benefit From the Alleged Call Campaign; Thus, It Is Impossible for LoanStream to Have Had Sufficient Facts to Investigate Further.**

Even if ratification does apply and the principal manifests their assent – through words or conduct (it did not here) – to be bound by the purported agent's acts, the ratification is only valid if the principal assents with knowledge "of the material facts involved in the original act." *Henderson*, 918 F.3d at 1073-1074 (citation omitted; bold added). Plaintiff must point to evidence that LoanStream had  knowledge of Global Experts', Resmo's, or Roberts' acts, exercised choice, and consented to the acts. *Id.*

The evidence shows Global Experts placed calls between September 27, 2021 and November 16, 2021.SUF 51 (Roberts Decl. ¶¶ 10-11, 13; Global Experts Invoices).

There is no evidence that LoanStream was even aware that the alleged Call Campaign occurred until long after it concluded. SUF 74-75. LoanStream, including Serene Vernon, did not learn about the Call Campaign until after the filing of this lawsuit in 2024, years after the campaign concluded in 2021. SUF 75.

Simply put, LoanStream cannot ratify an act based on actual knowledge if it had no knowledge of the act in question. *See Kristensen*, 879 F.3d at 1015 ("Although AC Referral was an agent of Click Media, Kristensen presented no evidence that Click Media had actual knowledge that AC Referral was sending text messages in violation of TCPA.")

/ / /

/ / /

**3.    There is No Evidence LoanStream Being "Willful[ly] Ignorant."**

LoanStream anticipates that Plaintiff may argue LoanStream had some duty to "investigate further" Global Experts' conduct.

There is no evidence that LoanStream knew or should have known that Global Experts conducted the Call Campaign *until after it concluded*; therefore, LoanStream did not (and could not have had) knowledge of facts that would led a reasonable person to investigate further. *Johansen v. HomeAdvisor, Inc*., 218 F.Supp.3d 577, 588 (S.D. Ohio  Oct. 31, 2016) ("Where, as here, a seller has no information of telephone calls being placed by ... [a purported agent], the seller could not have ratified those calls.").

In short, a principal ratifies by accepting the benefits of an agent's act with either (1) knowledge of the "material facts," meaning the TCPA violation, or (2) knowledge of "facts that would have led a reasonable person to investigate further." Restatement §§ 4.01 cmt. b., 4.06 cmt. d.; *Abante Rooter and Plumbing, Inc. v. Arashi Mahalo, LLC*, 2019 U.S. Dist. LEXIS 220708, at *3 (N.D. Cal. Dec. 19, 2019). None occurred here. Plaintiff does not have competent evidence establishing that any unlawful calls took place "under [LoanStream's] watch or on its behalf, nor evidence of any other 'red flags' that should have alerted [LoanStream] to investigate potential violations of the TCPA." *Goodell v. BH Auto., LLC,* 2023 U.S. Dist. LEXIS 54131, *19 (D. Ariz. Mar. 29, 2023) (citation omitted).

Accordingly, the attenuated theory Plaintiff concocted attempting to associate Global Experts, Resmo, and/or Sean Roberts with LoanStream is insufficient to establish vicarious liability under the TCPA. *Meyer v. Capital All. Grp.*, 2017 U.S. Dist. LEXIS 183690, *34 (S.D. Cal. Nov. 6, 2017) (holding evidence of defendant hiring third-party vendors to send faxes and make telemarketing calls was insufficient to establish the requisite control over the methods and means).

/ / /

## X.    THERE IS NO EVIDENCE THAT LOANSTREAM WILLFULLY OR KNOWINGLY VIOLATED THE TCPA.

In the alternative, this Court should  grant summary adjudication in LoanStream's favor on Plaintiff's claim for treble damages (FAC ¶ 78 and Prayer (B)) because no reasonable finder of fact could find that LoanStream knowingly or willfully violated the TCPA. Treble damages are available "in [the court's] discretion" "[i]f the court finds that the defendant willfully or knowingly violated [the TCPA] or the regulations prescribed under" the TCPA. 47 U.S.C. § 227(b)(3).

Neither the TCPA nor the FCC define the phrase "willfully or knowingly." *Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 43874, *16 (N.D. Ill. May 5, 2010). In this absence, courts have put forth a variety of standards interpreting the statutory text. *See, e.g., Trindade v. Reach Media Grp., LLC*, 2014 U.S. Dist. LEXIS 98180, *17, fn. 59 (N.D. Cal. July 18, 2014) ("Some courts have held that a defendant must know that the making of the call violates the TCPA, while others have held that a defendant need only know that the call is being made."). Courts have consistently held the statute requires a defendant to intend or know that it was performing each of the elements of a TCPA claim. *See e.g., Wilson v. Skopos Fin., LLC,* 2026 U.S. Dist. LEXIS 61802, *10-11 (in a NDNCR case, Court granted summary judgment against Plaintiff's claim that Defendant willfully and knowingly violated the same provision of the TCPA at issue here when there was nothing in the record that could lead a reasonable fact-finder to conclude that the defendant knowingly or willfully sent messages to plaintiff's number in violation of the statute).

Even if LoanStream had knowledge of the unauthorized Call Campaign before or during its occurrence (it did not), Sean Roberts stated that the Leads (as defined) consisted of those who *consented* (or opted-in) to be called, which negates any supposition that LoanStream *intended* or *knew* it was potentially associated with conduct violative of a NDNCR-based TCPA claim. SUF 31.

## XI.    CONCLUSION.

Based on the foregoing, LoanStream respectfully requests the Court grant summary judgment in its favor.

Respectfully submitted,

DATED:  June 4, 2026                     SOLOMON WARD SEIDENWURM & SMITH, LLP

By:      _/s/ Thomas F. Landers_
                THOMAS F. LANDERS
                ADAM R. SCOTT
                Attorneys for Defendant OCMBC, INC.
                d/b/a LOANSTREAM MORTGAGE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## LOCAL RULE 11-6.2 COMPLIANCE STATEMENT

The undersigned counsel of record for Defendant certifies that this brief contains 6,444 words, which complies with the word limit of L.R. 11-6.1.

DATED:  June 4, 2026

SOLOMON WARD SEIDENWURM & SMITH, LLP

By:    /s/ Thomas F. Landers
THOMAS F. LANDERS
ADAM R. SCOTT
Attorneys for Defendant OCMBC, INC. d/b/a LOANSTREAM MORTGAGE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT