THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
ADAM R. SCOTT [SBN 333706]
ascott@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303
(f) 619.231.4755

Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>OCMBC, INC. D/B/A LOANSTREAM MORTGAGE, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS,<br><br>        Defendants. | Case No. 8:24-cv-67-FWS-JDE<br><br>**DEFENDANT OCMBC, INC. D/B/A LOANSTREAM MORTGAGE'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:        July 16, 2026<br>Time:        10:00 a.m.<br>Crtrm.:      10D<br><br>Judge:       Hon. Fred W. Slaughter<br>Magistrate:  Hon. John D. Early<br><br>Action Filed: January 11, 2024<br>Trial Date:   October 27, 2026 |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1, Defendant OCMBC, Inc. dba LoanStream Mortgage ("Defendant" or "LoanStream") submits the following Statement of Uncontroverted Facts ("SUF") in Support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion"), as to the operative First Amended Complaint ("FAC") filed by Plaintiff Kimberly Hudson-Bryant ("Plaintiff") in the above-referenced action:

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
| --- | --- |
| 1.  Plaintiff alleges she received two telemarketing calls "on behalf of" LoanStream at the telephone number ▉▉▉ 1729 (the "Number").<br><br>*Evidence*: FAC ¶¶ 14, 17. | |
| 2.  Plaintiff alleges the Number is her telephone number.<br><br>*Evidence*: FAC ¶ 14. | |
| 3.  The Number received two calls from the telephone number ▉▉▉▉.<br><br>*Evidence*: FAC ¶¶ 17-20; Declaration of Thomas F. Landers Filed In Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Landers Decl.") ¶¶ 13, 16 & Ex. 9 at pp. 4-5 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 170:8-10, 173:6-13. | |
| 4.  The first call occurred on October 12, 2021.<br><br>*Evidence*: Landers Decl. ¶ 13 & Ex. 9 at p. 4 (AT&T Subpoena R.'s). | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 5. Plaintiff alleges the first call was unanswered and went to voicemail.<br><br>*Evidence*: FAC ¶ 19. | |
| 6. There is no evidence that the first call left a voicemail.<br><br>*Evidence*: Landers Decl. ¶¶ 13, 16 & Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 170:8-10, 186:19-187:3. | |
| 7. Plaintiff answered and recorded the second call, which occurred on October 19, 2021 (the "Global Experts Call").<br><br>*Evidence*: FAC ¶ 20; Landers Decl. ¶¶ 5-6, 13, 16 & Ex. 1 (Audio Recording of the Global Experts Call), Ex. 9 at p. 5 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 108:15-17, 191:16-25, 194:16-195:5, 196:2-13. | |
| 8. The caller of the Global Experts Call asked "Is this Ms. Woods?" and Plaintiff responded "Yes."<br><br>*Evidence*: FAC ¶ 20; Landers Decl. ¶¶ 5, 16 & Ex. 1 (Audio Recording of the Global Experts Call), Ex. 10 (Pl.'s Dep. Tr.) 192:12-20, 193:1-6, 193:16-22, 194:1-8. | |
| 9. In October 2021, the Number was registered to Plaintiff's now ▮ year old mother, Eleanora C. Woods ("Eleanora").<br><br>*Evidence*: Landers Decl. ¶¶ 13, 16 & Ex. 9 (AT&T Subpoena R.'s); Ex. 10 (Pl.'s Dep. Tr.) 55:22-57:7, 98:9-19. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 10. Plaintiff was physically in Texas when she answered and recorded the Global Experts Call.<br><br>*Evidence*: Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 108:15-17, 191:16-25, 194:16-195:5, 196:2-13. | |
| 11. Plaintiff was not physically with Eleanora when she answered the Global Experts Call.<br><br>*Evidence*: Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 56:10-14, 129:12-13, 188:22-189:3, 191:7-192:11. | |
| 12. At the time of the Global Experts Call, Plaintiff lived in Texas and Eleanora lived in California.<br><br>*Evidence*: Landers Decl. ¶¶ 5, 13, 16 & Ex. 1 (Audio Recording of the Global Experts Call), Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 56:10-57:10, 59:19-25, 196:11-13. | |
| 13. No employee of LoanStream ever directly contacted or attempted to contact Plaintiff.<br><br>*Evidence*: Declaration of Sean Roberts Filed In Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Roberts Decl.") ¶¶ 8-9, 12-13; Declaration of Serene Vernon Filed In Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Vernon Decl.") ¶ 30. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 14. No employee of LoanStream ever directly spoke to Plaintiff.<br><br>*Evidence*: Roberts Decl. ¶¶ 8-9, 12-13; Vernon Decl. ¶ 31. | |
| 15. No employee of LoanStream ever directly contacted or attempted to contact Eleanora.<br><br>*Evidence*: Roberts Decl. ¶¶ 8-9, 12-13; Vernon Decl. ¶ 32. | |
| 16. No employee of LoanStream ever directly spoke to Eleanora.<br><br>*Evidence*: Roberts Decl. ¶¶ 8-9, 12-13; Vernon Decl. ¶ 33. | |
| 17. AT&T serviced the Number between September 2014 and July 2024, at which point the Number was transferred to T-Mobile.<br><br>*Evidence*: Landers Decl. ¶¶ 12, 13-15, 16 & Ex. 8 (Pl.'s March 2025 Disc. Produc.), Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 109:18-21, 181:15-17. | |
| 18. In October 2021, AT&T was the Number's service provider.<br><br>*Evidence*: Landers Decl. ¶¶ 12, 13-15, 16 & Ex. 8 (Pl.'s March 2025 Disc. Produc.), Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 109:18-21, 181:15-17. | |
| 19. The Number initially functioned as Eleanora's landline managed by AT&T, and it was later converted into a cellular number. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence*: Landers Decl. ¶¶ 13, 16 & Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 55:22-57:7, 98:9-19, 107:21-108:7, 109:5-21. | |
| 20. The AT&T billing statement for October 2021 was addressed to "Eleanora Woods" and sent to her home at ███████████████████, ███████████████ (the █████████ Home"). <br><br> *Evidence*: Landers Decl. ¶ 13 & Ex. 9 at pp. 7-12 (AT&T Subpoena R.'s). | |
| 21. The Number was transferred into Plaintiff's name starting in May 2022, when the AT&T billing statements changed and were directed to "Kimberly Hudson" at the ███████ Home. <br><br> *Evidence*: Landers Decl. ¶¶ 13, 16 & Ex. 9 at pp. 13-17 (AT&T Subpoena R.'s); Ex. 10 (Pl.'s Dep. Tr.) 111:14-112:13. | |
| 22. In a communication dated January 3, 2023, Plaintiff contends she contacted LoanStream on *behalf of her mother*, Eleanora, concerning an alleged violation of the Telephone Consumer Protection Act (the "Letter"). <br><br> *Evidence*: FAC ¶ 23; Landers Decl. ¶¶ 5, 16 & Ex. 2 (Letter), Ex. 10 (Pl.'s Dep. Tr.) 208:2-19, 211:2-212:23. | |
| 23. Plaintiff wrote the Letter in her capacity as Eleanora's Power of Attorney. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence*: FAC ¶ 23; Landers Decl. ¶¶ 5, 16 & Ex. 2 (Letter), Ex. 10 (Pl.'s Dep. Tr.) 206:1-207:14, 208:2-16, 211:2-9, 212:9-18. | |
| 24. The Letter refers to the Number as "my phone." <br><br> *Evidence*: FAC ¶ 23; Landers Decl. ¶ 5 & Ex. 2 (Letter). | |
| 25. The Letter informed LoanStream that Eleanora's Number received two telephone calls one on October 12, 2021, and one on October 19, 2021. <br><br> *Evidence*: FAC ¶ 23; Landers Decl. ¶¶ 5, 16 & Ex. 2 (Letter), Ex. 10 (Pl.'s Dep. Tr.) 212:19-213:17. | |
| 26. Plaintiff alleges the Number "has been registered on the National Do Not Call Registry continuously since September 1, 2003." <br><br> *Evidence*: FAC ¶ 16. | |
| 27. Plaintiff does not know who registered the Number on the National-Do-Not-Call-Registry ("NDNCR"). <br><br> *Evidence*: Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 184:25-185:15. | |
| 28. Plaintiff does not recall registering the Number on the NDNCR. <br><br> *Evidence*: Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 184:25-185:15. | |
| 29. Plaintiff does she know if Eleanora registered the Number on the NDNCR. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence*: Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 184:25-185:15. | |
| 30. Premier Financial Marketing, LLC dba Resmo Lending ("Resmo") independently organized and coordinated a call campaign with Global Experts, Limited ("Global Experts"), to place calls and identify potential leads for three different entities: (i) American Financial Network, Inc. ("AFN"); (ii) Lending 3 (also known as "L3"); and (iii) LoanStream (the "Call Campaign").<br><br>*Evidence*: Roberts Decl. ¶¶ 1, 3, 8-13; Declaration of Serene Rosenberg Vernon ("Vernon Decl.") Filed In Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Landers Decl.") ¶¶ 12-34; Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:11-32:13, 52:8-21. | |
| 31. According to Sean Roberts, the Call Campaign was conducted as follows: (i) Resmo obtained a list of opt-in leads, which consisted of consumers who previously provided their consent to be contacted because, among other things, they expressed their interest in securing and/or refinancing mortgage loans (the "Leads"); (ii) Resmo compared the Leads against the NDNCR; (iii) Resmo provided the vetted the Leads to Global Experts; (iv) Sean Roberts understands that Global Experts then called some of the Leads that Resmo vetted through the NDNCR; and (v) for consumers who expressed interest, Global Experts transferred the call to | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| Resmo to discuss mortgage options that were potentially available through AFN, L3, and LoanStream.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 52:8-21; Roberts Decl. ¶¶ 9-10. | |
| 32. Resmo and/or Global Experts conducted the Call Campaign using a data set obtained from LizDev, Inc. ("LizDev").<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 11 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set), Ex. 7 (Sean Roberts Dep. Tr.) 19:13-16, 20:91:21-9; Roberts Decl. ¶¶ 8-10, 15-16. | |
| 33. The data set produced by LizDev is not legally authenticated (the "Unauthenticated Data Set").<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | |
| 34. There is no evidence regarding who created the Unauthenticated Data Set, how it was prepared, when it was prepared, or how it was maintained.<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | |
| 35. LizDev does not know where it got the Unauthenticated Data Set from, whether it be Sean Roberts or Global Experts. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence*: Dkt. 58-5 (Declaration of Elizabeth Stone filed by Plaintiff on April 13, 2026); Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | |
| 36. Neither Sean Roberts nor Resmo created or prepared the Unauthenticated Data Set.<br><br>*Evidence*: Roberts Decl. ¶¶ 15-16. | |
| 37. The Unauthenticated Data Set purports to show the number of calls made to a particular phone number and the timing of the last call made.<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | |
| 38. The Unauthenticated Data Set does not show who, when, or what number Global Experts called "on behalf of" LoanStream (as opposed to L3 or AFN) or the purpose of each call.<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set), Ex. 13 (Expert Report of Madelyn Moran ("Moran Report") ¶¶ 19, 21, 69; Roberts Decl. ¶¶ 15-16. | |
| 39. The Unauthenticated Data Set associates the Number with "Eleanora Woods" (not "Kimberly Hudson-Bryant"). | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence*: Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Ex. 13 ¶ 40 (Moran Report). | |
| 40. The Unauthenticated Data Set states that Eleanora's Number was called *three* times, but does not reference *when* each call occurred.<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | |
| 41. The Unauthenticated Data Set only lists the final call attempt made to each phone number (data indicated by the "last_local_call_time" column).<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Ex. 13 ¶ 40 (Moran Report). | |
| 42. According to the Unauthenticated Data Set, the last call placed to Eleanora's Number occurred on "10/19/2021 14:17" (previously defined as the "Global Experts Call").<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | |
| 43. The Unauthenticated Data Set lists Eleanora's address as "███ ██████ ███████" (the "████████ house"). | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence*: Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | |
| 44. The Unauthenticated Data Set lists Eleanora's email address as ██████████████████ <br><br> *Evidence*: Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | |
| 45. ████  ████ ("████"), Eleanora's son and Plaintiff's brother, lived at the ████ house at the time of the Global Experts Call. <br><br> *Evidence*: Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 49:4-5, 50:5-7, 51:15-20, 54:21-55:3. | |
| 46. Romney uses the email address ██████████████████ <br><br> *Evidence*: Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 49:4-5, 50:5-7, 51:15-20, 52:16-54:9, 54:21-55:3. | |
| 47. LizDev also produced call scripts ("Call Scripts") and Global Experts Invoices related to the Call Campaign as a whole, including calls allegedly placed referencing AFN, Lending 3/L3, and LoanStream (the "Global Experts Invoices"). <br><br> *Evidence*: FAC ¶¶ 21-22; Landers Decl. ¶¶ 5, 8-9 & Ex. 3 (Call Scripts), Ex. 5 (Global Experts Invoices); Roberts Decl. ¶¶ 16-17. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 48. The Call Scripts, along with Sean Roberts' testimony, demonstrate that the Call Campaign related to other entities, including AFN and L3.<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8-9 & Ex. 3 (Call Scripts); Roberts Decl. ¶¶ 10-11 16. | |
| 49. The Call Scripts do not mention LoanStream by name; instead, they reference "LS mortgage" which is not LoanStream's name or a name under which it does business.<br><br>*Evidence*: Landers Decl. ¶¶ 5, 8-9 & Ex. 3 (Call Scripts); Roberts Decl. ¶¶ 16-17; Vernon Decl. ¶ 13. | |
| 50. Other mortgage companies exist with "LS"—like LendSure Mortgage Corp. (www.lendsure.com).<br><br>*Evidence*: www.lendsure.com. | |
| 51. The Global Experts Invoices also reflect that the Call Campaign only occurred for a limited duration, between September 27, 2021, and November 16, 2021.<br><br>*Evidence*: Landers Decl. ¶ 5, 8 & Ex. 5 (Global Experts Invoices); Roberts Decl. ¶ 17. | |
| 52. Sean Roberts testified that "[Resmo and he] never had a relationship with LoanStream, period."<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:8-32:13. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 53. Sean Roberts has never been an employee, agent, or independent contractor of LoanStream.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 13:11-13, 30:18-22; Roberts Decl. ¶¶ 4-5. | |
| 54. Resmo has never been an agent, or independent contractor of LoanStream.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | |
| 55. No contractual relationship has ever existed between LoanStream and Sean Roberts.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | |
| 56. No financial relationship has ever existed between LoanStream and Sean Roberts.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | |
| 57. No contractual relationship has ever existed between LoanStream and Resmo.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 58. No financial relationship has ever existed between LoanStream and Resmo.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | |
| 59. No contractual relationship has ever existed between LoanStream and Global Experts.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 32:14-21, 39:15-40:1; Roberts Decl. ¶ 7; Vernon Decl. ¶¶ 27-29. | |
| 60. No financial relationship has ever existed between LoanStream and Global Experts.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 32:14-21, 39:15-40:1; Roberts Decl. ¶ 7; Vernon Decl. ¶¶ 27-29. | |
| 61. At no point was Global Experts an approved vendor of LoanStream.<br><br>*Evidence*: Vernon Decl. ¶ 24. | |
| 62. LoanStream never contracted with Global Experts directly or indirectly to engage in the Call Campaign for LoanStream's benefit.<br><br>*Evidence*: Vernon Decl. ¶ 27. | |
| 63. LoanStream never had a business relationship with Global Experts.<br><br>*Evidence*: Vernon Decl. ¶ 27. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
| --- | --- |
| 64. LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Global Experts.<br><br>*Evidence*: Vernon Decl. ¶ 28. | |
| 65. At no point did LoanStream control the manner or means by which the Call Campaign was conducted in any way.<br><br>*Evidence*: Roberts Decl. ¶¶ 12-14; Vernon Decl. ¶¶ 16-21, 24-28, 34. | |
| 66. LoanStream did not supervise the Call Campaign in any way, it did not supply any resources, tools, or any other resources to assist in the Call Campaign, and it did not make any payments towards services related to the Call Campaign.<br><br>*Evidence*: Roberts Decl. ¶¶ 12-14; Vernon Decl. ¶¶ 16-21, 24-28, 34. | |
| 67. At no point did LoanStream authorize, request, instruct, or command Sean Roberts—directly, implicitly, or otherwise—to engage in, or assist with, the Call Campaign on LoanStream's behalf.<br><br>*Evidence*: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20. | |
| 68. At no point did LoanStream authorize, request, instruct, or command Resmo—directly, implicitly, or otherwise—to engage in, or assist with, the Call Campaign on LoanStream's behalf in any way. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence*: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20. | |
| 69. At no point did Sean Roberts believe that he had the express or implied authority to act on behalf of LoanStream with respect to the Call Campaign. <br><br> *Evidence*: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20. | |
| 70. At no point did Sean Roberts believe that Resmo had the express or implied authority to act on behalf of LoanStream with respect to the Call Campaign. <br><br> *Evidence*: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20. | |
| 71. Sean Roberts did not receive compensation from a representative, employee, or agent of LoanStream at any point before, during, or after the Call Campaign. <br><br> *Evidence*: Roberts Decl. ¶¶ 14, 18; Vernon Decl. ¶ 18-19. | |
| 72. At no point did LoanStream pay Sean Roberts for the Global Experts Invoices. <br><br> *Evidence*: Roberts Decl. ¶ 18; Vernon Decl. ¶ 27. | |
| 73. At no point did LoanStream pay Resmo for the Global Experts Invoices. <br><br> *Evidence*: Landers Decl. ¶ 5, 8 & Ex. 5 (Global Experts Invoices); Roberts Decl. ¶ 18; Vernon Decl. ¶ 27. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 74. Neither LoanStream nor Serene Vernon learned about the Call Campaign until after the campaign concluded.<br><br>*Evidence*: Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 54:10-55:13; Roberts Decl. ¶ 19; Vernon Decl. ¶ 11. | |
| 75. According to Serene Vernon, LoanStream and she did not learn about the Call Campaign until after the filing of the lawsuit in 2024, years after the campaign concluded in 2021.<br><br>*Evidence*: Vernon Decl. ¶ 12. | |
| 76. Sean Roberts is not aware of LoanStream ever paying Global Experts directly for the Global Experts Invoices.<br><br>*Evidence*: Roberts Decl. ¶ 18. | |
| 77. LoanStream has no record of ever paying Global Experts for any work it performed.<br><br>*Evidence*: Vernon Decl. ¶¶ 27-29. | |
| 78. At no point was LivDev an approved vendor of LoanStream.<br><br>*Evidence*: Vernon Decl. ¶ 24. | |
| 79. The Call Campaign did not generate any leads that were fulfilled for LoanStream's benefit at any time.<br><br>*Evidence*: Vernon Decl. ¶ 29. | |
| 80. LoanStream received no revenue from the Call Campaign.<br><br>*Evidence*: Vernon Decl. ¶ 29. | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Facts and Supporting Evidence |
|---|---|
| 81. LoanStream did not generate any business from the Call Campaign.<br><br>*Evidence*: Vernon Decl. ¶ 29. | |

DATED:  June 4, 2026                    SOLOMON WARD SEIDENWURM & SMITH, LLP


By:        */s/ Thomas F. Landers*
THOMAS F. LANDERS
ADAM R. SCOTT
Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE