THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
ADAM R. SCOTT [SBN 333706]
ascott@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303
(f) 619.231.4755

Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCMBC, INC. D/B/A LOANSTREAM MORTGAGE, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS,<br><br>Defendants. | Case No. 8:24-cv-00067-FWS-JDE<br><br>**DECLARATION OF SERENE ROSENBERG VERNON IN SUPPORT OF DEFENDANT OCMBC, INC. D/B/A LOANSTREAM MORTGAGE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:        July 16, 2026<br>Time:        10:00 a.m.<br>Crtrm.:      10D<br><br>Judge:       Hon. Fred W. Slaughter<br>Magistrate:  Hon. John D. Early<br><br>Action Filed: January 11, 2024<br>Trial Date:   October 27, 2026 |

P:4904-0219-5119.13:66075-002

Case No. 8:24-cv-00067-FWS-JDE

DECLARATION OF SERENE ROSENBERG VERNON ISO DEFENDANT'S MSJ OR PARTIAL MSJ

I, Serene Rosenberg Vernon, declare:

1.     I am the former President of Defendant OCMBC, Inc. dba LoanStream Mortgage ("LoanStream"), a position I held between 2019 and 2025. In my current role as an Executive Business Consultant, I serve as an outside advisor to LoanStream.

2.     I have personal knowledge of the facts set forth in this declaration, which I submit in support of Defendant's Motion for Summary Judgment or, In the Alternative, Partial Summary Judgment (the "Motion").

3.     As the President of LoanStream, my job duties included, among other things, overseeing the day-to-day operational activities of LoanStream, like, for example, the creation and operation of several "branches." I was also responsible for leading LoanStream's business and market expansion strategy.

4.     Because of my experience, I am familiar with the general business practices of LoanStream at all times relevant to this action, including the creation and implementation of its policies and practices, e.g., its vendor and risk management policies, and the creation and maintenance of its business records. In light of my prior and current roles with LoanStream, I am qualified and authorized to execute this declaration on its behalf.

5.     I am also a custodian of LoanStream's records, including all records attached to this declaration, namely: (i) the Non-Producing Branch Manager Employment Agreement between LoanStream and Cynthia Roberts; (ii) LoanStream's Branch Manager Code of Conduct; and (iii) LoanStream's Marketing Policy. These documents are originals or true duplicates of the original records in the custody of LoanStream and were made by LoanStream and/or kept in the course of its regularly conducted business activities. I further certify that all records attached hereto were made at or near the time by, or from information transmitted by, a person with knowledge of those matters.

6.     I am familiar with the above-referenced litigation, including the claims asserted by Plaintiff Kimberly Hudson-Bryant ("Plaintiff") because I previously

reviewed key documents filed, produced, and/or served in this action, including the operative First Amended Complaint ("FAC") and because I previously provided deposition testimony as LoanStream's corporate designee in this case.

7. Between 2021 and 2022, I oversaw eight different LoanStream branches, which were established to develop local business relationships, primarily through business-to-business ("B2B") interactions with local relators, Chambers of Commerce, and other established organizations, in order to secure consumer direct loans on behalf of LoanStream.

8. Although LoanStream provided the financial capital to start each branch, including the costs to rent office space and pay to the employees who worked there, LoanStream did not allow, permit, or support these branches to independently engage in advertising or marketing on behalf of LoanStream. For example, LoanStream expressly prohibited – by contract and company policy – its employees from sourcing business through lead generators and other mass-market telemarketing activities. Attached as Exhibit 12 is a true and correct copy of the Non-Producing Branch Manager Employment Agreement between OCMBC, Inc. and Cynthia Roberts dated November 16, 2021, which includes such contractual restrictions. Mrs. Roberts' employment is discussed further below.

9. Additionally, attached to this declaration as Exhibits 14 and 15, are true and correct copies of LoanStream's Branch Manager Code of Conduct ("Branch Manager Policy") and Marketing Policies and Procedures ("Marketing Policy"), respectively, which were in effect at all times relevant to this action, and further demonstrate that LoanStream prohibited mass marketing and/or telemarketing efforts, as well as the "kickbacks" contemplated by Plaintiff's FAC.

10. In 2021, I was introduced to Sean Roberts by a fellow LoanStream employee (and personal friend of Mr. Roberts), at a lunch held at the Bistango restaurant in Irvine, California. During that lunch, Mr. Roberts expressed an interest in working as a branch manager for LoanStream. However, LoanStream ultimately

declined to offer Mr. Roberts a role because, among other things, the California Department of Financial Protection and Innovation barred him from any position of employment, management, or control with a finance lender and/or broker.

11. In August 2021, LoanStream hired Cynthia Roberts, the spouse of Mr. Roberts, as a loan officer. Thereafter, in November 2021, Mrs. Roberts transitioned to a Non-Producing Branch Manager, which was an administrative role. In her administrative role, Mrs. Roberts was largely responsible for processing loans that were sourced by other LoanStream employees. In December 2021, just before the holidays, Mrs. Roberts asked for an advance against the branch's future profits, which was not an unusual request when a branch was first operating. LoanStream approved the request and made a single $7,000 payment to what Mrs. Roberts described as her company, Premier Financial Marketing. Mrs. Roberts' branch was never profitable. Indeed, by 2022, the branch's expenses exceeded its revenues by over $20,000.

12. It was not until after the filing of this lawsuit that I learned for the first time that Sean Roberts and/or his company, Premier Marketing Financial, LLC dba Resmo Lending ("Resmo"), had, without LoanStream's knowledge, authorization or participation, previously conducted a telemarketing campaign to source leads for third-party customers, including LoanStream and other entities (the "Call Campaign").

13. During the course of this lawsuit, I also learned that Mr. Roberts and/or Resmo created and used call scripts referencing various entities -- including "LS mortgage" -- but those call scripts never mentioned LoanStream by name. Additionally, "LS mortgage" is not LoanStream's name, nor is it a name under which LoanStream does business. Furthermore, LoanStream did not create or use those call scripts at any point in time.

14. In 2022, LoanStream closed the branch where Mrs. Roberts worked because it was not meeting LoanStream's performance expectations. As a result of that closure, LoanStream terminated Mrs. Roberts' at-will employment.

15. Beyond her employment at LoanStream, I never had a personal, social, or professional relationship with Mrs. Roberts.

16. I never had a personal, social, or professional relationship with Mr. Roberts.

17. Based on my review of LoanStream's records and communications, LoanStream never asked Mrs. Roberts to engage, nor approved of Mrs. Roberts engaging, in the Call Campaign for LoanStream's benefit.

18. Based on my review of LoanStream's records and communications, LoanStream never contracted with Mr. Roberts or his company, Resmo, directly or indirectly, to engage in the Call Campaign for LoanStream's benefit, and LoanStream never had a business relationship with Mr. Roberts or Resmo.

19. Based on my review of LoanStream's records and communications, LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Mr. Roberts and it never paid him for any work he performed.

20. Based on my review of LoanStream's records and communications, LoanStream never contracted with Resmo, directly or indirectly, to engage in the Call Campaign for LoanStream's benefit.

21. Based on my review of LoanStream's records and communications, LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Resmo, and it never paid Resmo for any work it performed.

22. Based on my review of LoanStream's records and communications, LoanStream never contracted with Elizabeth Stone ("Ms. Stone") or LizDev, Inc. ("LizDev") , directly or indirectly, to engage in the Call Campaign for LoanStream's benefit, and LoanStream never had a business relationship with Ms. Stone or LizDev.

23. During the course of this lawsuit, when searching for documents in response to Plaintiff's document requests, LoanStream discovered that it previously received an undated $10,000 invoice from LizDev (the "LizDev Invoice"). A true and correct copy of the LizDev invoice is attached hereto as Exhibit 6. LoanStream

determined that it received that single invoice in February 2022. Not recognizing the vendor (LizDev) nor the purpose of such invoice ("Product: New Data Invoice"), LoanStream's accounting department discarded the LizDev Invoice at the time of receipt without rendering any payment. LoanStream did not reimburse any person or entity for the LizDev Invoice.

24. In its regular course of business, LoanStream maintains a vendor management system where any LoanStream service provider must first be reviewed and added as an approved vendor before it can receive any payment from LoanStream. I have reviewed LoanStream's vendor management system records, and neither LizDev nor Global Experts, Limited ("Global Experts") is, or ever was, an approved vendor. I have confirmed by reviewing LoanStream's accounting and approved vendor records that LoanStream did not pay, and has never paid, the LizDev Invoice.

25. Based on my review of LoanStream's records and communications, I also confirmed that LoanStream has never received any other invoices from LizDev.

26. Based on my review of LoanStream's records and communications, LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Ms. Stone and/or LizDev and it never paid Ms. Stone or LizDev for any work they performed.

27. Based on my review of LoanStream's records and communications, LoanStream never contracted with Global Experts directly or indirectly, to engage in the Call Campaign for LoanStream's benefit, and LoanStream never had a business relationship with Global Experts.

28. Based on my review of LoanStream's records and communications, LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Global Experts and it also never paid Global Experts for any work it performed.

/ / /

/ / /

29. The Call Campaign did not generate any leads that were fulfilled for LoanStream's benefit at any time. LoanStream received no revenue from the Call Campaign. And LoanStream did not generate any business from the Call Campaign.

30. Based on my review of LoanStream's records and communications, no employee or agent of LoanStream ever contacted (or attempted to contact) Plaintiff.

31. Based on my review of LoanStream's records and communications, no employee or agent of LoanStream ever spoke to Plaintiff.

32. Based on my review of LoanStream's records and communications, no employee or agent of LoanStream ever contacted (or attempted to contact) Plaintiff's mother, Ms. Eleanora C. Woods.

33. Based on my review of LoanStream's records and communications, no employee or agent of LoanStream ever spoke to Ms. Woods.

34. For the avoidance of doubt, LoanStream never participated in the Call Campaign in any way. LoanStream did not control the manner in which the Call Campaign was conducted. LoanStream did not supervise the Call Campaign, nor did it supply any resources, tools or any other goods to assist in the Call Campaign. LoanStream did not interact with Resmo or Global Experts during the Call Campaign.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

Executed on June 4, 2026, in Irvine, California.

DocuSigned by:

*Serene Vernon*

80F1BD9B10694CB...

Serene Rosenberg Vernon