Dana Oliver
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021
Attorney for Plaintiff and Putative Class

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>OCMBC, INC. D/B/A LOANSTREAM, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS<br><br>*Defendants* | Case No. 8:24-cv-67-FWS-JDE<br><br>**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO DEFENDANT OCMBC, INC. d/b/a LOANSTREAM MORTGAGE'S STATEMENT OF ALLEGEDLY UNCONTROVERTED FACTS AND ADDITIONAL MATERIAL FACTS**<br>Judge: Hon. Fred W. Slaughter<br><br>Magistrate: Hon. John D. Early<br><br>Hearing (In Person):<br>July 16, 2026, 10:00 A.M.<br>Courtroom 10D |

### PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO DEFENDANT OCMBC, INC. d/b/a LOANSTREAM MORTGAGE'S STATEMENT OF ALLEGEDLY UNCONTROVERTED FACTS AND ADDITIONAL MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 56-1, and the Court's Civil Standing Order (ECF No. 10), Plaintiff Kimberly Hudson-Bryant ("Plaintiff") submits the following response to the Statement of Uncontroverted Facts filed by Defendant OCMBC, Inc. d/b/a LoanStream Mortgage ("LoanStream") in support of its Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. The left column restates LoanStream's asserted fact and its cited evidence. The right column states whether the fact is undisputed or disputed and, where disputed, identifies the evidence creating the dispute. As Defendant has not identified legal propositions in its headings, Plaintiff does not include them. Consistent with the Court's Standing Order, this document contains no legal argument.

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| 1. Plaintiff alleges she received two telemarketing calls "on behalf of" LoanStream at the telephone number ▮▮▮▮1729 (the "Number"). <br> *Evidence:* FAC ¶¶ 14, 17. | **Undisputed.** <br> Undisputed that the FAC so alleges. |
| 2. Plaintiff alleges the Number is her telephone number. <br> *Evidence:* FAC ¶ 14. | **Undisputed.** <br> Undisputed that the FAC so alleges. |
| 3. The Number received two calls from the telephone number ▮▮▮▮▮. <br> *Evidence:* FAC ¶¶ 17-20; Declaration of Thomas F. Landers Filed In Support | **Disputed in part.** <br> Undisputed that the AT&T records reflect two calls from ▮▮▮▮▮. Disputed to the extent the fact |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Landers Decl.") ¶¶ 13, 16 & Ex. 9 at pp. 4-5 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 170:8-10, 173:6-13. | represents the total number of calls placed to the Number. The LizDev call logs reflect that the Number was called *three* times.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 6-7; Ex. 4 to Landers Dec. (filed under seal), (███████████████). |
| 4. The first call occurred on October 12, 2021.<br><br>*Evidence:* Landers Decl. ¶ 13 & Ex. 9 at p. 4 (AT&T Subpoena R.'s). | **Undisputed.**<br>Undisputed. |
| 5. Plaintiff alleges the first call was unanswered and went to voicemail.<br><br>*Evidence:* FAC ¶ 19. | **Undisputed.**<br>Undisputed that the FAC so alleges. |
| 6. There is no evidence that the first call left a voicemail.<br><br>*Evidence:* Landers Decl. ¶¶ 13, 16 & Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 170:8-10, 186:19-187:3. | **Disputed in part.**<br>Undisputed that no voicemail recording exists. Disputed insofar as the AT&T Subpoena records reflect a 10 second talk time for the referenced call.<br><br>*Evidence:* Landers Decl. Ex. 9 (AT&T Subpoena R.'s) (ECF 81-17, Page ID 2285, line 447). |
| 7. Plaintiff answered and recorded the second call, which occurred on October 19, 2021 (the "Global Experts Call").<br><br>*Evidence:* FAC ¶ 20; Landers Decl. ¶¶ 5- 6, 13, 16 & Ex. 1 (Audio Recording of the Global Experts Call), Ex. 9 at p. 5 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 108:15-17, 191:16-25, 194:16- 195:5, 196:2-13. | **Undisputed.**<br>Undisputed. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 8. The caller of the Global Experts Call asked "Is this Ms. Woods?" and Plaintiff responded "Yes."<br><br>*Evidence:* FAC ¶ 20; Landers Decl. ¶¶ 5, 16 & Ex. 1 (Audio Recording of the Global Experts Call), Ex. 10 (Pl.'s Dep. Tr.) 192:12-20, 193:1-6, 193:16-22, 194:1-8. | **Undisputed.**<br>Undisputed. |
| 9. In October 2021, the Number was registered to Plaintiff's now ■-year-old mother, Eleanora C. Woods ("Eleanora").<br><br>*Evidence:* Landers Decl. ¶¶ 13, 16 & Ex. 9 (AT&T Subpoena R.'s); Ex. 10 (Pl.'s Dep. Tr.) 55:22-57:7, 98:9-19. | **Undisputed.**<br>Undisputed. |
| 10. Plaintiff was physically in Texas when she answered and recorded the Global Experts Call.<br><br>*Evidence:* Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 108:15-17, 191:16-25, 194:16-195:5, 196:2-13. | **Undisputed.**<br>Undisputed. |
| 11. Plaintiff was not physically with Eleanora when she answered the Global Experts Call.<br><br>*Evidence:* Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 56:10-14, 129:12-13, 188:22-189:3, 191:7-192:11. | **Undisputed.**<br>Undisputed. |
| 12. At the time of the Global Experts Call, Plaintiff lived in Texas and Eleanora lived in California.<br><br>*Evidence:* Landers Decl. ¶¶ 5, 13, 16 & Ex. 1 (Audio Recording of the Global Experts Call), Ex. 9 (AT&T Subpoena | **Undisputed.**<br>Undisputed. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| R.'s), Ex. 10 (Pl.'s Dep. Tr.) 56:10-57:10, 59:19-25, 196:11-13. | |
| 13.  No employee of LoanStream ever directly contacted or attempted to contact Plaintiff.<br><br>*Evidence:* Declaration of Sean Roberts Filed In Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Roberts Decl.") ¶¶ 8-9, 12-13; Declaration of Serene Vernon Filed In Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Vernon Decl.") ¶ 30. | **Undisputed.**<br>Undisputed that no LoanStream employee *personally* placed the calls at issue, which were placed by Global Experts. |
| 14.  No employee of LoanStream ever directly spoke to Plaintiff.<br><br>*Evidence:* Roberts Decl. ¶¶ 8-9, 12-13; Vernon Decl. ¶ 31. | **Undisputed.**<br>Undisputed. |
| 15.  No employee of LoanStream ever directly contacted or attempted to contact Eleanora.<br><br>*Evidence:* Roberts Decl. ¶¶ 8-9, 12-13; Vernon Decl. ¶ 32. | **Undisputed.**<br>Undisputed. |
| 16.  No employee of LoanStream ever directly spoke to Eleanora.<br><br>*Evidence:* Roberts Decl. ¶¶ 8-9, 12-13; Vernon Decl. ¶ 33. | **Undisputed.**<br>Undisputed. |
| 17.  AT&T serviced the Number between September 2014 and July 2024, at which point the Number was transferred to T-Mobile. | **Undisputed.**<br>Undisputed. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence:* Landers Decl. ¶¶ 12, 13-15, 16 & Ex. 8 (Pl.'s March 2025 Disc. Produc.), Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 109:18-21, 181:15-17. | |
| **18.** In October 2021, AT&T was the Number's service provider. *Evidence:* Landers Decl. ¶¶ 12, 13-15, 16 & Ex. 8 (Pl.'s March 2025 Disc. Produc.), Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 109:18-21, 181:15-17. | **Undisputed.** Undisputed. |
| **19.** The Number initially functioned as Eleanora's landline managed by AT&T, and it was later converted into a cellular number. *Evidence:* Landers Decl. ¶¶ 13, 16 & Ex. 9 (AT&T Subpoena R.'s), Ex. 10 (Pl.'s Dep. Tr.) 55:22-57:7, 98:9-19, 107:21- 108:7, 109:5-21. | **Undisputed.** Undisputed. |
| **20.** The AT&T billing statement for October 2021 was addressed to "Eleanora Woods" and sent to her home at ███████████ ████████████████ (the "████████ Home"). *Evidence:* Landers Decl. ¶ 13 & Ex. 9 at pp. 7-12 (AT&T Subpoena R.'s). | **Undisputed.** Undisputed. |
| **21.** The Number was transferred into Plaintiff's name starting in May 2022, when the AT&T billing statements changed and were directed to "Kimberly Hudson" at the ██████ ████ Home. | **Undisputed.** Undisputed. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence:* Landers Decl. ¶¶ 13, 16 & Ex. 9 at pp. 13-17 (AT&T Subpoena R.'s); Ex. 10 (Pl.'s Dep. Tr.) 111:14-112:13. | |
| 22. In a communication dated January 3, 2023, Plaintiff contends she contacted LoanStream *on behalf of her mother*, Eleanora, concerning an alleged violation of the Telephone Consumer Protection Act (the "Letter"). <br><br> *Evidence:* FAC ¶ 23; Landers Decl. ¶¶ 5, 16 & Ex. 2 (Letter), Ex. 10 (Pl.'s Dep. Tr.) 208:2-19, 211:2-212:23. | **Undisputed.** <br> Undisputed. |
| 23. Plaintiff wrote the Letter in her capacity as Eleanora's Power of Attorney. <br> *Evidence:* FAC ¶ 23; Landers Decl. ¶¶ 5, 16 & Ex. 2 (Letter), Ex. 10 (Pl.'s Dep. Tr.) 206:1-207:14, 208:2-16, 211:2-9, 212:9-18. | **Undisputed.** <br> Undisputed. |
| 24. The Letter refers to the Number as "my phone." <br> *Evidence:* FAC ¶ 23; Landers Decl. ¶ 5 & Ex. 2 (Letter). | **Undisputed.** <br> Undisputed. |
| 25. The Letter informed LoanStream that Eleanora's Number received two telephone calls one on October 12, 2021, and one on October 19, 2021. <br> *Evidence:* FAC ¶ 23; Landers Decl. ¶¶ 5, 16 & Ex. 2 (Letter), Ex. 10 (Pl.'s Dep. Tr.) 212:19-213:17. | **Undisputed.** <br> Undisputed. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 26. Plaintiff alleges the Number "has been registered on the National Do Not Call Registry continuously since September 1, 2003." *Evidence:* FAC ¶ 16. | **Undisputed.** Undisputed that the FAC so alleges. |
| 27. Plaintiff does not know who registered the Number on the National Do-Not-Call-Registry ("NDNCR"). *Evidence:* Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 184:25-185:15. | **Undisputed.** Undisputed. |
| 28. Plaintiff does she know [*sic*] if Eleanora registered the Number on the NDNCR. *Evidence:* Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 184:25-185:15. | **Undisputed.** Undisputed. |
| 29. Plaintiff does not know if Eleanora registered the Number on the NDNCR. *Evidence:* Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 184:25-185:15. | **Undisputed.** Undisputed. |
| 30. Premier Financial Marketing, LLC dba Resmo Lending ("Resmo") independently organized and coordinated a call campaign with Global Experts, Limited ("Global Experts"), to place calls and identify potential leads for three different entities: (i) American Financial Network, Inc. ("AFN"); (ii) Lending 3 (also known as "L3"); and (iii) LoanStream (the "Call Campaign"). *Evidence:* Roberts Decl. ¶¶ 1, 3, 8-13; Declaration of Serene Rosenberg Vernon ("Vernon Decl.") Filed In | **Disputed in part.** Undisputed that Resmo coordinated a campaign with Global Experts that included LoanStream among the entities. Disputed as to "independently": LizDev's CEO understood the campaign was one Sean Roberts "ran for LoanStream"; LoanStream's branch manager Cynthia Roberts (Sean Roberts' wife) was a LoanStream W-2 employee; LoanStream's P&L records a ▬▬▬▬▬ payment to Premier/Resmo. Sean Roberts |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Landers Decl.") ¶¶ 12-34; Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:11-32:13, 52:8-21. | described his data sourcing and scripts to LoanStream's president. *Evidence:* (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal); S. Roberts Dep. 45:8-25, 54:7-24; Stone Decl., ECF 58-5, ¶ 4; C. Roberts Dep. 9:16-25. |
| **31.** According to Sean Roberts, the Call Campaign was conducted as follows: (i) Resmo obtained a list of optin leads, which consisted of consumers who previously provided their consent to be contacted because, among other things, they expressed their interest in securing and/or refinancing mortgage loans (the "Leads"); (ii) Resmo compared the Leads against the NDNCR; (iii) Resmo provided the vetted the Leads to Global Experts; (iv) Sean Roberts understands that Global Experts then called some of the Leads that Resmo vetted through the NDNCR; and (v) for consumers who expressed interest, Global Experts transferred the call to Resmo to discuss mortgage options that were potentially available through AFN, L3, and LoanStream.. *Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 52:8-21; Roberts Decl. ¶¶ 9-10. | **Disputed in part.** Undisputed that this is Sean Roberts' account. Disputed as to (ii), that the Leads were vetted against the NDNCR: the LizDev invoice warned the leads " ███████████ " and " ███████████ " *Evidence:* Vernon Dep. 43:19-24, 46:5-8; Ex. 6 to Landers Decl. (LizDev Invoice) (filed under seal). |
| **32.** Resmo and/or Global Experts conducted the Call Campaign using a | **Undisputed.** Undisputed. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| data set obtained from LizDev, Inc. ("LizDev").<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8, 11 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set), Ex. 7 (Sean Roberts Dep. Tr.) 19:13-16, 20:91:21-9; Roberts Decl. ¶¶ 8-10, 15-16. | |
| 33. The data set produced by LizDev is not legally authenticated (the "Unauthenticated Data Set").<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | **Disputed.**<br><br>This "fact" impermissibly makes legal argument and is a legal argument masquerading as a "fact."<br><br>Factually disputed. The LizDev call logs were authenticated by the Declaration of Elizabeth Stone, LizDev's CEO, who attested they are LizDev business records made and maintained in the ordinary course and produced in this action.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 2-4, 6-7. |
| 34. There is no evidence regarding who created the Unauthenticated Data Set, how it was prepared, when it was prepared, or how it was maintained.<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | **Disputed.**<br><br>This "fact" impermissibly makes legal argument and is a legal argument masquerading as a "fact."<br><br>The Stone Declaration supplies the foundation. LizDev's CEO attested the logs were generated and maintained by LizDev in the ordinary course of business, at or near the time, by or from someone with knowledge, and that they |

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | reflect outbound calls placed by Global Experts in connection with the LoanStream Campaign, and explained what the data purported to show.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 3, 7. |
| 35.  LizDev does not know where it got the Unauthenticated Data Set from, whether it be Sean Roberts or Global Experts.<br>*Evidence:* Dkt. 58-5 (Declaration of Elizabeth Stone filed by Plaintiff on April 13, 2026); Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | **Disputed.**<br>The Stone Declaration states that LizDev's CEO had access to the logs of the calls placed by Global Experts because she "invested in Global Experts" and that the business records and reports were "generated and maintained by LizDev."<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 3, 7. |
| 36.  Neither Sean Roberts nor Resmo created or prepared the Unauthenticated Data Set.<br>*Evidence:* Roberts Decl. ¶¶ 15-16. | **Undisputed.**<br>Undisputed. The logs were LizDev/Global Experts records, as set forth in the Stone Declaration.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 3, 7. |
| 37.  The Unauthenticated Data Set purports to show the number of calls made to a particular phone number and the timing of the last call made.<br>*Evidence:* Landers Decl. ¶¶ 5, 8, 10 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Roberts Decl. ¶¶ 15-16. | **Undisputed.**<br>Undisputed. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 38. The Unauthenticated Data Set does not show who, when, or what number Global Experts called "on behalf of" LoanStream (as opposed to L3 or AFN) or the purpose of each call.<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set), Ex. 13 (Expert Report of Madelyn Moran ("Moran Report") ¶¶ 19, 21, 69; Roberts Decl. ¶¶ 15-16. | **Disputed in part.**<br>Undisputed that the logs do not themselves itemize each call by each purportedly promoted entity.<br><br>Disputed to the extent it implies that the calls were placed by or on behalf of any entity other than LoanStream, as the invoices listed LoanStream as the customer.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 4, 7; S. Roberts Dep. 22-23.; Ex. 6 to Landers Decl. (LizDev Invoice) (filed under seal).<br><br>Moreover, the answered October 19 call was recorded, and the caller identified herself as calling from "LoanStream Mortgage" and Vernon acknowledged LoanStream's products and services were being promoted on the calls.<br><br>*Evidence:* Exhibit 1 to Landers Dec., (ECF 81-10) (Call Recording) (filed under seal); Vernon Dep. 79:12-15, 84:9-13. |
| 39. The Unauthenticated Data Set associates the Number with "Eleanora Woods" (not "Kimberly Hudson-Bryant").<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the | **Undisputed.**<br>Undisputed. |

- 11 -

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| Unauthenticated Data Set); Ex. 13 ¶ 40 (Moran Report). | |
| 40.  The Unauthenticated Data Set states that Eleanora's Number was called *three* times, but does not reference *when* each call occurred. *Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | **Undisputed.** Undisputed that the logs reflect the Number was called three times. However, the logs do reflect the date of the last call. *Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set). |
| 41.  The Unauthenticated Data Set only lists the final call attempt made to each phone number (data indicated by the "last_local_call_time" column). *Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); Ex. 13 ¶ 40 (Moran Report). | **Undisputed.** Undisputed. |
| 42.  According to the Unauthenticated Data Set, the last call placed to Eleanora's Number occurred on "10/19/2021 14:17" (previously defined as the "Global Experts Call"). *Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | **Undisputed.** Undisputed. |
| 43.  The Unauthenticated Data Set lists Eleanora's address as "███████ ████████" (the "███████ house"). *Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the | **Undisputed.** Undisputed as to what the data set states. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | |
| 44.  The Unauthenticated Data Set lists Eleanora's email address as ▮▮▮▮▮▮▮▮▮▮▮▮<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8, 10, 18 & Ex. 4 (extracted excerpt from the Unauthenticated Data Set); ); Ex. 13 ¶ 40 (Moran Report). | **Undisputed.**<br><br>Undisputed as to what the data set states. |
| 45.  ▮▮▮▮▮▮▮ ("▮▮▮▮▮"), Eleanora's son and Plaintiff's brother, lived at the ▮▮▮▮▮ house at the time of the Global Experts Call.<br><br>*Evidence:* Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 49:4-5, 50:5-7, 51:15-20, 54:21-55:3. | **Undisputed.**<br><br>Undisputed. |
| 46.  Romney uses the email address ▮▮▮▮▮▮▮▮▮▮▮▮<br><br>*Evidence:* Landers Decl. ¶ 16 & Ex. 10 (Pl.'s Dep. Tr.) 49:4-5, 50:5-7, 51:15-20, 52:16-54:9, 54:21-55:3. | **Undisputed.**<br><br>Undisputed. |
| 47.  LizDev also produced call scripts ("Call Scripts") and Global Experts Invoices related to the Call Campaign as a whole, including calls allegedly placed referencing AFN, Lending 3/L3, and LoanStream (the "Global Experts Invoices").<br><br>*Evidence:* FAC ¶¶ 21-22; Landers Decl. ¶¶ 5, 8-9 & Ex. 3 (Call Scripts), Ex. 5 (Global Experts Invoices); Roberts Decl. ¶¶ 16-17. | **Undisputed.**<br><br>Undisputed, including that the scripts and invoices reference LoanStream. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| **48.** The Call Scripts, along with Sean Roberts' testimony, demonstrate that the Call Campaign related to other entities, including AFN and L3.<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8-9 & Ex. 3 (Call Scripts); Roberts Decl. ¶¶ 10-11 16. | **Disputed in Part.**<br><br>Undisputed only that the purported scripts make reference to AFN and L3.<br><br>Disputed to the extent it implies that the calls were placed by or on behalf of any entity other than LoanStream, as the invoices listed LoanStream as the customer.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 4, 7; S. Roberts Dep. 22-23.; Ex. 6 to Landers Decl. (LizDev Invoice) (filed under seal).<br><br>Moreover, the answered October 19 call was recorded, and the caller identified herself as calling from "LoanStream Mortgage" and Vernon acknowledged LoanStream's products and services were being promoted on the calls.<br><br>*Evidence:* Exhibit 1 to Landers Dec., (ECF 81-10) (Call Recording) (filed under seal); Vernon Dep. 79:12-15, 84:9-13. |
| **49.** The Call Scripts do not mention LoanStream by name; instead, they reference "LS mortgage" which is not LoanStream's name or a name under which it does business.<br><br>*Evidence:* Landers Decl. ¶¶ 5, 8-9 & Ex. 3 (Call Scripts); Roberts Decl. ¶¶ 16-17; Vernon Decl. ¶ 13. | **Disputed in Part.**<br><br>Undisputed only that the purported scripts make reference to the shorthand "LS mortgage."<br><br>Disputed to the extent it implies that the calls were placed by or on behalf of any entity other than LoanStream, as |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | the invoices listed LoanStream as the customer.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 4, 7; S. Roberts Dep. 22-23.; Ex. 6 to Landers Decl. (LizDev Invoice) (filed under seal).<br><br>Moreover, the answered October 19 call was recorded, and the caller identified herself as calling from "LoanStream Mortgage" and Vernon acknowledged LoanStream's products and services were being promoted on the calls.<br><br>*Evidence:* Exhibit 1 to Landers Dec., (ECF 81-10) (Call Recording) (filed under seal); Vernon Dep. 79:12-15, 84:9-13. |
| 50. Other mortgage companies exist with "LS"—like LendSure Mortgage Corp. (www.lendsure.com).<br><br>*Evidence:* www.lendsure.com. | **Disputed.**<br>This "fact" impermissibly makes legal argument and is a legal argument masquerading as a "fact," and moreover appears nowhere in the record.<br><br>Disputed to the extent offered to show the calls referenced a company other than LoanStream. No evidence in the record exists that the calls were placed by or on behalf of LendSure Mortgage.<br><br>Disputed to the extent it implies that the calls were placed by or on behalf of |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | any entity other than LoanStream, as the invoices listed LoanStream as the customer.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 4, 7; S. Roberts Dep. 22-23.; Ex. 6 to Landers Decl. (LizDev Invoice) (filed under seal).<br><br>Moreover, the answered October 19 call was recorded, and the caller identified herself as calling from "LoanStream Mortgage" and Vernon acknowledged LoanStream's products and services were being promoted on the calls.<br><br>*Evidence:* Exhibit 1 to Landers Dec., (ECF 81-10) (Call Recording) (filed under seal); Vernon Dep. 79:12-15, 84:9-13. |
| **51.** The Global Experts Invoices also reflect that the Call Campaign only occurred for a limited duration, between September 27, 2021, and November 16, 2021.<br><br>*Evidence:* Landers Decl. ¶ 5, 8 & Ex. 5 (Global Experts Invoices); Roberts Decl. ¶ 17. | **Undisputed.**<br>Undisputed. |
| **52.** Sean Roberts testified that "[Resmo and he] never had a relationship with LoanStream, period."<br><br>*Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:8-32:13. | **Disputed.**<br>Undisputed that Sean Roberts gave this testimony at his deposition, but disputed as to the assertion. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | LoanStream's P&L records a ▇▇▇▇ ▇▇▇▇▇▇▇▇▇ payment to Premier/Resmo, LizDev's CEO understood the campaign was run "for LoanStream" and that LizDev prepared invoices to be sent to Resmo "or LoanStream directly." Cynthia Roberts was LoanStream's W-2 branch manager, and at least Sean Roberts (and possibly Cynthia Roberts) communicated with Vernon about lead generation and payments and met her at Bistango.<br><br>*Evidence:* (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal); Stone Decl., ECF 58-5, ¶¶ 4-5; C. Roberts Dep. 9:16-25; S. Roberts Dep. 51:15-52:7, 54:7-24. |
| **53.** Sean Roberts has never been an employee, agent, or independent contractor of LoanStream.<br>*Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 13:11-13, 30:18- 22; Roberts Decl. ¶¶ 4-5. | **Disputed in part.**<br>Undisputed that Sean Roberts was not a LoanStream W-2 employee.<br><br>Disputed in that the issue of whether or not someone is an "agent" or an "independent contractor" is a legal conclusion and this is a legal argument/conclusion masquerading as a "fact."<br><br>The factual basis for a finding that Sean Roberts was an agent of LoanStream is found in that Sean Roberts testified LoanStream wanted to know how he obtained his data and how he marketed that he described the scripts and contact |

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | methods to Vernon at Bistango and LoanStream funded the marketing through a ███████ payment to his company. *Evidence:* S. Roberts Dep. 45:8-25, 46:10-18, 54:7-24; (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal). |
| 54. Resmo has never been an agent, or independent contractor of LoanStream. *Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | **Disputed.** Disputed in that the issue of whether or not someone is an "agent" or an "independent contractor" is a legal conclusion and this is a legal argument/conclusion masquerading as a "fact." The factual basis for a finding that Resmo was an agent of LoanStream is found in that Sean Roberts testified LoanStream wanted to know how he obtained his data and how he marketed that he described the scripts and contact methods to Vernon at Bistango and LoanStream funded the marketing through a ███████ payment to Premier/Resmo. *Evidence:* S. Roberts Dep. 45:8-25, 46:10-18, 54:7-24; (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal). |
| 55. No contractual relationship has ever existed between LoanStream and Sean Roberts. *Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; | **Disputed in Part.** Undisputed as to the existence of a *written* contract. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | LoanStream's P&L records ███ ████████ payment to Premier, Sean Roberts' company. Sean Roberts emailed Vernon about "marketing expenses" due/past due, and Vernon responded by requesting a cost-center number so accounting could process payment.<br><br>*Evidence*: ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal); Vernon Dep. 61:11-24. |
| **56.** No financial relationship has ever existed between LoanStream and Sean Roberts.<br>*Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | **Disputed.**<br>LoanStream's P&L records ███ ████████ payment to Premier, Sean Roberts' company. Sean Roberts emailed Vernon about "marketing expenses" due/past due, and Vernon responded by requesting a cost-center number so accounting could process payment.<br><br>*Evidence*: ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal); Vernon Dep. 61:11-24. |
| **57.** No contractual relationship has ever existed between LoanStream and Resmo.<br>*Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5. | **Disputed in Part.**<br><br>Undisputed as to the existence of a *written* contract.<br><br>LoanStream's P&L records ███ ████████ payment to Premier, Sean Roberts' company. Sean Roberts emailed Vernon about "marketing expenses" due/past due, and Vernon |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | responded by requesting a cost-center number so accounting could process payment. Cynthia Roberts testified LoanStream "helped us have funding by paying marketing" and "paid invoices." LizDev prepared invoices to be sent to Resmo "or LoanStream directly."<br><br>*Evidence*: ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal); Vernon Dep. 61:11-24.; C. Roberts Dep. 10:13-14, 29:11-14; Stone Decl., ECF 58-5, ¶ 5. |
| **58.** No financial relationship has ever existed between LoanStream and Resmo.<br>*Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 31:2-32:21; Roberts Decl. ¶¶ 4-5; Vernon Decl. ¶¶ 10, 16, 18-21. | **Disputed.**<br>LoanStream's P&L records ██████ ████████ payment to Premier, Sean Roberts' company. Sean Roberts emailed Vernon about "marketing expenses" due/past due, and Vernon responded by requesting a cost-center number so accounting could process payment. Cynthia Roberts testified LoanStream "helped us have funding by paying marketing" and "paid invoices." LizDev prepared invoices to be sent to Resmo "or LoanStream directly."<br><br>*Evidence*: ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal); Vernon Dep. 61:11-24.; C. Roberts Dep. 10:13-14, 29:11-14; Stone Decl., ECF 58-5, ¶ 5. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| **59.** No contractual relationship has ever existed between LoanStream and Global Experts. *Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 32:14-21, 39:15- 40:1; Roberts Decl. ¶ 7; Vernon Decl. ¶¶ 27-29. | **Undisputed.** Undisputed that there was no direct contract between LoanStream and Global Experts, as the campaign ran through Resmo. |
| **60.** No financial relationship has ever existed between LoanStream and Global Experts. *Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 32:14-21, 39:15- 40:1; Roberts Decl. ¶ 7; Vernon Decl. ¶¶ 27-29. | **Undisputed.** Undisputed that there is no record that LoanStream made direct payment to Global Experts. |
| **61.** At no point was Global Experts an approved vendor of LoanStream. *Evidence:* Vernon Decl. ¶ 24. | **Disputed in part.** Undisputed in that Global Experts was not a formally approved vendor. Disputed to the extent that any testimony adduced implies that such approval was required. |
| **62.** LoanStream never contracted with Global Experts directly or indirectly to engage in the Call Campaign for LoanStream's benefit. *Evidence:* Vernon Decl. ¶ 27. | **Disputed in part.** Undisputed that LoanStream did not contract with Global Experts *directly*. Disputed as to "indirectly . . . for LoanStream's benefit," as the campaign ran through LoanStream's branch manager Cynthia Roberts and Sean Roberts' Resmo, which engaged Global Experts, and LoanStream funded the marketing. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | *Evidence:* S. Roberts Dep. 52:8-21, 52:15-53:8; Stone Decl., ECF 58-5, ¶ 4); ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal). |
| 63. LoanStream never had a business relationship with Global Experts. *Evidence:* Vernon Decl. ¶ 27. | **Undisputed.** Undisputed as to a *direct* business relationship with Global Experts. |
| 64. LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Global Experts. *Evidence:* Vernon Decl. ¶ 28. | **Disputed.** Vernon testified LoanStream accepted the loans the campaign generated, which were LoanStream loans, and acknowledged LoanStream's products and services were being promoted on the calls.<br><br>*Evidence:* Vernon Dep. 49:6-9, 84:9-13. |
| 65. At no point did LoanStream control the manner or means by which the Call Campaign was conducted in any way. *Evidence:* Roberts Decl. ¶¶ 12-14; Vernon Decl. ¶¶ 16-21, 24-28, 34. | **Disputed.**<br><br>Sean Roberts testified LoanStream wanted a verbal agreement that he "weren't going to just start dialing white pages," asked how he received his data, and discussed "how you market." LoanStream provided the funding, including marketing funding, for the C. Roberts branch.<br><br>*Evidence:* S. Roberts Dep. 45:8-25, 46:10-18; C. Roberts Dep. 9:16-25, 44:20-45:18; Vernon Dep. 47:22-48:8. |
| 66. LoanStream did not supervise the Call Campaign in any way, it did not supply any resources, tools, or any | **Disputed.** |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| other resources to assist in the Call Campaign, and it did not make any payments towards services related to the Call Campaign.<br><br>*Evidence: Roberts Decl. ¶¶ 12-14; Vernon Decl. ¶¶ 16-21, 24-28, 34.* | Sean Roberts testified LoanStream wanted a verbal agreement that he "weren't going to just start dialing white pages," asked how he received his data, and discussed "how you market." LoanStream's P&L records a $7,000 "█████████████ ██████████████████. LoanStream provided the funding, including marketing funding, for the C. Roberts branch. LizDev invoices were sent to LoanStream's accounting.<br><br>*Evidence:* S. Roberts Dep. 45:8-25, 46:10-18; C. Roberts Dep. 9:16-25, 12:14-16, 44:20-45:18; Vernon Dep. 47:22-48:8; ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal). |
| **67.** At no point did LoanStream authorize, request, instruct, or command Sean Roberts—directly, implicitly, or otherwise—to engage in, or assist with, the Call Campaign on LoanStream's behalf.<br>*Evidence: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20.* | **Disputed.**<br><br>Sean Roberts testified LoanStream only wanted to know how he obtained his data and how he marketed and that he gave Vernon "a description of the scripts and how we contact the clients" at the Bistango meeting.<br><br>*Evidence:* S. Roberts Dep. 45:8-25, 46:10-18, 54:7-24. |
| **68.** At no point did LoanStream authorize, request, instruct, or command Resmo—directly, implicitly, or otherwise—to engage in, or assist | **Disputed.**<br>Sean Roberts testified LoanStream only wanted to know how he obtained his data and how he marketed and that he |

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| with, the Call Campaign on LoanStream's behalf in any way. *Evidence: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20.* | described the scripts and contact methods to Vernon at Bistango. *Evidence:* S. Roberts Dep. 45:8-25, 46:10-18, 54:7-24. |
| **69.** At no point did Sean Roberts believe that he had the express or implied authority to act on behalf of LoanStream with respect to the Call Campaign. *Evidence: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20.* | **Disputed.** Undisputed that Sean Roberts so declared; disputed as it conflicts with his deposition testimony that LoanStream wanted a verbal agreement about how he obtained his data and how he marketed and that he described his scripts and contact methods to Vernon. *Evidence:* S. Roberts Dep. 45:8-25, 46:10-18 54:7-24. |
| **70.** At no point did Sean Roberts believe that Resmo had the express or implied authority to act on behalf of LoanStream with respect to the Call Campaign. *Evidence: Roberts Decl. ¶¶ 12-13; Vernon Decl. ¶¶ 17-20.* | **Disputed.** Undisputed that Sean Roberts so declared; disputed as it conflicts with his deposition testimony described in response to Nos. 67-69 *Evidence:* S. Roberts Dep. 45:8-25, 46:10-18, 54:7-24. |
| **71.** Sean Roberts did not receive compensation from a representative, employee, or agent of LoanStream at any point before, during, or after the Call Campaign. *Evidence: Roberts Decl. ¶¶ 14, 18; Vernon Decl. ¶ 18-19.* | **Disputed.** LoanStream's P&L records a $█████ ████████ payment to Premier/Resmo, Sean Roberts' company, and Cynthia Roberts testified LoanStream "paid invoices" and |

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | "helped us have funding by paying marketing"<br><br>*Evidence:* (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal); C. Roberts Dep. 10:13-14, 29:11-14. |
| 72. At no point did LoanStream pay Sean Roberts for the Global Experts Invoices.<br>*Evidence:* Roberts Decl. ¶ 18; Vernon Decl. ¶ 27. | **Disputed in part.**<br><br>Undisputed that there is no record of a payment line-itemed to the "Global Experts Invoices." Disputed to the extent it denies that LoanStream funded the campaign. Sean Roberts testified LoanStream was provided LizDev's invoices so that they could provide the funding or justify the funding, and LoanStream's P&L records a ██████<br>██████████████ .<br><br>S. Roberts Dep. 52:15-53:8; (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal) |
| 73. At no point did LoanStream pay Resmo for the Global Experts Invoices.<br>*Evidence:* Landers Decl. ¶ 5, 8 & Ex. 5 (Global Experts Invoices); Roberts Decl. ¶ 18; Vernon Decl. ¶ 27. | **Disputed.**<br><br>Undisputed that there is no record of a payment line-itemed to the "Global Experts Invoices." Disputed to the extent it denies that LoanStream funded the campaign. Sean Roberts testified LoanStream was provided LizDev's invoices so that they could provide the funding or justify the funding, and LoanStream's P&L records a ████ |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | ▮▮▮▮▮▮▮. Cynthia Roberts testified LoanStream paid invoices. Vernon testified that she responded to an email from Sean Roberts asking for a cost center number for a past due invoice.<br><br>*Evidence:* S. Roberts Dep. 52:15-53:8; (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal); C. Roberts Dep. 10:13-14, 29:11-14; Vernon Dep. 61:11-24. |
| **74.** Neither LoanStream nor Serene Vernon learned about the Call Campaign until after the campaign concluded.<br>*Evidence:* Landers Decl. ¶ 11 & Ex. 7 (Sean Roberts Dep. Tr.) 54:10-55:13; Roberts Decl. ¶ 19; Vernon Decl. ¶ 11. | **Disputed.**<br><br>LoanStream's P&L records the ▮▮▮▮▮▮▮ payment to Premier/Resmo as a ▮▮▮▮ transaction. Sean Roberts testified he communicated with Vernon about lead generation and payments and met her at Bistango, where he described the scripts and contact methods. LoanStream received and "discarded" a LizDev invoice that had language that ▮▮▮▮▮▮▮.<br><br>*Evidence:* (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal); S. Roberts Dep. 51:15-52:7, 54:7-24; Vernon Dep. 43:19-24, 46:5-8, 48:18-24, 61:11-24; Ex. 6 to Landers Decl. (LizDev Invoice) (filed under seal). |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| 75. According to Serene Vernon, LoanStream and she did not learn about the Call Campaign until after the filing of the lawsuit in 2024, years after the campaign concluded in 2021.<br><br>*Evidence:* Vernon Decl. ¶ 12. | **Disputed.**<br><br>Undisputed that Vernon so declared. Disputed as it conflicts with the LoanStream's P&L records which record a ▮▮▮▮▮ payment to Premier/Resmo as a ▮▮▮▮▮ transaction. Sean Roberts testified he communicated with Vernon about lead generation and payments and met her at Bistango, where he described the scripts and contact methods. LoanStream received and "discarded" a LizDev invoice that had language that ▮▮▮▮▮.<br><br>*Evidence:* (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal); S. Roberts Dep. 51:15-52:7, 54:7-24; Vernon Dep. 43:19-24, 46:5-8, 48:18-24, 61:11-24; Ex. 6 to Landers Decl. (LizDev Invoice) (filed under seal). |
| 76. Sean Roberts is not aware of LoanStream ever paying Global Experts directly for the Global Experts Invoices.<br><br>*Evidence:* Roberts Decl. ¶ 18. | **Undisputed.**<br>Undisputed that LoanStream made no *direct* payment to Global Experts. |
| 77. LoanStream has no record of ever paying Global Experts for any work it performed.<br><br>*Evidence:* Vernon Decl. ¶¶ 27-29. | **Disputed in Part.**<br><br>Undisputed as to a *direct* payment to Global Experts. However, disputed in that LoanStream's P&L records which record a ▮▮▮▮▮ |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| | payment to Premier/Resmo as a ▮▮▮▮▮▮▮▮▮▮▮▮ transaction.<br><br>*Evidence:* (ECF 60-5) (accounting ledger/profit and loss statement) (filed under seal). |
| 78.  At no point was LizDev an approved vendor of LoanStream.<br>*Evidence:* Vernon Decl. ¶ 24. | **Disputed in part.**<br><br>Undisputed in that Global Experts was not a formally approved vendor. Disputed to the extent that any testimony adduced implies that such approval was required. |
| 79.  The Call Campaign did not generate any leads that were fulfilled for LoanStream's benefit at any time.<br>*Evidence:* Vernon Decl. ¶ 29. | **Disputed.**<br><br>Vernon testified LoanStream accepted the loans the campaign generated, which were LoanStream loans.<br><br>*Evidence:* Vernon Dep. 49:6-9. |
| 80.  LoanStream received no revenue from the Call Campaign.<br>*Evidence:* Vernon Decl. ¶ 29. | **Disputed.**<br><br>Vernon testified LoanStream accepted the loans the campaign generated, which were LoanStream loans, acknowledged LoanStream's products and services were being promoted on the calls, and testified that the branch was *never* profitable.<br><br>*Evidence:* Vernon Dep. 30:16-25; 49:6-9, 84:9-13. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Moving Party's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|
| **81.** LoanStream did not generate any business from the Call Campaign. <br><br> *Evidence:* Vernon Decl. ¶ 29. | **Disputed.** <br><br> Vernon testified LoanStream accepted the loans the campaign generated, which were LoanStream loans. <br><br> *Evidence:* Vernon Dep. 49:6-9. |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to the Court's Civil Standing Order, Plaintiff submits the following additional material facts that bear on the issues raised by LoanStream's Motion, in sequentially numbered paragraphs continuing from the Statement of Uncontroverted Facts. Consistent with the Court's Standing Order, this document contains no legal argument.

| Plaintiff's Additional Material Fact | Defendant's Response and Supporting Evidence |
| --- | --- |
| 82. Plaintiff Kimberly Hudson-Bryant personally answered calls placed to the Number and recorded the October 19, 2021 call.<br><br>*Evidence:* ECF 81-10 (call recording) (filed under seal). | |
| 83. During the recorded October 19, 2021 call, the caller stated that she was calling from "LoanStream Mortgage."<br><br>*Evidence:* ECF 81-10 (call recording) (filed under seal). | |
| 84. The data set LizDev produced in discovery reflects that the Number was called three times.<br><br>*Evidence:* Stone Decl. (ECF 58-5) ¶¶ 6-7; Ex. 4 to Landers Dec. (filed under seal), (███████ ███████). | |
| 85. Plaintiff's AT&T telephone records reflect at least two calls placed to the Number from 213-521-2618. | |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| Plaintiff's Additional Material Fact | Defendant's Response and Supporting Evidence |
|---|---|
| *Evidence:* Ex. 9 to Landers Dec. (redacted under seal), ECF 81-17 at Page ID 2285-86. | |
| **86.** Plaintiff's January 3, 2023 written letter to LoanStream identified two specific calls, on October 12, 2021 and October 19, 2021.<br><br>*Evidence:* ECF 81-2, Ex. 4 to Landers Dec. | |
| **87.** The telemarketing campaign solicited recipients for LoanStream's mortgage products.<br><br>*Evidence:* Stone Decl. ¶ 4; ECF 81-10 (call recording) (filed under seal). | |
| **88.** Sean Roberts ran the calling campaign for LoanStream.<br><br>*Evidence:* Stone Decl. ¶ 4; S. Roberts Dep. 52:8-21, 52:15-53:8. | |
| **89.** Resmo/Premier Financial Marketing hired LizDev to supply leads and hired Global Experts to place the calls.<br><br>*Evidence:* S. Roberts Dep. 52:15-53:8; Stone Decl. ¶¶ 4, 7. | |
| **90.** Global Experts physically placed the calls in connection with the LoanStream campaign.<br><br>*Evidence:* Stone Decl. ¶ 7. | |
| **91.** LoanStream employed Cynthia Roberts, the wife of Sean Roberts, as a W-2 employee and branch manager.<br><br>*Evidence:* C. Roberts Dep. 9:1-10:15, 20:2-8, 44:20-45:18. | |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| | |
|---|---|
| **92.** LoanStream funded the branch and paid its rent.<br><br>*Evidence:* C. Roberts Dep. 9:1-10:15, 44:20-45:18. | |
| **93.** LoanStream accepted the loans the branch generated.<br><br>*Evidence:* Vernon Dep. 49:6-9. | |
| **94.** LoanStream knew that Sean Roberts, who had lost his DFPI license, was associated with the branch.<br><br>*Evidence:* Vernon Dep. 59:8-18, 60:1-12. | |
| **95.** LoanStream authorized its branches to generate business on their own.<br><br>*Evidence:* Vernon Dep. 14:9-11, 88:21-25. | |
| **96.** LoanStream's profit and loss statement records a ███████████ ACH payment of ██████ ███████████ under general ledger account ██████ ███████████<br><br>*Evidence:* ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal). | |
| **97.** That ██████ entry is the sole entry under "███████████ on LoanStream's profit and loss statement.<br><br>*Evidence:* ECF 60-5 (accounting ledger/profit and loss statement) (filed under seal). | |
| **98.** Cynthia Roberts testified that LoanStream "helped us have funding by paying marketing."<br><br>*Evidence:* C. Roberts Dep. 10:14-15. | |
| **99.** Cynthia Roberts testified that LoanStream "paid invoices." | |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| | |
|---|---|
| *Evidence:* C. Roberts Dep. 29:11-14. | |
| **100.** Cynthia Roberts testified that LizDev invoices went to LoanStream's accounting to be paid.<br><br>*Evidence:* C. Roberts Dep. 12:14-16. | |
| **101.** Sean Roberts testified that LoanStream was provided LizDev's invoices so that it could provide or justify the funding for the branch.<br><br>*Evidence:* S. Roberts Dep. 52:15-53:8. | |
| **102.** Sean Roberts testified that, before the calling began, LoanStream asked how he obtained his data and he told them, in a conversation that included Cynthia Roberts.<br><br>*Evidence:* S. Roberts Dep. 45:8-25, 46:10-18. | |
| **103.** Sean Roberts testified that he met LoanStream's president, Serene Vernon, at the Bistango restaurant in Irvine, California, and gave her a description of the scripts and how clients were contacted.<br><br>*Evidence:* S. Roberts Dep. 54:7-24, 55:1-13. | |
| **104.** Sean Roberts testified that he communicated with Vernon regarding lead generation and payments.<br><br>*Evidence:* S. Roberts Dep. 51:15-52:7, 54:10-24; Vernon Dep. 61:11-24. | |
| **105.** Vernon acknowledged that an invoice was sent to LoanStream's accounting and was "discarded."<br><br>*Evidence:* Vernon Dep. 48:13-24. | |
| **106.** When Sean Roberts emailed Vernon about "variable (marketing) expenses due/past due," | |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| | |
|---|---|
| Vernon responded by requesting a cost center number so accounting could process payment.<br><br>*Evidence:* Vernon Dep. 61:11-24. | |
| **107.** Vernon acknowledged that a customer receiving such a call would believe the call was made on LoanStream's behalf.<br><br>*Evidence:* Vernon Dep. 83:14-16. | |
| **108.** Vernon acknowledged that LoanStream was the entity whose products and services were being promoted on the calls.<br><br>*Evidence:* Vernon Dep. 84:9-13. | |
| **109.** Vernon acknowledged meeting Sean Roberts at the Bistango restaurant with a LoanStream employee, but testified she never met Cynthia Roberts. However, Sean Roberts testified to a meeting at which his wife was "in the room."<br><br>*Evidence:* Vernon Dep. 67:6-24, 92:23-24; S. Roberts Dep. 46:10-22. | |
| **110.** Vernon testified that she is currently facing a murder charge.<br><br>*Evidence:* Vernon Dep. 25:25-26:1. | |
| **111.** The LizDev invoice LoanStream received stated that ███████████████████████████████████████████████████████████.<br><br>*Evidence:* Ex. 6 to Landers Decl. (LizDev invoice) (filed under seal). | |
| **112.** LoanStream discarded that LizDev invoice.<br><br>*Evidence:* Vernon Dep. 48:18-24. | |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

| | |
|---|---|
| **113.** Vernon testified that LoanStream did not discipline the branch, did not ask how the branch generated leads, and did not produce any written telemarketing prohibition.<br><br>*Evidence:* Vernon Dep. 40:14-25, 41:1-9, 48:25-49:2, 51:21-25. | |
| **114.** LoanStream did not produce any written telemarketing prohibition or policy applicable to the branch.<br><br>*Evidence:* Vernon Dep. 38:10-23, 40:5-16. | |
| **115.** Vernon testified that nobody ever asked about how the branch was generating leads.<br><br>*Evidence:* Vernon Dep. 51:21-25. | |
| **116.** Elizabeth Stone is the Chief Executive Officer of LizDev.<br><br>*Evidence:* Stone Decl. ¶ 1. | |
| **117.** The LizDev call logs were made and kept in the ordinary course of LizDev's business.<br><br>*Evidence:* Stone Decl. ¶¶ 2-3. | |
| **118.** LizDev prepared invoices to be sent to either Resmo or LoanStream directly.<br><br>*Evidence:* Stone Decl. ¶ 5. | |
| **119.** The LizDev call logs reflect outbound calls placed by Global Experts in connection with the LoanStream campaign.<br><br>*Evidence:* Stone Decl. ¶ 7. | |

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*

Dated: June 18, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
(*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

June 18, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

STATEMENT OF GENUINE ISSUES & ADDITIONAL MATERIAL FACTS
*Hudson-Bryant v. OCMBC, Inc. d/b/a LoanStream*