THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
ADAM R. SCOTT [SBN 333706]
ascott@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303
(f) 619.231.4755

Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>OCMBC, INC. D/B/A LOANSTREAM MORTGAGE, PREMIER FINANCIAL MARKETING LLC D/B/A RESMO LENDING, AND SEAN ROBERTS,<br><br>                Defendants. | Case No. 8:24-cv-67-FWS-JDE<br><br>**REPLY IN SUPPORT OF DEFENDANT OCMBC, INC. d/b/a LOANSTREAM MORTGAGE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:          July 16, 2026<br>Time:          10:00 a.m.<br>Crtrm.:        10D<br><br>Judge:         Hon. Fred W. Slaughter<br>Magistrate:    Hon. John D. Early<br><br>Action Filed:  January 11, 2024<br>Trial Date:    October 27. 2026 |

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.     THIS CASE IS RIPE FOR SUMMARY JUDGMENT. ................................. 6

II.    LOANSTREAM'S MATERIAL FACTS ARE UNDISPUTED...................... 7

III.   PLAINTIFF ADMITS NO DIRECT LIABILITY UNDER 47 U.S.C. § 227(c)(5). ........................................................................................................ 10

IV.    PLAINTIFF HAS NO ADMISSIBLE EVIDENCE IN SUPPORT OF ESSENTIAL ELEMENTS TO HER CLAIM. ............................................... 11

    A.   It Is Undisputed That There is No Admissible Evidence Plaintiff Received "More Than One Call" "On Behalf Of" LoanStream........... 11

    B.   There is No Evidence of *Who* Registered the Number with the NDNCR. .......................................................................................... 12

V.     THE UNCONTROVERTED EVIDENCE SHOWS THAT PLAINTIFF LACKS STANDING. ................................................................ 13

VI.    PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE OF FACT AS TO ANY CLAIM OR THEORY OF VICARIOUS LIABILITY. ........... 16

    A.   There is No Evidence that LoanStream had Control Over Global Experts' Conduct................................................................................. 17

    B.   There is No Evidence that LoanStream Gave Apparent Authority to Global Experts. .............................................................................. 19

    C.   Plaintiff Cannot Establish that LoanStream "Ratified" Global Experts' Alleged Unlawful Conduct..................................................... 22

VII.   THERE IS NO EVIDENCE THAT COULD LEAD A REASONABLE FACT-FINDER TO CONCLUDE THAT LOANSTREAM KNOWINGLY OR WILLFULLY VIOLATED THE TCPA. ....................... 26

VIII.  CONCLUSION .......................................................................................... 28

LOCAL RULE 11-6.2 COMPLIANCE STATEMENT ......................................... 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018)................................................................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................8, 12

*Babb v. Wilkie*,
    140 S. Ct. 1168 (2020).........................................................................................12

*Banks v. Solar*,
    416 F. Supp. 3d 171 (E.D.N.Y. July 31, 2018) ....................................................20

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2008) ............................................................................22

*Big B Auto. Warehouse Distributors, Inc. v. Coop. Computing, Inc.*,
    2000 U.S. Dist. LEXIS 16363 (N.D. Cal. Nov. 1, 2000)....................................21

*Bridgeview Health Care Ctr. Ltd. v. Clark*,
    09 C 5601, 2013 U.S. Dist. LEXIS 118470 (N.D. Ill. Aug. 21, 2013) ..............19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................11

*Hall v. Smosh Dot Com, Inc.*,
    72 F.4th 983 (9th Cir. 2023)................................................................................14

*Henderson v. United Student Aid Funds, Inc.*,
    918 F.3d 1068 (9th Cir. 2019).............................................................................16

*Johns v. Cnty. of San Diego*,
    114 F.3d 874 (9th Cir. 1997)...............................................................................14

*Katz v. Allied First Bank*,
    2026 U.S. Dist. LEXIS 46583 (N.D. Ill. Mar. 6, 2026) ............................6, 8, 22

*Kristensen v. Credit Payment Servs.*
    (9th Cir. 2018) 879 F.3d 1010,1015 ...................................................................22

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
  780 F.3d 1101 (11th Cir. 2015)............................................................................27

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016)..................................................................................7

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  944 F. Supp. 2d 1226 (S.D. Fla. June 10, 2013) .................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...............................................................................................7

*Meyer v. Capital All. Grp.*,
  2017 U.S. Dist. LEXIS 183690 (S.D. Cal. Nov. 6, 2017)....................................19

*Miller v. Glenn Miller Productions, Inc.*,
  454 F.3d 975 (9th Cir. 2006)...................................................................................7

*Moore v. Healthcare Sols. Inc.*,
  2022 U.S. Dist. LEXIS 220437 (N.D. Ill Dec. 7, 2022) .....................................11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000).............................................................................12

*Norse v. City of Santa Cruz*,
  629 F.3d 966 (9th Cir. 2010)..................................................................................8

*Orr v. Bank of Am., NT & SA*,
  285 F.3d 764 (9th Cir. 2002)..................................................................................7

*Pepkowski v. Life of Indiana Ins. Co.*,
  535 N.E.2d 1164 (Ind. 1989).................................................................................20

*Rogers v. Assur. IQ, LLC*,
  2023 U.S. Dist. LEXIS 51955 (W.D. Wash. Mar. 27, 2023)..............................13

*In the Matter of Rules & Regulations Implementing the Telephone
  Consumer Protection Act of 1991*,
  30 F.C.C. Rcd. 7961 .............................................................................................14

*Salyers v. Metro. Life Ins. Co.*,
  871 F.3d 934 (9th Cir. 2017)................................................................................19

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007)................................................................................12

Case No. 8:24-cv-67-FWS-JDE

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................................................................................................... 16

*Surrell v. California Water Serv. Co.*,
518 F.3d 1097 (9th Cir. 2008) ......................................................................................... 7

*Thomas v. Taco Bell Corp.*,
879 F. Supp. 2d 1079 (C.D. Cal. June 25, 2012) ........................................................... 17

*Trindade v. Reach Media Grp., LLC*,
2014 U.S. Dist. LEXIS 98180 (N.D. Cal. July 18, 2014) ................................................ 27

*Wakefield v. ViSalus, Inc.*,
2019 U.S. Dist. LEXIS 104862 (D. Or. June 24, 2019) ................................................... 27

*Warth v. Seldin*,
422 U.S. 490 (1975) ....................................................................................................... 13

**Statutes**

47 C.F.R. § 64.1200(c)(2) .......................................................................................... 12, 13

Fed. R. Civ. P. 56(e) ......................................................................................................... 7

Telephone Consumer Protection Act .............................................................................. 28

**Other Authorities**

National Do Not Call Registry, Third Report ................................................................... 6

Restatement (Third) Of Agency § 3.03 (2006) ................................................................ 19

Case No. 8:24-cv-67-FWS-JDE

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## I.      THIS CASE IS RIPE FOR SUMMARY JUDGMENT.

This lawsuit is a tortured effort to coerce settlement from the deepest pocket Plaintiff[1] could identify for the conduct of parties (Global Experts, Resmo, and LizDev) not sued here. Plaintiff seeks to impose liability on LoanStream for a call placed by Global Experts that allegedly violated the TCPA. LoanStream did not request, direct, or approve that call and did not even know of the call until Plaintiff filed this lawsuit.[2]

Plaintiff  sued the wrong defendant(s), asserts a flawed legal theory, and lacks necessary evidence. This Court should reject Plaintiff's attempt to broaden agency liability under the TCPA.

LoanStream's Motion presents facts that entitle it to judgment. The burden then shifted to Plaintiff to demonstrate, through admissible evidence, there remains a triable issue of fact. She failed. LoanStream is entitled to judgment.

*First*, Plaintiff concedes LoanStream did not place any calls; thus, there is no direct liability. Dkt. 85-1 (Opposition SUF at p. 4.). *Second*, Plaintiff has not presented *admissible* evidence of essential elements of her claim; namely, more than one solicitation call was placed to the Number "on behalf of" LoanStream and *who* registered the Number with the NDNCR. *Third*, the undisputed facts and evidence show Plaintiff does not have Article III standing. *Finally*, Plaintiff cannot prove that Global Experts was LoanStream's actual or apparent agent, or that LoanStream ratified the alleged unlawful call to the Number. LoanStream had no knowledge of the Call Campaign when it occurred, and did not exert  any  form of  control over the "manner  and  means" by  which Global Experts placed telephone calls. Plaintiff

---

[1] Terms previously defined in the moving papers will have the same definition in this Reply.

[2] LoanStream has no record of the January 2023 Letter that Plaintiff allegedly sent pre-filing.

Case No. 8:24-cv-67-FWS-JDE

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

presents no evidence otherwise. Under Plaintiff's view, any business could be strictly liable for the unauthorized, unknown, and uncontrollable acts of a third-party so long as there is some potential, attenuated connection. That is not, and should not be, the law.

It is easy for any plaintiff to allege wrongdoing and make unsupported factual conclusions. But the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the moving party's burden is met, the party opposing the motion (here, Plaintiff) is required to go beyond the pleadings and, by the party's own affidavits or by other admissible evidence, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

When reviewing the admissible evidence submitted by Plaintiff (none) versus Plaintiff's speculation and characterizations of the evidence (myriad), there are no triable issues of material fact. Claims and theories not supported by admissible evidence do not raise a triable issue. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *Loomis v. Cornish*, 836 F.3d 991, 997, 998 (9th Cir. 2016) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment") (internal quotation omitted); *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (conclusory statements are similarly insufficient).

Accordingly, this Court should grant LoanStream's Motion in full.

## II.    LOANSTREAM'S MATERIAL FACTS ARE UNDISPUTED.

Plaintiff alleges LoanStream is vicariously liable under the TCPA for allegedly unlawful calls placed by a third-party, Global Experts, "on behalf of" LoanStream. Yet a close review of her opposition to LoanStream's statement of uncontroverted

facts ("Opposition SUF") illustrates that LoanStream's material facts are indisputable and unrebutted. Plaintiff labels certain facts as "disputed in part" or "disputed," but she fails to present admissible evidence in opposition, as is her burden. .

Plaintiff asserts three categories of responses: (1) undisputed; (2) "[d]isputed in part[,]" and (3) "[d]isputed." Yet, the latter designations are supported by speculation, inadmissible evidence, and/or a misunderstanding of the admissible evidence.

*First*, Plaintiff admits that 54% of LoanStream's material facts are undisputed. Dkt. 85-1 (SUF 1-2, 4-5, 7-29, 32, 36-37, 39-47, 51, 59-60, 63, and 76).

*Second*, in response to about 19% of LoanStream's material facts, Plaintiff states "[d]isputed in part." *Id.* at 3, 6, 30-31, 38, 48-49, 53, 55, 57, 61-62, 72, and 77-78. That response is no different than "undisputed" where the new evidence cited to plug holes in her own case (i.e. the Elizabeth Stone declaration) lacks personal knowledge and is riddled with hearsay and conjecture.[3] *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing FRCP 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")).

This tactic does not satisfy Plaintiff's burden of responding with admissible evidence to create any triable issue of material fact. If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

/ / /

---

[3] Notably, this declaration is dated April 10, 2026 and Plaintiff provided it to LoanStream, without exhibits, for the first time *after* non-expert discovery closed on April 6, 2026. The timing of this late disclosure precluded LoanStream from engaging in discovery related to the belated declaration.

-8-    Case No. 8:24-cv-67-FWS-JDE

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Finally*, the limited "facts" or "evidence" that Plaintiff presents do not create genuine issues of material fact. Plaintiff has conceded there are no material facts in dispute regarding:

- LoanStream did not directly place any calls to the Number (SUF 13-16);

- the Number did not receive "more than one" call "on behalf of" LoanStream (SUF 4-5, 30);

- there is no evidence regarding who registered the Number with the NDNCR (SUF 29-30);

- In October 2021, the Number was registered to Plaintiff's now ███████ mother, Eleanora C. Woods (SUF 9);

- The AT&T billing statement for October 2021 was addressed to 'Eleanora Woods' and sent to her home at █████████████████ ██████ (SUF 20);

- The Number was transferred into Plaintiff's name starting in May 2022, when the AT&T billing statements changed and were directed to 'Kimberly Hudson' at the ███████ Home (SUF 21);

- the alleged Call Campaign consisted of Global Experts placing calls "on behalf of" *multiple* entities (SUF 30);

- LoanStream had no control over Global Experts' conduct related to the alleged Call Campaign (SUF 65);

- Global Experts was not an approved vendor of LoanStream (SUF 61);

- LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Global Experts (SUF 64);

- LoanStream has no record of ever paying Global Experts for any work it performed (SUF 74);

- LoanStream had no control over Sean Roberts' or Resmo's conduct related to the alleged Call Campaign (SUF 65);

/ / /

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

- At no point did LoanStream authorize, request, instruct, or command Sean Roberts—directly, implicitly, or otherwise—to engage in, or assist with, the Call Campaign on LoanStream's behalf (SUF 67);
- At no point did LoanStream authorize, request, instruct, or command Resmo—directly, implicitly, or otherwise—to engage in, or assist with, the Call Campaign on LoanStream's behalf (SUF 68);
- Neither LoanStream nor Serene Vernon learned about the Call Campaign until after the campaign concluded (SUF 74);
- The Call Campaign did not generate any leads that were fulfilled for LoanStream's benefit at any time (SUF 79);
- LoanStream received no revenue from the Call Campaign (SUF 80); and
- LoanStream did not generate any business from the Call Campaign (SUF 81).

Accordingly, Plaintiff has failed to meet her burden of presenting any admissible evidence creating a triable issue of material fact as to her claim for liability.

## III. PLAINTIFF ADMITS NO DIRECT LIABILITY UNDER 47 U.S.C. § 227(c)(5).

When Plaintiff commenced this action, she alleged she "received two telemarketing calls from LoanStream as part of its solicitation campaign…" Dkt. 1 ¶ 15. Subsequently, she amended to state that she "received two telemarketing calls *placed on behalf of LoanStream* as part of its solicitation campaign *with Resmo and Roberts*…" Dkt. 37 ¶ 17 (italics added).

It is undisputed that LoanStream did not "directly make the call" (SUF 13-16), which Plaintiff concedes: "Undisputed that no LoanStream employee personally placed the calls at issue, which were placed by Global Experts." Dkt. 85-1 (Opposition SUF at p. 4).

At a minimum, the Court should enter judgment that LoanStream did not directly violate the TCPA to streamline this case, and to ensure further cost and effort is not wasted on a claim Plaintiff openly concedes lacks merit.

-10-                                                   Case No. 8:24-cv-67-FWS-JDE

## IV. PLAINTIFF HAS NO ADMISSIBLE EVIDENCE IN SUPPORT OF ESSENTIAL ELEMENTS TO HER CLAIM.

As the opposing party, Plaintiff must submit admissible evidence sufficient to establish the elements that are essential to Plaintiff's case, and for which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. It Is Undisputed That There is No Admissible Evidence Plaintiff Received "More Than One Call" "On Behalf Of" LoanStream.

Relying exclusively on the Unauthenticated Data Set produced by third-party LizDev and Elizabeth Stone's hearsay declaration, which expressly concedes her lack of personal knowledge ("I understand…"), Plaintiff infers "[t]he unanswered call from the same number, in the same campaign, was initiated for the same purpose." Opposition at 9:19-21. In doing so, Plaintiff ignores Sean Roberts' unrebutted testimony that the alleged Call Campaign was organized and executed by Resmo and Global Experts related to *three* entities (SUF 30) – a critical fact that Plaintiff tacitly concedes in the Opposition SUF. Dkt. 85-1 re SUF 30 ("Undisputed that Resmo coordinated a campaign with Global Experts that *included LoanStream among the entities.*") (italics added).

This concession renders Plaintiff's reliance on *Moore v. Healthcare Sols. Inc.,* 2022 U.S. Dist. LEXIS 220437 (N.D. Ill. Dec. 7, 2022) misplaced. In *Moore*, the call came directly from the defendant in a single-entity campaign; thus, the Court stated "[i]t is reasonable to conclude that Healthcare Solutions called the first time, too." *Id.* at *8. In contrast, here, it is undisputed that LoanStream did not place any calls (SUF 13-16) and Global Experts (the alleged agent/lead generator) placed calls on behalf of entities *other than* LoanStream (SUF 30). Thus, it is not reasonable to conclude here that the first, unanswered call to Plaintiff was also made "on behalf of" LoanStream.

Likewise, as Plaintiff admits, "[w]hat matters is the purpose of the call." Opposition at 8:22. Regarding the "solicitation" issue, noticeably missing from the record is any admissible evidence about the *purpose* of the first call (i.e., *why* it was

initiated, *who* it was made "on behalf of," *what* it was about, etc.) – as is Plaintiff's burden to establish given it an essential element of her TCPA claim. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (on an issue where the opposing party (here, Plaintiff) will bear the burden of proof at trial, the moving party (here, LoanStream) can prevail merely by demonstrating the opposing party lacks evidence to support its case). Again, Plaintiff relies on *assumptions, speculation,* and *inadmissible evidence* in an attempt to concoct a genuine dispute regarding Plaintiff's receipt of "more than one" solicitation call. None of which is sufficient to survive summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce *admissible* evidence showing a genuine dispute of material fact exists); *Anderson*, 477 U.S. at 249-250.

Put plainly, Plaintiff can only defeat summary judgment by presenting admissible evidence that the first call was a solicitation call "on behalf of" LoanStream, which she has not done (nor cannot do) here.

**B.    There is No Evidence of *Who* Registered the Number with the NDNCR.**

Next, Plaintiff argues LoanStream "injects into the statute a requirement [i.e., who registered the Number] that does not exist." Opposition at 10:18-21. But the TCPA expressly prohibits telephone solicitation to a "residential telephone subscriber who has registered his or her telephone number on the national do-not call registry . . ." 47 C.F.R. § 64.1200(c)(2). Furthermore, the plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry.

When "the words of a statute are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020). The plain language of

-12-                                      Case No. 8:24-cv-67-FWS-JDE

Section 61.1200(c) is unambiguous; it states that a violation occurs only when a person or entity initiates a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. Because Plaintiff presented no evidence of who registered the on the NDNCR Number (SUF 28-29) – a fact that is easily within Plaintiff's knowledge – and numbers could have been registered by previous owners (rather than Plaintiff or her mother), Plaintiff cannot satisfy her burden to establish an essential element of her claim. *Rogers v. Assur. IQ, LLC,* 2023 U.S. Dist. LEXIS 51955, at *11-13 (W.D. Wash. Mar. 27, 2023).

## V.   THE UNCONTROVERTED EVIDENCE SHOWS THAT PLAINTIFF LACKS STANDING.

As for standing, Plaintiff claims she is "both the customary user and the subscriber" of the Number because she (i) "took physical possession of her mother's phone[;]" (ii) answered and recorded the call at issue[;]" (iii) "paid the bill[;]" and (iv) later transferred the Number into her own name." Opposition at 2:5-8. Critically, though, at all times relevant, Plaintiff admits she undertook actions related to the Number as her mother's caregiver under a *power of attorney. Id.* at 2:10-15. This admission alone directly contradicts Plaintiff's "customary user" position. Plaintiff claims her mother, Eleanora, in an advanced age, could no longer care for herself, and Plaintiff held and acted under a power of attorney to manage Eleanor's affairs, including the Number. Opposition at 14:11-17; SUF 9, 12, 20-21. But Plaintiff did *not* commence this action in her capacity as Eleanor's power of attorney; instead, she chose to assert it on her own behalf. Dkts. 1, 37.

To the extent Plaintiff is asserting her mother' rights, Plaintiff lacks standing. Plaintiff may only challenge violations of her own rights that result in an actual injury. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[P]laintiff generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties.").

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Additionally, Plaintiff's alleged power of attorney does not confer standing to assert claims on her mother's behalf. A power of attorney is insufficient to confer standing, including for constitutional claims on behalf of another. *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("[C]onstitutional claims are personal and cannot be asserted vicariously...") (citations omitted). Therefore, the power of attorney does not give Plaintiff standing on behalf of her mother.

Turning to the "customary user" and "subscriber" issue, LoanStream's Motion cites *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023) and notes the relevance of a "customary user" in the standing analysis. Motion at 6:17-21, 17:14-16, 18:10-13. In *Hall*, the court noted that "[t]he fact that the primary or customary user of a phone may suffer a concrete injury from an unwanted call or text message does not preclude the phone's owner and subscriber from suffering the same." *Id.* Thus, both the owner/subscriber and the customary user of a cellular phone *may* be injured by, and therefore bring a claim against, unwanted telemarketer contact. *Id.* Here, Plaintiff was not the Number's owner, primary user, or customary user in October 2021, as evidenced by the fact that (i) the Number was in Eleanora's name, (ii) registered to Eleanora's ████████████, and (iii) Eleanora lived on her own and Plaintiff lived in ████. SUF 9, 20, 10-12. That Plaintiff later took over the Number does not retroactively confer standing.

In TCPA auto-dialer cases, the FCC concluded that the term "called party" should be defined as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 73 (July 10, 2015).

For "subscriber," it is undisputed that *Eleanora* (not Plaintiff) was the consumer assigned to the Number dialed (SUF 9, 39) as well as the consumer billed

/ / /

-14-

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

for the call (SUF 12). Thus, under the FCC definition, Plaintiff was unquestionably not the subscriber of the Number at the time of the Global Experts Call.

Regarding "customary user," the record shows each of the "facts" asserted by Plaintiff are either not supported, or negated, by the record:

(i) "took physical possession of her mother's phone[;]" – There is no evidence regarding *when* Plaintiff took primary or sole possession of the Number. While Plaintiff did answer the Global Experts Call, Plaintiff is unsure *when* she took physical possession of the Number (Landers Reply Decl., Ex 17 (Plaintiff's Depo. at 182:8-184:24)), Plaintiff testified Eleanora originally possessed the Number/phone (*id.* at 109:18-110:20, 112:9-113:17), and Plaintiff does not dispute that in October 2021 (when the Global Experts Call occurred), the Number was still registered to Eleanora (SUF 9).

(ii) "answered and recorded the call at issue[;]" – Simply because Plaintiff had access to the Number on October 19, 2021 when Global Experts placed the Global Experts Call does not definitively establish that Plaintiff is/was the "customary user" during the relevant time – October 2021. Indeed, that Plaintiff neither answered nor recorded the October 12 call suggests she was not a customary user.

(iii) "paid the bill[;]" – Plaintiff admits she "paid the bill" for the Number at the time "in her position as power of attorney for her mother" (Opposition at 5:5-10), *not as the Number's customary user.*

(iv) "later transferred the Number into her own name." – This "fact" demonstrates that Plaintiff was *not* the customary user until the "transfer" in May 2022 – *over six months after the Global Experts Call.* (SUF 21.) Prior to the transfer, Eleanora remained the Number's customary user; to the extent Plaintiff was in possession of, or had access to, the Number, it was in her capacity as Eleanora's power of attorney, as Plaintiff readily concedes. Opposition at 2:5-15, 5:5-12, 13:23-14:12, 15:12-15.

-15-                                   Case No. 8:24-cv-67-FWS-JDE

Finally, Plaintiff cites a DC Circuit opinion and argues "a daughter caring for her elderly mother under a power of attorney, who answers and manages that mother's phone, is *exactly* the customary user the TCPA protects." Opposition at 15:12-15. But, as Plaintiff notes, the DC Circuit has "recognized that the term 'customary user,' may include such persons as 'a close relative on a subscriber's family calling plan.' *ACA Int'l v. FCC*, 885 F.3d 687, 707 (D.C. Cir. 2018)." *Id.* Here, there is no evidence Plaintiff was on the Number's "family calling plan" at the time of the Global Experts Call.

Accordingly, Plaintiff does not have standing – which is her burden to establish – to assert the sole TCPA claim on her own behalf. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## VI. PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE OF FACT AS TO ANY CLAIM OR THEORY OF VICARIOUS LIABILITY.

Plaintiff opposes summary judgment based on unsubstantiated theories that Global Experts was LoanStream's "actual" or "apparent" agent for purposes of the October 19, 2021, Global Experts Call, or that LoanStream somehow "ratified" the allegedly unlawful call after the fact. Plaintiff attempts to cobble together a conspiracy theory in which LoanStream engaged in "the very definition of willful ignorance" to establish indirect TCPA liability for the alleged conduct of non-party, Global Experts. This theory suffers from a fatal flaw: there is no evidence to support it.

As the party asserting vicarious liability, Plaintiff bears the burden of proving these claims. *Henderson v. United Student Aid Funds, Inc.,* 918 F.3d 1068, 1073 (9th Cir. 2019). Rather than produce evidence meeting that burden, Plaintiff has tried to reformulate these standards to make them easier to satisfy.

/ / /

/ / /

/ / /

/ / /

**A.      There is No Evidence that LoanStream had Control Over Global Experts' Conduct.**

Conspicuously absent from the Opposition is any discussion about, or evidence showing, the *control* LoanStream is required by vicarious liability law to have had over Global Experts. The reason why is simple: there is none.

In the TCPA context,  Plaintiff must adduce evidence that LoanStream had the right to control "the manner and means" of the marketing conduct over which the plaintiff has sued. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. June 25, 2012); *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1243-44 (S.D. Fla. June 10, 2013) (to satisfy the level of "control" necessary to establish vicarious liability under the TCPA, Plaintiff must establish that defendants, as the principals, maintained control over, and supervised, key aspects of the specific undertaking). The relevant inquiry is thus not whether the LoanStream retained Global Experts to generate leads (it did not) and exercised some minimal level of control over the manner in which leads were lawfully generated (it did not do this, either). Rather, the relevant control inquiry is with regard to the specific conduct alleged to be unlawful; i.e., improper telemarketing. The answer is undisputed: LoanStream had no control over Global Experts' telemarketing-related conduct or the Call Campaign generally.

The undisputed evidence shows, in Plaintiff's words:

- "Resmo coordinated a campaign with Global Experts that included LoanStream among other entities." Dkt. 85-1 at p.7  (SUF 30).
- "Sean Roberts was not a LoanStream W-2 employee." *Id.* (SUF 53).
- There is no "written contract" between LoanStream, on the one hand, and Resmo or Sean Roberts, on the other hand. *Id.* (SUF 55, 57).
- "Global Experts not a formally approved vendor" of LoanStream. *Id.* (SUF 78).
- "there was no direct contract between LoanStream and Global Experts…" *Id.* (SUF 59).

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

- "there is no record that LoanStream made direct payment to Global Experts." *Id.* (SUF 60).

- LoanStream never had a "*direct* business relationship with Global Experts." *Id.* (SUF 63).

Further, at no point did Resmo nor Sean Roberts believe that they had express or implied authority to act on behalf of LoanStream related to the Call Campaign. *Id.* (SUF 69-70).

While Plaintiff attempts to vaguely raise "disputes" without precision regarding the SUF 65-68, Plaintiff's position does not withstand scrutiny. None of Plaintiff's purported "disputes" negate the genuine, material facts that are the core of the control analysis. Even if LoanStream inquired about how Sean Roberts "markets," that does not mean LoanStream "control[ed] the manner or means by which the Call Campaign was conducted." SUF 65. Neither does the fact that LoanStream compensated Cynthia Roberts for her services as a W-2 employee.

Nor do Plaintiff's inferences and mischaracterizations of the evidence undermine the undisputed fact that "LoanStream did not supervise the Call Campaign, did not supply any resources, tools, or any other goods to assist in the Call Campaign, and did not make any payments towards services related to the Call Campaign." SUF 66.

Finally, assuming *arguendo*, LoanStream asked Sean Roberts about how he obtains data, how he markets, and a "description of the scripts" (and further assuming *arguendo* that asking these questions amounts to control over "the manner and means"), such does not invalidate *both* Sean Roberts' and Serene Vernon's unrefuted, corroborated testimony that "at no point did LoanStream authorize, request, instruct, or command -- whether directly, implicitly, or otherwise -- Resmo or Sean Roberts to engage in, or assist with, the Call Campaign on LoanStream's behalf." SUF 67-68.

Importantly, to impose liability based on a theory of actual agency, Plaintiff has the burden to show, with admissible evidence, actions "specifically mentioned to

be done in a written or oral communication" or "consistent with" a principal's "general statement of what the agent is supposed to do." *Salyers v. Metro. Life Ins. Co.,* 871 F.3d 934, 940 (9th Cir. 2017) (citation omitted). Simply inquiring about how someone "markets" is insufficient to create a disputed issue of fact given the requisite control needed establish actual agency. *See e.g., Meyer v. Capital All. Grp.*, 2017 U.S. Dist. LEXIS 183690, at *34 (S.D. Cal. Nov. 6, 2017) (holding evidence of defendant hiring third-party vendors to send faxes and make telemarketing calls was insufficient to establish the requisite control over the methods and means).

Accordingly, this Court should grant partial summary judgment in favor of LoanStream based on Plaintiff's actual agency theory of vicarious liability.

### B.     There is No Evidence that LoanStream Gave Apparent Authority to Global Experts.

Plaintiff argues that she can establish apparent agency based on: 1) the alleged agent's (Global Experts') manifestations/statement; and 2) "admissions" by LoanStream's corporate designee about what a customer "would believe." Opposition at 22:1-23:15. Not so.

First, the apparent agency theory turns on the interactions between the *principal* and the allegedly injured party, as Plaintiff admits. Opposition at 22:2-9 ("Apparent authority arises from the *principal's manifestations to a third party…*") (emphasis added). Put another way, "apparent authority" (agency) exists where the principal engages in a "manifestation" – i.e., principal's conduct that causes the third person to reasonably believe the alleged agent "to be authorized and the belief is traceable to the manifestation." Restatement (Third) Of Agency § 3.03 (2006). A manifestation by the principal to the third party is an "essential requirement" of apparent authority. *Id*. cmt. B. Thus, "[a]pparent authority cannot be established merely by showing that [Global Experts] claimed authority or purported to exercise it, but must be established by proof of something said or done by [LoanStream] on which [Plaintiff] reasonably relied." *NLRB,* 124 F.3d at 1099; *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013

-19-                                                    Case No. 8:24-cv-67-FWS-JDE

U.S. Dist. LEXIS 118470, at *8-9 (N.D. Ill. Aug. 21, 2013) (rejecting apparent agency claim under TCPA and noting that "[t]he principal must communicate either directly or indirectly with the third party, 'which instills a reasonable belief in the mind of the third party' as to the existence of an agency relationship and its scope"). "Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship." *Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164, 1167 (Ind. 1989) (bold added).

LoanStream had *no* interaction with Plaintiff. SUF 13-16. LoanStream did not call Plaintiff, Plaintiff did not get transferred to LoanStream, or otherwise end up as a sales lead for LoanStream, at the time of the call or after. *Id.* And there is no evidence that LoanStream authorized Global Experts to use its name.

Instead, Plaintiff erroneously focuses on *Global Experts'* (the alleged agent's) manifestations to Plaintiff and claims that "could reasonably give the appearance that [LoanStream], the purported principal, authorized … the purported agent, to initiate the [calls] on its behalf" (citing *Banks v. Solar,* 416 F. Supp. 3d 171, 174-175 (E.D.N.Y. July 31, 2018)). Opposition at 22:14-26.

*Banks,* though, is inapposite. In *Banks,* following a prerecorded message, the plaintiff was transferred to a live representative of the purported agent (Advanced Energy Solutions ("AES")) who expressly stated the calls had been placed to "promote the goods and services of [the purported principal]." *Banks,* 416 F. Supp. 3d at 174. In subsequent calls, *a representative of the purported principal admitted* AES was its operating service and that AES' robotic message "reaches out to homeowners that might be inquiring or may[]be interested in going solar." *Id.* Thus, there were statements by the defendant (i.e., *the principal's manifestations*) sufficient to allege the defendant is vicariously liable for the alleged violations of the TCPA by its purported agent, AES. *Id.* at pp. 174-175. No such statements or manifestations *by LoanStream to Plaintiff* exist here, as undisputed facts establish. SUF 13-16.

/ / /

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Second, Ms. Vernon's after-the-fact subjective belief on what a customer may believe based on an alleged agent's statement does not create a *principal's* manifestation where none exists.[4] Again, "apparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of *something said or done by the [principal]* on which [the third party] reasonably relied." *NLRB,* 124 F.3d at 1099 (italics added).

Finally, apparent authority/agency requires a showing that the plaintiff detrimentally relied on the apparent agent. *Big B Auto. Warehouse Distributors, Inc. v. Coop. Computing, Inc.*, 2000 U.S. Dist. LEXIS 16363, at *12, fn.7 (N.D. Cal. Nov. 1, 2000). Plaintiff does not even attempt to address the additional requirement that she show reliance on the representations of Global Experts, or some detrimental change in position based upon any such reliance. Because Plaintiff never spoke with LoanStream, never purchased any product or service from LoanStream, and took no action based on Global Experts' alleged call, she cannot make this showing.

---

[4] Plaintiff's characterization of Ms. Vernon's testimony is misleading, at best. For the Court's convenience, below is the full text of the cited questions/answers:

Q: So, Ms. Vernon, would a customer receiving such a call believe that the call was made on LoanStream's behalf"

[Objection.]

A: Yes, I can see that.

Vernon Depo. 83:14-16.

***

Q: By the plain audio of the call, LoanStream was the entity whose products and services were being promoted, right?

[Objection.]

A: By somebody, possibly.

Vernon Depo. 84:9-13.

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

In short, Plaintiff presents no evidence establishing apparent authority/agency between LoanStream and Global Experts. Plaintiff does not demonstrate that *LoanStream* did or said something sufficient to create a reasonable belief that the Global Experts had authority to act (i.e., place calls) "on behalf of" LoanStream. At a minimum, the Court should grant partial summary judgment on this theory of vicarious liability.

## C.    Plaintiff Cannot Establish that LoanStream "Ratified"[5] Global Experts' Alleged Unlawful Conduct.

As LoanStream has established, there was no principal-agent relationship, actual or apparent, with respect to the allegedly unlawful call at issue. This is fatal to Plaintiff's ratification argument. *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2008) ("a principal agent relationship is . . . a requisite [to ratification], and ratification can have no meaning without it"). Put simply, Plaintiff must first establish an agency relationship between LoanStream and Global Experts (which she has not done) before the Court will even consider whether LoanStream ratified Global Experts' conduct (it did not).

Even assuming a preexisting agency relationship is not required, Plaintiff still has not demonstrated ratification. Plaintiff attempts to prove ratification by arguing that LoanStream knew or should have known of some unlawful conduct. Opposition at 24:8-14. But ratification requires full knowledge of the specific unauthorized act over which the Plaintiff seeks to impose liability, and some objective indicia of assent to that act, such as accepting the benefits that flow specifically from that act. As the Ninth Circuit stated in *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1015 (9th Cir. 2018) that "[t]he knowledge that an agent is engaged in an otherwise

---

[5] As expected, Plaintiff relies heavily on *Katz v. Allied First Bank,* 2026 U.S. Dist. LEXIS 46583 (N.D. Ill. Mar. 6, 2026). For the reasons stated in the Motion, *Katz* is inapposite and distinguishable here.

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities."

It is uncontroverted that LoanStream did not have any knowledge, much less full knowledge, regarding the call that forms the basis of the FAC. The timing is crucial; LoanStream was not unaware of the Call Campaign until many months after it concluded. SUF 74-75.

Plaintiff argues the "centerpiece" of her ratification argument is the December 2021 "marketing payment." Opposition at 24:15-16. But LoanStream did not make any payments towards services related to the Call Campaign. SUF 66. There are no financial records showing that LoanStream paid for the telemarketing services of Resmo or Global Experts.[6] SUF 66, 72-73, 76-77. In fabricating a dispute where none exists, Plaintiff surmises that a single payment to "PREMIE…" will "suffice to establish ratification." Dkt. 85-6; Opposition at 24:15-25. But Plaintiff's conjecture is negated by the evidence. Ms. Vernon submitted unrebutted evidence about the context and purpose of the "PREMIE…" payment:

- "Although LoanStream provided the financial capital to start each branch [including Cynthia Roberts' branch], including the costs to rent office space and pay to the employees who worked there, LoanStream did not allow, permit, or support these branches to independently engage in advertising or marketing on behalf of LoanStream" (Dkt. 81-3 ¶ 8);

- "LoanStream expressly prohibited – by contract and company policy – its employees from sourcing business through lead generators and other mass-market telemarketing activities" (*id.*);

---

[6] Mrs. Roberts lacked the authority and capacity to contract with Resmo or ratify any of its conduct. Dkt. 81-19 (Cynthia Roberts' Depo. at 46:8-25, 49:8-59:54); Dkt. 81-5 (Cynthia Roberts' Employment Agreement).

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

- "In December 2021, just before the holidays, Mrs. Roberts asked for an advance against the branch's future profits, which was not an unusual request when a branch was first operating" (*id.* ¶ 11); and

- "LoanStream approved the request and made a single $7,000 payment to what Mrs. Roberts described as her company, Premier Financial Marketing" (*id.*).

For these same reasons, Sean Roberts' February 2022 email (*see* Opposition at 25:5-8) did not trigger any duty to investigate, including because the Call Campaign had stopped months prior in November 2021. SUF 51.

Likewise, regarding the LizDev Invoice that LoanStream discarded – an act Plaintiff criticizes years later and argues should have resulted in an investigation by LoanStream (despite LoanStream having no knowledge of the alleged Call Campaign when it received the single, unsolicited, unrecognized, unexpected invoice) – Ms. Vernon declares:

- "LoanStream never contracted with Elizabeth Stone [] or LizDev, Inc. [], directly or indirectly, to engage in the Call Campaign for LoanStream's benefit" (*id.* ¶ 22);

- "LoanStream never had a business relationship with Ms. Stone or LizDev" (*id.*);

- "During the course of this lawsuit, when searching for documents in response to Plaintiff's document requests, LoanStream discovered that it previously received an undated $10,000 invoice from LizDev []" (*id.* ¶ 23);

- "LoanStream determined that it received that single invoice in February 2022." (*id.*);

- "Not recognizing the vendor (LizDev) nor the purpose of such invoice ("Product: New Data Invoice"), LoanStream's accounting department discarded the LizDev Invoice at the time of receipt without rendering any payment" (*id.*);

/ / /

- "LoanStream did not reimburse any person or entity for the LizDev Invoice" (*id.*);

- "In its regular course of business, LoanStream maintains a vendor management system where any LoanStream service provider must first be reviewed and added as an approved vendor before it can receive any payment from LoanStream" (*id.* ¶ 24);

- Ms. Vernon "reviewed LoanStream's vendor management system records, and neither LizDev nor Global Experts[] is, or ever was, an approved vendor."

- Ms. Vernon "confirmed by reviewing LoanStream's accounting and approved vendor records that LoanStream did not pay, and has never paid, the LizDev Invoice" (*id.*); and

- "LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Ms. Stone and/or LizDev and it never paid Ms. Stone or LizDev for any work they performed" (*id.* ¶ 24).

None of these facts are disputed by Plaintiff, LizDev, or Elizabth Stone (even though each are readily accessible to Plaintiff given prior submissions, including Ms. Stone's declaration dated April 10, 2026, filed in support of Plaintiff's Opposition).

Finally, it is uncontroverted that LoanStream accepted no benefits from the Global Experts Call or the alleged Call Campaign generally. Plaintiff argues that LoanStream's acceptance of "the loans few the [Cynthia Roberts'] branch generated" means definitively that *the Call Campaign's* "benefits were unquestionably accepted by LoanStream." Opposition 25:13-22. Again, Plaintiff is misconstruing and overstating Ms. Vernon's deposition testimony. Plaintiff bears the burden to establish that these few loans arose from the Global Experts Call Campaign, yet she offers no supporting evidence. Instead, Plaintiff merely *assumes* that any or all loans generated by the branch arose from the Call Campaign. Assumption is insufficient to survive summary judgment.

///

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Ms. Vernon testified that "there were a few loans that came through the [C. Roberts] branch. Not very many, but there were a few." Dkt. 85-4 at 49:6-9. In addition, Ms. Vernon has also declared:

- "LoanStream never asked Mrs. Roberts to engage, nor approved of Mrs. Roberts engaging, in the Call Campaign for LoanStream's benefit" (*id.* ¶ 17);
- "LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Mr. Roberts [or Resmo] and it never paid [them] for any work [they] performed" (*id.* ¶¶ 19, 21);
- "LoanStream never received any benefit (financial or otherwise) from the alleged telemarketing efforts of Global Experts and it also never paid Global Experts for any work it performed" (*id.* ¶ 28); and
- **"The Call Campaign did not generate any leads that were fulfilled for LoanStream's benefit at any time. LoanStream received no revenue from the Call Campaign. And LoanStream did not generate any business from the Call Campaign"** (*id.* ¶ 29 (bold added)).

Each of these statements, both in deposition and through her declaration, can be (and is) true. The majority of loans generated by LoanStream are B2B interactions with local relators. *Id.* ¶ 7. And Ms. Vernon's unequivocal, unrebutted testimony that LoanStream did not benefit in any way from the conduct of Global Experts is not disputed. Plaintiff has not (and cannot) satisfy her burden of establishing ratification.

## VII.   THERE IS NO EVIDENCE THAT COULD LEAD A REASONABLE FACT-FINDER TO CONCLUDE THAT LOANSTREAM KNOWINGLY OR WILLFULLY VIOLATED THE TCPA.

Plaintiff argues that "[a] factfinder… could readily conclude LoanStream knew it was associated with unlawful calling and proceeded anyway." Opposition at 28:23-26. The entirety of Plaintiff's position rises and falls on two "facts" – 1) "LoanStream funded the campaign[,]" and 2) LoanStream "received and discarded [the LizDev] invoice warning that the leads were not TCPA-compliant and might include DNC-

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

registered numbers, and then took no action whatsoever" – the former is disproved by the evidence and the latter is a red herring.

Regarding the former, there is no evidence LoanStream made any payments to Resmo, Sean Roberts, LizDev, Elizabeth Stone, or Global Experts "to fund the campaign." To the contrary, this conjecture is repudiated by LoanStream's affirmative testimony and the undisputed facts. Dkt. 81-3 ¶¶ 19, 21, 28-29; SUF 64, 79-81. Further, the payment LoanStream made to Cynthia Roberts' company in December 2021 was *after* the Call Campaign had already ended. Where, as here, Plaintiff has failed to establish that LoanStream *knew* of Global Experts' conduct when it occurred, Plaintiff is not entitled to treble damages under the TCPA. *See e.g., Wakefield v. ViSalus, Inc.,* 2019 U.S. Dist. LEXIS 104862, at *4 (D. Or. June 24, 2019) (to successfully claim treble damages, plaintiff must demonstrate the defendant knew that it was engaging in the conduct that gave rise to liability); *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1106-07 (11th Cir. 2015) (no treble damages because plaintiff failed to establish defendants knew they sent an unsolicited advertisement).

Turning to the latter, as explained above, LoanStream did not recognize LizDev as a vendor, had no knowledge of the alleged Call Campaign until after it concluded, and discarded the single LizDev Invoice without second thought. Notably, the LizDev Invoice lists the "product" as "new data invoice" and doesn't mention anything in the order description related to telemarketing, a call campaign, Resmo, Sean Roberts, Global Experts, and the like, which would lead a recipient, like LoanStream, to investigate further or read the "fine print." Dkt. 81-4.

The undisputed evidence shows that LoanStream had no knowledge of the alleged Call Campaign until years after it concluded (SUF 74-75); thus, it could not willfully or knowingly know that calls were being made, let alone that the making of the call violates the TCPA. *Trindade v. Reach Media Grp., LLC*, 2014 U.S. Dist. LEXIS 98180, at *17, fn. 59 (N.D. Cal. July 18, 2014).

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Nevertheless, even if LoanStream had knowledge of the unauthorized Call Campaign before or during its existence (it did not), Sean Roberts stated that the Leads (as defined) consisted of those who *consented* (or opted-in) to be called, which refutes any inference that LoanStream *intended* or *knew* it was potentially associated with conduct violative of a NDNCR-based TCPA claim. SUF 31.

## VIII.  CONCLUSION

Plaintiff's urges, essentially,  the limitless expansion of vicarious liability under the TCPA. The TCPA, which provides for minimum statutory damages, has already become one of the most abused federal statutes in all of civil litigation. Leveraging the risk of catastrophic liability by aggregating statutory damages into a class action, plaintiffs have repeatedly coerced million-dollar settlements that bear no resemblance to any actual harm. More and more, these settlements are being extracted not against the TCPA's original target (telemarketers), but companies in every sector of the economy, from financial institutions to private mortgage companies.

This case illustrates the problem: rather than sue the entity that actually placed the call, Plaintiff expends party and judicial resources straining to find some basis to impose an indirect form of liability against LoanStream. Nothing in the TCPA supports Plaintiff's expansive view of vicarious liability imposes on businesses, like LoanStream.

Judgment should be entered in LoanStream's favor.

DATED:  June 25, 2026

SOLOMON WARD SEIDENWURM & SMITH, LLP

By:     */s/ Thomas F. Landers*

THOMAS F. LANDERS
ADAM R. SCOTT
Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

-28-                                  Case No. 8:24-cv-67-FWS-JDE

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## LOCAL RULE 11-6.2 COMPLIANCE STATEMENT

The undersigned counsel of record for Defendant certifies that this brief contains 6,910 words, which complies with the word limit of L.R. 11-6.1.

DATED:  June 25, 2026                SOLOMON WARD SEIDENWURM & SMITH, LLP


By:      */s/ Thomas F. Landers*
THOMAS F. LANDERS
ADAM R. SCOTT
Attorneys for Defendant OCMBC, INC.
d/b/a LOANSTREAM MORTGAGE

P:4902-4627-8068.12:66075-002

Case No. 8:24-cv-67-FWS-JDE
REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT