# EXHIBIT 17

Videotaped Deposition of

# Kimberly Hudson-Bryant

March 26, 2026

Kimberly Hudson-Bryant

vs.

OCMBC, Inc. dba Loanstream



www.aptusCR.com | 866.999.8310

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

KIMBERLY HUDSON-BRYANT,

individually and on behalf

of all others similarly

situated,

     Plaintiffs,

  vs.                    No. 8:24-cv-00067-FWS-JDE

OCMBC, INC. dba LOANSTREAM,

     Defendant.

_____

VIDEO DEPOSITION OF KIMBERLY HUDSON-BRYANT

Reported Remotely through Videoconference

March 26, 2026

Reported by:
Margaret A. Smith
RPR, CRR, CSR No. 9733

Job No.: 10186005

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION


KIMBERLY HUDSON-BRYANT,

individually and on behalf

of all others similarly

situated,

        Plaintiffs,

   vs.                              No. 8:24-cv-00067-FWS-JDE

OCMBC, INC. dba LOANSTREAM,

        Defendant.

_____


   Deposition of KIMBERLY HUDSON-BRYANT taken on behalf of Defendant, reported remotely through videoconference, beginning at 9:30 a.m. PDT, and ending at 5:39 p.m. PDT, on Thursday, March 26, 2026, before Margaret A. Smith, RPR, CRR, Certified Shorthand Reporter No. 9733.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

of -- there was a lot of transferring happening.  I would have to check my records to give you the precise dates of when that transitioned over.  I'm just not recalling the exact date right now.

Q    Okay.  So AT&T was the service provider for ███████████ as a landline.

And then what happened next?  A different carrier stepped in for that number, or the number was converted to a cellular telephone number?

A    The number was ultimately converted over to a cellular number.

Q    Why was the number converted to a cellular number?

A    Because it was cheaper.

Q    But when it was first converted to a cellular number, was AT&T still the service provider for it?

A    No.

Q    Okay.  Who was the service provider once the phone number was converted to a cellular number?

A    I believe -- and I can't be for certain.  But I can give you -- I believe it was T-Mobile.

Q    But without looking at records that you have in your office, you can't tell me the specifics of when ███████████ was converted to a cell phone?

A    Not the exact date and year, no.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs. OCMBC, Inc. dba Loanstream

Q     What's your best estimate or recollection as to what year it was?

A     My best estimate is mid to late 2021.

Q     And then when [REDACTED] was converted to a cellular phone, who maintained physical possession of the cellular phone?

A     In 2021, oh, gosh, I -- I am honestly -- my apologies. I am just -- I'm trying to -- I'm drawing a blank. I'm drawing a blank on when -- okay. She had the [REDACTED]. That was her cell phone. She had physical possession of the cell phone by the time the [REDACTED] -- by the time the [REDACTED] was transitioned over to a cell phone. I can't recall without reviewing my records.

Q     And you believe --

A     And for some reason, I'm just drawing a complete blank.

Q     You believe you have records that would give you that information?

A     I do -- I do believe that.

Q     Okay. You said very fast a telephone number that I think was mis- -- was Eleanora Woods' cell phone number.

        Did -- is that what you said?

A     Yes.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

accessible when not at home.

Q    Because it would seem to me that someone who had had a landline number for years, maybe decades, would want to retain that telephone number when they were giving up their landline.

Is -- is that what happened here?

A    The number has still been retained.  It's just now a wireless number.

Q    Okay.  And so my question is:  When it became a wireless number, whose telephone number was it?

A    When it became a wireless number, I believe that's when I transferred it into my name to manage the payments.

Q    Okay.  And when you transferred it into your name to manage the payment, who had physical possession of the phone that would ring when that telephone number was dialed?

A    Oh, dang.  He left.

MR. OLIVER:  I'm right here.  Don't worry about me.

THE WITNESS:  Oh, okay.  I'm sorry.  Can you repeat the question, Mr. -- Mr. Landers.

MR. LANDERS:  Madam Court Reporter, can you reread the question.

THE REPORTER:  One moment.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

(The following was read by the reporter:

Q.   Okay.   And when you transferred it into your name to manage the payment, who had physical possession of the phone that would ring when that telephone number was dialed?)

THE WITNESS:   She might have had -- I guess she ██████ took over.   I had possession of the phone.   I'm just trying to recall.   I can't recall exactly when.

BY MR. LANDERS:

Q   So it seems to make sense to me that the ████████ number that had been Ms. Woods' phone number --

A   Mm-hmm.

Q   -- for years or decades, when it became a cellular phone that it would be her cellular phone --

A   Mm-hmm.

████████████████

certainly understand you taking it over.

Does that sound right to you?

A   Possibly.   The cell phone that I got for her in order basically to -- she would play games on it.   She would read the news, get on the Internet.   But it was for her to have when she was out and about so that I

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

MR. OLIVER:  Objection to the form of the question.

But you can answer.

THE WITNESS:  I'm not sure.  I can't tell you without, again, reviewing the documents in terms of the name change.

BY MR. LANDERS:

Q    Was there a time when you, Kimberly Hudson-Bryant, took physical possession the telephone to which the number ███████████ would ring?

A    I don't recall the exact timeline on that.

Q    But there was a time when you took that phone number and that phone to be your own.  Is that correct?

A    I took the phone and put it in my name and physical -- and physically had the phone.  I don't remember the timeline.  I would need to check my documents to make sure I gave an accurate answer.

Q    Okay.  Did you do -- did you do those two things at the same time?

MR. OLIVER:  Objection to the form of the question.

THE WITNESS:  I don't recall.

BY MR. LANDERS:

Q    Does it sound like that's what you would have done, that -- that you would have changed the phone

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

number into your name and then taken -- taken the phone as your own at the same time?

A    I don't recall.

Q    Yeah, but does it sound like what you would have done?

A    That -- well, that's speculative.  And with everything I've got going on, you know, it could have been done on a Monday and the next step could have been done on a different day.  I -- I don't recall.  I'd have to review my files in my --

Q    Do you think --

A    -- my office.

Q    Do you think those two things would have happened within a week of each other?

A    I'm not going to speculate.

Q    Do you think they would have happened within a month of each other?

MR. OLIVER:  Objection to the form of the question.

Go ahead.

THE WITNESS:  I'm not going to speculate without looking at my -- my home office documents.

BY MR. LANDERS:

Q    And there are documents in your home office that would give you the answer to that question?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A    There are documents in my home office that would help me answer this question.

Q    What documents are those?

A    Physical files.

Q    Containing what?

A    AT&T correspondence.

Q    Now, you worked with your lawyers to provide discovery responses in this case, didn't you?

A    I'm sorry.  Can you repeat that first part?

Q    You worked with your lawyers to provide discovery responses in this case, didn't you?

A    Yes.  Excuse me.

Q    In fact, working with your lawyers to provide discovery responses is part of the role of a class representative.

Don't you agree?

A    Yes.

Q    Do you have any recollection of providing your lawyers with the records that you were just referring to that would refresh your recollection as to when phone number ▮▮▮▮▮▮ transferred from Eleanora Woods to you?

A    I don't recall.  I have 'provided quite a bit of information.  I don't recall.

Q    Okay.  Paragraph 16 alleges the number has been

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

registered on a national do not call registry

continuously since September 1st, 2023.

Do you see that?

A    Yes.

Q    How do you know that?

A    I believe it's donotcall.gov.  You type in the phone number, and it will tell you when the number was registered and the date.

Q    Who registered phone number ██████████ on the national do not call registry?

A    I don't know.

Q    Did you do it?

A    I don't recall.

Q    Did Eleanora Woods do it?

A    I don't know the answer to that either.

Q    On September 1, 2023, was ██████████ even Eleanora Woods' telephone number?

A    I know that she's had this number for a very long time.  I can't answer that without checking some of her old paperwork.

Q    Okay.  Let's talk a look at paragraph 17. Paragraph 17 alleges that you received two telephone calls on October 12, 2021.  One at 1:07 p.m. and another at 2:18 p.m.

Do you see that?

A    Yes.

Q    Now, you verified that that allegation was accurate before the first amended complaint was filed. Right?

MR. OLIVER:  Objection to the form of the question.

You can answer.

THE WITNESS:  I'm sorry.  Please repeat the question.

(The following was read by the reporter:

Q.  Now, you verified that that allegation was accurate before the first amended complaint was filed.  Right?)

THE WITNESS:  I believe so.

BY MR. LANDERS:

Q    As you sit here today, do you believe that that allegation was correct?

A    I do.

Q    Okay.  If we look at paragraph 19, it alleges that the first call at 1:07 p.m. was unanswered and went to voicemail.

Was a voicemail left?

A    I'd have to review my records to -- to verify.

Q    To the best of your knowledge, was a voicemail left?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A    To the best of my -- my recollection, I don't recall. And I'd have to verify my records to en -- to provide a more accurate answer.

Q    In October of 2021, did telephone number ▮▮▮▮▮▮▮▮ have a personalized outgoing voice message?

MR. OLIVER:  Objection to the form of the question.

But go ahead.

THE WITNESS:  I don't recall if it was personalized or standard, generic.

BY MR. LANDERS:

Q    By "personalized," you understand that we're talking about, for example, with my phone, if someone were to call me and get my voicemail, it would say, hi, this is Tom Landers' cell phone. That -- that -- you understand that to be a personalized outgoing voicemail. Right?

A    Right.

Q    Okay. And -- and your testimony is that you don't know one way or the other whether in October of 2021 phone number ▮▮▮▮▮▮▮▮ had a personalized outgoing message?

A    Correct, I don't recall.

Q    Does phone number ▮▮▮▮▮▮▮▮ have a personalized voicemail today?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A    I believe it's just a standard one.  There is no personalized.  It's -- no.  It's standard and not personal.

Q    Now, paragraph 20 alleges that the second call at 208 -- excuse me -- at 2:18 p.m. was answered by the plaintiff.  Is that you?

A    Yes.

Q    So you personally, Kimberly Hudson-Bryant, answered the second call that was placed on October 12th, 2021 at 218PT -- 2:18 p.m.  Is that correct?

A    Yes.

Q    Okay.

A    Excuse me.

Q    Where were you -- where were you when you answered that phone call?

A    As best I recall, Texas.

Q    Were you at work?

A    I can't recall if I was working that day.

Q    But you were physically present in Texas?

A    As I recall, yes.

Q    Okay.  Where was Eleanora C. Woods on October 12th, 2021?

A    I don't recall that.

Q    Was she physically present with you?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A    Not with me.

Q    Okay.

A    No.

Q    Why did you not answer the first call?

A    I don't recall.  I don't know.

Q    Did -- did your phone ring before it went to voicemail?

A    My phone typically rings before it goes to voicemail unless there was a ringless voicemail.

Q    Do you think that there was a ringless voicemail in this instance?

A    I don't know.

Q    How do you know that the call went to voicemail?

A    On the -- well, I guess it -- it depends.  I believe it depends on the -- on the system that you use. Like, you know, I get ringless voicemails, and the phone will not ring but a call log is displayed on your phone and immediately thereafter there's a voicemail.  I don't recall what happened in this particular instance.

Q    So the allegation is the first call at 1:07 p.m. was unanswered and went to voicemail.  That sounds to me like it rang and was not answered and then went to voicemail.  But I'm asking you what you recall about what actually happened on October 12, 2021 at

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

1:07 p.m.

Do you have a recollection of the phone ringing?

A      I do not have a recollection of what happened.

Q      Do you have a recollection of there being a voicemail left on ███████████ that mentioned LoanStream?

A      I don't recall.

Q      All right.  So you did answer the second call. Why did you answer the second call?

A      No particular reason.  Did I -- no particular reason.  The first one I -- I didn't answer.  The second one, I did.

Q      Okay.  Did your phone show you the caller ID of who was calling?

A      I -- I can't be certain.  However, a good faith estimate is that it was -- there -- there was no caller ID on -- on the call.

Q      Okay.  So the fact that you answered the -- the second call but not the first was just happenstance?

A      Happenstance, no particular reason.

Q      Okay.  Paragraph 20 alleges that the caller was looking for an individual named Ms. Woods.  Right? That's -- that's the allegation?

A      Is that a question?

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

version at that time.

Q    Tell me why you recorded that second call.

A    I -- I -- I recorded that -- I record my calls.

Q    You record your calls --

A    Mm-hmm.

Q    -- all of them?

A    No, not all of them.

Q    Which calls do you record?

A    Recordings that are allowed in one-party states.

Q    Okay.  Let's unpack that.  You received the call in Texas.  Is that right?

A    As best I can recall, yes.

Q    Okay.  And Texas is a one-party consent state. Is that right?

A    Yes.

Q    So is it your testimony that you record every telephone call that you receive in the state of Texas?

A    No, that is not my testimony.

Q    Okay.  So how did you -- how did you decide to record this particular call?

A    I didn't make a decision.  Depending on where I am, what I'm doing, depending on if the recorder is next to me or not will dictate a lot of that, but, no, I do not record every call.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

Q    What is the recorder?

A    I do not know the -- the make or the model of the recorder.  I can -- I can't tell you without accessing the recorder.

Q    So how do you record a call on a cell phone with an external recorder?

A    The cell phone typically has to be on speaker, and the recording button, you press.

Q    Okay.  Okay.  So what was your purpose in recording this specific call?

A    I record all my calls.  I --

Q    Well, you don't record all your calls?

A    I don't I misspoke.  I don't recall all of my calls, but my purpose, I -- robocallers are calling, and I want them to stop.

Q    Okay.  So that's really the answer, isn't it, that -- that you record telemarketing calls?

A    I record many telemarketing calls.  I also record other calls, not just telemarketing.

Q    And because you want them to stop, the reason you're recording these calls is for the purposes of making a TCPA claim, isn't it?

A    The purpose is to -- the purpose is to not always make a TCPA claim, because I don't.  I don't always make the claims on the calls that are recorded.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

Q    Why would you record a call that is a telemarketing call and then not make a TCPA claim?

A    Life's vicissitudes --

Q    What does that mean?

A    -- don't allow me.  Life happens, craps happens, and I'm not able to follow through.  Too much going on.

Q    Okay.  So at the time you -- you pushed record on the recorder, you were doing so for the purposes of being able to potentially make a TCPA claim in the future.  Right?

A    Potentially.

Q    Yeah.  Okay.  Essentially, what you're doing by recording phone calls is you were gathering evidence to support potential future legal actions.  Isn't that right?

A    Gathering -- gathering evidence to support future -- future -- to support evidence of violations.

Q    How many other telephone calls did you receive that day?

A    I don't recall.

Q    How many other telephone calls did you record that day?

A    I don't recall that either.

Q    If I turn caller ID off on my cell phone and I

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

Q    Okay.  All right.  Let's look again at the first amended complaint exhibit.  Let's go to paragraph 23.

Are you able to see this, Ms. Hudson-Bryant?

A    Yes.

Q    Okay.  Paragraph 23 alleges that on January 20 -- excuse me -- on January 3rd, 2023, the plaintiff sent an email to Defendant LoanStream.

Do you see that?

A    Yes.

Q    Do you recall sending such an email to LoanStream?

A    Yes.

Q    To whom did you send it?

A    If I recall correctly, perhaps the CEO and their legal counsel.  I'm not certain without checking my documents.

Q    How did you obtain their names and address -- and email addresses?

A    Public information.

Q    From what email address did you send the email?

A    Oh, I don't -- it -- I can't recall.  I don't want to speculate.

Q    But you do have a specific recollection of sending an email to LoanStream on January 3rd, 2023.  Is

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

that right?

A    Yes.

Q    Now, did you draft the email as a text and an email, say, from Microsoft Outlook, or did you draft it as a letter, say, in Microsoft Word, and then attach that letter to an email?

A    I drafted it -- my recollection is that I drafted it in Microsoft Word and copy and pasted it into the body of an email and also attached a PDF.

Q    What was in the PDF?

A    A copy of the body of the email with any images.  My recollection -- if my recollection serves me correctly, as best I can recall, there were no images in the body of the email.

Q    Okay.  Adam, can we have No. 20 up.  And is this Exhibit 14?

THE REPORTER:  Correct.

BY MR. LANDERS:

Q    Okay.  I will represent to you that this is a document that was produced to us in discovery in this case.  It has a date of January 3rd, 2023, and it appears to be a letter addressed to OCMBC, Inc., dba LoanStream Wholesale.

(Exhibit 14 was marked for identification.)

**Kimberly Hudson-Bryant**

BY MR. LANDERS:

Q      Does -- does this Exhibit 14 appear to be a true and correct copy of the email that you sent to LoanStream as alleged in your first amended complaint?

A      Yes, it appears to be.

Q      Okay.  And you recall drafting this email.  Is that right?

A      Yes.

Q      Did you personally write this email?

A      I personally wrote it.

Q      Where did you get the language from?  Did you personally draft it, or did you get the language from some source?

A      I got the language from some source.

Q      What source?

A      The Robocalls.cash.

Q      Okay.  Before you sent the letter, did you review it for accuracy?

A      Yes, to the best of my ability.

Q      Okay.  So can you please read out loud the first sentence that begins with I'm contacting you.

A      "I'm contacting you today regarding communications to my phone that are in violation of the TCPA."

Q      Okay.

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

A    Each of these --

Q    That's -- just that sentence.  Just that sentence is fine for now.

A    Okay.

Q    So that first sentence references my phone.

Whose phone is my phone in that -- in that sentence?

A    Based --

MR. OLIVER:  Hold.  I'm going to object for a moment.  That's fine.  You're showing her an exhibit, but I'm not sure that she -- did you download it and look at it?  I'm sorry.  I just want to make sure she's looking at the exhibit that you sent over to her.  I don't know if she looked at the exhibit.  I just wanted to make sure she looked at the exhibit.

THE WITNESS:  I'm sorry, gentleman.  What exhibit are we referring to?  I'm --

BY MR. LANDERS:

Q    The one that's on your screen right now, the email that you sent to LoanStream.

A    Mm-hmm.

Q    And you -- and you just read to me the first sentence.  That first sentence says "my phone."

And I'm asking you whose phone is "my phone"?

MR. OLIVER:  And I'm going to object for a

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

moment.  Counsel, you sent an exhibit to all parties, and I'm getting a sense that she hasn't even looked at it yet.  So since it was sent over, I'm used to the party at least looking at the exhibit before she comments on it.

I just want to make sure she downloaded it and looked at it before she comments on it.

THE WITNESS:  I did not download it.  So contextually -- contextually, I am a little lost here.

MR. OLIVER:  Do you have a chat feature that the exhibit is in there?  They sent it to everybody.

THE WITNESS:  I have not -- oh, all right.

So we've been at this all day, gentleman.  And I have completely ignored the chat feature.  My apologies.  Which exhibit?  Fourteen?

MR. LANDERS:  Fourteen.

THE WITNESS:  Hmm.  It says EX20?

MR. OLIVER:  Yes.

MR. LANDERS:  The PDF is labeled EX20.  That's -- that's a numbering system for us internally at ow law firm.

THE WITNESS:  Got it.

BY MR. LANDERS:

Q    But here for the deposition, we have identified it as Exhibit 14.

Kimberly Hudson-Bryant

A    Understood.  Thank you for the clarity.  Okay.

Q    Okay.  So the first sentence reads "I'm contacting you today regarding communications to my phone that are in violation of TCPA."

My question to you was:  Whose phone is "my phone"?

A    I was writing a letter on behalf of my mother.

Q    Eleanora Woods?

A    Yes.

Q    Okay.  So the phone was Eleanora Woods' phone. Correct?

MR. OLIVER:  Objection to the form of the question.

Go ahead and answer.

THE WITNESS:  And, again, this is where there's the transition around sometime in '21 -- 2021 where that transition was take place.  So I can't tell you without looking, again, going back to the -- the AT&T file at my office.

BY MR. LANDERS:

Q    So let's look at the last sentence of that first paragraph that starts with "The illegal communications."

Would you please read that sentence out loud.

A    "The illegal communications came to my phone

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

number, ███████, as follows."

Q     Okay.   Who wrote this letter?

A     I -- I wrote -- I wrote this letter from a template.

Q     Mm-hmm.

A     From the Robocalls.cash kit.

Q     Okay.

A     Robocalls.cash site.

Q     Understood.   All right.   But you were not writing this letter for Kimberly Hudson-Bryant; you were writing this letter for Eleanora C. Woods.   Right?

A     I believe it indicates on behalf of the -- her Power of Attorney, yes.

Q     Right.

So you agree that you were informing LoanStream in this letter that you were writing for Eleanora C. Woods as her attorney in fact.   Right?

A     Right.

Q     Okay.   So then when this letter refers to my phone and my phone number, you're informing LoanStream that the phone and the phone number are Eleanora C. Woods.   Right?   That's what you're informing LoanStream?

A     According to the letter.

Q     That's -- right.   The -- the letter that you sent, that you drafted, says Eleanora C. Woods' phone

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

received illegal phone calls at Eleanora C. Woods' phone number.  Right?

A    Correct.  And -- and, again --

Q    Is that statement true, or false?

A    True.

Q    Okay.  Now, that sentence that we -- that you started reading, "The illegal communications came from my phone number -- came to my phone number, 323-294-1729, as follows," and it identifies two phone calls, can you please tell me the dates of those two phone calls.

A    10/12/2021 and 10/19/2021.

Q    So on January 3rd, 2023, you informed LoanStream that it had called -- called Eleanora C. Woods' phone number twice on two separate days.  Right?  That's what your letter said?

A    Right.

Q    Okay.  But the first amended complaint and the original complaint both allege those two phone calls were made on the same day.  That's what they allege.  Correct?

A    Correct.  We have a typo.

Q    Okay.  So -- so -- so which documents -- which document has the false statement?  The complaint and the first amended complaint, or your January 3rd, 2023

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand, which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript (X) was ( ) was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed by name.

Dated:  04/08/2026

_____

Margaret A. Smith

RPR, CRR, CSR No. 9733

Kimberly Hudson-Bryant

Kimberly Hudson-Bryant vs.
OCMBC, Inc. dba Loanstream

DECLARATION UNDER PENALTY OF PERJURY

Case Name: Kimberly Hudson-Bryant
          vs. OCMBC, Inc. dba Loanstream
Date of Deposition: 03/26/2026

Job No.: 10186005


                    I, KIMBERLY HUDSON-BRYANT, hereby certify

under penalty of perjury under the laws of the State of

_____ that the foregoing is true and correct.

            Executed this _____ day of

_____, 2026, at _____.




                         _____

                         KIMBERLY HUDSON-BRYANT


NOTARIZATION (If Required)

State of _____

County of _____

Subscribed and sworn to (or affirmed) before me on

this _____ day of _____, 20___,

by_____,    proved to me on the

basis of satisfactory evidence to be the person

who appeared before me.

Signature: _____ (Seal)

DEPOSITION ERRATA SHEET
Case Name: Kimberly Hudson-Bryant
       vs. OCMBC, Inc. dba Loanstream
Name of Witness: Kimberly Hudson-Bryant
Date of Deposition: 03/26/2026
Job No.: 10186005
Reason Codes:  1. To clarify the record.
               2. To conform to the facts.
               3. To correct transcription errors.

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

DEPOSITION ERRATA SHEET

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

_____ Subject to the above changes, I certify that the transcript is true and correct

_____ No changes have been made. I certify that the transcript  is true and correct.

_____
                    KIMBERLY HUDSON-BRYANT