UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Priscilla Deason for Rolls Royce Paschal | N/A |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| --- | --- |
| Not Present | Not Present |

**PROCEEDINGS: ORDER GRANTING LOANSTREAM'S MOTION FOR SUMMARY JUDGMENT [81][93]**

In this case, Plaintiff Kimberly Hudson-Bryant alleges Defendants OCMBC Inc., doing business as LoanStream ("LoanStream") and Sean Roberts violated the Telephone Consumer Protection Act ("TCPA").[1]  (Dkt. 37 (First Amended Complaint, "FAC").)  The court denied Plaintiff's Motion for Class Certification, (Dkt. 76), so only Plaintiff's personal TCPA claim against Defendants remains.  Now before the court is LoanStream's Motion for Summary Judgment.  (Dkt. 81 ("Motion" or "Mot.").)  Plaintiff opposes the Motion.  (Dkt. 85 ("Opp.").)  LoanStream filed a reply in support of the Motion.  (Dkt. 91 ("Reply").)  The parties' positions regarding undisputed facts are set forth in LoanStream's Response to Plaintiff's Statement of Genuine Disputes of Material Fact.  (Dkt. 91-1 ("SGD").)  The court held a hearing on the Motion on July 30, 2026.  (Dkt. 103.)  Based on the record, as applied to the relevant law, the Motion is **GRANTED**.

## I.    Background

The phone number where the calls that allegedly violated the TCPA in this case were received (the "Number") was originally Plaintiff's 90-year-old mother Eleanora Woods' landline, serviced by AT&T.  (SGD ¶ 19; Dkts. 71-2, 97-4 (Transcript of Plaintiff's Deposition,

---

[1] Plaintiff dismissed previously-named defendant Premier Financial Marketing LLC, doing business as Resmo Lending ("Resmo").  (Dkt. 64.)

**CIVIL MINUTES – GENERAL**                                                                 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                          Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

"Pl. Dep.") at 98, 107-08.)  Someone—and Plaintiff does not know who—registered the Number on the National Do Not Call Registry on September 1, 2003.  (SGD ¶¶ 26-29; Pl. Dep. at 184-85.)  In July 2024, the Number was converted to a cell phone number through T-Mobile. (SGD ¶ 17; *see* Pl. Dep. at 108-09, 112.)

In October 2021, the Number received two (according to AT&T records) or three (according to a data set compiled by LizDev, Inc. ("LizDev")[2]) allegedly unlawful calls.  (SGD ¶¶ 84-85.)  The first call occurred on October 12, 2021, and lasted 10 seconds.  (Dkt. 71-2 (AT&T Phone Records, "AT&T Recs.") at 4 of 17; SGD ¶ 4.)  The call was not answered, and there is no evidence of whether a voicemail was left.  (*See* Pl. Dep. at 186-87; SGD ¶¶ 5-6.)

The second call occurred on October 19, 2021.[3]  (AT&T Recs. at 5 of 17; SGD ¶ 7.) Plaintiff answered the call while in Texas.  (SGD ¶ 10; *see* Pl. Dep. at 129, 188.)  She recorded the call, which lasted 1 minute and 46 seconds, with an external recording device.  (Pl. Dep. at 195; AT&T Recs. at 5 of 17; SGD ¶¶ 7, 82; *see* Dkt. 69-7 (Recording).)  In the second call, the caller says, "Hi, this is Carisha with LoanStream Mortgage. How are you doing today?" (Recording at 0:11-14; *see* SGD ¶ 83.)  Plaintiff says, "Okay."  (Recording at 0:26.)  The caller says, "Is this Ms. Woods?"  (*Id.* at 0:30; *see* Pl. Dep. at 191-92; SGD ¶ 8.)  Although Plaintiff was not Ms. Woods, and although Plaintiff was not physically with Ms. Woods (who lived in California), Plaintiff responded, "Yes."  (Recording at 0:31; Pl. Dep. at 188-89, 191-93; SGD ¶¶ 8, 11-12.)  In her deposition, Plaintiff acknowledged that statement "was incorrect," but explained she made the statement based on the fact that she is her mother's power of attorney. (*Id.* at 193-94.)

---

[2] The parties vigorously dispute the foundation and authentication for this data set, with Plaintiff calling them the "LizDev call logs" and LoanStream defining them as the "Unauthenticated Data Set."  (*See* SGD ¶¶ 33-38.)  Ultimately, the court finds that these disputes are not material; the court's analysis does not depend on the precise accuracy of the data set.

[3] Both the Complaint and the FAC falsely alleged both calls occurred on October 12, 2021. (*See* Dkt. 1 (Complaint) ¶ 15; FAC ¶ 17; *see also* Pl. Dep. at 185-86, 213.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

The caller responds, "Okay, we've been trying to reach you to let you know that your home has been prequalified for a lower interest rate." (Recording at 0:35-40.)  Plaintiff responds, "You're calling about my mortgage?" (*Id.* at 0:48-51.)  The caller responds, "Yes." (*Id.* at 0:53.)  Plaintiff responds, "I don't know, to be quite honest." (*Id.* at 0:56-1:03.)  There is a pause. (*Id.* at 1:03-05.)  The caller says, "Okay, should I provide you with a callback?" (*Id.* at 1:05-1:10.)  Plaintiff responds, "Um, no, I guess I'm not . . . what am I supposed to do?  What is this in regards to, though?" (*Id.* at 1:10-1:20.)  The caller states that they are willing to lower her mortgage rate if it is above 3%. (*Id.* at 1:20-27.)  Plaintiff responds "Oh, okay that wasn't clear to me, I'm sorry I didn't understand that's what you were calling about." (*Id.* at 1:27-1:33.)  Plaintiff continues, "No, I'm good at this time." (*Id.* at 1:33-36.)  The caller responds, "Okay then, thank you for your time." (*Id.* at 1:36-45.)  The call ends. (*Id.* at 1:45.)

On January 3, 2023, Plaintiff wrote and sent by email a letter to LoanStream stating, "I'm contacting you today regarding communications to my phone that are in violation of the TCPA." (Dkt. 69-4 ("Letter"); *see* Pl. Dep. at 208; SGD ¶ 22.)  The Letter—of which LoanStream "has no record" and disputes receipt, (SGD ¶ 86)—describes the calls received and the basis for a TCPA action, stating:

> Based on the number of communications detailed above, the statutory penalties to which I would be entitled total $6,000.00.  However, in the interest of helping you avoid the imposition, expense, and potential embarrassment of civil litigation, I would like to afford you an opportunity to settle this matter for $4,000.00.  In exchange for that amount, I will forgo any civil action, release your company of all claims associated with the illegal communications named herein, and consider the matter closed.
>
> Inasmuch as I'm confident that the facts of this case would not support any manner of tenable defense for your company, I would urge you to carefully consider accepting this generous, good faith offer to settle.  Should you decline it or fail to respond within 5 business days from its time-tracked delivery, please know that I

**CIVIL MINUTES – GENERAL**                                                          3

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                  Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

reserve the right to pursue civil action as described herein, in state or federal court, and will seek all available injunctive and monetary relief made available to me under applicable state and federal statutes, up to and including a potential class certification. You should fully expect a lengthy and detailed discovery process to accompany that suit.

Additionally, I would insist that you give me every assurance that the offending communications that are the subject of this matter be the very last that I receive. I would also encourage you to take the necessary steps to ensure compliance with state and federal statutes moving forward, not only as a matter of protection from civil liability, but also as a courtesy to the millions of American consumers who are consistently plagued with these types of unwanted, illegal communications.

I look forward to your response within 5 days of your receipt of this notice, as directed above. I would ask that all further communication be in writing, if only as a means by which the content of that communication will be memorialized.  Finally, please provide a copy of your DNC policy immediately, add my number to your internal Do Not Call list, and consider this correspondence as a notice to end any perceived existing business relationship.

(Letter at 2-3; *see* SGD ¶¶ 22-25, 86.)  The letter is signed, "Eleanora C Woods . . . by Kimberly A Hudson, Power of Attorney."  (Letter at 3; *see* SGD ¶ 23.)

At the time the calls were received, the monthly statement for the Number was in Elenora Woods' name.  (AT&T Recs. at 7-12 of 17; SGD ¶¶ 9, 20.)  In May 2022, the Number was transferred into Plaintiff's name "to manage the payments."  (Pl. Dep. at 111-12; AT&T Recs. at 13-17 of 17; SGD ¶ 21.)

_____

**CIVIL MINUTES – GENERAL**                                                              **4**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                          Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

## II.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material."  *Id.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts.").  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                   Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. In determining whether a jury could

_____

**CIVIL MINUTES – GENERAL**                                                          **6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                        Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

### III.    Discussion

LoanStream moves for summary judgment on the basis that (A) Plaintiff lacks standing to bring her TCPA claim, and (B) Plaintiff fails to raise a genuine dispute regarding her TCPA claim.  The court analyzes these arguments in turn.

#### A.    Standing

LoanStream first argues that Plaintiff "lacks standing to assert her claims because the Number did ***not*** belong to her, she was ***not*** a customary user, and she was ***not*** in Ms. Woods' 'zone of interest' at the time of call." (Mot. at 18.)  Although there is strong factual evidence supporting this argument, the court is ultimately unpersuaded by the legal conclusion LoanStream asks the court to draw from that evidence.

Article III of the United States Constitution requires that courts adjudicate only actual cases or controversies.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016).  To constitute an actual case or controversy, the plaintiffs bringing a case must have standing.  *See id.* at 338; s*ee Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (describing Article III standing as an "irreducible constitutional minimum").  The Ninth Circuit has "h[e]ld that that the owner and subscriber of a cell phone listed on the Do-Not-Call Registry has Article III standing to bring claims under the TCPA for unsolicited calls or text messages directed to its number." *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 991 (9th Cir. 2023).  Here, the evidence demonstrates that Plaintiff was not the owner and subscriber of the Number at the time the calls were received.  (AT&T Records.)

A "primary or customary user" may also have standing to sue under the TCPA.  *Hall*, 72 F.4th at 990.  There is some evidence in this case to support the notion that Plaintiff was not the

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                          Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

"primary or customary user" of the Number either—the Number was registered to Plaintiff's mother, who lived in California, while Plaintiff lived in Texas; and when Plaintiff answered the call, the caller was looking for Plaintiff's mother, and Plaintiff lied and said she was her mother. (*See generally* AT&T Recs.; Recording; *see also* Pl. Dep. at 188-95; SGD ¶¶ 8-12.)

Nor does the evidence in this case support the idea that Plaintiff herself "placed [the Number] on the Do-Not-Call Registry." *Hall*, 72 F.4th at 990; (SGD ¶¶ 26-29; Pl. Dep. at 184-85).

However, based on the entire record, the court is ultimately unpersuaded that any of this means Plaintiff lacks standing to bring this case. "[T]he relevant question for Article III standing purposes is simply whether [Plaintiff] has suffered a cognizable injury." *Hall*, 72 F.4th at 990. "[T]he Do-Not-Call provisions of the TCPA proscribe unsolicited calls and text messages to phone numbers"—"not names"—"on the Do-Not-Call Registry," and "a violation of the TCPA is a concrete, *de facto* injury." *Id.* at 990 & n.8 (citation modified). Plaintiff had enough access to the Number that she answered and recorded the October 19, 2021 call. (SGD ¶ 82.) "Requiring a heighted level of phone use as a prerequisite for standing is contrary to [the Ninth Circuit's] prior recognition that receiving even one unsolicited, automated text message from a telemarketer is the precise harm identified by Congress, and sufficient to state an injury in fact under Article III." *Hall*, 72 F.4th at 990.

Indeed, "Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated. . . . [The calls] at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA. Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA need not allege any *additional* harm beyond the one Congress has identified." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). "[A]lthough such allegations are not necessary to show injury in fact," here Plaintiff alleges that she "[was] annoyed and harassed," and "also harmed by use of their telephone power, network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications, (FAC ¶ 56); "[t]hese

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

allegations suggest that [Plaintiff] has suffered the precise sort of nuisance and privacy deprivation the TCPA was enacted to address." *Hall*, 72 F.4th at 990 (making this finding related to allegations that the plaintiff "found Defendants' texts to be 'irritating, exploitative and invasive'"); *see also Van Patten*, 847 F.3d at 1043 ("In enacting the TCPA, Congress made specific findings that unrestricted telemarketing can be an intrusive invasion of privacy and are a nuisance.") (citation modified).

"Moreover, standing is not exclusive"; just because Plaintiff's mother might have standing to bring this case does not mean Plaintiff does not have standing to bring it. *Hall*, 72 F.4th at 990; *cf. N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.").

In summary, although the evidence in this case demonstrates that Plaintiff was not the owner or subscriber of the Number; that Plaintiff was likely not the customary or ordinary user of the Number; and that Plaintiff was likely not the person who registered the Number on the Registry, the court's review of Ninth Circuit precedent compels the court to find Plaintiff has still alleged sufficient injury to have standing to bring this case. The Motion on this basis is therefore **DENIED**.[4]

### B.    Merits of Plaintiff's TCPA Claim

Plaintiff brings her TCPA claim under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200. (FAC ¶¶ 10-11.) These provisions prohibit initiating "more than one telephone [solicitation] within any 12-month period by or on behalf of the same entity" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of

---

[4] The Ninth Circuit has "recognize[d] that allowing lawsuits to proceed when the ultimate phone user consents may cause telemarketers difficulties, even if such consent means that any such suit will ultimately fail on the merits." *Hall*, 72 F.4th at 990 n.8. This case shows difficulties that may arise when a phone's owner or subscriber may have consented, but other people have the ability to answer the number. *See id.* "But it is up to Congress or implementing agencies to address any such supposed difficulties." *Id.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).  A plaintiff may establish a defendant's liability under the TCPA pursuant to a theory of direct or vicarious liability. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014).

LoanStream argues Plaintiff has failed to present sufficient evidence to create a triable issue that: (1) more than one solicitation call was placed to the Number "on behalf of" LoanStream, (Mot. at 15-16), (2) Plaintiff registered the Number on the Registry, (*id.* at 16), and (3) LoanStream is directly or vicariously liable for the allegedly unauthorized telephone calls Plaintiff received, (*id.* at 18-26).

### 1.     More Than One Call

LoanStream maintains "Plaintiff cannot establish that she received more than one telemarketing/solicitation call 'on behalf of' LoanStream" because "[w]ith no answer and no voicemail, it is impossible to know what the purpose of the first call was," especially because "[t]he alleged Call Campaign was organized and executed by Resmo and Global Experts related to *three* entities," so the first call could have been made on behalf of one of the other two entities.  (Mot. at 15; *see also* Reply at 11-12.)  While LoanStream may certainly make this argument to a jury, and a jury may even find this argument prevails, the court is not persuaded that this argument makes *summary judgment* appropriate; rather, the court finds that a reasonable jury could find from evidence including that the Number received at least two calls from the same telephone number within a relatively short period, (*see* AT&T Records), the second call of which was from a person who stated they were "with LoanStream Mortgage, (Recording at 0:11-14; *see* SGD ¶ 83), that the Number "received more than one telephone call within [a] 12-month period by or on behalf of the same entity."  47 U.S.C. § 227(a)(5).  The Motion on this basis is therefore **DENIED**.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                           Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

### 2.      Whether Plaintiff Registered the Number on the Registry

LoanStream next argues that "[b]ecause there is no evidence that Plaintiff was the individual who registered the Number on the NDNCR, Plaintiff cannot meet her burden of establishing an essential element of her TCPA claim." (Mot. at 16.)  In support of the argument that an element of Plaintiff's TCPA claim is that she personally registered the Number, LoanStream highlights that relevant regulations state that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered *his* or *her* telephone number on the national do-not-call registry."  47 C.F.R. § 64.1200(c)(2) (emphasis added).  LoanStream argues "[t]he plain language of Section 61.1200(c) is unambiguous; it states that a violation occurs only when a person or entity initiates a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." (Reply at 12-13.)  Again, the court is not persuaded.

"Congress did not limit the right of action to subscribers who personally added their phone numbers to the NDNC Registry." *Nichols v. eHealthInsurance Servs., Inc.*, 2025 WL 689721, at *2 (N.D. Cal. Mar. 3, 2025).  Requiring Plaintiff to prove "that [s]he personally listed [the Number] in the NDNC Registry would run contrary to the liability scheme of the TCPA's implementing regulations," which "create a framework through which consumers benefit from the TCPA's protections as long as a phone number is registered in the NDNC Registry, unless the *telemarketer* proves that a specified safe harbor applies." *Id.* at *3.  Accordingly, the court finds LoanStream has failed to meet its burden to show summary judgment is appropriate on this basis. *See id.* at *2 ("The Court holds that Matthews need not allege that he personally registered his number in the NDNC Registry.  Rather, it is sufficient that Matthews alleges that his phone number 'was added' to the NDNC Registry.  The plain language and statutory scheme of the TCPA and its implementing regulations support this conclusion.").

The court acknowledges that it is aware of at least two cases in which district courts credited LoanStream's position.  In *Rogers v. Assurance IQ, LLC*, which LoanStream cites, (Reply at 13), a district court dismissed a TCPA claim because "Plaintiffs chose to use the passive voice to allege that both Plaintiffs['] phone numbers were 'registered on the National

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                  Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

Do Not Call Registry," but "the numbers could have been registered by previous owners of those numbers rather than by Plaintiffs themselves." 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023). And in *Rombough v. Robert D. Smith Ins. Agency, Inc.*, a district court similarly dismissed a TCPA complaint because "Plaintiff does not allege, either directly or indirectly, that *she* registered her telephone on the do-not-call registry." 2022 WL 2713278, at *2-3 (N.D. Iowa June 9, 2022). However, the court agrees with the *Nichols* court that these courts' analyses fail "to explain how [their] construction could be reconciled with the very next sentence of the implementing regulation, which provides that 'registrations must be honored indefinitely'" with "no limitation as to time period" or "limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry." 2025 WL 689721, at *3. And the court further agrees with the courts who have considered this issue and reached the *Nichols* court's conclusion. *Nichols*, 2025 WL 689721, at *3 (citing *Chinitz v. Intero Real Estate Servs.*, 2020 WL 7391299, at *14 (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC*, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024)).

In sum, although the court agrees there is no evidence that Plaintiff herself registered the Number on the NDNCR, the court finds LoanStream has failed to meet its burden to show summary judgment is appropriate on this basis, and the Motion on this basis is **DENIED**.

### 3.  Direct or Vicarious Liability

Direct liability under the TCPA applies to those who actually made the offending telephone calls. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd,* 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016); *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) (affirming district court's determination that direct liability did not apply because "the actual sender of the text" message was not the defendant, but "a separate provider of text-message based services"). Plaintiff concedes that LoanStream is not directly liable for the phone calls in this case. (*See* SGD ¶ 13; *see also generally* Opp. (arguing the viability of Plaintiff's vicarious liability arguments but not any direct liability argument)); *Thomas*, 582 F. App'x at 679 ("After reviewing the record, we agree with the district court that direct liability is inapplicable here as the parties do not dispute that the actual sender of the text was Ipsh, a separate provider of text-message based services retained by ESW.") (citation modified).

---

**CIVIL MINUTES – GENERAL**                                                          **12**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                      Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

---

The parties' dispute then centers around whether LoanStream can be held liable for the calls under a theory of vicarious liability. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez*, 768 F.3d at 879. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01 (2006). A principal may be held vicariously liable for an agent's actions pursuant to four "bedrock theories of agency: actual authority, apparent authority, ratification, and employment (respondeat superior)." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). Plaintiff "has the burden of establishing that an agency relationship exists." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019).

### a.      Relevant Facts

The court outlines basic facts relevant to the vicarious liability inquiry here, and elaborates on those facts in subsequent sections. In 2021, Sean Roberts (hereinafter, "Sean") and one of LoanStream's founders, Serene Vernon ("Vernon"), met at Bistango Restaurant for lunch, where Sean "first pitched LoanStream on him being [a] branch manager" for a LoanStream satellite branch. (Dkt. 97-5 (Transcript of Deposition of Serene Vernon, "Vernon Dep.") at 60, 67, 93; Dkt. 81-3 (Declaration of Serene Vernon, "Vernon Decl.") ¶ 10.) Although it turned out that Sean could not work for LoanStream because "the California Department of Financial Protection and Innovation barred him from any position of employment, management, or control with a finance lender and/or broker," Sean's wife Cynthia Roberts ("Cynthia") "was clean," and LoanStream allowed her to be a satellite branch manager. (Vernon Decl. ¶ 10; Vernon Dep. at 59-60, 65-66; *see* Dkt. 97-1 (Transcript of Deposition of Sean Roberts, "Sean Dep.") at 11, 27-30; Dkt. 71-2 (Transcript of Morning Session of Deposition of Cynthia Roberts, "Cynthia Dep." at 34.) Cynthia, who was "in between careers" and had no prior experience in the mortgage loan, financial services, or banking industries, had an arrangement where she and two other individuals—a loan officer assistant and a loan

---

**CIVIL MINUTES – GENERAL**                                                          13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                          Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

agent—operated as "like a satellite branch" or a "beta branch" for LoanStream for around 6 months.  (Cynthia Dep. at 7-8, 10, 38-39, 42; Vernon Dep. at 33-34.)

The "basic" framework was that the beta branch "provide[d] loan borrowers, and [LoanStream] provide[d] the structure to provide the loans."  (Cynthia Dep. at 32; *see id.* at 43 (The beta branch "facilitate[d] providing loans, borrowers, and then [LoanStream] provide[d] the needed business for it, the background.").)  "The way that [Cynthia] remember[s] being compensated" while "the branch was trying to get up and running and needed funding to do so before [they] were actually closing loans," was that LoanStream "would fund it for marketing."  (*Id.* at 9; *see id.* at 10 (LoanStream "helped us have funding by paying marketing.").)  However, LoanStream did not provide direct funding in this regard; rather, invoices were used to get LoanStream to pay Cynthia funding "so that [the beta branch] could survive long enough to create [their] own profit."  (*Id.* at 29.)  The particular invoices used to get Cynthia funding came from a company called LizDev.

Here is how LizDev comes into the picture.  Sean became a managing member at Premier Financial Marketing, LLC, doing business as Resmo Lending ("Resmo"), in March 2019.  (Sean Dep. at 17.)  Resmo had a third-party vendor called LizDev, which referred Resmo to Global Experts, Limited ("Global Experts"), a call center in Jamaica.  (*Id.* at 19-20.)  Resmo twice purchased from LizDev a list of opt-in leads consisting of people interested in and who consented to be contacted about refinancing or getting loans.  (*Id.* at 21-23, 40; SGD ¶ 31.)  Resmo provided that information to Global Experts, who would call the leads.  (Sean Dep. at 21-23, 40; SGD ¶ 31.)  If the customer expressed an interest in the described mortgage products, the lead's call would be transferred to a Resmo employee—in particular, a Resmo employee who was licensed in the state in which the caller was located—to discuss mortgage options that were potentially available through three different entities: (i) American Financial Network, Inc. ("AFN"); (ii) Lending 3 ("L3"); and (iii) LoanStream.  (Sean Dep. at 21-23, 40; SGD ¶ 31.)  Global Experts drafted a script for this call campaign, with Sean's input, but LoanStream was not involved in drafting the script, and Sean did not know if LoanStream received the script.  (Sean Dep. at 25-26, 53-54.)  Vernon testified on behalf of LoanStream that Sean never gave LoanStream the scripts.  (Vernon Dep. at 69-70.)  The call campaign took place from September 27, 2021, to November 16, 2021.  (SGD ¶ 51.)

**CIVIL MINUTES – GENERAL**                                                    **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

Plaintiff argues there is a genuine dispute of material fact regarding whether LoanStream is vicariously liable for violating the TCPA on three theories: actual authority, apparent authority, and ratification.  (Opp. at 15-24.)  The court addresses each theory in turn.

### b.    Actual Authority

"In order to establish that [Sean, Resmo, and/or Global Experts] had 'actual authority' to place calls on behalf of [LoanStream], Plaintiff must establish both an agency relationship *and* actual authority to place the unlawful calls."  *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *3 (N.D. Cal. Oct. 16, 2019) (citing *Jones*, 887 F.3d at 449).  "Whether an agency relationship exists also depends on the level of control a principal exerts over the agent."  *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017).  "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and the person represented must have a right to control the actions of the agent."  *Jones*, 887 F.3d at 448 (cleaned up).

"[A]ctual authority" is a synonym for "true authority."  Restatement (Third) Of Agency § 2.01 (2006).[5]  "An agent who has actual authority holds power as a result of a voluntary conferral by the principal and is privileged, in relation to the principal, to exercise that power."  Restatement § 1.01.  "Actual authority is a consequence of a principal's expressive conduct toward an agent, through which the principal manifests assent to be affected by the agent's action, and the agent's reasonable understanding of the principal's manifestation."  Restatement § 2.01.  "Actual authority is limited to actions specifically mentioned to be done in a written or oral communication or consistent with a principal's general statement of what the agent is supposed to do."  *Jones*, 887 F.3d at 449 (internal quotations omitted).

In this case, the court finds the undisputed material facts demonstrate that LoanStream did not have an agency relationship with Sean, Resmo, Global Experts, or LizDev that would support Plaintiff's vicarious liability theory, and that LoanStream did not provide Resmo, Sean,

---

[5] Courts "rely on the Restatement (Third) of Agency for common law agency principles."  *Henderson*, 918 F.3d at 1072-73.

**CIVIL MINUTES – GENERAL**                                                    **15**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                      Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

or Global Experts actual authority to conduct the Calling Campaign.  The court now summarizes the evidence relevant to that finding.

Resmo "never had a relationship with LoanStream, period." (Sean Dep. at 31; *see id.* at 30 ("LoanStream "did not approach Resmo to do anything."); *id.* at 41-42; *see* Vernon Dep. at 74 (never onboarded as a vendor).)  "[T]he only reason Resmo or Premier comes into play in this is because at the time, [Cynthia] needed additional revenue to market and so we[6] had LizDev prepare two invoices so that LoanStream would give us --- or give the branch, not us, my wife, in advance to market with." (*Id.* at 32; *see* Vernon Dep. at 30 (describing a payment constituting "an advance against future . . . profits" made to Cynthia by way of "her corporation," Premier).)  "Resmo never, ever, ever, ever billed LoanStream for anything.  So no financial relationship." (Sean Dep. at 32.)  Resmo never communicated with LoanStream regarding LoanStream's business.  (*Id.* at 34.)  (Sean communicated with LoanStream's owner for a separate purpose, related to Cynthia's work in the car industry and LoanStream's owner's desire for work on her car.)  (*Id.* at 34-35.)

Similarly, LoanStream did not have a relationship with or ever pay Global Experts.  (*Id.* at 39-40.)

Likewise, "LoanStream never talked to LizDev" and "never had . . . any communication with LizDev . . . whatsoever." (Sean Dep. at 33; *see* Vernon Dep. at 74 (never onboarded as a vendor).)  LoanStream "didn't pay LizDev.  They paid [Cynthia]." (Sean Dep. at 32; *see* Vernon Dep. at 18 ("We were only able to pay [Cynthia], unfortunately, one time."); *id.* at 48 (testifying that LoanStream did not pay the LizDev invoice).)  "[T]he invoices were used so that the powers to be at LoanStream could document why they were providing" Cythia money, in other words "to memorialize that agreement of LoanStream paying for [Cynthia's] marketing efforts" and to get Cynthia "money to either pay an employee, pay rent, keep lights on, and pay for leads." (Sean Dep. at 33; *see* Vernon Dep. at 18 ("There is no such thing as a start up payment.  When we start a branch . . . we unfortunately suck up a loss for a while until they turn

_____

[6] Throughout this order, when in quotations from deposition testimony it is unclear precisely which actors to which the term "we" refers, the court maintains use of the word "we" in the quotation despite any grammatical errors doing so may introduce.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No. 8:24-cv-00067-FWS-JDE                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

profitable.").)  LizDev "just sent an invoice for advance purposes."  (Sean Dep. at 42.)  As Vernon described it, Cynthia "pulled at [her] heartstrings there right before Christmas that . . . she needed money," so she "gave her" "an advance against future . . . profits."  (Vernon Dep. at 30.)

What is more, Vernon testified the Calling Campaign violated LoanStream's company agreements and policies.  "LoanStream did not allow, permit, or support [beta] branches to independently engage in advertising or marketing on behalf of LoanStream."  (Vernon Decl. ¶ 8.)  As she put it during her deposition, LoanStream "would never allow any sort of marketing or advertisement," including "any sort of telemarketing."  (Vernon Dep. at 35-36.)  Branch managers were only allowed to use "self-sourced" business, meaning "things that . . . drummed up business through third-party relationships, the biggest one being Realtor," but also "chamber of commerce work."  (*Id.* at 41-42; *see also id.* at 56-57.)  In the Non-Producing Branch Manager Employment Agreement, LoanStream expressly prohibited branches from engaging in other forms of marketing, including that LoanStream "d[id]n't allow [branch managers] to enter into any contract, period."  (*Id.* at 36; *see id.* at 38, 76; Vernon Decl. ¶ 8.)  LoanStream also did not permit "telephonic marketing of any sort," even "to customers with their consent."  (Vernon Dep. at 40-41; *id.* at 42 (responding to the question, "Was telemarketing forbidden outright?" with "Absolutely").)  Branch managers were not authorized to self-source leads from lead generators.  (*Id.* at 42; *see id.* at 59 (responding "[h]undred percent" to the question of whether "the idea to use a lead generator . . . would have been shot down during that time"); *see also* Vernon Decl. ¶¶ 5, 8-9 ("LoanStream expressly prohibited - by contract and company policy - its employees from sourcing business through lead generators and other mass-market telemarketing activities."); *id.* Exs. 12, 15).)

Vernon's interpretation of the foregoing facts is that "they were telemarketing behind our backs."  (Vernon Dep. at 72; *see id.* at 86-87 (similar).)  She declares, "It was not until after the filing of this lawsuit that I learned for the first time that Sean Roberts and/or [Resmo] had, without LoanStream's knowledge, authorization or participation, previously conducted a telemarketing campaign to source leads for third-party customers, including LoanStream and other entities."  (Vernon Decl. ¶ 12.)

_____

**CIVIL MINUTES – GENERAL**                                                    **17**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

Based on the entire record, the court finds Plaintiff "has failed to meet her burden" to raise a genuine dispute of material fact regarding an agency relationship and actual authority. *Thomas*, 879 F. Supp. 2d at 1085. Plaintiff presents no evidence that LoanStream "directed or supervised the manner and means of the [call] campaign conducted by" Resmo and Global Experts." *Id.* She presents no evidence that LoanStream "created or developed the" call scripts or that LoanStream "played any role in the decision to" conduct a call campaign. *Id.* Plaintiff offers no evidence that LoanStream performed at any time "a voluntary conferral" of power onto Sean, Resmo, Global Experts, or LizDev to do the call campaign, Restatement § 1.01, or used any "expressive conduct toward" Sean, Resmo, Global Experts, or LizDev "through which [LoanStream] manifest[ed] assent to be affected by [any of their] action," Restatement § 2.01, including through any "written or oral communication," *Jones*, 887 F.3d at 449. "All of this control over the manner and means of the [call] campaign was exercised by" Sean, Resmo, and Global Experts, and Plaintiff "has not presented any evidence to the Court demonstrating that [LoanStream] controlled the actions of these entities with respect to the campaign." *Id.* "[LoanStream], simply put, had nothing to do with it." *Id.*

Plaintiff argues there is a genuine dispute of material fact regarding actual authority based on facts including that "LoanStream placed Cynthia Roberts in a position to solicit business on its behalf," "hired her as a W-2 employee, gave her a LoanStream email address and NMLS number, funded the branch, paid its rent, and accepted its loans," "knew that Sean Roberts, who had lost his DFPI license, was associated with the branch," "authorized its branches to 'drum up[] business' on their own." (Opp. at 19.) But "[a]gency means more than mere passive permission; it involves request, instruction, or command." *Thomas*, 879 F. Supp. 2d at 1085 (quoting *Klee v. United States,* 53 F.2d 58, 61 (9th Cir. 1931)). The court finds the evidence Plaintiff identifies regarding LoanStream's relationship with Cynthia is not sufficient to raise a genuine dispute of material fact that *Sean, Resmo, Global Experts,* and/or *LizDev* was or were an agent of LoanStream.

In support of her actual authority theory, Plaintiff also points to a LoanStream Profit and Loss ("P&L") Statement that reflects a December 22, 2021, payment from LoanStream to Resmo for "marketing," (Dkt. 60-5 at -298); and a February 2, 2022, email from Sean (at a Resmo email address) to Vernon requesting money on the basis that "[w]e are continuing to

_____

**CIVIL MINUTES – GENERAL**                                                18

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                      Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

build our pipeline and we have some fixed (office rent) and some variable (marketing) expenses due/past due," to which Vernon replied by asking Sean Roberts for his "cost center number" so she could ask accounting to "produce asap!" and Cynthia, from a LoanStream email address, replied with the number (Dkt. 60-4 at -295-96). (Opp. at 20-21.) The court finds this evidence (alone or taken together with the other evidence Plaintiff presents) is also not sufficient to raise a genuine dispute of material fact regarding actual authority; *even if* this evidence showed that LoanStream "approved of and authorized the release of . . . funds for the [call] campaign," which LoanStream vigorously disputes, "[m]ere approval and funds administration cannot be equated with control over the manner and means by which the campaign was designed and executed." *Thomas*, 879 F. Supp. 2d at 1085.

Finally, to create a triable issue on actual authority, Plaintiff points to Sean's testimony about certain conversations with LoanStream. (*See* Opp. at 20-21 (citing Sean Dep. at 45-46).) That includes testimony that LoanStream "wanted to make sure that . . . the data that we receiv[ed] was opt-in," and "we had a verbal agreement that . . . we weren't going to just start dialing white pages or crap or people who weren't interested in loans and so . . . they basically asked [Sean] how [he] received [his] data." (Sean Dep. at 45.) LoanStream "asked [Sean] if it was opted-in and [he] said yes"; "asked [him] if [he] had policies and procedures regarding TCPA" and Sean "said absolutely"; and asked [him] regarding can spam and [he] said absolutely, and then we rolled on." (*Id.* at 45-46.) On this topic, Sean also testified about a conversation with Vernon in which Sean, in response to a question from Vernon, "gave [Vernon] a description of the scripts and how we contact the clients," and Vernon "said, you need to assure me . . . that these are . . . opt-ins and et cetera," and Sean told her "yes," that they had "been doing this for a year" and "never had any issues at all" including "any TCPA violations. (Sean Dep. at 54-55.)

Even construing this evidence in the light most favorable to Plaintiff, and taking it together with other evidence presented, the court finds that no reasonable jury could find that LoanStream had sufficient control over Resmo, Sean, and/or Global Experts conducting the call campaign, or gave Resmo, Sean, Global Experts, and/or LizDev actual authority to perform the call campaign. *See Armstrong v. Investor's Bus. Daily, Inc.*, 2020 WL 2041935, at *8 (C.D. Cal. Mar. 6, 2020) (granting motion for summary judgment when "Plaintiff has produced no

---

**CIVIL MINUTES – GENERAL**                                                                      19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

evidence of written or oral communication indicating that IBD authorized Handstack to send the text messages to Plaintiff in violation of the TCPA"); *see also Jorge Valdes v. Nationwide Real Est. Executives, Inc.*, 2021 WL 2134159, at *4 (C.D. Cal. Apr. 22, 2021) (granting motion to dismiss on the basis that "Plaintiff fails to proffer any evidence showing that NREE directs its agents to make cold calls that violate the TCPA or that NREE has any control over whom its agents call"); *contrast Lushe v. Verengo Inc.*, 2014 WL 5794627, at *5 (C.D. Cal. Oct. 22, 2014) (finding genuine dispute of material fact when "the record includes at least the following evidence showing that Defendant . . . did involve itself in the manner and means by which CTA and MOV performed: Defendant reviewed, edited, and provided input for the scripts CTA and MOV used during their calls; CTA and MOV sent Defendant call recordings so that Defendant could review the callers' performance; Defendant provided performance-related feedback in response to some of the recordings," "communicated with CTA and MOV regularly about the scripts and call quality," "provided CTA and MOV with access to certain of its facilities, including dedicated phone lines by which CTA and MOV would transfer calls to Defendant and the ability to post lead information directly to Defendant's 'system,'" and "scripts that Defendant provided, edited, and/or approved also mentioned Defendant by name" and "suggest[ed] that Defendant was aware that MOV was using an automatic dialing system—the use of which can be a TCPA violation").  The Motion is therefore **GRANTED** as to Plaintiff's actual authority vicarious liability theory.

### c.    Apparent Authority

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement § 2.03.  This definition "applies to actors who appear to be agents but are not, as well as to agents who act beyond the scope of their actual authority," *id.* § 2.03 cmt. a, and "requires 'proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied,'" *Thomas*, 582 F. App'x at 679-80 (quoting *N.L.R.B. v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)) (citing Restatement (Second) of Agency § 265 cmt. a).  Such statements include "direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the

**CIVIL MINUTES – GENERAL**                                                    **20**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates." *Hossfeld v. DIRECTV, LLC*, 2023 WL 3549742, at \*5 (C.D. Cal. Mar. 31, 2023) (quoting *N.L.R.B. v. Donkin's Inn, Inc.*, 532 F.2d 138, 141 (9th Cir. 1976)).

Plaintiff argues the following facts create a triable issue regarding apparent authority: "the callers identified themselves on recording as calling from 'LoanStream Mortgage'", and "two admissions" from "LoanStream's own corporate designee": "Vernon conceded that a customer receiving such a call 'would believe that the call was made' on LoanStream's behalf," and "acknowledged that 'LoanStream was the entity whose products and services were being promoted' on the calls." (Opp. at 22-23.)  However, "[a]pparent authority cannot be established merely by showing that [the purported *agent*] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [*principal*] on which [the plaintiff] reasonably relied." *Dist. Council of Iron Workers*, 124 F.3d at 1099.  All of the evidence Plaintiff cites in support of apparent authority rest on statements and actions from the purported *agent*, not from the purported *principal*, and are therefore insufficient to create a triable issue regarding apparent authority.  *See id.*; *see, e.g.*, *Thomas*, 582 F. App'x at 679 ("Apparent authority is inapplicable because it can only be established by proof of something said or done by the alleged principal, on which the plaintiff reasonably relied.") (citation modified); *Lushe*, 2015 WL 500158, at \*4 ("The ostensible authority of an agent cannot be based solely upon the agent's conduct.") (citation modified); *Rogers v. Postmates Inc.*, 2020 WL 3869191, at \*6 (N.D. Cal. July 9, 2020) (finding apparent authority inadequately alleged against Postmates when basis for apparent authority allegation was the fact that text message "referenced Postmates by name and that the link provided in the text message directed the visitor to Postmates' webpage") (internal record citation omitted).  The Motion is **GRANTED** as to Plaintiff's apparent authority theory.

### d.    Ratification

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement § 4.01(1).  "There are two ways to ratify a third party's acts": (1) "by a 'knowing acceptance of the benefit' as

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No. 8:24-cv-00067-FWS-JDE                                  Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

demonstrated by "'an objectively or externally observable indication . . . that the principal has exercised choice and has consented' to the acts of the purported agent"; or (2) "through 'willful ignorance'" where "the principal may not know the material facts" but "has 'ratified with awareness that such knowledge was lacking.'"  *Henderson*, 918 F.3d at 1073-74 (quoting Restatement §§ 4.01 cmts. b & d)).

"Restatement § 4.06 requires that a principal knows of the material facts involved in the act it is ratifying."  *Henderson*, 918 F.3d at 1075.  "This knowledge requirement is met if the principal either has 'actual knowledge' or 'chooses to affirm without knowing the material facts."  *Id.* (quoting Restatement § 4.06 cmt. b) (cleaned up).  "Comment d adds that 'a factfinder may conclude that a principal has made such a choice when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation," which "can also be described as 'willful ignorance.'"  *Id.* (quoting Restatement § 4.06 cmt. d).

Plaintiff argues there is a genuine dispute of material fact regarding whether LoanStream ratified Sean, Resmo, and/or Global Experts' conduct because LoanStream knew or reasonably should have known Sean, Resmo, and/or Global Experts was violating the TCPA on LoanStream's behalf and failed to take effective steps to stop it, as well as by accepting the benefit of the unlawful call campaign.  (Opp. at 24-25.)  The evidence Plaintiff points to in support of these arguments includes the already-described December 22, 2021 "marketing" payment to Resmo in LoanStream's P&L and February 2, 2022, email from Sean referencing "marketing expenses" which Vernon replied to asking for a cost center number.  (*Id.*)  Plaintiff also argues LoanStream "never investigated the branch's marketing practices, never disciplined the branch (or any branch), never asked how the branch generated leads, and never enforced any purported telemarketing prohibition, which it could not even produce."  (*Id.* at 24-25.)  And Plaintiff points to the LizDev invoice, including language in that invoice that "CLIENT," which the invoice defines as LoanStream, "shall ensure that all Leads (and all corresponding underlying Lead information) provided hereunder are used, contacted (via direct mail, email, online or telephone), maintained and accessed by CLIENT and/or CLIENT's affiliates in compliance with applicable law, including without limitation, the Telemarketing Sales Rule (as

_____

**CIVIL MINUTES – GENERAL**                                                              **22**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                          Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

amended), the Telephone Consumer Protection Act of 1991, and the CAN-SPAM Act of 2003. (Dkt. 80-1 at 3 of 5.)  The invoice also states,

> CLIENT IS SOLEY RESPONSIBLE FOR COMPLINCE WITH ALL FEDERAL AND STATE LAWS INCLUDING BUT NOT LIMITED TO THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) REGULATIONS, STATE AND FEDERAL DO-NOT-CALL REGISTRY REGULATIONS, AND DO-NOTEMAIL/CAN-SPAM REGULATIONS. CLIENT . . . ASSUME[S] THE RISK THAT THE CONSUMER MAY BE REGISTERED WITH A STATE OR FEDERAL DO-NOT-CALL REGISTRY. CLIENT AND ANY END USER PROVIDED ANY LEAD SOLD TO CLIENT UNDER THIS AGREEMENT SHALL VERIFY ALL CONTACT INFORMATION AGAINST SUCH REGISTRY(S) PRIOR TO CONTACTING THE CONSUMER. CLIENT SHALL BEAR ANY AND ALL LIABILITY FOR VIOLATIONS UNDER STATE AND FEDERAL TELEPHONE CONSUMER PROTECTION ACT (TCPA) REGULATIONS DO-NOTCALL REGULATIONS, AND DO-NOTEMAIL/CAN-SPAM REGULATIONS.

(*Id.* at 4 of 5.)

The court finds Plaintiff fails to raise a genuine dispute of material fact regarding ratification.  As stated, a third party's actions may be ratified by "knowing acceptance of the benefit" or (2) "willful ignorance."  *Henderson*, 918 F.3d at 1073-74.  First, "[t]o prove [knowing acceptance of the benefit], there must be 'an objectively or externally observable indication that the principal has exercised choice and has consented" to the acts of the purported agent," including "knowledge of material facts."  *Id.* at 1073.  However, Plaintiff has offered no evidence supporting the notion that LoanStream had sufficient knowledge of the call campaign to be able to knowingly accept benefit from it.  *See id.*  The "marketing" payment in the P&L, the email referencing marketing two months later, and the undated and unpaid LizDev invoice are not sufficient evidence to create a triable issue that LoanStream knew, or had sufficient

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

information to trigger a duty to investigate, that Sean, Resmo, Global Experts, and/or LizDev were performing a call campaign in violation of the TCPA, especially when LizDev never paid the invoice[7], (Vernon Decl. ¶ 23), never onboarded LizDev as a vendor, (*id.* ¶ 24; Vernon Dep. at 74), or had any other communication with or relationship with LizDev, (Sean Dep. at 33). The court finds, "[i]n other words, [no] reasonable jury could find that [LoanStream] ratified [Sean, Resmo, Global Experts, and/or LizDev's] calling practices by remaining silent and continuing to accept the benefits of [their TCPA-violating] conduct despite knowing what the collectors were doing or, at the very least, knowing of facts that would have led a reasonable person to investigate further." *Henderson*, 918 F.3d at 1073-74.

Regarding willful blindness, the court similarly finds Plaintiff has not presented sufficient evidence to create a genuine dispute of material fact that LoanStream "had knowledge of facts that would have led it to investigate [Sean's, Resmo's, Global Experts', and/or LizDev's] lead-generation activities to determine if [they were] calling only consenting individuals, but instead accepted leads generated by [their] calls with scant investigation." *McCurley v. Royal Seas Cruises, Inc.*, 2022 WL 1012471, at *2 (9th Cir. Apr. 5, 2022) (finding sufficient evidence of such knowledge where the alleged principal "knew that [the alleged agent] placed calls using prerecorded voices, a prima facie violation of the TCPA," "received 2.1 million warm-transferred calls from Prospects between January 2017 and June 2018," "that TCPA compliance required each call to be to an individual who had previously 'agreed' to be called by [the alleged principal]," "that the calls [the alleged agent] placed to individuals who had allegedly consented . . . generated 80,081 warm transfers to [the alleged principal] in 2017," among other evidence).

In summary, "[t]he focal point of ratification is an observable indication that a principal has exercised an explicit or implicit choice to consent to the purported agent's acts." *Henderson*, 918 F.3d at 1075. Plaintiff has not created a genuine dispute of material fact that such an indication exists. *See also, e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014–15 (9th Cir. 2018) ("It is undisputed that AC Referral did not enter into a contract with any of the lenders or with LeadPile. It is also undisputed that AC Referral did not

---

[7] The court also notes Cynthia was not authorized to pay vendor invoices on behalf of LoanStream. (Cynthia Dep. at 59.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                                      Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

communicate with or even know of the lenders or LeadPile before the lawsuit was filed. Because AC Referral was neither an agent nor a purported agent of the lenders or LeadPile, AC Referral's actions do not qualify as ratifiable acts.").

### C.       Summary and Conclusion

In summary, the court finds that summary judgment is not warranted on some of the bases on which LoanStream urges—that Plaintiff lacks standing to bring the TCPA claim or that Plaintiff fails to submit sufficient evidence that more than one call on behalf of LoanStream was received or that Plaintiff registered the Number on the Registry.  *See supra* Sections III.A., B.1.-2.  However, the court does find summary judgment is appropriate on the basis that Plaintiff does not offer sufficient evidence to create a genuine dispute that LoanStream can be held liable for the call(s) Plaintiff received on any theory of direct or vicarious liability.[8]  *See supra* Section III.B.3.a-d.  Accordingly, LoanStream's Motion is **GRANTED**.

If LoanStream believes there are grounds to enter judgment under Rule 54(b), it may file an appropriate motion or application; otherwise, the court will enter judgment after Plaintiff's claim against Sean Roberts is resolved.  *See Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) ("Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties."); *Curtiss-Wright*, 446 U.S. at 10 ("Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely."); *Gausvik v. Perez*, 392 F.3d 1006, 1009 (9th Cir. 2004) ("[I]n the interest of judicial economy Rule 54(b) should be used sparingly.  The rule was not meant to displace the 'historic federal policy against piecemeal appeals.'").

_____

[8] Because the court concludes Plaintiff has not created a genuine dispute that LoanStream can be held liable on any theory of direct or vicarious liability, the court need not address LoanStream's final argument in the Motion, that Plaintiff fails to create a triable issue that LoanStream "willfully or knowingly violated" the TCPA so as to support an award of treble damages, (Mot. at 27).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00067-FWS-JDE                    Date: August 5, 2026
Title: Kimberly Hudson-Bryant v. OCMBC Inc. *et al.*

## IV.     Disposition and Further Orders

For the reasons stated above, the Motion is **GRANTED**.  This case will now proceed on Plaintiff's personal TCPA claim as against Defendant Sean Roberts only.

To that end, as discussed on the record at the hearing, the parties are **ORDERED** to use their best efforts, including email, to ensure Sean Roberts' most recent and accurate contact information appears on the docket.  (*See* Dkts. 100-01 (notices that court mail to Sean Roberts was returned).)

Finally, the court observes that the deadline to complete settlement conference passed on July 30, 2026.  (Dkt. 57.)  The court **ORDERS** that Plaintiff and Sean Roberts submit a joint status report regarding settlement on or before **August 10, 2026**, detailing how and when the parties complied with that deadline, and their respective positions regarding whether further settlement discussions, including before the assigned Magistrate Judge, might be productive.